ACCEPTED
15-25-00003-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/6/2025 4:50 PM
CHRISTOPHER A. PRINE
CLERK

No. _____

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/6/2025 4:50:17 PM
CHRISTOPHER A. PRINE
Clerk

**IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT OF TEXAS
AUSTIN, TEXAS**

**LONE STAR NGL PRODUCT SERVICES, LLC
(*in its own capacity and as assignee*),**
*Plaintiff/Joint Petitioner,*

**v.**

**EAGLECLAW MIDSTREAM VENTURES LLC
AND CR PERMIAN PROCESSING, LLC,**
*Defendants/Joint Petitioners.*

Petition for Permissive Interlocutory Appeal
from the Texas Business Court, 11th Division
Trial Court No. 24-BC11A-0004

**JOINT PETITION FOR PERMISSIVE INTERLOCUTORY APPEAL**

**NORTON ROSE FULBRIGHT**
Andrew Price
State Bar No. 24002791
andrew.price@nortonrosefulbright.com
Rafe A. Schaefer
Abraham Chang
Timothy Shinn
1550 Lamar St. Suite 2000
Houston, Texas 77010
(713) 651-5151

**ALEXANDER DUBOSE & JEFFERSON**
William J. Boyce
State Bar No. 02760100
bboyce@adjtlaw.com
1844 Harvard St.
Houston, Texas 77008
(713) 523-2358

**ATTORNEYS FOR PLAINTIFF/ JOINT PETITIONER**

**BECK REDDEN LLP**
Fields Alexander
State Bar No. 00783528
falexander@beckredden.com
Thomas E. Ganucheau
Mary Kate Raffetto
Parth S. Gejji
Garrett S. Brawley
Cassie Maneen
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
(713) 951-3700

**ATTORNEYS FOR DEFENDANTS/
JOINT PETITIONERS**

**IDENTITY OF PARTIES AND COUNSEL**

Plaintiff/Joint Petitioner: Lone Star NGL Product Services LLC,
which is now known as
Energy Transfer GC NGL Product Services LLC[1]
in its own capacity and as assignee of
Energy Transfer GC NGL Marketing LLC,
Energy Transfer GC NGL Fractionators LLC,
Energy Transfer GC NGL Pipelines LP,
Energy Transfer Mont Belvieu NGL Pipelines LLC,
Energy Transfer Mont Belvieu NGLs LP, and
Energy Transfer GC NGLs LLC

Counsel for Plaintiff/
Joint Petitioner: Andrew Price
Rafe A. Schaefer
Abraham Chang
Timothy Shinn
NORTON ROSE FULBRIGHT US LLP
1550 Lamar St. Suite 2000
Houston, Texas 77010-3095
(713) 651-5151

William J. Boyce
ALEXANDER DUBOSE & JEFFERSON
1844 Harvard St.
Houston, Texas 77008
(713) 523-2358

---

[1] Although Lone Star is now known as Energy Transfer GC NGL Product Services LLC, it is referred to as "Lone Star" throughout this pleading.

i

| | |
|---|---|
| Defendants/<br>Joint Petitioners: | EagleClaw Midstream Ventures LLC and<br>CR Permian Processing, LLC |
| Counsel for Defendants/<br>Joint Petitioners: | Fields Alexander<br>Thomas E. Ganucheau<br>Mary Kate Raffetto<br>Parth S. Gejji<br>Garrett S. Brawley<br>Cassie Maneen<br>BECK REDDEN LLP<br>1221 McKinney, Suite 4500<br>Houston, Texas 77010-2010<br>(713) 951-3700 |
| Trial Court: | Hon. Sofia Adrogué<br>Texas Business Court, 11th Division<br>301 Fannin Street<br>Houston, Texas 77002<br>Phone: (713) 274-1067 |

# TABLE OF CONTENTS

**Page**

Identity of Parties and Counsel .................................................................. i

Table of Contents ................................................................................... iii

Index of Authorities ............................................................................... iv

Information Required By Tex. R. App. P. 28.3(e)(1) and 25.1(d) ........................ vi

Issue Presented ..................................................................................... vii

Introduction ...........................................................................................1

Statement of Facts ....................................................................................3

Argument................................................................................................6

    I.      The issue presents a controlling question of law as to which there are substantial grounds for difference of opinion. ...............................7

    II.     A permissive interlocutory appeal would materially advance the ultimate termination of the litigation...................................................11

Prayer for Relief.....................................................................................14

Certificate of Compliance .........................................................................16

# INDEX OF AUTHORITIES

**CASES**                                                        **PAGE(S)**

*Able Supply Co. v. Moye*,
898 S.W.2d 766 (Tex. 1995) ...................................................................7

*Bland Indep. Sch. Dist. v. Blue*,
34 S.W.3d 547 (Tex. 2000)....................................................................9

*Gulf Coast Asphalt Co. v. Lloyd*,
457 S.W.3d 539 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ..........8, 9, 10

*Indus. Specialists, LLC v. Blanchard Ref. Co. LLC*,
652 S.W.3d 11 (Tex. 2022)....................................................................6

*Prystash v. State*,
3 S.W.3d 522 (Tex. Crim. App. 1999) ....................................................9

*Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*,
567 S.W.3d 725 (Tex. 2019) ...............................................................7, 11

*State Bar of Tex. v. Gomez*,
891 S.W.2d 243 (Tex. 1994) ..................................................................8

*Tema Oil and Gas Co. v. ETC Field Services, LLC*,
2024 WL 4796433 (Tex. Bus. Ct.) .......................................................10

*Winans v. Berry*,
2024 WL 4796435 (Tex. Bus. Ct.) .......................................................10

*Workers' Comp. Sols. v. Tex. Health, L.L.C.*,
No. 05-15-01504-CV, 2016 WL 945571 (Tex. App.—Dallas
Mar. 14, 2016, no pet.)...........................................................................8

**STATUTES**

Tex. Civ. Prac. & Rem. Code § 51.014(d)........................................................6, 11

Tex. Gov't Code
    §§ 25A.001–020.......................................................................................3
    § 25A.004............................................................................................3, 4
    § 25A.004(d)(2) ........................................................................................4
    § 25A.006.................................................................................................1


**OTHER AUTHORITIES**

Cause No. 15-24-00122-CV, *Energy Transfer LP, et al. v. Culberson
    Midstream LLC, et al.*, in the Fifteenth Court of Appeals...................10

Cause No. 15-24-00130-CV, *In re Energy Transfer LP and ETC Texas
    Pipeline, Ltd.*, in the Fifteenth Court of Appeals................................10

House Comm. on Civil Practices, Bill Analysis Tex. H.B. 978,
    77th Leg., R.S. (2001)...........................................................................8

Senate Comm. on State Affs., Engrossed Bill Analysis, Tex. H.B. 274,
    82d Leg., R.S. (2011)..........................................................................11

16 Charles Alan Wright, Arthur Miller & Edward H. Cooper,
    FED. PRAC. & PROC. § 3930 (3rd ed. 2012) .....................................8, 9

**INFORMATION REQUIRED BY TEX. R. APP. P. 28.3(e)(1) and 25.1(d)**

As required by Tex. R. App. P. 28.3(e)(1), Joint Petitioners provide the following information in keeping with Tex. R. App. P. 25.1(d):

1.      Trial court, style, and case number:

- Business Court of Texas, Eleventh Division

- *Lone Star NGL Product Services LLC v. EagleClaw Midstream Ventures, LLC, et al.*

- Cause No. 24-BC11A-0004

2.      Joint Petitioners wish to appeal the remand order signed on December 20, 2024.  It is attached as **Tab A**.  The Joint Petitioners include all parties:

- Joint Petitioner Lone Star NGL Product Services LLC ("Lone Star"), plaintiff below.

- Joint Petitioners EagleClaw Midstream Ventures LLC and CR Permian Processing, LLC (collectively, "Defendants"), defendants below.

3.      This appeal is to the Fifteenth Court of Appeals.

4.      This joint petition is filed by all parties.

5.      This petition is filed under Tex. Civ. Prac. & Rem. Code § 51.014(d).

The appeal will be accelerated and is not a parental termination or child protection case.

## ISSUE PRESENTED

This case presents the following issue, which the Trial Judge identified in the remand order as meeting the standard for an immediate permissive appeal under § 51.014(d):

1. Whether a civil action that was commenced before September 1, 2024, may be removed to Business Court where the parties entered into a subsequent agreement expressly consenting to the jurisdiction of the Business Court.  **Tab A** at 17.

## INTRODUCTION

Since House Bill 19 was passed in 2023, many litigants, including Joint Petitioners, have attempted to access the Business Court and unlock its promised efficiencies by invoking the statute's removal provision. *See* Tex. Gov't Code § 25A.006. Immediate appellate review is warranted here because the remand order at issue forecloses that access.

After Joint Petitioners entered into an agreement on September 13, 2024, to adjudicate their disputes in the Business Court and filed their Notice of Removal on September 17, 2024, the Trial Judge requested briefing and held a hearing on whether this case may be removed. Given that this lawsuit was pending on September 1, 2024, the Trial Judge expressed concern at the hearing that removal may not be allowed; the December 20, 2024 remand order holds that removal is not available under these circumstances.

Joint Petitioners submit that removal is expressly allowed under the statute's unambiguous language. The Trial Judge disagreed. Recognizing that this question presents a controlling question of law as to which there is a substantial ground for difference of opinion, the remand order authorizes an interlocutory appeal.

This removal issue arises against the backdrop of the Business Court's launch in 2024—and with that launch, the emergence of threshold legal questions requiring prompt answers so that the new rules of the road for this new court are clear to all.

1

The Trial Judge emphasized the immediate need for this Court to provide clarity on the removal issue. As the Trial Judge explained during the hearing:

> . . . there's no doubt that it would allow for there to be precedent on something that I do think needs to, at some point, be determined. . . . [A]s you can imagine, we're one court. And so the goal is we are one court and a new court. And the goal is just to ensure, as we are scrutinizing everything, as we're trying to create horizontal res judicata. I'm excited we are commencing that effort now.

**Tab H** at 47.

This case is precisely the type of dispute for which the Business Court was created. It is a hotly-contested, high-dollar, complex dispute where the parties have not agreed on very much. But the parties do agree that this case belongs in the Business Court. They also agree with the Trial Judge's pronouncements regarding the need for immediate appellate guidance on obtaining access to the Business Court and its promised efficiencies. To that end, Joint Petitioners respectfully request that the Court grant this petition for a permissive interlocutory appeal so that the Court may issue critical guidance on this threshold removal issue.[2]

---

[2] Joint Petitioners recognize that the posture of this case—an agreed request for a permissive interlocutory appeal—is unusual. While the parties agree on the ultimate outcome of the jurisdictional issue presented by this appeal, the parties have differing views on the correct reasoning. Accordingly, if the Court grants permission to appeal, Joint Petitioners wish to file simultaneous but separate merits briefing and respectfully request the Court issue a briefing schedule that permits each party to file its own brief without any response or reply briefs.

On May 20, 2021, Lone Star filed a lawsuit against Defendants in Harris County. The case landed in the 61st Judicial District Court and was assigned cause number 2021-30388. Lone Star asserted claims related to two natural gas purchase agreements that involve an obligation to sell Y-Grade, which is a term used to describe the natural gas liquids that result from processing natural gas. Defendants filed an answer and asserted various defenses.

The parties have spent the last few years engaged in discovery efforts. In the meantime, on June 9, 2023, the Legislature passed House Bill 19, which created the Business Court, later codified at Chapter 25A of the Texas Government Code. *See* Tex. Gov't Code §§ 25A.001–020. Section 25A.004 of the statute sets out the jurisdiction of the Business Court. *Id.* § 25A.004. Of note here, section 25A.004(d)(2) provides in relevant part:

> (d) The business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $10 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs:
>
> . . .
>
> (2) an action that arises out of a contract or commercial transaction in which the parties to the contract or transaction ***agreed in the contract or a subsequent agreement that the business court has jurisdiction*** of the action . . . .

*Id.* § 25A.004(d)(2) (emphasis added).

On September 13, 2024, Lone Star and Defendants entered into a "subsequent agreement" as expressly authorized by the statute. **Tab B** (the "Subsequent Agreement"). The Subsequent Agreement does a few key things.

First, it provides that the parties "agree that the Current Lawsuit . . . is within the jurisdiction of the Texas Business Court, as established by Chapter 25A of the Texas Government Code." *Id.* at 2. Second, it expressly states that the Subsequent Agreement "is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a 'subsequent agreement that the business court has jurisdiction over the action.'" *Id.* Third, it makes clear that the purpose of the agreement "is to allow the Current Lawsuit to become removable to the Texas Business Court." *Id.* Finally, it includes several other provisions—such as a tolling agreement, discovery considerations, and a provision that allows the lawsuit to be non-suited without prejudice and refiled in the Business Court—that were all designed to effectuate a clean, efficient removal of the case to the Business Court and to protect the parties' interests if the case was remanded. *Id.* at 2–7.

The Joint Petitioners filed the Subsequent Agreement with the 61st Judicial District Court and the Eleventh Division of the Business Court (the "Trial Judge") on September 17, 2024. They filed a Joint Notice of Removal that same day. **Tab C**.

A little over a week later, on September 26, 2024, the Trial Judge ordered the parties to submit briefing regarding the propriety of removal and jurisdiction. **Tab D**. The parties submitted their Joint Brief in Support of Removal to Business Court on October 16, 2024. **Tab E**. The Trial Judge then invited further briefing on the issues, specifically the effect of Section 8 of House Bill 19 and the impact of that Section's language: "civil actions commenced on or after September 1, 2024." **Tab F**. Lone Star submitted its Additional Brief in Support of Removal to Business Court on November 4, 2024. **Tab G**. The court held a hearing on November 12, 2024. **Tab H**.

On December 20, 2024, the Trial Judge issued the Order. **Tab A**. The Trial Judge held that "parties to a 'civil action[] commenced' before September 1, 2024 may not waive Section 8's 'effective date' provision in order to establish subject-matter jurisdiction in the Business Court under Section 25A.004." *Id.* at 14. As a result, the Trial Judge concluded that "[t]he Parties have failed to establish that the Court has subject-matter jurisdiction over this case" and that it was "required to remand this case to the district court." *Id.* at 16.

However, the Trial Judge granted the parties' request for a permissive interlocutory appeal:

> Given that the Texas Business Court is in its nascent stages, the Court
> certifies the permissive interlocutory appeal to provide the Fifteenth
> Court of Appeals an opportunity to scrutinize this seminal issue, give

5

guidance to the Business Court, and set clear precedent concerning the removal of actions which were pending prior to September 1, 2024.

*Id.* at 18. It also stayed its remand order "pending the resolution of the Parties' permissive interlocutory appeal" "to the extent that the Court has the authority to do so." *Id.*

## ARGUMENT

A party may take an interlocutory appeal under Tex. Civ. Prac. & Rem. Code § 51.014(d) if: (1) "the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion" and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Tex. Civ. Prac. & Rem. Code § 51.014(d); *see also Indus. Specialists, LLC v. Blanchard Ref. Co. LLC*, 652 S.W.3d 11, 14 (Tex. 2022). Both of those elements are met here.

While the determination is discretionary, the Supreme Court has encouraged the courts of appeals to accept permissive appeals when it would be efficient to do so:

> . . . while courts of appeals have discretion to deny acceptance of permissive interlocutory appeals, the Legislature in its enactment of section 51.014(d) and (f) has recognized the benefit of appellate courts accepting such appeals when the threshold for an exception to the final judgment rule is met. When courts of appeals accept such permissive appeals, parties and the courts can be spared the inevitable inefficiencies of the final judgment rule in favor of early, efficient resolution of controlling, uncertain issues of law that are important to the outcome of the litigation.

*Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 732 (Tex. 2019) (internal citations and quotations omitted).

This guidance is especially apt here. Given the parties' multi-year efforts in litigating the dispute, allowing the parties to swiftly complete discovery and proceed to trial is important. *See Able Supply Co. v. Moye*, 898 S.W.2d 766, 773 (Tex. 1995) ("Both the plaintiffs and the defendants are entitled to full, fair discovery within a reasonable period of time, and to have their cases decided on the merits."). Further, as proceedings in the Business Court begin across the state, attorneys and judges are operating without precedent on key jurisdictional issues. This case easily meets the statutory requirements for a permissive appeal, and thus the Court should take the opportunity to provide "certainty to litigants around the state." *See* **Tab A** at 17.

## I. The issue presents a controlling question of law as to which there are substantial grounds for difference of opinion.

The first prong of the permissive appeal test is satisfied. The Order identifies the following controlling question of law and grants permission to appeal the ruling:

> The Court grants the request because the legal issue considered by this Court—whether "a civil action that was commenced before September 1, 2024 [may] be removed to Business Court where the parties entered into a subsequent agreement expressly consenting to the jurisdiction of the Business Court"—is a controlling question of law as to which there is substantial ground for difference of opinion.

*Id.*

This issue presents a controlling question of law. A question qualifies as controlling if it is "pivotal" or if it "deeply affects the ongoing process of litigation." *Workers' Comp. Sols. v. Tex. Health, L.L.C.*, No. 05-15-01504-CV, 2016 WL 945571, at *1 (Tex. App.—Dallas Mar. 14, 2016, no pet.); *Gulf Coast Asphalt Co. v. Lloyd*, 457 S.W.3d 539, 543–44 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also* House Comm. on Civil Practices, Bill Analysis Tex. H.B. 978, 77th Leg., R.S. (2001) ("pivotal in a case").

An issue also presents a controlling question of law if the viability of a claim rests on its determination. *Id.* "There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for a dismissal that might have been ordered without the ensuing district-court proceedings." 16 Charles Alan Wright, Arthur Miller & Edward H. Cooper, FED. PRAC. & PROC. § 3930 at 496 (3rd ed. 2012).

The question presented here meets this requirement. A question of subject matter jurisdiction is certainly "pivotal" and would "deeply affect[] the ongoing process of litigation." *See State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) ("As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court.").

Subject matter jurisdiction is "essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). As the Trial Judge noted in the Order, subject matter jurisdiction is a "bedrock" requirement. **Tab A** at 16. "[A]ny judgment rendered by a court without subject-matter jurisdiction would be void." *Id.* The question thus impacts the viability of a claim—an "incorrect disposition" could "require reversal." *See* Wright & Miller, § 3930 at 496. Accordingly, this appeal presents a controlling question of law.

However, the parties dispute the Trial Judge's determination that the effective date of a statute constitutes a non-waivable issue of subject matter jurisdiction. *See Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (rejecting the argument that a statute's effective date is an "absolute," "nonwaivable" or "nonforfeitable" requirement based on both parties' invitation that the trial court ignore the statute's effective date).

In addition, there are substantial grounds for difference of opinion on the issue. "Substantial grounds for disagreement exist when the question presented to the court is ***novel*** or difficult, when controlling circuit law is doubtful, when controlling circuit law is in disagreement with other courts of appeals, and ***where there simply is little authority upon which the district court can rely.***" *Gulf Coast Asphalt Co.*, 457 S.W.3d at 543–44 (emphasis added).

9

Such is the case here. Because the Business Court has only been operational for a few months, there is, quite literally, no precedent from this Court for the Trial Judge and other judges in the Business Court to use for guidance. In fact, the hearing the Trial Judge conducted in this case was the first in-person hearing—on any issue—the Trial Judge had ever conducted. **Tab H** at 3. The issue is thus a "novel" one with "little authority upon which the district court can rely." *Gulf Coast Asphalt Co.*, 457 S.W.3d at 543–44.

The Trial Judge held that substantial grounds for difference of opinion are present. *See* **Tab A** at 17 and n.53. As the Trial Judge explained in the Order, "a meaningful number of Business Court litigants believe that pre-September 1, 2024 cases may be removed. A significant proportion of the cases removed to the Business Court to date were on file in the district courts prior to September 1, 2024." *Id.*; *see also Tema Oil and Gas Co. v. ETC Field Services, LLC*, 2024 WL 4796433, at *2–7 (Tex. Bus. Ct.); *Winans v. Berry*, 2024 WL 4796435, at *1 (Tex. Bus. Ct.).

This Court currently has at least one other case before it that addresses a similar issue. *See* Cause No. 15-24-00130-CV, *In re Energy Transfer LP and ETC Texas Pipeline, Ltd.*, in the Fifteenth Court of Appeals (mandamus); *see also* Cause No. 15-24-00122-CV, *Energy Transfer LP, et al. v. Culberson Midstream LLC, et al.*, in the Fifteenth Court of Appeals (related appeal). The Court called for a response in the matter on December 16, 2024.

10

But this case presents a slightly different course of events, as it will permit the Court to address whether the consent of all parties changes the analysis, especially when the parties expressly agree to application of a statute, regardless of the statutory effective date of a law. Put simply, this is a new court grappling with a new statute and this case addresses new facts. Because there is no authority to consult, there is "a substantial ground for difference of opinion." *See* Tex. Civ. Prac. & Rem. Code § 51.014(d).

## II. A permissive interlocutory appeal would materially advance the ultimate termination of the litigation.

The second requirement for a permissive appeal is also easily met, as a determination on this issue would permit the parties to reach a more efficient resolution of this matter.

As the Supreme Court explained, the purpose of the permissive appeal statute is to promote "early, efficient resolution of controlling, uncertain issues of law." *Sabre Travel*, 567 S.W.3d at 732. The statute is designed to make "the civil justice system more accessible, more efficient, and less costly to all Texans while reducing the overall costs of the civil justice system to taxpayers." *Id.* (citing Senate Comm. on State Affs., Engrossed Bill Analysis, Tex. H.B. 274, 82d Leg., R.S. (2011)).

Permitting the parties to appeal this issue now will materially advance the conclusion of this litigation in two ways.

First, it may lead to a significantly more efficient conclusion of this matter. If the Court accepts the appeal and agrees with the Joint Petitioners, it will prevent the parties from having to nonsuit and refile this matter. If this case is remanded to the 61st Judicial District Court, the Subsequent Agreement will require the parties to nonsuit and refile in the Business Court. **Tab B** at 2. This will only serve to delay the conclusion of this litigation. Moreover, nonsuiting and refiling in the business Court will create several areas of potential disagreement between the parties that may require judicial determination. For example, the following difficulties may arise if the parties are forced to dismiss and refile:

- How will the "status quo of litigation" in the current lawsuit be "preserved" in the refiled action, as required by the Subsequent Agreement? **Tab B** at 2, 4.

- How will the parties preserve the "ability to seek appellate and/or mandamus review of any orders issued in the Current Lawsuit" in the refiled action as required by the Subsequent Agreement, without relitigating every issue that has arisen over the four years this litigation has been pending? *Id.* at 4.

- Will the refiled action, as a 2025 case, be given priority related to a potential trial setting over other pending cases?

In addition, the parties have multiple pending discovery motions that would need to be refiled, rebriefed, and reset. *See* **Tab H** at 43, 52. There are also several ancillary discovery matters pending in multiple jurisdictions that may be affected. *See* **Tab E** at 6.

12

For example, Lone Star and non-party ISQ Global Infrastructure Fund II L.P. c/o I Squared Capital Advisors (US) LLC ("ISquared") are currently embroiled in a discovery dispute related to a subpoena issued by the 61st Judicial District Court. *See* **Tab E, Exhibit 2**. Former Harris County District Court Judge Daryl Moore has been appointed as a special discovery master to resolve the dispute. **Tab E, Exhibit 3**. A motion to compel before Judge Moore has been filed. **Tab E, Exhibit 4**.

In another example, an ancillary matter was opened in New York to enforce a subpoena issued by the 61st Judicial District Court to Blackstone Energy Partners II L.P. An ancillary matter was also opened in Florida state court to domesticate a subpoena issued to non-party Joseph Payne, who is a former member of Defendants' parent company's board of directors. **Tab E, Exhibits 5-6**.

Second, as the Trial Judge noted in the Opinion and Order, "a permissive interlocutory appeal 'advance[s] the ultimate termination of this litigation by giving both parties, all parties, certainty as to the jurisdictional issues, whether we're confronting them following a remand and a nonsuit and a refiling or following a permissive appeal.'" **Tab A** at 17. It will also "give certainty to litigants around the state." *Id.* This is especially important given the efforts of attorneys and judges across Texas to work together to navigate House Bill 19. In this spirit of cooperation, Joint Petitioners respectfully urge the Court to grant this petition for a permissive

13

appeal, as it will not only materially advance the termination of this litigation, but that of lawsuits throughout the state.

Further, the Joint Petitioners wish to file simultaneous but separate merits briefing without any response or reply briefs. Accordingly, this permissive appeal can be quickly and efficiently resolved in this Court, as well, without the need for a lengthy briefing process. The Joint Petitioners, therefore, respectfully request this Court grant this petition for permissive appeal and issue a briefing schedule that permits each party to simultaneously file its own brief without any response or reply briefs.

<strong>PRAYER FOR RELIEF</strong>

The Court should (1) grant this petition, (2) deem a notice of appeal to have been filed on the date of the Court's order, per Tex. R. App. P. 28.3(k), and (3) fix a due date for the filing of the record and issue a briefing schedule with one universal deadline for merits briefs by both parties.

Respectfully submitted,

**NORTON ROSE FULBRIGHT**

By: */s/ Andrew Price (by permission)*
　　Andrew Price
　　State Bar No. 24002791
　　andrew.price@nortonrosefulbright.com
　　Rafe A. Schaefer
　　State Bar No. 24077700
　　rafe.schaefer@nortonrosefulbright.com
　　Abraham Chang
　　State Bar No. 24102827
　　abraham.chang@nortonrosefulbright.com
　　Timothy Shinn
　　State Bar No. 24125409
　　timothy.shinn@nortonrosefulbright.com
1500 Lamar Ave. Suite 2000
Houston, TX 77010
(713) 651-5151

**ALEXANDER DUBOSE & JEFFERSON**
　　William J. Boyce
　　State Bar No. 02760100
　　bboyce@adjtlaw.com
1844 Harvard St.
Houston, Texas 77008
(713) 523-2358

**ATTORNEYS FOR PLAINTIFF/
JOINT PETITIONER**

**BECK REDDEN LLP**

By: */s/ Fields Alexander*
　　Fields Alexander
　　State Bar No. 00783528
　　falexander@beckredden.com
　　Thomas E. Ganucheau
　　State Bar No. 00784104
　　tganucheau@beckredden.com
　　Mary Kate Raffetto
　　State Bar No. 24098296
　　mkraffetto@beckredden.com
　　Parth S. Gejji
　　State Bar No. 24087575
　　pgejji@beckredden.com
　　Garrett S. Brawley
　　State Bar No. 24095812
　　gbrawley@beckredden.com
　　Cassie Maneen
　　State Bar No. 24120989
　　cmaneen@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
(713) 951-3700
(713) 951-3720 – Fax

**ATTORNEYS FOR DEFENDANTS/
JOINT PETITIONERS**

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(2)(D) because it contains 3,398 (not to exceed 4,500) words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

2.      This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font.

Dated:  January 6, 2025

*/s/ Parth S. Gejji*
Parth S. Gejji

No. _____

**IN THE COURT OF APPEALS**
**FOR THE FIFTEENTH DISTRICT OF TEXAS**
**AUSTIN, TEXAS**

---

**LONE STAR NGL PRODUCT SERVICES, LLC**
(***in its own capacity and as assignee***),
*Plaintiff/Joint Petitioners,*

**v.**

**EAGLECLAW MIDSTREAM VENTURES LLC**
**AND CR PERMIAN PROCESSING, LLC,**
*Defendants/Joint Petitioners.*

---

Petition for Permissive Interlocutory Appeal
from the Texas Business Court, 11th Division
Trial Court No. 24-BC11A-0004

---

**APPENDIX**

---

**TAB**

**A**    Opinion and Order of December 20, 2024

**B**    Subsequent Agreement between Parties (signed on September 13, 2024)

**C**    Joint Notice of Removal to Business Court (filed on September 17, 2024)

**D**    Order of September 26, 2024

**E**    Joint Brief in Support of Removal (filed on October 16, 2024)

**F**    Email from Business Court of October 18, 2024

**G**    Lone Star's Additional Brief in Support of Removal to Business Court (filed on November 4, 2024)

**H**    Hearing Transcript of November 12, 2024 Hearing

# Tab A

*Note: The syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.*



**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| Lone Star NGL Product Services LLC, | § § § | |
| *Plaintiff,* | § | |
| v. | § § | Cause No. 24-BC11A-0004 |
| EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC, | § § § | |
| *Defendant.* | § § | |

**SYLLABUS**

*This opinion addresses the removability of actions to the Texas Business Court that were filed before September 1, 2024, where the Parties have entered into a post-September 1, 2024 written agreement that the Court has jurisdiction of the case, and the Parties have pleaded jurisdiction under Texas Government Code Section 25A.004(d). The Court concludes that it lacks subject-matter jurisdiction over this action because Section 8 of House Bill 19 limits the applicability of Texas Government Code Chapter 25A to "civil actions commenced on or after September 1, 2024." Per the request of the Parties, the Court further certifies the controlling question of law discussed herein for a permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(d). To the extent that the Court has the authority to do so, the Court's remand order is stayed pending the resolution of the Parties' permissive interlocutory appeal.*



**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| Lone Star NGL Product Services LLC, | § § § | |
| *Plaintiff,* | § | |
| v. | § § | Cause No. 24-BC11A-0004 |
| EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC, | § § § | |
| *Defendant.* | § | |

**OPINION AND ORDER**

## I. INTRODUCTION

¶1    Before the Court is (1) the Joint Notice of Removal by Plaintiff Lone Star NGL Product Services LLC ("Lone Star"), Defendant EagleClaw Midstream Ventures, LLC, and Defendant CR Permian Processing, LLC (collectively herein, the "Parties") filed September 17, 2024; (2) the Parties' Joint Brief in Support of Removal to Business Court filed October 16, 2024 ("Joint Brief"); and (3) Lone Star's Additional Brief in Support of Removal to Business Court filed November 4, 2024 ("Lone Star Brief").  The Court held a hearing on this matter on November 12, 2024.  Having considered the Parties' arguments and the relevant law, and subject to the Court's stay of this Order, the Court **ORDERS** that

this suit be remanded to the district court and certifies the controlling question of law discussed herein for permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(d).  To the extent that the Court has the authority to do so, the Court **STAYS** the remand order contained herein pending the resolution of the Parties' permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(e).

## II. PROCEDURAL BACKGROUND

¶2      Pending first for years in the 61st Judicial District Court of Harris County, this lawsuit involves past and ongoing compliance with two natural gas purchase agreements that prescribe daily obligations to sell Y-Grade expiring in 2026.[1]  According to the Parties, Lone Star has paid more than $100 million for Y-Grade sold by Defendants under the subject agreements.  Lone Star will continue to be invoiced for Y-Grade delivered by Defendants through the remaining life of the agreements.[2]  Since Lone Star filed its original petition on May 20, 2021, the Parties have engaged in robust litigation of the underlying substance of this "multi-hundred-million-dollar dispute,"[3] and Defendants

---

[1] Joint Brief at 2.

[2] *Id.* at 9.

[3] *See* Transcript of Record at 13, *Lone Star NGL Product Services LLC v. Eagle Claw Midstream Ventures, LLC*, No. 24-BC11A-0004 (Tex. Bus. Ct. Nov. 12, 2024) (hereinafter, "Transcript of Record") (quotation regarding the amount in controversy).  Per the Parties' Joint Brief, there were no fewer than five discovery motions pending at the time of removal, and a discovery master has been appointed to manage disputes regarding certain third-party discovery.  *Id.* at 5–6 n. 2.  Following removal, the Parties have continued engaging vehemently over issues relating to apex depositions and discovery sought in out-of-state litigation.

have incurred over $3 million in attorneys' fees.[4]  When this Court first opened for business on September 1, 2024,[5] this case was 1,200 days old.[6]

¶3    On September 13, 2024, the Parties entered into a Rule 11 Agreement (defined by the Parties as the "Subsequent Agreement") making "clear that authority, jurisdiction, and venue exists in the Texas Business Court."[7]  Pertinent portions of the seven-page Rule 11 Agreement[8] are set forth below:

> The Parties agree that the Current Lawsuit, including all claims and causes of action asserted as of the Effective Date of this Agreement, is within the jurisdiction of the Texas Business Court, as established by Chapter 25A of the Texas Government Code. The Parties also agree that they are subject to personal jurisdiction in the Texas Business Court.
>
> The Parties acknowledge that this Agreement is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a "subsequent agreement that the business court has jurisdiction over the action."
> . . .
> The Parties intend that this Agreement—executed after September 1, 2024— is to allow the Current Lawsuit to be removable to the Texas Business Court.

---

[4] Defs.' Mot. for Protection and Mot. to Quash Dep. of Joseph Payne Under the Apex Dep. Doctrine at 5 n. 9 (filed in this Court on November 29, 2024, following removal).

[5] *See* Tex. H.B. 19, § 5, 88th Leg., R.S. (2023) ("Except as otherwise provided by this Act, the business court is created September 1, 2024.").

[6] In the Spring of 2021, the Bill that created this Court and its jurisdiction—House Bill 19 (herein, "H.B. 19" or "the Bill")—had not yet been filed in the Texas House of Representatives.  Tex. H.B. 19, 88th Leg., R.S. (2023) "Bill Stages," TEXAS LEGISLATURE ONLINE, https://capitol.texas.gov/BillLookup/BillStages.aspx?LegSess=88R&Bill=HB19 (last visited Dec. 2, 2024) (H.B. 19 was filed in the House of Representatives on February 28, 2023, and was signed by Governor Greg Abbott on June 9, 2023); *see* Jack Buckley DiSorbo, *A Primer on the Texas Business Court*, 76 BAYLOR L. REV. 360, 384–87 (2024) (discussing the passage of H.B. 19 and S.B. 1045 in the 2023 legislative session).  When Governor Abbott signed H.B. 19 into law on June 9, 2023, the Bill included a limiting provision, Section 8, which states: "The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024."  Tex. H.B. 19 at § 8.

[7] Joint Brief at 3.

[8] "[T]he parties entered into a September 13th agreement.  It is a seven-page-long agreement choosing this Court's forum, choosing this Court as venue, waiving personal jurisdiction challenges, and giving this Court all of the jurisdictional trappings that the parties are allowed to give the Court."  Transcript of Record at 11.

In the event it is determined that the Texas Business Court does not have the authority to hear the Current Lawsuit, the Parties also intend this provision to allow the Current Lawsuit to be non-suited without prejudice and refiled in the Business Court as the Business Court Lawsuit.[9]

. . .

"Primary Intent": The Parties intend this Agreement to be interpreted to afford the broadest possible reservation of the Parties' rights to assert any claims, causes of action, and/or defenses in the Business Court that were or could have been asserted in the Current Lawsuit as of the Effective Date.

"Secondary Intent": The Parties also intend for this Agreement to be interpreted consistent with ensuring the Business Court has jurisdiction over the Current Lawsuit.[10]

As the Parties elucidate, "the Subsequent Agreement was not merely an agreement to remove the case to Business Court. Instead[,] the Subsequent Agreement reflects a *negotiated, holistic agreement* between the Parties that the dispute will be adjudicated by the Business Court."[11] The Parties succinctly express their intentions and requisite methodology at the outset of their Joint Brief:

The Subsequent Agreement also contemplates nonsuiting this dispute and re-filing an identical lawsuit in the Business Court if the Court remands the case to the 61st Judicial District Court. Per the Parties' agreement, this dispute will be heard by the Business Court. But remanding the three and a half year old case now creates unnecessary hurdles that would otherwise be avoided if this removed lawsuit is permitted to proceed.[12]

---

[9] Joint Brief at Exhibit 1 (II. Agreement to Jurisdiction of the Texas Business Court).

[10] *Id.* at Exhibit 1 (XI. Intent of Agreement).

[11] Joint Brief at 3 (emphasis added).

[12] *Id.* at 2, n. 1. Scrutiny of the Parties' Rule 11 Agreement and its contingencies reveals an appreciation of the potential ramifications of utilizing the newly created Chapter 25A removal procedures in a pre-September 1, 2024 action. Of note, significant legal commentary, albeit neither authoritative nor dispositive, existed on this subject prior to September 1, 2024. *See* MEETING OF THE TEX. SUP. CT. ADVISORY COMM., 35552:4–15 (Oct. 13, 2023) (transcript available at https://www.txcourts.gov/media/1457501/23-10-13-scac-transcript.pdf) (last visited Dec. 3, 2024) (Supreme Court Advisory Committee discussing that existing cases would have to be nonsuited and re-filed to be subject to the Court's jurisdiction); Lonny Hoffman, *Editor's Comments*, 106 THE ADVOCATE 3 (Spring 2024) ("Our ambition with this volume was to anticipate the most pressing questions and to *tentatively suggest* some answers.") (emphasis added); Senator Bryan Hughes & Trey Cox, *Trailblazing for Tomorrow: The Texas Business Court's Progressive Revamp of the State Judicial System*, 106 THE ADVOCATE 18, 19 (Spring 2024) ("Further, existing matters will not suddenly be thrust into a tumultuous mass removal, as HB 19 stipulates the TBC will apply only to those civil actions commenced on

¶4    On September 17, 2024, the Parties filed their Joint Notice of Removal to the Business Court.  The pleaded basis for the Business Court's jurisdiction over the suit was Section 25A.004(d) of the Texas Government Code, which states:

> (d) The business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $10 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs:
>
> (1) an action arising out of a qualified transaction;[13]
>
> (2) an action that arises out of a contract or commercial transaction in which the parties to the contract or transaction agreed in the contract or a ***subsequent agreement*** that the business court has jurisdiction of the action, except an action that arises out of an insurance contract; . . . .

TEX. GOV'T CODE § 25A.004(d)(1)–(2) (emphasis added).  In their Notice of Removal, the Parties ascribe outsize meaning to the timing of their Rule 11 Agreement, stating "[c]rucially, that 'subsequent agreement' was entered into on September 12, 2024—***after*** the Business Court began operating on September 1, 2024."[14]

¶5    By its order of September 26, 2024, the Court directed the Parties to file briefing concerning the propriety of this suit's removal to the Texas Business Court and

---

or after September 1, 2024."); Bryan O. Blevins, Jr. & Ashlynn Wright, *A Business Court*, 106 THE ADVOCATE 21, 23 (Spring 2024) ("Presumptively, this provision would not allow a case filed before September 1, 2024, to be removed, nor an action that does not meet the subject[-]matter jurisdiction of the Business Court.").

[13] "'Qualified transaction' means a transaction, other than a transaction involving a loan or an advance of money or credit by a bank, credit union, or savings and loan institution, under which a party: (A) pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $10 million; or (B) lends, advances, borrows, receives, is obligated to lend or advance, or is entitled to borrow or receive money or credit with an aggregate value of at least $10 million."  TEX. GOV'T CODE § 25A.001(14).

[14] Joint Notice of Removal at 2 (emphasis in original).

regarding the Court's authority and jurisdiction to hear the suit. On October 16, 2024, the Parties filed the Joint Brief.

¶6 On October 18, 2024, the Court invited further briefing from the Parties regarding what effect, if any, Section 8 of [this Court's enabling legislation,][15] H.B. 19[16] has on the Court's authority to hear this case. On November 4, 2024, Lone Star filed the Lone Star Brief. The Court held a hearing on this matter on November 12, 2024.

### III. THE PARTIES' ARGUMENTS

¶7 In their briefs, the Parties presented a series of arguments in favor of removal, untempered by the usual adversarial process. The Parties' jurisdictional arguments are both rooted in the text of Chapter 25A:

i. Texas Government Code Section 25A.004(d)(2) gave the Parties the right to agree that the Business Court has jurisdiction of the action—or to "create jurisdiction in the Business Court"—notwithstanding any "effective date"[17] provisions included in the Bill.[18]

ii. This dispute concerns a qualified transaction under Texas Government Code Section 25A.004(d)(1); and complies with all other statutory requirements for the exercise of jurisdiction.[19]

---

[15] *See* Procedural Background, *supra* note 6.

[16] *See* Tex. H.B. 19 at § 8 ("The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024").

[17] Of note, the true effective date provision of H.B. 19 is Section 9. *See id.* at § 9 ("This Act takes effect September 1, 2023.").

[18] *See generally* Joint Brief at 4–5; Lone Star Brief at 2–5. At the hearing, the Parties argued, "Section 8 as an effective date is not a subject-matter limitation on the Court. As such, it's a limitation that the parties can agree around." Transcript of Record at 12. The Parties believe that "[c]onsent cases are fundamentally different than non-consent cases." *Id.* at 17. "Section 8 is a safeguard for parties who are already embroiled in litigation and don't consent to be in business court." *Id.* at 31. "It is not a broad all-encompassing effective date that precludes any application of House Bill 19 prior to September 1, 2024, over the parties' consent." *Id.* at 36. "The Subsequent Agreement is entitled to be enforced in this Court, pursuant to Texas' paramount public policy favoring freedom of contract, as envisioned by the Texas Legislature in House Bill 19." Lone Star Brief at 5. In essence, according to the Parties, "[w]hen there is consent between the parties—that is between the plaintiffs and the defendants—does jurisdiction exist for cases that were commenced before September 1st, 2024? The answer to that question is irrefutably yes." Transcript of Record at 17.

[19] Joint Brief at 9–11.

¶8    Additionally, the Parties articulated that Section 8 of H.B. 19—which reads "[t]he changes in law made by this Act apply to civil actions commenced on or after September 1, 2024"—presents no bar to this Court's ability to adjudicate this dispute:

i.    Section 8 of House Bill 19 does not limit the Business Court's jurisdiction to post-September 1, 2024 cases, owing to the omission of the word "only" from Section 8. In other words, if the Texas Legislature wanted the Business Court's jurisdiction to be limited to civil actions commenced on or after September 1, 2024, Section 8 would have read "The changes in law made by this Act apply **only** to civil actions commenced on or after September 1, 2024."[20]

ii.   As Section 8 only applies to "changes in law made by" H.B. 19, Lone Star argues that Sections 1 through 3 of House Bill 19 contain changes in law, but sections 4 through 7 do not. They argue that Section 5, which unambiguously creates the Business Court,[21] also vests the Business Court with "subject[-]matter jurisdiction to adjudicate this dispute."[22]

iii.  In the event Section 8 does limit the Court's jurisdiction, Section 8 can be waived by the Parties. Because the Parties agree to the jurisdiction of the Business Court, they will be estopped from arguing it was wrong for the Court to adjudicate this dispute under the doctrines of waiver and invited error. In making this argument, the Parties affirmatively allege that the effective-date restrictions in Section 8 are not "unwaivable subject-matter jurisdiction barriers."[23]

¶9    Finally, the Parties make an appeal solely based on the alleged potential consequences of a remand. Because the Parties have agreed to non-suit and refile this case in the event of a remand, remanding this case will not keep the dispute out of the Business Court. Purportedly, however, a remand will cause significant difficulties in the discovery process and increase costs for all Parties.[24]

---

[20] Lone Star Brief at 6–9.
[21] *See* Tex. H.B. 19 at § 5 (stating, in its entirety, "Except as otherwise provided by this Act, the business court is created September 1, 2024").
[22] Lone Star Brief at 5–6.
[23] Joint Brief at 7–8; Lone Star Brief at 9–10.
[24] Joint Brief at 5–7.

¶10     At the November 12, 2024 hearing, the Parties appeared to argue beyond the briefing. In essence, because (i) portions of the "effective date" provisions of H.B. 19 and S.B. 1045 (which created the Fifteenth Court of Appeals) are nearly identical; and (ii) the Fifteenth Court of Appeals has accepted transfers of pre-September 1, 2024 cases, the Parties argue that no bar to this Court's exercise of jurisdiction over pre-September 1, 2024 removals exists.[25]

¶11     In keeping with their elaborate strategy, the Parties have also sought the Business Court's first permissive interlocutory appeal. Specifically, the Parties request that, in the event the Court finds that it lacks jurisdiction over this case, the Court certify a permissive interlocutory appeal on the following question: "[C]an a civil action that was commenced before September 1, 2024 be removed to Business Court where the parties entered into a subsequent agreement expressly consenting to the jurisdiction of the Business Court?"[26]

### IV. LEGAL STANDARD

¶12     For every judicial proceeding, "subject-matter jurisdiction must exist before we can consider the merits," and a court must examine its jurisdiction "any time it is in doubt." *Tex. Propane Gas Ass'n v. City of Houston*, 622 S.W.3d 791, 797 (Tex. 2021) (quoting *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020)); *see also Tex.*

---

[25] Transcript of Record at 11–12. Beyond the arguments discussed in the body of the opinion, Lone Star also sought to ventilate the effect of "an August 13, 2024 memorandum from the Office of Court Administration to Texas District and County Clerks regarding the 'Creation of the Business Court, Effective September 1, 2024.'" Lone Star Brief at 9. Lone Star argues that pronouncements from the Office of Court Administration are irrelevant to the Court's authority to hear the case. *Id.* The Court does not base this opinion on the OCA memorandum. *Cf.* Citations to Legal Commentaries, *supra* note 12 (acknowledging that the Bar's discussion of Section 8 is neither dispositive nor authoritative).

[26] Joint Brief at 11–12.

*Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) ("Subject[-]matter jurisdiction is never presumed and cannot be waived."). "Whether a court has subject[-]matter jurisdiction is a question of law." *Tex. Disposal Sys. Landfill, Inc. v. Travis Cent. Appraisal Dist.*, 694 S.W.3d 752, 757 (Tex. 2024).

¶13 A Notice of Removal to Business Court must plead facts to establish the Business Court's authority to hear the action. TEX. R. CIV. P. 355(b)(2)(A).[27] If the Business Court does not have jurisdiction of a removed action, the Business Court shall remand the action to the court in which the action was originally filed. TEX. GOV'T CODE § 25A.006(d); TEX. R. CIV. P. 355(f)(1).

## V. ANALYSIS

### A. The Parties cannot rely on Chapter 25A to establish the Business Court's authority to hear this action.

#### i. Chapter 25A—the most significant "change[] in law" made by H.B. 19—only "appl[ies] to civil actions commenced on or after September 1, 2024."

¶14 As Lone Star urges in its brief, "Section 8 should be read in harmony with the remainder of House Bill 19. . . ."[28] The Court concurs. "As with every question of statutory construction, our duty is to accurately articulate the meaning of the enacted text—here," of H.B. 19.[29] *Brown v. City of Houston*, 660 S.W.3d 749, 752 (Tex. 2023). Indeed, "H.B.

---

[27] The "Rules of Practice in the Business Court" are contained in Part III of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 352–60. For a discussion of the procedural background of the Rules' creation, see, for instance, Marcy Hogan Greer & Hon. Emily Miskel, *Proposed Rules for the New Texas Business Court*, 106 THE ADVOCATE 15 (Spring 2024).

[28] Lone Star Brief at 8.

[29] In this context, the enrolled version of H.B. 19 is the binding statute enacted by the Texas Legislature. *Jorrie v. Charles*, No. 24-BC04B-0001, 2024 Tex. Bus. 4, 2024 WL 4796436 at *3 (Tex. Bus. Ct. Nov. 7, 2024) (citing *Ass'n of Texas Pro. Educators v. Kirby*, 788 S.W.2d 827, 829 (Tex. 1990)). Accordingly, when analyzing the text of Chapter 25A to determine the Court's authority and jurisdiction to hear the case, the Court must apply Section 8 and presume that the enrolled bill accurately expresses the Texas Legislature's

19's plain 'text is the alpha and omega of the interpretive process.'" *Energy Transfer LP v. Culberson Midstream LLC*, No. 24-BC01B-0005, 2024 Tex. Bus. 1, 2024 WL 4648110, at *3 (Tex. Bus. Ct. Oct. 30, 2024) (citing *In re Panchakarla*, 602 S.W.3d 536, 541 (Tex. 2020); *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017)).

¶15     "When the text unambiguously answers a question, our inquiry ends." *Brown*, 660 S.W.3d at 752.  Long-settled Texas law dictates that "[e]very word of a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction requires that each sentence, clause, phrase and word be give[n] effect if reasonably possible." *Eddins-Walcher Butane Co. v. Calvert*, 298 S.W.2d 93, 96 (Tex. 1957).[30]

¶16     When Governor Greg Abbott signed H.B. 19 into law on June 9, 2023, the enrolled version of the Bill included two sections which are pertinent to this Opinion:

i.      Section 1, which vests the Court with its jurisdiction, and sets forth the text of the new Chapter 25A of the Texas Government Code,[31] and

ii.     Section 8, which states: "The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024."[32]

¶17     Lone Star argues that Section 8 would only limit the applicability of the changes in law made by H.B. 19 if they were said to apply "**only** to civil actions commenced

---

intent. *XTO Energy, Inc. v. Houston Pipe Line Co.*, No. 24-BC11B-0008, 2024 Tex. Bus. 6 at ¶ 10 (Tex. Bus. Ct. Nov. 26, 2024); *see* TEX. GOV'T CODE § 311.029 (under the Code Construction Act, "the language of the enrolled bill version controls" over any subsequent printing of the statute).

[30] *See* Lone Star Brief at 8.

[31] Tex. H.B. 19 at § 1 (emphasis added); *see* TEX. GOV'T CODE § 25A.004 (entitled "Jurisdiction and Powers"). As noted above, Lone Star admits that Section 1 of H.B. 19 constitutes a change in law.  *See* Parties' Arguments, *supra* ¶ 8.ii; Lone Star Brief at 5–6.

[32] Tex. H.B. 19 at § 8.

on or after September 1, 2024."[33] This is not a novel argument. To date, no division of the Business Court has accepted this interpretation of Section 8.[34] No effort has been made to distinguish this iteration of the "only" argument. Thus, no reason exists for the Court to differ from its brethren. On its face, Section 8 unambiguously limits the applicability of any "change in law" made by H.B. 19 to "civil actions commenced on or after September 1, 2024."[35]

¶18    The introduction of Section 1 [and the functional preamble to the text of Chapter 25A] reads: "Subtitle A, Title 2, Government Code, is *amended* by *adding* Chapter 25A to read as follows: . . . ."[36] Putting aside its auxiliary purposes, the plain thrust of Section 1 and Chapter 25A is to *change Texas Law* to create the legal framework for the Business Court *and vest it with its jurisdiction*.[37] By a simple page count, the text of Chapter

---

[33] *See* Lone Star Brief at 6–9.

[34] *Energy Transfer*, 2024 WL 4648110, at *3 (rejecting "only" argument, relying on the Negative Implication Canon); *Synergy Global Outsourcing, LLC v. Hinduja Global Solutions, Inc.*, No. 24-BC01B-0007, 2024 Tex. Bus. 2 at 9–11 (Tex. Bus. Ct. Oct. 31, 2024) (identical analysis); *Tema Oil and Gas Co. v. Etc Field Services, LLC*, No. 24-BC08B-0001, 2024 Tex. Bus. 3, 2024 WL 4796433, at *4 (Tex. Bus. Ct. Nov. 6, 2024) ("[T]here was no need for the legislature to insert 'only' or other limiting clarifying phrases in the applicability clause to expressly indicate that the new law did not apply retroactively to non-existing pending cases. It would have been superfluous for the legislature to have done so."); *Winans v. Berry*, No. 24-BC04A-0002, 2024 Tex. Bus. 5, 2024 WL 4796435, at *2 (Tex. Bus. Ct. Nov. 7, 2024) (relying on the reasoning from *Tema Oil* to dispose of this argument); *XTO Energy*, 2024 Tex. Bus. 6 at ¶¶ 11–14 ("[T]his reading violates at least three canons of construction.").

[35] *See id.*; *Tema Oil*, 2024 WL 4796433, at *3 ("Section 8 is unambiguous and clear on its face. . . . In plain and common terms, Section 8, when construed in harmony with the other provisions of H.B. 19, expresses the legislative intent that cases filed before September 1, 2024, cannot be removed to the Business Court.").

[36] Tex. H.B. 19 at § 1 (emphasis added).

[37] *See id.*; TEX. GOV'T CODE § 25A.002–05. Albeit solely for the purpose of context herein, Justice Evan A. Young has characterized the establishment of the Business Court in H.B. 19 [and the Fifteenth Court of Appeals in S.B. 1045] as "the most substantial *modification* of the judicial system of our state since 1891." Keenan Willard, *Texas Business Court [J]udges [S]worn in at Fort Worth Ceremony*, NBC DFW (September 19, 2024, 10:26 PM), https://www.nbcdfw.com/news/local/first-texas-business-court-judges-sworn-in/3650590/?os=qtft_2&ref=app (last visited Dec. 7, 2024) (emphasis added); *see also* DiSorbo, *supra* note 6, at 360 (referencing the creation of the Business Court as "[t]he most sweeping *change* to the state judiciary since the early 2000s tort reform.") (emphasis added).

25A occupies twenty-two of the twenty-seven pages of the enrolled version of H.B. 19.[38]

Certainly, Chapter 25A is the most significant "change[] in law" in H.B. 19, both in terms of volume and substance.[39]

¶19 Because the present lawsuit commenced[40] long before September 1, 2024, the Court holds that the Parties may not rely on the provisions of Chapter 25A to justify subject-matter jurisdiction in the Business Court, regardless of how innovative their arguments may be. Therefore, the Court need not address any of the Parties' arguments concerning the interpretation of Texas Government Code Section 25A.004(d). This conclusion is consistent with the consensus view of Section 8 in the Business Court.[41]

### ii. The Parties may not rely on the doctrines of waiver, estoppel, or invited error to create subject-matter jurisdiction in the Business Court.

¶20 In the alternative, the Parties argue that "[t]he fact that a statutory 'effective date' exists in a bill does not mean that that date cannot be waived."[42] The Parties wish for

---

[38] This portion of the analysis refers to the enrolled version of the Bill which is posted to the Texas Legislature's website. Tex. H.B. 19, 88th Leg., R.S. (2023) "Text," TEXAS LEGISLATURE ONLINE, https://capitol.texas.gov/BillLookup/Text.aspx?LegSess=88R&Bill=HB19 (last visited Dec. 3, 2024).

[39] *See Jorrie*, 2024 WL 4796436 at *2 ("The Act's most substantial change in the law is the addition of Chapter 25A, which includes the provisions permitting removal to the Business Court."); *Energy Transfer*, 2024 WL 4648110, at *3 ("Since chapter 25A in its entirety is a change in Texas law, it follows that § 25A.006's removal provisions also change Texas law."); *Tema Oil*, 2024 WL 4796433, at *4 ("Because Chapter 25A in its entirety is a change of law, it follows logically that Section 25A.006's removal provisions are changes in law, too."); *Winans*, 2024 WL 4796435, at *2 ("This argument ignores the plain language of the enabling legislation, which expressly states the changes in this law, i.e. Chapter 25A and its removal procedure, apply to cases commenced on or after September 1, 2024."); *XTO Energy*, 2024 Tex. Bus. 6 at ¶ 13 ("Thus, the Act's express statement that its changes in law apply to 'cases commenced on or after September 1, 2024' necessarily implies a reverse inference: that the change in law—removal, in this instance—does not apply to cases that were on file before that date.").

[40] The Parties do not contest that the commencement date for this action was prior to September 1, 2024. For a discussion of the meaning of "commenced" in the context of H.B. 19, see *Tema Oil*, 2024 WL 4796433, at *3; *Jorrie*, 2024 WL 4796436 at *2.

[41] *See generally* authorities cited, *supra* note 39.

[42] Lone Star Brief at 10, n. 3.

12

the Court to condone a waiver, or invitation of error concerning the "effective date" provision of Section 8, and thereby maintain jurisdiction over this case:

> The parties have entered into the Subsequent Agreement, jointly requesting that the Court adjudicate this dispute. [H.B. 19's] effective date is not "absolute," "nonforfeitable," or "nonwaivable." To the contrary, the parties jointly and expressly invite the Court to adjudicate this dispute.[43]

¶21 To justify this argument, the Parties cite *Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999), which overruled *Powell v. State*, 897 S.W.2d 307, 317 (Tex. Crim. App. 1994), by employing the doctrine of "invited error." The *Prystash* court held that since a criminal defendant had requested a certain jury instruction, he was estopped from complaining about its defectiveness on appeal. *Prystash*, 3 S.W.3d at 529–32. While there are clear and binding authorities addressing waiver, estoppel, and invited error surrounding a civil court's subject-matter jurisdiction,[44] the Parties focus on *Prystash* because the portion of the relevant statute which the criminal defendant waived was its "effective date" provision.[45]

¶22 At the hearing on this matter, the Parties stated, "The *Prystash* case is very clear that an effective date in a statute is not an ***unwaivable . . . always appealable subject-matter issue***."[46] Indeed, "[s]ubject-matter jurisdiction is an issue that may be raised for the

---

[43] Joint Brief at 8.

[44] *See, e.g.,* authorities cited, *infra* ¶ 22.

[45] *See Prystash*, 3 S.W.3d at 529–32. At the hearing, the Parties posited, "if in *Prystash*[,] a party can tell a Court to apply a statute outside of its effective date, and that is enforceable in the capital murder context, it is certainly enforceable in the context where you have two publicly traded companies in a multiple-hundred-million-dollar dispute entering into a seven-page long agreement that they want this case to be adjudicated by this Court." Transcript of Record at 13. Nevertheless, the law remains clear that the factual context of an attempted waiver remains irrelevant if the waiver is alleged to confer subject-matter jurisdiction. *See* authorities cited, *infra* ¶ 22.

[46] *Id.* at 12 (emphasis added).

13

first time on appeal; [and] it may not be waived by the parties." *Tex. Ass'n of Bus.*, 852 S.W.2d at 445; *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000) ("[S]ubject-matter jurisdiction is a power that exists by operation of law only, and cannot be conferred upon any court by consent or waiver.") (internal quotations omitted); *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) (explaining that a judgment is void when a court lacks subject-matter jurisdiction). Likewise, the doctrine of invited error cannot serve as the basis for subject-matter jurisdiction where it otherwise does not exist. *Interest of A.F.*, 653 S.W.3d 730, 745 (Tex. App.—Fort Worth 2019, no pet.) (citing *In re Crawford & Co.*, 458 S.W.3d 920, 928 n. 7 (Tex. 2015)). Thus, the success or failure of the Parties' waiver and invited error arguments turns on the Court's determination of whether Section 8 of H.B. 19 is a jurisdictional provision in this context.

¶23    The Court finds that Section 8 of H.B. 19 unambiguously operates as a jurisdictional provision when applied to Texas Government Code Section 25A.004 (entitled "Jurisdiction and Powers").[47] Therefore, the Court holds that parties to a "civil action[] commenced" before September 1, 2024 may not waive Section 8's "effective date" provision in order to establish subject-matter jurisdiction in the Business Court under Section 25A.004.

---

[47] *See Jorrie*, 2024 WL 4796436, at *3 ("The court concludes that Section 8 is jurisdictional."); ANALYSIS, *supra* at Section A.i ("Chapter 25A—the most significant 'change[] in law' made by H.B. 19—only 'appl[ies] to civil actions commenced on or after September 1, 2024.'").

14

### iii. Because the text of S.B. 1045 explicitly provides for the transfer of pre-September 1, 2024 appeals, the Parties' analysis of its effective date provision does not withstand scrutiny.

¶24     At the hearing, the Parties added an argument that Section 8 is not a jurisdictional limitation on this Court by comparing it to S.B. 1045, which created the Fifteenth Court of Appeals:

> Senate Bill 1045, Section 1.1[5], has an almost identical effective date provision that says the changes in law made by this act, Senate Bill No. 1045, apply to appeals perfected on or after September 1st, 2024.  And as this Court knows, when that court began to exist on September 1st, 2024, all of the existing appeals that were within that court's jurisdiction, were transferred to that court.  And that court had subject-matter jurisdiction to adjudicate those appeals and has been adjudicating those appeals and the constitutionality of that court has been upheld by the Texas Supreme Court.  And so Section 8 as an effective date is not a subject-matter limitation on the Court.[48]

¶25     The Court recognizes that Section 1.15(a) of S.B. 1045 states as follows: "The changes in law made by this Act apply to appeals perfected on or after September 1, 2024."[49]  However, brief scrutiny of Section 1.15 reveals a section (b), which was neither discussed by the Parties at oral argument nor mirrored in H.B. 19's Section 8:

> (b) On September 1, 2024, all cases pending in other courts of appeal that were filed on or after September 1, 2023, and of which the Court of Appeals for the Fifteenth Court of Appeals District has exclusive intermediate appellate jurisdiction are transferred to the Court of Appeals for the Fifteenth Court of Appeals District.[50]

---

[48] Transcript of Record at 11–12.
[49] Tex. S.B. 1045, § 1.15(a), 88th Leg., R.S. (2023).
[50] *Id.* at § 1.15(b).

Evidently, Section 1.15(b)—and not Section 1.15(a)—governs the transfer of pre-September 1, 2024 appeals. No equivalent language appears in H.B. 19's Section 8. Thus, the Court does not find this argument persuasive.

### iv. The Parties' arguments regarding judicial efficiency and the consequences of remand do not affect the Court's lack of subject-matter jurisdiction.

¶26    As noted above, the Parties argue that because they have already agreed to non-suit and refile in the Business Court, it would be sensible and efficient for the Court to simply maintain jurisdiction of the case.[51] Of course, a policy of preferring efficient processes cannot supersede the bedrock requirement of subject-matter jurisdiction. To the contrary, because any judgment rendered by a court without subject-matter jurisdiction would be void,[52] the dedication of any further Court resources to this matter (prior to non-suit and refiling) would be, at a minimum, a misallocation.

## VI. CONCLUSION

¶27    The Parties have failed to establish that the Court has subject-matter jurisdiction over this case. *See* TEX. R. CIV. P. 355(b)(2)(A). As a result, the Court is required to remand this case to the district court. *See* TEX. GOV'T CODE § 25A.006(d) ("If the business court does not have jurisdiction of the [removed] action, the business court *shall* remand the action to the court in which the action was originally filed.") (emphasis added). Therefore, subject to the Court's stay issued in Paragraph 30 below, it is

---

[51] Joint Brief at 5–7 (Argument Section I.B, entitled "Remanding This Case Will [N]ot Keep This Dispute [O]ut of Texas Business Court."). According to the Parties, a remand would cause difficulties with live motions and discovery. *Id.*
[52] *See* ANALYSIS, *supra* ¶ 22.

16

**ORDERED** that the Business Court Clerk shall remand this cause to the 61st Judicial District Court of Harris County, Texas.

¶28 In addition, the Court grants the Parties' request for a permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(d). The Court grants the request because the legal issue considered by this Court—whether "a civil action that was commenced before September 1, 2024 [may] be removed to Business Court where the parties entered into a subsequent agreement expressly consenting to the jurisdiction of the Business Court"—is a controlling question of law as to which there is substantial ground for difference of opinion.[53] Additionally, a determination by the Court of Appeals of the legal issue here would materially advance the ultimate termination of this litigation.[54] On this matter, the Court echoes the Parties' argument—a permissive interlocutory appeal "advance[s] the ultimate termination of this litigation by giving both parties, all parties, certainty as to the jurisdictional issues before [the Court], whether we're confronting them following a remand and a nonsuit and a refiling or following a permissive appeal. . . .[N]ot only will it give certainty to litigants around the state, but . . . it will give . . . certainty to these parties that there's not some jurisdictional trap that [they] might be confronted with on appeal."[55]

---

[53] *See generally* Joint Brief at 11–12 (permissive appeal briefing). It appears that a meaningful number of Business Court litigants believe that pre-September 1, 2024 cases may be removed. A significant proportion of the cases removed to the Business Court to date were on file in the district courts prior to September 1, 2024.

[54] *Id.*

[55] Transcript of Record at 40; *see also* TEX. R. CIV. P. 168 ("The permission . . . must state why an immediate appeal may materially advance the ultimate termination of the litigation.").

17

¶29    This Court is cognizant of the Section 51.014(d) case law. Given that the Texas Business Court is in its nascent stages, the Court certifies the permissive interlocutory appeal to provide the Fifteenth Court of Appeals an opportunity to scrutinize this seminal issue, give guidance to the Business Court, and set clear precedent concerning the removal of actions which were pending prior to September 1, 2024.

¶30    Further, to the extent that the Court has the authority to do so, the Court **STAYS** the remand order contained herein pending the resolution of the Parties' permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(e).

SO ORDERED.

_____
Hon. Sofia Adrogué
Texas Business Court, Eleventh Division

DATED: December 20, 2024

18

Tab B

September 12, 2024

Fields Alexander
Tom Ganucheau
Garrett Brawley
Cassie Maneen
*Counsel for EagleClaw Midstream Ventures, LLC
and CR Permian Processing, LLC*
***via email***

NORTON ROSE FULBRIGHT

Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, Texas  77010-4106
United States of America

Direct line +1 713 651 5452
timothy.shinn@nortonrosefulbright.com

Tel +1 713 651 5151
Fax +1 713 651 5246

Re:    *Lone Star NGL Product Services, LLC (in its individual capacity and as assignee) v. EagleClaw Midstream Ventures LLC and CR Permian Processing LLC*, No. 2021-30388 in the 61st Judicial District of Harris County; Rule 11 Agreement Regarding Nonsuit of Current Lawsuit, Tolling of Claims, and Re-filing of Claims and Causes of Action in the Texas Business Court

Counsel,

The purpose of this correspondence is to memorialize the Parties' agreement regarding the removal and/or re-filing of claims and causes of action currently pending in *Lone Star NGL Product Services, LLC (in its individual capacity and as assignee) v. EagleClaw Midstream Ventures LLC and CR Permian Processing LLC*, No. 2021-30388 in the 61st Judicial District of Harris County in a new proceeding before the Eleventh Division of the Texas Business Court.

## I.    <u>Definitions.</u>

- The "Agreement" or "Rule 11 Agreement" means this agreement, in its entirety.

- "Lone Star" or "Plaintiff" means Lone Star NGL Product Services, LLC.

- "ECMV" means EagleClaw Midstream Ventures, LLC.

- "CR" means CR Permian Processing, LLC.

- "Defendants" or "EagleClaw" refers to ECMV and CR, collectively, each a "Defendant."

- "Party" and "Parties" means Lone Star, ECMV, and CR, individually and collectively, respectively.

- "Current Lawsuit" means *Lone Star NGL Product Services, LLC (in its individual capacity and as assignee) v. EagleClaw Midstream Ventures LLC and CR Permian Processing LLC*, No. 2021-30388 in the 61st Judicial District of Harris County.

- "Business Court" means the Texas Business Court.

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

- "Business Court Lawsuit" means the removal of the Current Lawsuit or the filing of a new lawsuit by Lone Star in the Eleventh Division of the Texas Business Court asserting the claims and causes of action currently asserted in the Current Lawsuit.

- The "Effective Date" of this Agreement is the date this Agreement is signed by all Parties.

- "Tolling Provisions" refers to the provisions set forth in Section III of this Rule 11 Agreement.

- "Business Court Remand or Dissolution Tolling Provision" refers to the provisions set forth in Section IX of this Rule 11 Agreement.

- "ISquared" means ISQ Global Infrastructure Fund II L.P. c/o I Squared Capital Advisors (US) LLC.

## II.     Agreement to Jurisdiction of the Texas Business Court.

The Parties agree that the Current Lawsuit, including all claims and causes of action asserted as of the Effective Date of this Agreement, is within the jurisdiction of the Texas Business Court, as established by Chapter 25A of the Texas Government Code. The Parties also agree that they are subject to personal jurisdiction in the Texas Business Court.

The Parties acknowledge that this Agreement is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a "subsequent agreement that the business court has jurisdiction over the action."

The Parties waive any challenge to the jurisdiction of the Texas Business Court to hear and adjudicate the claims and causes of action asserted in the Current Lawsuit that are to be asserted in the Business Court Lawsuit.

The Parties intend that this Agreement—executed after September 1, 2024—is to allow the Current Lawsuit to become removable to the Texas Business Court.

In the event it is determined that the Texas Business Court does not have the authority to hear the Current Lawsuit, the Parties also intend this provision to allow the Current Lawsuit to be non-suited without prejudice and refiled in the Business Court as the Business Court Lawsuit.

## III.     Tolling.

The Parties expressly agree any and all applicable relation back doctrines shall apply as if the Business Court Lawsuit had first been filed on May 20, 2021, to the same extent as in the Current Lawsuit.

The Parties acknowledge and agree that this Tolling Provision is intended to preserve the status quo, as of the Effective Date, of the claims and defenses available to the Parties, including claims and defenses timely asserted.  Nothing in this Tolling Provision is intended to enlarge or shrink the claims and defenses available to the Parties as of the Effective Date or to prevent any Party from amending their current pleadings to add claims or defenses.

Without limitation of the foregoing, the Parties further acknowledge and agree that this Tolling Provision does not toll, affect, extend, or revive any statutes of limitations that expired prior to the Effective Date.

Within five (5) business days of the Effective Date, the Parties agrees to jointly file a Notice of Removal of the Current Lawsuit to the Eleventh Division of the Business Court.

In the event it is determined that the Business Court does not have the authority to hear the Current Lawsuit, Lone Star shall execute and file, within five (5) business days of a full and final determination that the Texas Business Court lacks authority to hear the Current Lawsuit, a notice of nonsuit dismissing all claims and causes of action against Defendants, without prejudice in the Business Court Lawsuit. Lone Star will then promptly file a new petition in the Business Court, asserting the claims and causes of action currently asserted in the Current Lawsuit. The statute of limitations for all claims and defenses asserted in the Current Lawsuit will be tolled up to forty-five (45) days during the intervening period between the potential nonsuit and refiling contemplated herein. Performance of this Agreement, including the contemplated nonsuit or dismissal of the Current Lawsuit shall not give rise to any argument in the Business Court Lawsuit that the claims, defenses, or causes of action currently asserted or that could currently be asserted in the Current Lawsuit is or are untimely in the Business Court Lawsuit unless those claims, defenses, or causes of action would have been barred by any potential statute of limitations if the Current Lawsuit was not removed and/or non-suited and re-filed in the Texas Business Court.

Nothing contained in this Agreement shall be construed as an admission by any Party hereto of any liability or of the availability or merits of any claim, cause of action, or defense, asserted or unasserted, of any Party.

This Tolling Provision is predicated and founded upon mutual promises, the effect of which is to provide legal and sufficient consideration to support this Tolling Provision.

**IV.     Statute of Limitations Challenges Waived.**

Defendants agree that the removal of the Current Lawsuit or the filing of a new lawsuit by Lone Star in the Eleventh Division of the Texas Business Court asserting the claims and causes of action currently asserted in the Current Lawsuit will not be used by Defendants to raise challenges or objections on the basis of a statute of limitations to any claims or causes of action that Lone Star asserts in the Business Court Lawsuit if the challenge or objection on the basis of a statute of limitations could not have been successfully asserted if the Current Lawsuit was not removed and/or non-suited and re-filed in the Texas Business Court. For avoidance of doubt, Defendants do not waive any statute of limitations defense that could have been asserted in the Current Lawsuit as of the Effective Date.

**V.     Deemed Date of Filing of the Business Court Lawsuit.**

The Parties agree that for any and all purposes including statute of limitations, other than determining jurisdiction of the Business Court, in the event Lone Star files the Business Court Lawsuit, the claims and causes of action asserted in the Business Court Lawsuit that were brought

in the Current Lawsuit shall be deemed by the Parties to have been filed on the date they were brought by Lone Star in the Current Lawsuit.

## VI.        **Preservation of Status Quo.**

The Parties agree that the status quo of litigation in the Current Lawsuit is to be preserved in the Business Court Lawsuit through this Agreement.

The Parties therefore agree to not refile or seek reconsideration of any motions(s) disposed of in the Current Lawsuit as of the Effective Date, except to the extent they could have done so in the 61st Judicial District. The Parties acknowledge they intend for the Business Court to give the same level of deference to all orders issued in the Current Lawsuit that would have been given by the 61st Judicial District Court.

The Parties agree to abide by the August 30, 2024 order in the Current Lawsuit compelling the depositions of Todd Carpenter, Jamie Welch, Anne Psencik, Jason Nguyen, Ross Hutton, Blake Bixler, Kris Kindrick, Trevor Howard, and a Corporate Representative of EagleClaw Midstream Ventures, LLC subject to the Parties' agreement that the dates for the depositions of all deponents outlined in that order except for Anne Psencik and Todd Carpenter shall be extended to October 31, 2024. The Parties also agree to abide by the September 13, 2023 order in the Current Lawsuit compelling the deposition of Andrew Ray to occur within seven days of the deposition of Todd Carpenter. Notwithstanding the preceding, the Parties specifically reserve the right to seek appellate review and/or mandamus relief related to any orders entered by the 61st Judicial District Court and specifically agree the Fifteenth Court of Appeals will have appellate and mandamus jurisdiction during the Business Court Lawsuit related to orders entered by the 61st Judicial District Court. In the event Lone Star ultimately files the Business Court Lawsuit pursuant to this agreement, the Parties will work together in good faith to take all necessary steps to preserve the status quo of the litigation, including preserving the Parties' ability to seek appellate and/or mandamus review of any orders issued in the Current Lawsuit.

Notwithstanding the preceding paragraphs, nothing in this Rule 11 Agreement shall be construed as a waiver of the right of any Party to file motions seeking relief not previously requested in the Current Lawsuit, even if such motions relate to, or incorporate, arguments previously raised in the Current Lawsuit. For the avoidance of doubt, the Parties do not intend to waive any potential requests for summary judgment or any appellate rights.

## VII.    **Trial Date and Docket Control Order**.

The Parties agree to jointly file a request for a docket control order in the Business Court Lawsuit with the following deadlines: [1]

- Pleadings Deadline – November 16, 2024

---

[1] The Parties agree through this agreement to suspend all current pleading-, discovery-, and expert-related deadlines in the Current Lawsuit until the Business Court Lawsuit enters a docket control order.

- Affirmative Expert Designation Deadline – January 17, 2025

- Defensive Expert Designation Deadline – February 17, 2025

- Rebuttal Expert Designation Deadline – February 24, 2025

- Close of Discovery: March 3, 2025

- Motion Filing Deadline (Experts and Dispositive) – March 3, 2025

- Document Supplementation:

  - October 7, 2024 – Refresh volume, damages and invoice data through August 31, 2024

  - December 9, 2024 – Refresh volume, damages and invoice data through October 31, 2024

  - February 14, 2025 – Refresh volume, damages and invoice data through December 31, 2024

- Trial Date – April 21, 2025

If the Texas Business Court orders a trial setting on a different date or a docket control order that differs from the one jointly requested by the Parties, the Parties agree to abide by the docket control order entered by the Texas Business Court. The Parties also agree to work together cooperatively and in good faith to develop a workable schedule around the docket control order entered by the Texas Business Court.

## VIII. **Discovery and Document Production.**

All documents produced by the Parties in the Current Lawsuit shall be deemed to have been produced in the Business Court Lawsuit. All depositions taken in the Current Lawsuit shall be deemed to have been taken in the Business Court Lawsuit.

The Parties agree to abide by the terms of the July 1, 2022 Joint Stipulated Confidentiality Order entered in the Current Lawsuit for a period of forty-five (45) days after nonsuit and to jointly seek entry of an identical Confidentiality Order in the Business Court Lawsuit within forty-five (45) days of removal.

The Parties agree to work together cooperatively and in good faith to secure agreement from non-parties who have produced documents in the Current Lawsuit to deem those productions as having been re-produced in the Business Court Lawsuit.

The Parties will not oppose the re-production, or deemed production, of non-party materials in the Current Lawsuit into the Business Court Lawsuit.

Productions by non-parties are deemed to have occurred in the Business Court Lawsuit on the date they occurred in the Current Lawsuit.

To the extent motion practice is required to secure re-production of non-party materials which were produced as of the Effective Date of this Agreement, the Parties agree that said motions will be unopposed, regardless of the venue where such motions are filed.

The Parties agree to work together cooperatively and in good faith to secure agreement with ISquared that the May 9, 2024 Agreement between Lone Star and ISquared, which relates to the production of documents and deposition testimony in the Current Lawsuit, remains in effect for the production of documents and deposition testimony in the Business Court Lawsuit.

## IX.     Business Court Remand or Dissolution Tolling.

In the event the Business Court determines that it lacks jurisdiction to hear and adjudicate the claims and causes of action asserted in the Business Court Lawsuit, or in the event the Business Court remands the case to the Judicial District Courts of the State of Texas, or in the event it is determined the Business Court must be dissolved or suspended, this Business Court Remand or Dissolution Tolling Provision immediately goes into effect.

In the event the Business Court Remand or Dissolution Tolling Provision is triggered, the following shall occur:

For a 45-day period beginning on the date the Business Court Remand or Dissolution Tolling Provision is triggered, the Parties agree that all applicable state and federal statutes of limitations that might apply to any claims or causes of action Lone Star has asserted against Defendants in the Business Court Lawsuit shall be suspended and tolled.  Performance of this Agreement, including the contemplated nonsuit or dismissal of the Current Lawsuit, the dismissal or remand of the Business Court Lawsuit, or the dissolution or suspension of the Business Court shall not give rise to any argument in the subsequently-filed lawsuit that the claims, defenses, or causes of action currently asserted or that could currently be asserted in the Current Lawsuit are untimely in the subsequently-filed lawsuit, unless those claims, defenses, or causes of action would have been barred by any potential statute of limitations if the Current Lawsuit was not removed and/or non-suited and re-filed in the Texas Business Court.

Without limitation of the foregoing, the Parties further acknowledge and agree that this provision does not toll, affect, extend, or revive any statutes of limitations that expired prior to the Effective Date.

Nothing contained in this Business Court Remand or Dissolution Tolling Provision shall be construed as an admission by any party hereto of any liability or of the availability or merits of any claim, cause of action, or defense, asserted or unasserted, of any Party.

This Business Court Remand or Dissolution Tolling Provision is predicated and founded upon mutual promises, the effect of which is to provide legal and sufficient consideration to support this Business Court Remand or Dissolution Tolling Provision.

September 12, 2024
Page 7

## X.  Filing of This Rule 11 Agreement.

The Parties authorize the filing of this Rule 11 Agreement in both the Current Lawsuit and in the Business Court Lawsuit. This Rule 11 Agreement is enforceable against the Parties in either proceeding.

## XI.  Intent of Agreement.

"Primary Intent": The Parties intend this Agreement to be interpreted to afford the broadest possible reservation of the Parties' rights to assert any claims, causes of action, and/or defenses in the Business Court that were or could have been asserted in the Current Lawsuit as of the Effective Date.

"Secondary Intent": The Parties also intend for this Agreement to be interpreted consistent with ensuring the Business Court has jurisdiction over the Current Lawsuit.

To the extent any provisions of this Agreement are determined to be ambiguous, inconsistent, or in conflict, the Parties intend the Agreement to be harmonized and interpreted consistently with both the Primary Intent and Secondary Intent. To the extent any provision of this Agreement cannot be interpreted with both the Primary Intent and Secondary Intent, the Parties intend for the Primary Intent to govern and for this Agreement to be interpreted to ensure that any claims, causes of action, and/or defenses that could have been asserted in the Current Lawsuit as of the Effective Date are preserved as if the Current Lawsuit had never been removed and/or re-filed in the Business Court in the first place.


Garrett S. Brawley
*Counsel for Defendants*

Date:  September 12, 2024


Andrew Price
*Counsel for Plaintiff*

Date:  5/13/24

# Tab C

E-filed in the Office of the Clerk
for the Business Court of Texas
9/17/2024 10:43 AM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

NO. _24-BC11A-0004_

LONE STAR NGL PRODUCT SERVICES §    IN THE BUSINESS COURT
LLC (*in its own capacity and as assignee*) , §
§
Plaintiff, §
§
v. §    ELEVENTH BUSINESS COURT
§                        DIVISION
EAGLECLAW MIDSTREAM §
VENTURES, LLC AND CR PERMIAN §
PROCESSING, LLC, §
§
§
§
Defendants. §    HARRIS COUNTY, TEXAS
§

## JOINT NOTICE OF REMOVAL TO BUSINESS COURT

Plaintiff Lone Star NGL Product Services LLC and Defendants EagleClaw Midstream

Ventures, LLC and CR Permian Processing, LLC (collectively, the "Parties") jointly file this

Notice of Removal to Business Court (the "Notice") and hereby remove this action to the Eleventh

Business Court Division of the Business Court of Texas.

**I.      Jurisdiction and Authority**

The business court has authority and jurisdiction over this case. TEX. R. CIV.

P. 355(b)(2)(A).  Pursuant to the Texas Government Code:

> The business court has civil jurisdiction concurrent with district courts in the
> following actions in which the amount in controversy exceeds $10 million,
> excluding interest, statutory damages, exemplary damages, penalties, attorney's
> fees, and court costs:
>
> > (1)  an action arising out of a qualified transaction;
> >
> > (2)  an action that arises out of a contract or commercial transaction in which
> > the parties to the contract or transaction agreed in the contract or a
> > subsequent agreement that the business court has jurisdiction of the action,
> > except an action that arises out of an insurance contract; . . . .

TEX. GOV'T CODE § 25A.004(d).

Copy from re:SearchTX

*A.* ***The Amount in Controversy Exceeds $10 Million.***

Plaintiff alleges damages which exceed $10 million. Plaintiff's 2d Amend. Pet., p. 3. (alleging "hundreds of millions of dollars in damages to [Plaintiff].").

*B.* ***The Dispute Arises Out of a Qualified Transaction.***

The dispute arises out of a "Qualified Transaction" as that term is used in Section 25A of the Texas Government Code because the dispute involves transactions under which Plaintiff is obligated to pay, and Defendants are entitled to receive, consideration with an aggregate value of at least $10 million. TEX. GOV'T CODE § 25A.001(14).

*C.* ***The Parties Entered into a Subsequent Agreement That the Business Court Has Jurisdiction Over the Action.***

On September 12, 2024, the Parties entered into a Rule 11 Agreement to establish the business court's authority based on a "subsequent agreement that the business court has jurisdiction of the action." TEX. GOV'T CODE § 25A.004(d)(2); Rule 11 Agreement, filed September 17, 2024 herein.

Crucially, that "subsequent agreement" was entered into on September 12, 2024—***after*** the Business Court began operating on September 1, 2024.

In the Rule 11 Agreement the parties agreed and acknowledged:

The Parties agree that the Current Lawsuit, including all claims and causes of action asserted as of the Effective Date of this Agreement, is within the jurisdiction of the Texas Business Court, as established by Chapter 25A of the Texas Government Code. The Parties also agree that they are subject to personal jurisdiction in the Texas Business Court.

The Parties acknowledge that this Agreement is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a "subsequent agreement that the business court has jurisdiction over the action."

The Parties waive any challenge to the jurisdiction of the Texas Business Court to hear and adjudicate the claims and causes of action asserted in the Current Lawsuit that are to be asserted in the Business Court Lawsuit.

Copy from re:SearchTX

> The Parties intend that this Agreement—executed after September 1, 2024—is to allow the Current Lawsuit to become removable to the Texas Business Court.

*Id.*

The business court therefore has authority and jurisdiction over this case pursuant to Section 25A.004(d) of the Texas Government Code.

## II.     Venue

Venue is proper in the Eleventh Business Court Division.  TEX. R. CIV. P. 355(b)(2)(B); TEX. GOV'T CODE § 25A.003(m).  Because the 61st District Court of Harris County, Texas, had jurisdiction of this case, the Eleventh Business Court Division, with jurisdiction over Harris County, is a proper venue for removal.  *Compare* Plaintiff's 2d Amend. Pet. ¶¶ 7–8 (citing TEX. CIV. PRAC. & REM. CODE §§ 15.004, 15.020, and 15.035) (alleging that Harris County is the contractually-chosen place of venue and alleging that having properly joined multiple claims arising from the same transaction, occurrence, or series of occurrences where one or more causes of action are governed by a mandatory venue provision, venue is proper in Harris County), *with* TEX. GOV'T CODE § 25A.006(a) (providing that "[v]enue may be established as provided by law or, if a written contract specifies a county as venue for the action, as provided by the contract.").

## III.    Timeliness

All parties jointly provide notice of removal.  TEX. R. CIV. P. 355(b)(1).  Accordingly, removal is timely.  TEX. R. CIV. P. 355(c)(1) (providing that "[a] party may file a notice of removal reflecting the agreement of all parties at any time during the pendency of the action.").

Further, removal is timely and the Business Court has authority to hear the case because the Rule 11 Agreement was not entered into until ***after*** the Business Court began operating, which makes it a "subsequent agreement that the business court has jurisdiction of the action."  TEX. GOV'T CODE § 25A.004(d)(2).

Copy from re:SearchTX

**IV.     Appendix**

Appended to this Notice are all of the filings made in the 61st Judicial District Court of Harris County, Texas, as required by the Texas Rules of Civil Procedure.   TEX. R. CIV. P. 355(b)(3).

**V.     Conclusion**

The parties hereby remove this case from the 61st Judicial District Court of Harris County, Texas to the Eleventh Business Court Division of the Business Court of Texas.

Copy from re:SearchTX

Dated: September 17, 2024

Respectfully submitted,

/s/ Andrew Price

Andrew Price
State Bar No. 24002791
andrew.price@nortonrosefulbright.com
Rafe A. Schaefer
State Bar No. 24077700
rafe.schaefer@nortonrosefulbright.com
Abraham Chang
State Bar No. 24102827
abraham.chang@nortonrosefulbright.com
Timothy Shinn
State Bar No. 24125409
timothy.shinn@nortonrosefulbright.com
Fulbright Tower
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

*Attorneys for Plaintiff Lone Star NGL Product Services LLC*

/s/ Fields Alexander

Thomas E. Ganucheau
State Bar No. 00784104
tganucheau@beckredden.com
Fields Alexander
State Bar No. 00783528
falexander@beckredden.com
Mary Kate Raffetto
State Bar No. 24098296
mkraffetto@beckredden.com
Garrett S. Brawley
State Bar No. 24095812
gbrawley@beckredden.com
Cassie Maneen
State Bar No. 24120989
cmaneen@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

*Attorneys for Defendants EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing instrument to be served electronically, in accordance with the Texas Rules of Civil Procedure, on September 17, 2024, on all counsel of record.

/s/ Andrew Price

Andrew Price

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angelina Martinez on behalf of Rafe Schaefer
Bar No. 24077700
angelina.martinez@nortonrosefulbright.com
Envelope ID: 92106691
Filing Code Description: Notice of Removal to Business Court
Filing Description: Joint Notice of Removal to Business Court - Notice Only
Status as of 9/17/2024 10:49 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Angelina Martinez | | angelina.martinez@nortonrosefulbright.com | 9/17/2024 10:43:20 AM | SENT |
| Andrew Price | | andrew.price@nortonrosefulbright.com | 9/17/2024 10:43:20 AM | SENT |
| Abraham Chang | | abraham.chang@nortonrosefulbright.com | 9/17/2024 10:43:20 AM | SENT |
| Cindy Hickman | | cindy.hickman@nortonrosefulbright.com | 9/17/2024 10:43:20 AM | SENT |
| Rafe AronSchaefer | | rafe.schaefer@nortonrosefulbright.com | 9/17/2024 10:43:20 AM | SENT |
| Timothy Shinn | | timothy.shinn@nortonrosefulbright.com | 9/17/2024 10:43:20 AM | SENT |
| Thomas Ganucheau | 784104 | tganucheau@beckredden.com | 9/17/2024 10:43:20 AM | SENT |
| Fields Alexander | 783528 | falexander@beckredden.com | 9/17/2024 10:43:20 AM | SENT |
| Garrett Brawley | 24095812 | gbrawley@beckredden.com | 9/17/2024 10:43:20 AM | SENT |

Copy from re:SearchTX

E-filed in the Office of the Clerk
for the Business Court of Texas
9/17/2024 10:43 AM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

NO. _____

| | | |
|---|---|---|
| LONE STAR NGL PRODUCT SERVICES LLC (*in its own capacity and as assignee*) , | § § § § | IN THE BUSINESS COURT |
| Plaintiff, | § § | |
| v. | § § | ELEVENTH BUSINESS COURT DIVISION |
| EAGLECLAW MIDSTREAM VENTURES, LLC AND CR PERMIAN PROCESSING, LLC, | § § § § § § | |
| Defendants. | § § § § | HARRIS COUNTY, TEXAS |

## INDEX OF APPENDIX OF COURT DOCKET

| DATE | DOCUMENT |
|---|---|
| 5/20/2021 | Plaintiff Lone Star NGL Product Services LLC's Original Petition |
| 5/25/2021 | Affidavit of Service – CR Permian |
| 6/22/2021 | Defendants' Original Answer |
| 6/29/2021 | DOCKET CONTROL ORDER |
| 10/15/2021 | Joint Motion for Entry of Agreed Protective Order |
| 10/15/2021 | Proposed Joint Stipulated Confidentiality Order |
| 10/20/2021 | Order Approving Stipulation Signed |
| 10/20/2021 | Order Signed Confidential Agreement |
| 10/20/2021 | Proposed Joint Stipulated Confidentiality Order |
| 10/20/2021 | Joint Motion for Entry of Agreed Protective Order; |
| 1/24/2022 | Defendants' Motion for Partial Summary Judgment |
| 1/24/2022 | Proposed Order |
| 1/25/2022 | Notice Of Intent To Serve Subpoena Duces Tecum On Non-Party Targa |
| 1/27/2022 | Notice of Submission |
| 1/27/2022 | Lone Star Motion to Compel Production of Documents |
| 1/27/2022 | Proposed Order |
| 1/27/2022 | Notice of Submission |
| 1/27/2022 | Lone Star Motion to Compel Depositions Of Dona Peter And Anne Psencik |

- 1 -

Copy from re:SearchTX

| DATE | DOCUMENT |
|---|---|
| 1/27/2022 | Proposed Order |
| 1/28/2022 | Notice of Withdrawal of Defendants' Motion for Partial Summary Judgment |
| 1/31/2022 | Defendants' Motion for Partial Summary Judgment as to Scope of Audit Provisions |
| 1/31/2022 | Proposed Order |
| 2/2/2022 | Defendants Notice of Submission Regarding Motion for Partial Summary Judgment as to Scope of Audit Provisions |
| 2/4/2022 | Defendants' Opposition to Plaintiff's Motion to Compel Production of Documents and Motion to Compel Depositions of Donna Peters and Anne Psencik, and Motion for Protection from Discovery |
| 2/4/2022 | Proposed Order |
| 2/7/2022 | Statement of Service |
| 2/7/2022 | Letter to Judge re Pending Motions |
| 2/7/2022 | Lone Star's Reply in Support of Motion to Compel Production of Documents and Objection to Eagleclaw 's Untimely Objection and Motion for Protection |
| 2/10/2022 | Defendant's Notice of Submission Regarding Motion for Protection, and Motion to Quash, the Subpoena Duces Tecum Served on Targa |
| 2/10/2022 | Defendant' Motion for Protection, and Motion to Quash, the Subpoena Duces Tecum Served on Targa; |
| 2/10/2022 | Proposed Order |
| 2/10/2022 | Plaintiff Lone Star NGL Product Services LLC's Verified Emergency Motion to Continue EagleClaw's MPSJ Submission Setting |
| 2/10/2022 | Verification |
| 2/10/2022 | Proposed Order |
| 2/11/2022 | Notice of Hearing |
| 2/11/2022 | Defendants' Response to Lone Star's Verified Emergency Motion to Continue Eagleclaw's MPSJ Submission Setting and Defendants' Response to Lone Star's Verified Emergency Motion to Continue Defendants' Motion for Protection and Motion to Quash Targa Subpoena Submission Setting |
| 2/11/2022 | Letter re Emergency Motions for Continuance |
| 2/11/2022 | Plaintiff Lone Star NGL Product Services LLC's Verified Emergency Motion to Continue Defendants' Motion for Protection and Motion to Quash Targa Subpoena Submission Setting |
| 2/11/2022 | Verification |
| 2/11/2022 | Proposed Order |

Copy from re:SearchTX

| DATE | DOCUMENT |
|---|---|
| 2/15/2022 | Letter to Judge |
| 2/21/2022 | Notice of Hearing (PROC 4.6.22) |
| 2/24/2022 | Notice of Hearing |
| 3/18/2022 | Defendants' First Amended Original Answer |
| 4/1/2022 | Defendants' Surreply to Lone Star's Reply in Support of Motion to Compel Production of Documents |
| 4/1/2022 | Plaintiff Lone Star NGL Product Service LLC's Amended Petition |
| 4/12/2022 | Notice of Hearing |
| 5/6/2022 | Order Resetting Trial |
| 5/9/2022 | ORDER RESETTING TRIAL |
| 5/10/2022 | Notice of Passing on Hearing on Motions to Compel Production of Documents and Depositions |
| 5/18/2022 | Unopposed Motion to Withdraw as Counsel |
| 5/18/2022 | Proposed Order |
| 5/19/2022 | Order Granting Withdrawal of Attorney Signed |
| 5/31/2022 | Emergency Letter Regarding a Request to Rule on Pending Motion |
| 5/31/2022 | Joint Motion to Amend Docket Control Order |
| 6/1/2022 | Letter Responding To Emergency Letter For Deposition Dates |
| 6/3/2022 | Return of Service |
| 6/8/2022 | Corrected Notice of Hearing on Motion to Compel Depositions |
| 6/8/2022 | Notice of Hearing |
| 6/14/2022 | Subpoena for Production of Documents "The State of Texas" |
| 6/22/2022 | Notice of Passing Hearing on Motion to Compel Depositions |
| 7/1/2022 | Joint Motion to Amend Docket Control Order; |
| 7/1/2022 | Amended Docket Control Order; |
| 7/1/2022 | Joint Motion to Amend the Joint Stipulated Confidentiality Order |
| 7/1/2022 | Proposed Joint Stipulated Confidentiality Order |
| 7/6/2022 | Order Approving Stipulation Signed |
| 7/6/2022 | Order Signed Confidential Agreement |
| 7/6/2022 | DOCKET CONTROL/PRETRIAL ORDER SIGNED |
| 10/27/2022 | Notice of Hearing |

Copy from re:SearchTX

| DATE | DOCUMENT |
| --- | --- |
| 10/27/2022 | Lone Star's Motion to Compel Production of Documents |
| 11/18/2022 | Notice of Intent to Serve Subpoena Duces Tecum on Non-Party BCP Raptor II, LLC |
| 11/18/2022 | Notice of Intent to Serve Subpoena Duces tecum on Non-Party BCP Raptor, LLC |
| 12/20/2022 | Docket Control Order Signed |
|  | Proposed Order |
| 12/27/2022 | Lone Star's Amended Motion to Compel Production of Documents; |
| 12/27/2022 | Joint Motion to Amend Docket Control Order |
| 12/29/2022 | Proposed Order on Unopposed Motion for Sealing Documents |
| 12/29/2022 | Lone Star NGL Production Services LLC's Unopposed Motion for Temporary Sealing Order; |
| 12/29/2022 | Proposed Order |
| 12/30/2022 | DOCKET CONTROL/PRETRIAL ORDER SIGNED |
| 1/5/2023 | Defendants' Opposition to Plaintiff's Amended Motion to Compel Production of Documents |
| 1/5/2023 | Proposed Order |
| 1/5/2023 | Order Sealing Document(s) Signed |
| 1/6/2023 | Lone Star's Amended Motion to Compel Production of Documents Appendix A |
| 1/10/2023 | Defendants' Opposition to Plaintiff's Appendixes to its Amended Motion to Compel Production of Documents |
| 1/11/2023 | Notice of Hearing |
| 1/11/2023 | Certificate of Conference on Motion to Compel |
| 2/9/2023 | Lone Star's Amended Motion to Compel Production of Documents - Appendix A |
| 2/9/2023 | Lone Star's Second Amended Motion to Compel Production of Documents |
| 2/13/2023 | Signed Court Scheduling Order |
| 2/13/2023 | Amended Certificate of Conference on Motion to Compel |
| 2/14/2023 | Defendants' Supplemental Opposition to Plaintiffs' Second Amended Motion to Compel Production of Documents |
| 2/16/2023 | Order Signed Denying Motion to Compel Production |
| 2/16/2023 | Proposed Order Denying Lone Star NGL Product Services, LLC's Second Amended Motion to Compel Production of Documents |
| 2/16/2023 | Proposed Order Granting Plaintiff Lone Star's Second Amended Motion to Compel Production of Documents |

Copy from re:SearchTX

| DATE | DOCUMENT |
|---|---|
| 3/30/2023 | Notice of Intent To Serve Subpoena Duces Tecum On Non-Party Enterprise Products Partners LP |
| 3/30/2023 | Notice Of Intent To Serve Subpoena Duces Tecum On Non-Party Altus Midstream Company |
| 4/4/2023 | Lone Star NGL Production Services LLC's Motion Issuance of Letter Rogatory for Production for Documents by Blackstone Energy Partners II L.P. Pursuant to Subpoena Duces Tecum |
| 4/4/2023 | Proposed Letter Rogatory |
| 4/5/2023 | Lone Star NGL Product Services LLC's Motion for Issuance of Letter Rogatory for the Production of Documents by ISQ Global Infrastructure Fund II L.P. Pursuant to a Subpoena Duces Tecum; |
| 4/5/2023 | Proposed Letter Rogatory |
| 4/10/2023 | Notice of Intent to Serve Subpoena Duces Tecum on Non-Party Kinetik Holdings Inc. |
| 4/10/2023 | Notice Of Intent To Serve Subpoena Duces Tecum On Non-Party Apache Corporation |
| 4/10/2023 | LETTER ROGATORY ISSUED |
| 4/10/2023 | Defendants' Preliminary Response To Motions For Letters Rogatory |
| 4/10/2023 | Proposed Order |
| 4/11/2023 | LETTER ROGATORY ISSUED |
| 4/12/2023 | Return of Service - Enterprise Products Partners LP |
| 4/12/2023 | Return of Service - Altus Midstream Company |
| 4/24/2023 | Affidavit of Service - Kinetick Holdings |
| 4/24/2023 | Return of Service - Apache Corporation ("Apache") |
| 4/25/2023 | Notice of Intent to Serve Subpoena Duces Tecum on Non-Party Breviloba, LLC |
| 5/2/2023 | Rule 11 Agreement |
| 5/2/2023 | Joint Motion to Amend Docket Control Order; |
| 5/2/2023 | Proposed Second Amended Scheduling and Docket Control Order |
| 5/3/2023 | DOCKET CONTROL/PRETRIAL ORDER SIGNED |
| 8/28/2023 | Notice of Submission (QUDE 9.11.2023) |
| 8/28/2023 | Eagleclaw Midstream Ventures, LLC and CR Permian Processing, LLC's ("Defendant")Motion to Quash the Deposition Notices of Steve Stellato, Jason Nguyen, a Corporate Representative of EagleClaw Midstream Ventures, LLC, Frank Bassetti, Tyler Milam, Todd Carpenter and Teresa Morey |

Copy from re:SearchTX

| DATE | DOCUMENT |
|------|----------|
| 8/28/2023 | Proposed Order |
| 8/30/2023 | Lone Star's Motion to Quash Notice of Deposition of Andrew Ray |
| 8/30/2023 | Proposed Order |
| 9/1/2023 | Notice of Submission (CDEP 9.11.2023) |
| 9/1/2023 | Lone Star's Motion to Compel Deposition of Todd Carpenter, Steve Stellato, Jason Nguyen, a Corporate Representative of Eagleclaw Midstream Ventures, LLC, Tyler Milam and Teresa Morey |
| 9/1/2023 | Proposed Order |
| 9/1/2023 | Lone Star NGL Product Services LLC's Motion for Temporary Sealing Order |
| 9/1/2023 | Proposed Order |
| 9/1/2023 | Notice of Submission (CPRO 9.11.2023) |
| 9/1/2023 | Lone Star's Motion to Compel Production of Documents Responsive to Lone Star's Sixth Set of Requests for Production and Deposition of Jaime Welch and Motion for Leave to Conduct Additional Hours of Deposition and For Limited Additional Deposition of Anne Psencik |
| 9/1/2023 | Proposed Order |
| 9/6/2023 | Amended Certificate of Conference on Motion to Compel Deposition of Todd Carpenter, Steve Stellato, Jason Nguyen, A Corporate Representative of Eagleclaw Midstream Ventures, LLC, Tyler Milam, and Teresa Morey |
| 9/6/2023 | Amended Certificate of Conference on Motion to Compel Production of Documents Responsive to Lone Star's Sixth Set of Requests for Production and Deposition of Jamie Welch and Motion for Leave to Conduct Additional Hours of Deposition and for Limited Additional Deposition of Anne Psencik |
| 9/7/2023 | Defendants' Response Opposing Plaintiff's Motion to Compel Production Of Documents And The Deposition Of Jamie Welch And Motion For Leave To Conduct Additional Hours Of Deposition And For The Limited Additional Deposition Of Anne Psencik |
| 9/7/2023 | Proposed Order |
| 9/7/2023 | Defendants' (1) Response To Lone Star's Motion To Compel Depositions; (2) Motion For Protection For The Deposition Of Steve Stellato; And (3) Motion To Compel The Deposition Of Andrew Ray; |
| 9/7/2023 | Proposed Order |
| 9/7/2023 | Proposed Order Granting Plaintiff Lone Star's Motion To Compel Production of Documents Responsive to Lone Star's Sixth Set Of Requests For Production And Deposition Of Jaime Welch And Motion For Leave To Conduct Additional Hours Of Deposition And For Limited Additional Deposition of Anne Psencik |

Copy from re:SearchTX

| DATE | DOCUMENT |
|---|---|
| 9/7/2023 | Proposed Order Granting Motion To Compel Deposition |
| 9/7/2023 | Second Amended Certificate Of Conference On Motion To Compel Deposition Of Todd Carpenter, Steve Stellato, Jason Nguyen, A Corporate Representative Of Eagleclaw Midstream Ventures, LLC, Tyler Milam, And Teresa Morey |
| 9/8/2023 | Notice of Submission (CPRO- 9.18.23) |
| 9/8/2023 | Lone Star's Motion to Compel Production of Documents from Non-Party Apache Corporation |
| 9/8/2023 | Proposed Order |
| 9/8/2023 | Notice of Submission - (ENTO- 9.18.23) |
| 9/11/2023 | Letter to Judge Phillips |
| 9/11/2023 | Lone Star's Reply In Support of Its Motion To Compel Production of Documents Responsive To Lone Star's Sixth Set of Requests For Production And Deposition of Jaime Welch And Motion For Leave To Conduct Additional Hours of Deposition and For Limited Additional |
| 9/11/2023 | Reply In Support Of Lone Star's Motion to Compel Deposition of Todd Carpenter, Steve Stellato, Jason Nguyen, A Corporate Representative Of Eagleclaw Midstream Ventures, LLC, Tyler Milam, And Teresa Morey |
| 9/13/2023 | Amended Certificate of Conference on Motion to Compel Production of Documents from Non-party Apache Corporation |
| 9/13/2024 | Order Signed Denying Motion to Compel Production |
| 9/13/2024 | Order Signed Compelling Deposition Appearance, In Part |
| 9/13/2024 | Order Signed Compelling Deposition Appearance, in part Order Signed Granting Protection |
| 9/14/2024 | Reply in Support of Lone Star's Motion to Compel Production of Documents from Non-Party Apache Corporation |
| 9/14/2023 | Non-Party Apache's Response to Motion to Compel Production of Documents |
| 9/14/2023 | Proposed Order |
| 9/21/2023 | Order Granting Objection to Production Request Signed |
| 9/21/2023 | Order Signed Denying Motion to Compel Production |
| 10/16/2023 | Reporter's Certification Deposition of Elias Sanchez September 19, 2023 |
| 11/10/2023 | Reporter's Certification Deposition of Liza Moehar Taken October 11, 2023 |
| 11/17/2023 | Plaintiff Lone Star NGL Product Services LLC's Second Amended Petition |
| 12/1/2023 | Reporter's Certification Oral and Videotaped Deposition of Jason J. Bush, October 25,2023 |

Copy from re:SearchTX

| DATE | DOCUMENT |
|---|---|
| 12/1/2023 | Reporter's Certification Deposition of Mark McKee, September 26, 2023 |
| 1/16/2024 | Defendants' Rule 91a Motion to Dismiss |
| 1/17/2024 | Notice of Hearing (DISM 2.29.2024) |
| 2/9/2024 | Joint Motion to Amend Docket Control Order |
| 2/9/2024 | Proposed Third Amended Scheduling and Docket Control Order |
| 2/13/2024 | Court Scheduling Order Signed |
| 2/21/2024 | Notice of Hearing (DISM- 3.28.24) |
| 02/26024 | DCA Generic Letter |
| 2/27/2024 | DCA Generic Letter |
| 3/21/2024 | Lone Star NGL Product Services LLC's Motion for Temporary Sealing Order |
| 3/21/2024 | Proposed Order |
| 3/21/2024 | Plaintiff Lone Star NGL Product Services LLC's Response to Defendants' Rule 91aMotion |
| 3/21/2024 | Proposed Order Denying Defendants Eagleclaw Midstream Ventures, LLC And CR Permian Processing, LLC's rule 91a Motion to Dismiss |
| 3/21/2024 | Plaintiff Lone Star NGL Product Services LLC's TRCP 69 Supplement To Second Amended Petition |
| 3/22/2024 | Notice of Submission (SELD 4.1.24) |
| 3/25/2024 | Notice Related to Defendants' Rule 91a Motion to Dismiss |
| 3/25/2024 | Proposed Order |
| 3/26/2024 | Reply in Support of Defendants' Rule 91a Motion to Dismiss |
| 3/28/2024 | Order Signed Denying Motion to Dismiss |
| 4/1/2024 | Order Sealing Document(s) Signed |
| 4/1/2024 | Order Signed Setting Hearing |
| 4/11/2024 | Public Notice on Motion to Seal |
| 4/11/2024 | Unopposed Motion for Permanent Sealing |
| 4/11/2024 | Proposed Order |
| 4/30/2024 | Notice By Posting |
| 5/2/2024 | Order Sealing Document(s) Signed |
| 5/10/2024 | Plaintiff Lone Star NGL Product Services LLC's Response to Defendants' Rule 91aMotion - Unredacted |

Copy from re:SearchTX

| DATE | DOCUMENT |
|---|---|
| 5/10/2024 | Plaintiff Lone Star NGL Product Services LLC's TRCP 69 Supplement to Second Amended Petition |
| 6/5/2024 | Notice of Change of Address |
| 7/31/2024 | Notice of Hearing (AREF 9.19.2024) |
| 7/31/2024 | Plaintiff Lone Star NGL Product Services LLC's Application to Appoint Discovery Referee for Disputes with Nonparty I Squared Capital Advisors (US), LLC |
| 8/1/2024 | Rule 11 Agreement |
| 8/9/2024 | Reporter's Certification Deposition of Donna Peters, November 3, 2022 |
| 8/9/2024 | Reporter's Certification Deposition of Anne Psencik, November 1, 2022 |
| 8/9/2024 | Reporter's Certification Deposition of Teresa Suffel, October 27, 2023 |
| 8/9/2024 | Reporter's Certification Deposition of Tyler Milam, October 27, 2023 |
| 8/14/2024 | Defendant's Motion to Quash the Deposition Notices of Jason Nguyen, Todd Carpenter, Anne Psencik, Blake Bixler, Ross Hutton, Trevor Howard, Kris Kindrick, Jamie Welch, and a Corporate Representative of Eagleclaw Midstream Ventures, LLC |
| 8/14/2024 | Proposed Order |
| 8/15/2024 | Notice of Hearing on Defendants' Motion to Quash the Deposition Notices of Jason Nguyen, Todd Carpenter, Anne Psencik, Blake Bixler, Ross Hutton, Trevor Howard, Kris Kindrick, Jamie Welch, and a Corporate Representative of Eagleclaw Midstream Ventures, LLC |
| 8/15/2024 | Lone Star's Motion to Compel Deposition of Todd Carpenter, Jamie Welch, Anne Psencik, Jason Nguyen, Ross Hutton, Blake Bixler, Kris Kindrick, Trevor Howard, and a Corporate Representative of Eagleclaw Midstream Ventures, LLC and Motion to Show Cause; |
| 8/15/2024 | Proposed Order |
| 8/15/2024 | Notice of Submission (STPL 8.26.2024) |
| 8/15/2024 | Noticc of Submission (CDEP 8.26.2024) |
| 8/15/2024 | Notice of Submission (SELD 8.26.2024) |
| 8/15/2024 | Lone Star NGL Product Services LLC's Motion for Temporary Sealing Order; |
| 8/15/2024 | Proposed Order |
| 8/15/2024 | Lone Star's Motion to Strike Defendants' Motion to Quash |
| 8/15/2024 | Proposed Order |
| 8/16/2024 | Proposed Order of Nonsuit and Dismissal of Claims Assigned by Energy Transfer Geismer Olefins LLC and Energy Transfer Hattiesburg NGLS LLC |

Copy from re:SearchTX

| DATE | DOCUMENT |
|---|---|
| 8/16/2024 | Notice of Nonsuit of Claims Assigned by Energy Transfer Geismer Olefins LLC and Energy Transfer Hattiesburg NGLS LLC |
| 8/19/2024 | Partial Dismissal on Plaintiff's Motion |
| 8/20/2024 | Defendants' Motion to Quash the Depositions of JP Munfa, David Foley, Jesse Krynak and Laura Sugg; |
| 8/20/2024 | Proposed Order |
| 8/21/2024 | Notice of Hearing on Defendants' Motion to Quash the Depositions of JP Munfa, David Foley, Jesse Krynak, and Laura Sugg (QUDE 11.14.2024) |
| 8/21/2024 | Notice of Hearing on Defendants' Motion to Compel Assignor-Affiliate Related Fraud and Damages Documents and Motion for Continuance (COTH/TRCO 11.14.2024) |
| 8/21/2024 | Defendants' Motion to Compel Assignor-Affiliate Related Fraud and Damages Documents and Motion for Continuance; |
| 8/21/2024 | Proposed Order |
| 8/22/2024 | Lone Star NGL Product Services LLC's Motion for Temporary Sealing Order |
| 8/22/2024 | Proposed Order |
| 8/22/2024 | Notice of Submission (SELD 9.2.2024) |
| 8/22/2024 | Notice of Submission (STPL 9.2.2024) |
| 8/22/2024 | Notice of Submission (CDEP 9.2.2024) |
| 8/22/2024 | Notice of Submission (SELD 9.2.2024) |
| 8/22/2024 | Notice of Submission (CPRO 9.2.2024) |
| 8/22/2024 | Lone Star NGL Product Services LLC's Motion for Temporary Sealing Order |
| 8/22/2024 | Proposed Order |
| 8/22/2024 | Lone Star's Motion to Strike Defendants' Motion to Quash the Depositions of JP Munfa, David Foley, Jesse Krynak, and Laura Sugg; |
| 8/22/2024 | Proposed Order |
| 8/22/2024 | Lone Star's Motion to Compel Depositions of Laura Sugg, David Foley, JP Munfa, and Jesse Krynak |
| 8/22/2024 | Proposed Order |
| 8/22/2024 | Lone Star's Motion to Compel Responses to Requests for Production 139 and 141, Seeking Eagleclaw's Communications with Third-Parties Isquared and Blackstone – Redacted |
| 8/22/2024 | Proposed Order |

Copy from re:SearchTX

| DATE | DOCUMENT |
|------|----------|
| 8/22/2024 | Amended Certificate of Conference on Motion to Strike Defendants' Motion to Quash |
| 8/22/2024 | Amended Certificate Of Conference On Motion To Compel Deposition Of Todd Carpenter, Jamie Welch, Anne Psencik, Jason Nguyen, Ross Hutton, Blake Bixler, Kris Kindrick, Trevor Howard, And A Corporate Representative Of Eagleclaw MidstreamVentures, LLC and Motion to Show Cause |
| 8/22/2024 | Defendants' Response Opposing Lone Star's Motion to Compel Depositions of Todd Carpenter, Jamie Welch, Anne Psencik, Jason Nguyen, Ross Hutton, Blake Bixler, Kris Kindrick, Trevor Howard, and a Corporate Representative of Eagleclaw MidstreamVentures, LLC; |
| 8/22/2024 | Proposed Order |
| 8/22/2024 | Defendants' Response to Lone Star's Motion to Strike Defendants' Motion to Quash; |
| 8/22/2024 | Proposed Order |
| 8/22/2024 | Notice of Submission (LTRO- 9.2.24) |
| 8/22/2024 | Lone Star NGL Product Services LLC's Unopposed Motion for Issuance of Letter Rogatory for Issuance of a Subpoena Duces Tecum to Joseph Payne; |
| 8/22/2024 | Proposed Letter Rogatory |
| 8/23/2024 | Reply in Support of Lone Star's Motion to Compel Depositions of Todd Carpenter, Jamie Welch, Anne Psencik, Jason Nguyen, Ross Hutton, Blake Bixler, Kris Kindrick, Trevor Howard, and a Corporate Representative of Eagleclaw Midstream Venture, LLC and Motion to Show Cause |
| 8/23/2024 | Lone Star's Reply in Support of Motion to Strike Defendants' Motion to Quash |
| 8/26/2024 | Letter to the Court re-Supplemental Certificate of Conferences |
| 8/26/2024 | Defendants' Sur-Reply Opposing Lone Star's Motion To Compel Depositions Of Todd Carpenter, Jamie Welch, Anne Psencik, Jason Nguyen, Ross Hutton, Blake Bixler, KrisKindrick, Trevor Howard, And A Corporate Representative Of Eagleclaw MidstreamVentures, LL |
| 8/27/2024 | Order Sealing Document(s) Signed |
| 8/27/2024 | Order Signed Setting Hearing |
| 8/27/2024 | Joint Motion for Temporary Sealing Order |
| 8/27/2024 | Proposed Order |
| 8/28/2024 | Signed Order Granting Motion to Dismiss |
| 8/29/2024 | Defendants' Response to Lone Star's Motion to Strike Defendants' Motion to Quash the Depositions of JP Munfa, David Foley, Jesse Krynak, and Laura Sugg |
| 8/29/2024 | Proposed Order |

Copy from re:SearchTX

| DATE | DOCUMENT |
|---|---|
| 8/29/2024 | Defendants' Response Opposing Lone Star's Motion to Compel Reponses to Requests for Production 139 and 141, Seeking Eagleclaw's Communications with Third-Parties Isquared and Blackstone |
| 8/29/2024 | Proposed Order |
| 8/29/2024 | Notice of Submission – Motion for Protection and Motion to Quash |
| 8/29/2024 | Defendants' Response to Lone Star's Motion to Compel Depositions of Laura Sugg, David Foley, JP Munfa, and Jesse Krynak |
| 8/29/2024 | Proposed Order |
| 8/29/2024 | Defendants' Motion for Protection and Motion to Quash Deposition of Non-Employee Board Members Under the Apex Deposition Doctrine |
| 8/29/2024 | Proposed Order |
| 8/29/2024 | Amended Certificate of Conference on Motion for Issuance of Letter Rogatory |
| 8/29/2024 | Amended Certificate of Conference on Motion to Strike Defendants' Motion to Quash |
| 8/29/2024 | Amended Certificate of Conference on Motion to Compel Deposition of Laura Sugg, David Foley, JP Munfa, and Jesse Krynak |
| 8/29/2024 | Amended Certificate of Conference on Motion to Compel Responses to Request for Production 139 and 141 |
| 8/30/2024 | Notice of Submission – Motion to Seal |
| 8/30/2024 | Lone Star NGL Product Services LLC's Motion for Temporary Sealing Order |
| 8/30/2024 | Proposed Order |
| 8/30/2024 | Lone Star's Reply in Support of Motion to Compel Responses to Requests for Production 139 and 141, Seeking Eagleclaw's Communications with Third-Parties Isquared and Blackstone |
| 8/30/2024 | Lone Star's Reply in Support of Motion to Strike Defendants' Motion to Quash |
| 8/30/2024 | Lone Star's Reply in Support of Motion to Compel Depositions of Laura Sugg, David Foley, JP Munfa, and Jesse Krynak |
| 8/30/2024 | Order Signed Denying Motion to Strike Pleading |
| 8/30/2024 | Order Signed Compelling Deposition Appearance |
| 9/3/2024 | Order Sealing Document(s) Signed |
| 9/3/2024 | Order Sealing Document(s) Signed |
| 9/3/2024 | Letter Rogatory Issued |

Copy from re:SearchTX

| DATE | DOCUMENT |
|------|----------|
| 9/3/2024 | Defendants' Sur-Reply Opposing Lone Star's Motion to Compel to Compel Responses to Requests for Production 139 and 141, Seeking Eagleclaw's Communications with Third-Parties Isquared and Blackstone |
| 9/3/2024 | Defendants' Sur-Reply to Lone Star's Motion to Compel Depositions of Laura Sugg, David Foley, JP Munfa and Jesse Krynak |
| 9/5/2024 | Order Granting Objection to Production Request |
| 9/5/2024 | Order Signed Denying Motion to Compel Production |
| 9/5/2024 | Lone Star's Response to EagleClaw's Motion for Protection and Motion to Quash Under the Apex Doctrine |
| 9/5/2024 | Amended Certificate of Conference on Motion for Protection and Motion to Quash Depositions of Non-Employee Board Members Under the Apex Deposition Doctrine |
| 9/9/2024 | Order Signed Sealing Documents |
| 9/9/2024 | Defendant's Reply in Support of Motion for Protection and Motion to Quash Depositions of Non-Employee Board Members Under the Apex Doctrine |
| 9/16/2024 | Rule 11 Agreement |

Copy from re:SearchTX

# Tab D

Filed in the Office of the Clerk
Beverly Crumley
for the Business Court of Texas
**ENTERED**
September 26, 2024



**The Business Court of Texas**
**Eleventh Division**

| | | |
|---|---|---|
| Lone Star NGL Product Services LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 24-BC11A-0004 |
| | § | |
| EagleClaw Midstream Ventures, LLC | § | |
| and CR Permian Processing, LLC, | § | |
| *Defendants.* | § | |

## ORDER

Before the Court is the Joint Notice of Removal filed by Plaintiff Lone Star NGL

Product Services LLC and Defendants EagleClaw Midstream Ventures, LLC and CR

Permian Processing, LLC (collectively the "Parties") on September 17, 2024. The Parties

removed this case from the 61st Judicial District Court of Harris County under Texas

Government Code Chapter 25A.

Consistent with Texas Government Code 25A.006 and Texas Rule of Civil

Procedure 355, the Court ORDERS that the Parties file briefing on or before October 17,

2024, containing argument and authorities regarding the propriety of this suit's removal

to the Texas Business Court and regarding this Court's authority and jurisdiction to hear

the suit. At their option, each side may file a separate brief, or the Parties may file a joint

1

brief. Absent leave of Court, any brief filed shall contain no more than 7,500 words. A hearing will be set following the Court's receipt of the Parties' brief(s).

    SO ORDERED.

                                         _____
                                         Hon. Sofia Adrogué
                                         Texas Business Court, Eleventh Division

DATED: September 26, 2024

Tab E

E-filed in the Office of the Clerk
for the Business Court of Texas
10/16/2024 4:48 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

NO. 24-BC11A-0004

| | | |
|---|---|---|
| LONE STAR NGL PRODUCT SERVICES LLC (*in its own capacity and as assignee*), | § § § | IN THE BUSINESS COURT |
| Plaintiff, | § § | |
| v. | § § | ELEVENTH BUSINESS COURT DIVISION |
| EAGLECLAW MIDSTREAM VENTURES, LLC AND CR PERMIAN PROCESSING, LLC, | § § § § § | |
| Defendants. | § § § § | HARRIS COUNTY, TEXAS |

## JOINT BRIEF IN SUPPORT OF REMOVAL TO BUSINESS COURT

Pursuant to the Court's September 26 Order requesting briefing regarding the propriety of this suit's removal to the Texas Business Court and the Court's authority to hear the suit, Plaintiff Lone Star NGL Product Services LLC ("Lone Star") and Defendants EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC (together, "Defendants") jointly file this Brief in Support of Removal to Business Court.

## INTRODUCTION

The Texas Government Code confers jurisdiction and authority to the Business Court concurrent with Texas district courts over disputes in which the amount in controversy exceeds $10 million which "arise[] out of a contract or commercial transaction in which the parties to the contract or transaction agree[] in the contract *or a subsequent agreement* that the business court has jurisdiction of the action." TEX. GOV'T CODE § 25A.004(d)(2) (emphasis added). Here, the Parties entered into an Agreement on September 13, 2024, expressly consenting to the authority

203102792                                                  – 1 –

and jurisdiction of the Business Court to hear this dispute.[1] That agreement is a "subsequent agreement" that the Business Court has jurisdiction and authority over this dispute within the meaning of § 25A.004(d)(2) (the "Subsequent Agreement").

And because the Subsequent Agreement was entered by the Parties *after the Business Court began accepting cases on September 1, 2024*, removal of the dispute is proper under the statute.

All other jurisdictional requirements are met by this case. The amount in controversy exceeds $10 million, no carveouts apply to the case, venue is proper, and the parties' notice of removal was properly filed in the Business Court and in the 61st Judicial District Court of Harris County, Texas.

## FACTUAL BACKGROUND

**I.       Lone Star Sues Defendants in the 61st Judicial District Court of Harris County.**

On May 20, 2021, Lone Star filed an original petition in the District Courts of Harris County. Lone Star's Original Petition, Removal Appendix Vol. 1, BC_APPX_00001. The lawsuit was assigned to the 61st Judicial District Court under Cause No. 2021-30388.

The lawsuit involves two natural gas purchase agreements that involve daily obligations to sell Y-Grade. The agreements do not expire until 2026, and the lawsuit involves both past and ongoing compliance with the agreements.

---

[1] The Subsequent Agreement also contemplates nonsuiting this dispute and re-filing an identical lawsuit in the Business Court if the Court remands the case to the 61st Judicial District Court. Per the Parties' agreement, this dispute will be heard by the Business Court. But remanding the three and a half year old case now creates unnecessary hurdles that would otherwise be avoided if this removed lawsuit is permitted to proceed.

**II.**     **The Parties Enter Into a Subsequent Agreement That the Dispute Will Be Heard in Texas Business Court.**

On September 13, 2024, the Parties entered into a "subsequent agreement," as that phrase is used in Section 25A.004(d) of the Texas Government Code. The Subsequent Agreement makes clear that authority, jurisdiction, and venue exists in the Texas Business Court. The Subsequent Agreement was filed in this Court, as well as the 61st Judicial District Court on September 17, 2024. The Subsequent Agreement is attached hereto as Exhibit 1.

Pursuant to the Subsequent Agreement:

- The Parties agreed that the lawsuit is within the jurisdiction of the Business Court;

- The Parties agreed to personal jurisdiction in the Business Court; and

- The Parties expressly acknowledged the Subsequent Agreement was intended to satisfy the requirements of Section 25A.004(d) of the Texas Government Code as a "subsequent agreement that the business court has jurisdiction over the action."

Exhibit 1, Subsequent Agreement, p. 2.

But the Subsequent Agreement was not merely an agreement to remove the case to Business Court. *Id.* Instead the Subsequent Agreement reflects a negotiated, holistic agreement between the Parties that the dispute will be adjudicated by the Business Court.

The Parties opted to remove the dispute as the first measure because removal, as authorized by the Texas Legislature, preserves the status quo of the dispute, which has been pending for several years and involves document discovery, depositions, and third-party discovery. *Id.*, p. 4.

On September 17, 2024 the Parties jointly filed a Notice of Removal in the 61st Judicial District Court and in this Court in satisfaction of the procedural requirements to remove the dispute to the Business Court.

## I. The Subsequent Agreement Creates Business Court Jurisdiction and Authority to Adjudicate This Dispute.

### A. *The Subsequent Agreement Properly Confers Jurisdiction on the Business Court in Accordance With Chapter 25A of the Texas Government Code.*

The Texas Government Code confers jurisdiction to the Business Court over actions that involve an amount in controversy that exceeds $10 million when the parties have entered "*a subsequent agreement that the business court has jurisdiction of the action*." TEX. GOV'T. CODE § 25A.004(d)(2) (emphasis added). Here, on September 13, 2024, the Parties entered into a Subsequent Agreement that established the Business Court's authority to adjudicate the dispute.

The Subsequent Agreement specifically states, "[T]his Agreement is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a 'subsequent agreement that the business court has jurisdiction over this action.'" Exhibit 1, Subsequent Agreement, p. 2. ***This is the exact language used in Section 25A.004 of the Texas Government Code.*** *Compare id.*, *with* TEX. GOV'T. CODE § 25A.004(d) ("The business court has civil jurisdiction concurrent with district courts in the following actions[:] an action that arises out of a contract or commercial transaction in which the parties to the contract or transaction agreed in the *contract or a subsequent agreement that the business court has jurisdiction of the action . . . .*") (emphasis added).

To further ensure the Business Court would have jurisdiction over the dispute, the parties expressly consented to personal jurisdiction in the Business Court, and waived any challenge to the Business Court to "hear and adjudicate the claims and causes of action" asserted in the lawsuit. Exhibit 1, Subsequent Agreement, p. 2.

The Parties further express a desire for jurisdiction in the Business Court, consistent with Chapter 25A, by agreeing that the intent of the Subsequent Agreement—"*executed after*

***September 1, 2024***—"is to allow the Current Lawsuit to become removable to the Texas Business Court." *Id.* (emphasis added).

Because the Parties entered into a subsequent agreement that unambiguously affirms the jurisdiction of the Business Court over this dispute, consistent with Chapter 25A of the Texas Government Code, the Business Court possesses such jurisdiction.

### B. *Remanding This Case Will not Keep This Dispute out of Texas Business Court.*

Pursuant to the Subsequent Agreement, the Parties have agreed to have their dispute adjudicated by the Business Court. Thus, the Subsequent Agreement goes beyond mere agreement to file a joint notice of removal. Instead, the Subsequent Agreement is structured to ensure that the Parties will take all necessary steps to ensure this dispute is heard by the Business Court.

For example, if the Court determines that it lacks jurisdiction and authority over the presently removed dispute, the Subsequent Agreement requires that Lone Star nonsuit the case before the 61st Judicial District Court and re-file its petition in the Business Court so that the dispute may be adjudicated here. Exhibit 1, Subsequent Agreement, p. 3. A new lawsuit filed after September 1, 2024 would certainly fall within the authority and jurisdiction of the Texas Business Court. *See* TEX. GOV'T CODE § 25A.006(a).

But while an order remanding the case would result in the case being back in Business Court in a matter of days, it could also cause numerous procedural and discovery-related issues. This dispute has been pending since 2021. There are numerous motions currently pending in this dispute[2] and depositions scheduled to occur throughout October and November.

---

[2] The following motions are currently pending in this lawsuit:

- Defendants' Motion to Quash the Depositions of JP Munfa, David Foley, Jesse Krynak, and Laura Sugg, filed August 20, 2024, Removal Appendix Vol. 13, BC_APPX_06379.

There are also proceedings involving non-party discovery pending across the country. For example, there is an outstanding dispute between Lone Star and non-party ISQ Global Infrastructure Fund II L.P. c/o I Squared Capital Advisors (US) LLC's ("ISquared") regarding ISquared's response to a subpoena authorized by the 61st Judicial District Court. In efforts to resolve that dispute, Lone Star and ISquared entered into an agreement for the appointment of a discovery master to resolve these concerns. Exhibit 2, Agreement Regarding Lone Star NGL Product Services, LLC Subpoena to ISquared Capital Advisors (US), LLC. Former Harris County District Court Judge Daryl Moore was appointed by Lone Star and ISquared as discovery referee under that agreement. Exhibit 3, A. Price email, dated August 19, 2024. A motion to compel is currently pending before Judge Moore. Exhibit 4, R. Schaefer email, dated October 2, 2024.

A different third-party subpoena was issued by Lone Star to Blackstone Energy Partners II L.P. ("Blackstone") in New York. Blackstone produced numerous documents in response to that subpoena, all of which contained confidentiality designations pursuant to the protective order issued in this case.

As another example, the 61st Judicial District Court recently issued a letter rogatory to a Florida court for the domestication of a subpoena to a former board member of Defendants' parent

---

- Defendants' Motion to Compel Assignor-Affiliate Related Fraud and Damages Documents and Motion for Continuance, filed August 21, 2024, Removal Appendix Vol. 13, BC_APPX_006409.
- Lone Star's Motion to Compel the Depositions of Laura Sugg, David Foley, JP Munfa, and Jesse Krynak, filed August 22, 2024, Removal Appendix Vol. 13, BC_APPX_006546.
- Lone Star's Motion to Strike Defendants' Motion to Quash the Depositions of JP Munfa, David Foley, Jesse Krynak, and Laura Sugg, filed August 22, 2024, Removal Appendix Vol. 13, BC_APPX_ 006519.
- Defendants' Motion for Protection and Motion to Quash Deposition of Non-Employee Board Members under Apex Deposition Doctrine, filed August 29, 2024, Removal Appendix Vol. 15, BC_APPX_007607.

corporation, Joseph Payne. Exhibit 5, Letter Rogatory. That subpoena has been domesticated by a Florida court and service is being effectuated. Exhibit 6, Subpoena to Joseph Payne.

Given the pending matters in dispute in this case, efficiency is also promoted by the Court's retention of the matter, as directly contemplated by the parties' Subsequent Agreement.

## C. The "Effective Date" of the Texas Business Court Statute Does Not Create Subject Matter Jurisdiction Issues.

To the extent there is any concern that the "effective date" of Chapter 25A of the Texas Government Code creates a subject matter jurisdiction issue in this Court, the parties respectfully suggest no such issue exists.

The fact that a statutory "effective date" exists in a bill does not mean that that date cannot be waived. *See Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999); *Powell v. State*, 897 S.W.2d 307, 317 (Tex. Crim. App. 1994), *overruled by Prystash*, 3 S.W.3d 522; *see also Hirad v. State*, 14 S.W.3d 351, 352 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (discussing *Pystash*'s overruling of *Powell*).

At issue in *Powell* was the question of whether a statute's "effective date" could be waived. In *Powell*, the plurality held that a statute's "effective date" was "absolute," "nonforfeitable" and "nonwaivable." *Powell*, 897 S.W.2d at 317. Five years later, *Prystash* **overruled** *Powell*, holding that a party cannot "complain of an action he requested" and relying on the doctrine of invited error to reject *Powell*. 3 S.W.3d at 531 ("Just as the law of entrapment estops the State from making an offense of conduct that it induced, the law of invited error estops a party from making an appellate error of an action it induced.").

In a petition refused opinion, the Fourteenth Court of Appeals relied on *Prystash* to hold that *Powell*'s "effective date" holding had been rejected, because it "ignored the crucial distinction between rules of waiver and invited error." *Hirad*, 14 S.W.3d at 352.

So too, here. The parties have entered into the Subsequent Agreement, jointly requesting that the Court adjudicate this dispute. The statute's effective date is not "absolute," "nonforfeitable," or "nonwaivable." To the contrary, the parties jointly and expressly invite the Court to adjudicate this dispute.

In other words, the effective-date provisions found in Section 8 of House Bill 19 are ***not*** matters of subject-matter jurisdiction that cannot be waived; they are simply statutory conditions to the exercise of jurisdiction that can be waived by consent of the parties.

This legal proposition is proven by the fact that the Business Court is created and exists apart from the statutory conditions to the exercise of jurisdiction. Section 5 of House Bill 19 creates the Business Court: "Except as otherwise provided by this Act, the business court is created September 1, 2024." *See* Act of May 25, 2023, 88th Leg., R.S., ch. 380, § 5 (H.B. 19). That section grants the Business Court subject-matter jurisdiction. By contrast, Section 8 provides an effective date for "changes in law made by this Act." *Id.* § 5. Those "changes in law" are found in Sections 1 through 3 of the Act, which amend various parts of the Government Code. *Id.* §§ 1-3. But the creation of the Business Court is found in Section 5 of the Act, which means the Business Court is created independent of the referenced "changes in law" that became effective only on September 1, 2024. *Id.* § 8.

In short, because the Business Court is created by Section 5 and is not subject to Section 8, the effective-date restrictions in Section 8 are not unwaivable subject-matter jurisdiction barriers but statutory conditions to the exercise of jurisdiction that can be waived by consent of the parties.[3]

---

[3] This case does not raise any question regarding the propriety of removal in cases where there is ***no consent*** to removal. The Court need not consider whether removal is proper when a party opposes removal on the ground that the statutory conditions to the exercise of jurisdiction are not satisfied and insists on their enforcement; that question is not before the Court.

**II.** **The Business Court Also Has Jurisdiction and Authority Because This Dispute Involves a Qualified Transaction.**

Chapter 25A of the Texas Government Code confers jurisdiction to the Business Court for disputes involving "Qualified Transactions." TEX. GOV'T CODE § 25A.004(d)(1). The Code defines a Qualified Transaction as a transaction where a party pays or receives *consideration with an aggregate value of at least $10 million*. TEX. GOV'T. CODE § 25A.001(14)(A).

Pursuant to the natural gas purchase agreements at issue in this dispute, Lone Star pays Defendants on monthly invoices for Y-Grade purchased in Reeves County. These monthly payments regularly exceed $10 million. As just one example, for the month of October 2023, Lone Star was invoiced over $19 million for Y-Grade sold by Defendant EagleClaw Midstream Ventures, LLC and over $16 million for Y-Grade sold by Defendant CR Permian Processing, LLC. Exhibits 7 and 8, Invoices.

Over the life of the natural gas purchase agreements, Lone Star has paid more than $100 million for Y-Grade sold by Defendants. And Lone Star will continue to be invoiced for Y-Grade delivered by Defendants through the remaining life of the agreements.

Therefore, the agreements involve the payment of consideration in excess of $10 million. Accordingly, this lawsuit arises out of a Qualified Transaction as defined in Chapter 25A of the Texas Government Code. TEX. GOV'T. CODE § 25A.001(14)(A). Therefore, the Texas Business Court possesses jurisdiction to hear this dispute.

**III.** **Removal Complies With all Other Statutory Requirements.**

**A.** *The Amount in Controversy Exceeds $10 Million.*

Jurisdiction in the Business Court under Chapter 25A.004(d) requires the amount in controversy to exceed $10 million. TEX. GOV'T CODE § 25A.004(d). Lone Star alleges damages in excess of $10 million. Plaintiff's 2nd Amd. Pet., p. 3, Removal Appendix Vol. 6,

BC_APPX_005148 (alleging "hundreds of millions of dollars in damages to Lone Star"). Accordingly, the requirement that the dispute involve an amount in controversy that exceeds $10 million is satisfied. *See* TEX. GOV'T CODE § 25A.004(d).

**B.      *Exercise of Jurisdiction and Authority Over This Dispute Does Not Implicate any of the Carveouts in the Texas Government Code.***

The Texas Government Code provides several carveouts to the authority and jurisdiction of the Business Court to hear certain disputes. *See* TEX. GOV'T CODE § 25A.004(g)–(h). None of those carveouts apply here.

**C.      *Venue Is Proper.***

Venue is proper in the Eleventh Business Court Division. TEX. R. CIV. P. 355(b)(2)(B); TEX. GOV'T CODE § 25A.003(m). Because the 61st District Court of Harris County, Texas had jurisdiction of this case, the Eleventh Business Court Division (with jurisdiction over Harris County) is a proper venue. *Compare* Plaintiff's 2d Amend. Pet. ¶¶ 7–8 (citing TEX. CIV. PRAC. & REM. CODE §§ 15.004, 15.020, and 15.035) (Removal Appendix Vol. 6, BC_APPX_005149) (alleging that Harris County is the contractually-chosen place of venue and alleging that having properly joined multiple claims arising from the same transaction, occurrence, or series of occurrences where one or more causes of action are governed by a mandatory venue provision, venue is proper in Harris County), *with* TEX. GOV'T CODE § 25A.006(a) (providing that "[v]enue may be established as provided by law or, if a written contract specifies a county as venue for the action, as provided by the contract.").

**D.** ***Proper Notice of Removal Was Filed in the 61st Judicial District Court and in the Business Court.***

The Texas Rules of Civil Procedure requires the filing of a notice of removal in both the court from which removal is sought and the Business Court. TEX. R. CIV. P. 355(a). The parties' notice of removal complied with Rule 355(a)'s requirements.

**IV.** **In the Alternative, This Court Should Certify a Permissive Interlocutory Appeal to the Fifteenth Circuit Court of Appeals.**

In the event this Court believes that it lacks jurisdiction over this case, the parties request the Court certify a permissive interlocutory appeal regarding whether the Subsequent Agreement establishes jurisdiction in this Court.

Under Section 51.014(d) of the Civil Practice and Remedies Code, this Court may certify a permissive interlocutory appeal from any order if the order involves a controlling question of law as to which there is substantial grounds for difference of opinion. TEX. CIV. PRAC. & REM. CODE § 51.014(d). If the Court is inclined to remand this case for lack of jurisdiction, the Parties respectfully request the Court also grant certification for permissive interlocutory appeal to the Fifteenth Court of Appeals ***and*** request that the Court stay its order remanding the case until the conclusion of any appellate proceedings related to the permissive interlocutory appeal.

Pursuant to Texas Rule of Civil Procedure 168, if the Court is inclined to remand this case, the parties respectfully suggest that the Court should certify the following question for appeal: can a civil action that was commenced before September 1, 2024 be removed to Business Court where the parties entered into a subsequent agreement expressly consenting to the jurisdiction of the Business Court?

Moreover, pursuant to Rule 168, the order should state that an immediate appeal may materially advance the ultimate termination of the litigation because if this case is remanded to the 61st District Court of Harris County, Texas, the Parties will be obligated to follow their Subsequent

Agreement and nonsuit and re-file this lawsuit in Business Court, thereby creating additional procedural hurdles.

## CONCLUSION

The Parties request the Court find removal of this lawsuit to Business Court proper, and that the Business Court possesses the authority and jurisdiction to hear this dispute.

Dated: October 16, 2024

Respectfully submitted,

/s/ Andrew Price
    Andrew Price
    State Bar No. 24002791
    andrew.price@nortonrosefulbright.com
    Rafe A. Schaefer
    State Bar No. 24077700
    rafe.schaefer@nortonrosefulbright.com
    Abraham Chang
    State Bar No. 24102827
    abraham.chang@nortonrosefulbright.com
    Timothy Shinn
    State Bar No. 24125409
    timothy.shinn@nortonrosefulbright.com
Fulbright Tower
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

**Attorneys for Plaintiff Lone Star NGL Product Services LLC**

/s/ Fields Alexander
    Fields Alexander
    State Bar No. 00783528
    falexander@beckredden.com
    Thomas E. Ganucheau
    State Bar No. 00784104
    tganucheau@beckredden.com
    Mary Kate Raffetto
    State Bar No. 24098296
    mkraffetto@beckredden.com
    Garrett S. Brawley
    State Bar No. 24095812
    gbrawley@beckredden.com
    Cassie Maneen
    State Bar No. 24120989
    cmaneen@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**Attorneys for Defendants EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing instrument to be served electronically, in accordance with the Texas Rules of Civil Procedure, on October 16, 2024, on all counsel of record.

/s/ Andrew Price
Andrew Price

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angelina Martinez on behalf of Rafe Schaefer
Bar No. 24077700
angelina.martinez@nortonrosefulbright.com
Envelope ID: 93246822
Filing Code Description: No Fee Documents
Filing Description: Joint Brief in Support of Removal to Business Court
Status as of 10/17/2024 8:08 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Cindy Hickman | | cindy.hickman@nortonrosefulbright.com | 10/16/2024 4:48:12 PM | SENT |
| Rafe AronSchaefer | | rafe.schaefer@nortonrosefulbright.com | 10/16/2024 4:48:12 PM | SENT |
| Andrew Price | | andrew.price@nortonrosefulbright.com | 10/16/2024 4:48:12 PM | SENT |
| Thomas Ganucheau | 784104 | tganucheau@beckredden.com | 10/16/2024 4:48:12 PM | SENT |
| Fields Alexander | 783528 | falexander@beckredden.com | 10/16/2024 4:48:12 PM | SENT |
| Abraham Chang | | abraham.chang@nortonrosefulbright.com | 10/16/2024 4:48:12 PM | SENT |
| Garrett Brawley | 24095812 | gbrawley@beckredden.com | 10/16/2024 4:48:12 PM | SENT |
| Angelina Martinez | | angelina.martinez@nortonrosefulbright.com | 10/16/2024 4:48:12 PM | SENT |
| Timothy Shinn | | timothy.shinn@nortonrosefulbright.com | 10/16/2024 4:48:12 PM | SENT |
| Ta'chelle Jones | | Tachelle.jones@nortonrosefulbright.com | 10/16/2024 4:48:12 PM | SENT |

E-filed in the Office of the Clerk
for the Business Court of Texas
10/16/2024 4:48 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

# EXHIBIT 1

September 12, 2024

Fields Alexander
Tom Ganucheau
Garrett Brawley
Cassie Maneen
*Counsel for EagleClaw Midstream Ventures, LLC*
*and CR Permian Processing, LLC*
***via email***

NORTON ROSE FULBRIGHT

Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, Texas  77010-4106
United States of America

Direct line +1 713 651 5452
timothy.shinn@nortonrosefulbright.com

Tel +1 713 651 5151
Fax +1 713 651 5246

Re:     *Lone Star NGL Product Services, LLC (in its individual capacity and as assignee) v. EagleClaw Midstream Ventures LLC and CR Permian Processing LLC*, No. 2021-30388 in the 61st Judicial District of Harris County; Rule 11 Agreement Regarding Nonsuit of Current Lawsuit, Tolling of Claims, and Re-filing of Claims and Causes of Action in the Texas Business Court

Counsel,

The purpose of this correspondence is to memorialize the Parties' agreement regarding the removal and/or re-filing of claims and causes of action currently pending in *Lone Star NGL Product Services, LLC (in its individual capacity and as assignee) v. EagleClaw Midstream Ventures LLC and CR Permian Processing LLC*, No. 2021-30388 in the 61st Judicial District of Harris County in a new proceeding before the Eleventh Division of the Texas Business Court.

## I.     <u>Definitions.</u>

- The "Agreement" or "Rule 11 Agreement" means this agreement, in its entirety.

- "Lone Star" or "Plaintiff" means Lone Star NGL Product Services, LLC.

- "ECMV" means EagleClaw Midstream Ventures, LLC.

- "CR" means CR Permian Processing, LLC.

- "Defendants" or "EagleClaw" refers to ECMV and CR, collectively, each a "Defendant."

- "Party" and "Parties" means Lone Star, ECMV, and CR, individually and collectively, respectively.

- "Current Lawsuit" means *Lone Star NGL Product Services, LLC (in its individual capacity and as assignee) v. EagleClaw Midstream Ventures LLC and CR Permian Processing LLC*, No. 2021-30388 in the 61st Judicial District of Harris County.

- "Business Court" means the Texas Business Court.

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

- "Business Court Lawsuit" means the removal of the Current Lawsuit or the filing of a new lawsuit by Lone Star in the Eleventh Division of the Texas Business Court asserting the claims and causes of action currently asserted in the Current Lawsuit.

- The "Effective Date" of this Agreement is the date this Agreement is signed by all Parties.

- "Tolling Provisions" refers to the provisions set forth in Section III of this Rule 11 Agreement.

- "Business Court Remand or Dissolution Tolling Provision" refers to the provisions set forth in Section IX of this Rule 11 Agreement.

- "ISquared" means ISQ Global Infrastructure Fund II L.P. c/o I Squared Capital Advisors (US) LLC.

## II.     Agreement to Jurisdiction of the Texas Business Court.

The Parties agree that the Current Lawsuit, including all claims and causes of action asserted as of the Effective Date of this Agreement, is within the jurisdiction of the Texas Business Court, as established by Chapter 25A of the Texas Government Code. The Parties also agree that they are subject to personal jurisdiction in the Texas Business Court.

The Parties acknowledge that this Agreement is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a "subsequent agreement that the business court has jurisdiction over the action."

The Parties waive any challenge to the jurisdiction of the Texas Business Court to hear and adjudicate the claims and causes of action asserted in the Current Lawsuit that are to be asserted in the Business Court Lawsuit.

The Parties intend that this Agreement—executed after September 1, 2024—is to allow the Current Lawsuit to become removable to the Texas Business Court.

In the event it is determined that the Texas Business Court does not have the authority to hear the Current Lawsuit, the Parties also intend this provision to allow the Current Lawsuit to be non-suited without prejudice and refiled in the Business Court as the Business Court Lawsuit.

## III.    Tolling.

The Parties expressly agree any and all applicable relation back doctrines shall apply as if the Business Court Lawsuit had first been filed on May 20, 2021, to the same extent as in the Current Lawsuit.

The Parties acknowledge and agree that this Tolling Provision is intended to preserve the status quo, as of the Effective Date, of the claims and defenses available to the Parties, including claims and defenses timely asserted. Nothing in this Tolling Provision is intended to enlarge or shrink the claims and defenses available to the Parties as of the Effective Date or to prevent any Party from amending their current pleadings to add claims or defenses.

Without limitation of the foregoing, the Parties further acknowledge and agree that this Tolling Provision does not toll, affect, extend, or revive any statutes of limitations that expired prior to the Effective Date.

Within five (5) business days of the Effective Date, the Parties agrees to jointly file a Notice of Removal of the Current Lawsuit to the Eleventh Division of the Business Court.

In the event it is determined that the Business Court does not have the authority to hear the Current Lawsuit, Lone Star shall execute and file, within five (5) business days of a full and final determination that the Texas Business Court lacks authority to hear the Current Lawsuit, a notice of nonsuit dismissing all claims and causes of action against Defendants, without prejudice in the Business Court Lawsuit.  Lone Star will then promptly file a new petition in the Business Court, asserting the claims and causes of action currently asserted in the Current Lawsuit.  The statute of limitations for all claims and defenses asserted in the Current Lawsuit will be tolled up to forty-five (45) days during the intervening period between the potential nonsuit and refiling contemplated herein.  Performance of this Agreement, including the contemplated nonsuit or dismissal of the Current Lawsuit shall not give rise to any argument in the Business Court Lawsuit that the claims, defenses, or causes of action currently asserted or that could currently be asserted in the Current Lawsuit is or are untimely in the Business Court Lawsuit unless those claims, defenses, or causes of action would have been barred by any potential statute of limitations if the Current Lawsuit was not removed and/or non-suited and re-filed in the Texas Business Court.

Nothing contained in this Agreement shall be construed as an admission by any Party hereto of any liability or of the availability or merits of any claim, cause of action, or defense, asserted or unasserted, of any Party.

This Tolling Provision is predicated and founded upon mutual promises, the effect of which is to provide legal and sufficient consideration to support this Tolling Provision.

**IV.** **Statute of Limitations Challenges Waived.**

Defendants agree that the removal of the Current Lawsuit or the filing of a new lawsuit by Lone Star in the Eleventh Division of the Texas Business Court asserting the claims and causes of action currently asserted in the Current Lawsuit will not be used by Defendants to raise challenges or objections on the basis of a statute of limitations to any claims or causes of action that Lone Star asserts in the Business Court Lawsuit if the challenge or objection on the basis of a statute of limitations could not have been successfully asserted if the Current Lawsuit was not removed and/or non-suited and re-filed in the Texas Business Court.  For avoidance of doubt, Defendants do not waive any statute of limitations defense that could have been asserted in the Current Lawsuit as of the Effective Date.

**V.** **Deemed Date of Filing of the Business Court Lawsuit.**

The Parties agree that for any and all purposes including statute of limitations, other than determining jurisdiction of the Business Court, in the event Lone Star files the Business Court Lawsuit, the claims and causes of action asserted in the Business Court Lawsuit that were brought

in the Current Lawsuit shall be deemed by the Parties to have been filed on the date they were brought by Lone Star in the Current Lawsuit.

## VI.   **Preservation of Status Quo.**

The Parties agree that the status quo of litigation in the Current Lawsuit is to be preserved in the Business Court Lawsuit through this Agreement.

The Parties therefore agree to not refile or seek reconsideration of any motions(s) disposed of in the Current Lawsuit as of the Effective Date, except to the extent they could have done so in the 61st Judicial District.  The Parties acknowledge they intend for the Business Court to give the same level of deference to all orders issued in the Current Lawsuit that would have been given by the 61st Judicial District Court.

The Parties agree to abide by the August 30, 2024 order in the Current Lawsuit compelling the depositions of Todd Carpenter, Jamie Welch, Anne Psencik, Jason Nguyen, Ross Hutton, Blake Bixler, Kris Kindrick, Trevor Howard, and a Corporate Representative of EagleClaw Midstream Ventures, LLC subject to the Parties' agreement that the dates for the depositions of all deponents outlined in that order except for Anne Psencik and Todd Carpenter shall be extended to October 31, 2024.  The Parties also agree to abide by the September 13, 2023 order in the Current Lawsuit compelling the deposition of Andrew Ray to occur within seven days of the deposition of Todd Carpenter.  Notwithstanding the preceding, the Parties specifically reserve the right to seek appellate review and/or mandamus relief related to any orders entered by the 61st Judicial District Court and specifically agree the Fifteenth Court of Appeals will have appellate and mandamus jurisdiction during the Business Court Lawsuit related to orders entered by the 61st Judicial District Court.  In the event Lone Star ultimately files the Business Court Lawsuit pursuant to this agreement, the Parties will work together in good faith to take all necessary steps to preserve the status quo of the litigation, including preserving the Parties' ability to seek appellate and/or mandamus review of any orders issued in the Current Lawsuit.

Notwithstanding the preceding paragraphs, nothing in this Rule 11 Agreement shall be construed as a waiver of the right of any Party to file motions seeking relief not previously requested in the Current Lawsuit, even if such motions relate to, or incorporate, arguments previously raised in the Current Lawsuit.  For the avoidance of doubt, the Parties do not intend to waive any potential requests for summary judgment or any appellate rights.

## VII.   **Trial Date and Docket Control Order**.

The Parties agree to jointly file a request for a docket control order in the Business Court Lawsuit with the following deadlines: [1]

- Pleadings Deadline – November 16, 2024

---

[1] The Parties agree through this agreement to suspend all current pleading-, discovery-, and expert-related deadlines in the Current Lawsuit until the Business Court Lawsuit enters a docket control order.

- Affirmative Expert Designation Deadline – January 17, 2025

- Defensive Expert Designation Deadline – February 17, 2025

- Rebuttal Expert Designation Deadline – February 24, 2025

- Close of Discovery: March 3, 2025

- Motion Filing Deadline (Experts and Dispositive) – March 3, 2025

- Document Supplementation:

  - October 7, 2024 – Refresh volume, damages and invoice data through August 31, 2024

  - December 9, 2024 – Refresh volume, damages and invoice data through October 31, 2024

  - February 14, 2025 – Refresh volume, damages and invoice data through December 31, 2024

- Trial Date – April 21, 2025

If the Texas Business Court orders a trial setting on a different date or a docket control order that differs from the one jointly requested by the Parties, the Parties agree to abide by the docket control order entered by the Texas Business Court. The Parties also agree to work together cooperatively and in good faith to develop a workable schedule around the docket control order entered by the Texas Business Court.

## VIII. **Discovery and Document Production.**

All documents produced by the Parties in the Current Lawsuit shall be deemed to have been produced in the Business Court Lawsuit. All depositions taken in the Current Lawsuit shall be deemed to have been taken in the Business Court Lawsuit.

The Parties agree to abide by the terms of the July 1, 2022 Joint Stipulated Confidentiality Order entered in the Current Lawsuit for a period of forty-five (45) days after nonsuit and to jointly seek entry of an identical Confidentiality Order in the Business Court Lawsuit within forty-five (45) days of removal.

The Parties agree to work together cooperatively and in good faith to secure agreement from non-parties who have produced documents in the Current Lawsuit to deem those productions as having been re-produced in the Business Court Lawsuit.

The Parties will not oppose the re-production, or deemed production, of non-party materials in the Current Lawsuit into the Business Court Lawsuit.

Productions by non-parties are deemed to have occurred in the Business Court Lawsuit on the date they occurred in the Current Lawsuit.

To the extent motion practice is required to secure re-production of non-party materials which were produced as of the Effective Date of this Agreement, the Parties agree that said motions will be unopposed, regardless of the venue where such motions are filed.

The Parties agree to work together cooperatively and in good faith to secure agreement with ISquared that the May 9, 2024 Agreement between Lone Star and ISquared, which relates to the production of documents and deposition testimony in the Current Lawsuit, remains in effect for the production of documents and deposition testimony in the Business Court Lawsuit.

## IX.    Business Court Remand or Dissolution Tolling.

In the event the Business Court determines that it lacks jurisdiction to hear and adjudicate the claims and causes of action asserted in the Business Court Lawsuit, or in the event the Business Court remands the case to the Judicial District Courts of the State of Texas, or in the event it is determined the Business Court must be dissolved or suspended, this Business Court Remand or Dissolution Tolling Provision immediately goes into effect.

In the event the Business Court Remand or Dissolution Tolling Provision is triggered, the following shall occur:

For a 45-day period beginning on the date the Business Court Remand or Dissolution Tolling Provision is triggered, the Parties agree that all applicable state and federal statutes of limitations that might apply to any claims or causes of action Lone Star has asserted against Defendants in the Business Court Lawsuit shall be suspended and tolled.  Performance of this Agreement, including the contemplated nonsuit or dismissal of the Current Lawsuit, the dismissal or remand of the Business Court Lawsuit, or the dissolution or suspension of the Business Court shall not give rise to any argument in the subsequently-filed lawsuit that the claims, defenses, or causes of action currently asserted or that could currently be asserted in the Current Lawsuit are untimely in the subsequently-filed lawsuit, unless those claims, defenses, or causes of action would have been barred by any potential statute of limitations if the Current Lawsuit was not removed and/or non-suited and re-filed in the Texas Business Court.

Without limitation of the foregoing, the Parties further acknowledge and agree that this provision does not toll, affect, extend, or revive any statutes of limitations that expired prior to the Effective Date.

Nothing contained in this Business Court Remand or Dissolution Tolling Provision shall be construed as an admission by any party hereto of any liability or of the availability or merits of any claim, cause of action, or defense, asserted or unasserted, of any Party.

This Business Court Remand or Dissolution Tolling Provision is predicated and founded upon mutual promises, the effect of which is to provide legal and sufficient consideration to support this Business Court Remand or Dissolution Tolling Provision.

### X.    Filing of This Rule 11 Agreement.

The Parties authorize the filing of this Rule 11 Agreement in both the Current Lawsuit and in the Business Court Lawsuit. This Rule 11 Agreement is enforceable against the Parties in either proceeding.

### XI.    Intent of Agreement.

"Primary Intent": The Parties intend this Agreement to be interpreted to afford the broadest possible reservation of the Parties' rights to assert any claims, causes of action, and/or defenses in the Business Court that were or could have been asserted in the Current Lawsuit as of the Effective Date.

"Secondary Intent": The Parties also intend for this Agreement to be interpreted consistent with ensuring the Business Court has jurisdiction over the Current Lawsuit.

To the extent any provisions of this Agreement are determined to be ambiguous, inconsistent, or in conflict, the Parties intend the Agreement to be harmonized and interpreted consistently with both the Primary Intent and Secondary Intent. To the extent any provision of this Agreement cannot be interpreted with both the Primary Intent and Secondary Intent, the Parties intend for the Primary Intent to govern and for this Agreement to be interpreted to ensure that any claims, causes of action, and/or defenses that could have been asserted in the Current Lawsuit as of the Effective Date are preserved as if the Current Lawsuit had never been removed and/or re-filed in the Business Court in the first place.

 

Garrett S. Brawley
*Counsel for Defendants*

Date:  September 12, 2024

Andrew Price
*Counsel for Plaintiff*

Date:  5/13/24

E-filed in the Office of the Clerk
for the Business Court of Texas
10/16/2024 4:48 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

# EXHIBIT 2

# AGREEMENT REGARDING LONE STAR NGL PRODUCT SERVICES, LLC SUBPOENA TO ISQUARED CAPITAL ADVISORS (US), LLC

## RECITALS

Lone Star NGL Product Services, LLC ("Lone Star") is the plaintiff and EagleClaw Midstream Ventures, LLC ("ECMV") and CR Permian Processing, LLC ("Caprock") (collectively, "EagleClaw") are the defendants in Lone Star NGL Product Services, LLC v. EagleClaw Midstream Ventures, LLC and CR Permian Processing, Case No. 2021-30388 (61st Judicial District Court of Harris County, Texas) (the "Texas Action").

On April 10, 2023, the Honorable Judge Fredericka Phillips, of the 61st Judicial District in Harris County, Texas (the "Texas Court") signed a letter rogatory at the request of Lone Star. Under the letter rogatory, the Texas Court requested the Eleventh Judicial Circuit in and for Miami-Dade County, Florida issue a non-party discovery subpoena to ISQ Global Infrastructure Fund II L.P. c/o I Squared Capital Advisors (US) LLC ("ISquared").

On April 19, 2023, the Clerk of Court for the Eleventh Judicial Circuit (the "Florida Court") domesticated the subpoena (the "Subpoena"), assigning it Case No: 2023-25-AF-01 (the "Florida Action"). Thereafter, the Subpoena was served.

ISquared objected to the Subpoena and did not produce documents at that time. On September 12, 2023, Lone Star filed a Motion to Overrule Objections and Compel Production of Documents (the "Motion to Compel") from ISquared.

On November 30, 2023, the Florida Court heard Lone Star's Motion to Compel and on January 11, 2024, the Florida Court entered an order overruling ISquared's objections (other than as to scope), and compelling production of documents from ISquared. ISquared did not produce documents at that time.

The Florida Court held another hearing on January 18, 2024, and on January 29, 2024, entered an order narrowing the time period for the searches requested by Lone Star and compelling ISquared to run certain search terms and produce non-privileged responsive documents on or before February 2, 2024 from the files of one identified custodian's files and one custodian to be identified.

On February 1, ISquared informed Lone Star that it would not produce documents on or before February 2, 2024, based on ISquared's belief that the volume of data captured by the as-ordered searches through the two custodians' files (after deduplication) was too large.

ISquared did not produce any documents on February 2, 2024. On February 8, 2024, the Florida Court entered a show cause order requiring ISquared to provide evidence as to why it should not be held in contempt. On February 9, 2024, ISquared moved for rehearing of the Court's January 29, 2024 order. On February 16, 2024, ISquared made an initial production of documents to Lone Star.

On February 23, 2024, the Court held a hearing on Lone Star's contempt suggestion. Counsel for ISquared raised the rehearing motion, to which the Court stated that ISquared's rehearing motion was not set for hearing. At the conclusion of the February 23, 2024 hearing, the Court orally denied ISquared's motion for rehearing and found ISquared in contempt of court.

On March 13, 2024, the Florida Court entered a written order denying ISquared's motion for rehearing, and ordered ISquared to produce non-privileged documents that hit ordered search terms on or before March 1, 2024. Separately, the Court granted ISquared's request for an extension of time, giving it until March 15, 2024, to complete its production.

On March 8, 2024, and March 15, 2024, ISquared made two supplemental productions of documents, totaling approximately 9,000 produced documents.

Following ISquared's March 15, 2024, production, ISquared and Lone Star continue to dispute whether ISquared has complied with the Florida Court's orders. On April 11, 2024, ISquared filed a notice of appeal.

The parties intend this "Agreement Regarding Lone Star NGL Product Services, LLC Subpoena to ISquared Capital Advisors (US), LLC" (the "Agreement") to resolve their disputes over the Subpoena.

**AGREEMENT**

1.      Subject to agreement from EagleClaw, Lone Star and ISquared will enter into an agreement making ISquared party to the protective order in the Texas Action. If EagleClaw does not consent to making ISquared party to the protective order within seven days of the execution of this Agreement, the Agreement shall be terminated and no further obligations shall exist herein.

2.      Lone Star will have the ability to have two reviewers spend two weeks, with each week consisting of five consecutive eight-hour business days for the Lone Star reviewers to access withheld documents at Berger Singerman's Miami office. The weeks may be—but are not required to be—consecutive weeks. If, after the first week of review, Lone Star believes in good faith that it will not be able to complete its review by the end of the second agreed upon week, Lone Star will have the ability to add up to two additional reviewers for its review during the second week. The first and second weeks must be scheduled within a five week time period (with the two weeks preferably being scheduled within a shorter time period) and the review must be completed within 8 weeks of execution of this Agreement.

3.      Lone Star will be given access to unredacted and unmodified versions of the approximately 38,000 documents returned by the Florida Court's ordered search terms. Lone Star will not have the ability to review material that ISquared and/or EagleClaw contends is subject to

the attorney-client privilege, and any such privileged material will be redacted from the documents Lone Star is entitled to review.

4. The Lone Star Reviewers will not download, print, screenshot, or photograph the withheld documents.

5. 48 hours before beginning their review, Lone Star will be provided with an excel print-out of the metadata of the withheld documents to which Lone Star will be given access, sorted by control number.

6. Lone Star Reviewers will have the ability to tag documents with the following tags: (1) "Lone Star Reviewed", (2) "Disputed." During the review and prior to leaving Berger Singerman's offices each day, Lone Star will be provided daily metrics reflecting the number of documents tagged "Lone Star Reviewed", the number of documents marked "Disputed", and the control numbers of each of those documents.

7. Lone Star Reviewers will be able to run searches from the home page of the Relativity database, sort documents by date, and identify any withheld documents that were previously slipsheeted by Bates number.

8. The Lone Star Reviewers will not have the ability to code the withheld documents except for two tags noted above and an "Attorney Comments" field.

9. ISquared will meet and confer with Lone Star within two business days following completion of the first week of review regarding any documents tagged as Disputed. Lone Star will have access to view the Disputed documents discussed during any such meet and confer.

10. Following completion of the second week of review, ISquared will again meet and confer with Lone Star within two business days. Lone Star will have access to view the Disputed documents discussed during any such meet and confer.

11.     After the Lone Star Reviewers complete their review of the withheld documents and any related issues are resolved, Lone Star will be entitled to depose one ISquared witness, who shall be a corporate representative.  The parties will agree on a mutually convenient date for the deposition, which shall in any event take place before close of discovery in the Texas Action.

12.     ISquared will provide Lone Star with a business records affidavit from its custodian of records for any documents it produces in response to the Subpoena.

13.     Within 21 days of execution of this Agreement, ISquared will provide a privilege log reflecting all documents withheld on the basis of privilege and the basis for each assertion of privilege.

14.     ISquared agrees to waive its right to reimbursable costs incurred from the Subpoena and this Agreement in exchange for Lone Star's agreement to waive any and all claims for attorney's fees and/or costs in the Florida Court, subject to ISquared providing evidence that its alleged reimbursable costs total $35,000.

15.     Within ten days of execution of this Agreement, Lone Star and ISquared will agree on a referee to decide any disputes between Lone Star and ISquared regarding responsiveness, privilege assertions by ISquared, disputes or objections raised by ISquared during depositions of ISquared witnesses, or any other disputes between Lone Star and ISquared arising out of this Agreement.  If ISquared and Lone Star are unable to agree on a referee, the referee will be selected by Judge Phillips, presiding judge of the Texas Court.

16.     Any disputes between Lone Star and ISquared regarding the enforcement of this Agreement shall be within the jurisdiction of Judge Phillips in the Texas Action.

17.     Any disputes between Lone Star and ISquared arising under the Texas protective order shall be within the jurisdiction of Judge Phillips in the Texas Action.

18.     Should Lone Star or ISquared fail to comply with a decision of the agreed-upon referee, the referee's decision shall be enforceable in the Texas Action.

19.     Without waiving its asserted appeal regarding any objections, challenges, or issues that were previously raised in the Florida Action or any rights with respect to Lone Star's deposition of an ISquared witness, ISquared will only argue to the referee whether or not those materials are responsive to the Subpoena and/or privileged.  ISquared will not re-assert or re-argue to the referee any objections, challenges, or issues that were previously raised other than responsiveness and/or privilege.

20.     This Agreement shall not confer jurisdiction on the referee to determine the propriety of privilege assertions made by EagleClaw.

21.     After the meet and confer following completion of the second week of review, disputes may be submitted to I agreed-upon referee under this Agreement.  The referee shall decide any disputes regarding whether a document is responsive to the Subpoena and/or any challenges to ISquared's privilege assertions made by Lone Star.  The parties agree that the referee will also have the authority to rule on any deposition objections or conduct as between Lone Star and ISquared.  The parties agree that the Texas Court will have authority to rule on any deposition objections by or deposition conduct of EagleClaw.

22.     The cost of the agreed-upon referee shall be split equally between Lone Star and ISquared.

23.     Any hearings with the referee shall be transcribed by a certified court reporter, which transcription costs shall be borne equally by both parties.

24.     Upon completion of each above step of this Agreement, and in the event no further orders or determinations by Judge Phillips show ISquared has failed to comply with this

Agreement, Lone Star will agree to file a stipulation to vacate the contempt finding in the Florida

Action. At the same time, ISquared will dismiss its pending appeal of the Florida Action.

25.     Upon completion of each step of this Agreement, and in the event no further orders

or determinations by Judge Phillips show ISquared has failed to comply with this Agreement, Lone

Star will agree that ISquared has complied with the Subpoena and will not seek further discovery

from ISquared, with the following exceptions:

   a. ISquared will agree to voluntarily present for deposition any ISquared witness listed
      by EagleClaw as a potential witness in the Texas Action within 14 days of the
      witness being identified by EagleClaw or at least 7 days prior to trial, whichever
      occurs first;

   b. ISquared will agree to voluntarily present for deposition any ISquared individual
      identified by EagleClaw as a person with knowledge of relevant facts in the Texas
      Action within 14 days of the individual being disclosed by EagleClaw;

   c. If EagleClaw subpoenas ISquared for documents, this paragraph 24 will be stricken
      from the Agreement, and will not bar Lone Star from pursuing additional discovery
      from ISquared; and

   d. Lone Star will provide EagleClaw with copies of the materials produced by
      ISquared in response to the Subpoena. If ISquared separately provides documents
      to EagleClaw for use in the Texas Action, this paragraph 24 will be stricken from
      the Agreement, and will not bar Lone Star from pursuing additional discovery from
      ISquared.

26.     This Agreement is not intended to make ISquared a Plaintiff, Defendant, third-party

Plaintiff, or third-party Defendant in the Texas Action.

Signatures:

_____        Date:    5/9/2024

Justin B. Elegant
Counsel for ISquared


_____        Date:    5/10/2024

Rafe A. Schaefer
Counsel for Lone Star

E-filed in the Office of the Clerk
for the Business Court of Texas
10/16/2024 4:48 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

# EXHIBIT 3

**From:** Andrew Price
**Sent:** Monday, August 19, 2024 5:00 PM
**To:** dmoore@azalaw.com
**Cc:** Rafe A. Schaefer; Timothy Shinn; Abraham Chang; Ta'Chelle Jones; Christopher P. DeNicola; JElegant; tdewey@dpklaw.com
**Subject:** Lone Star NGL Product Services, LLC v. EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC, No. 2021-30388
**Attachments:** AGREEMENT REGARDING LONE STAR NGL PRODUCT SERVICES SUBP(201244840 (004).pdf (executed by ISQ).pdf

Judge Moore,

I represent Lone Star NGL Product Services, LLC ("Lone Star") in a matter pending before the 61st Judicial District Court of Harris County. *Lone Star NGL Product Services, LLC v. EagleClaw Midstream Ventures, LLC and CR Premian Processing, LLC*, No. 2021-30388.

Lone Star issued a third-party subpoena to I Squared Capital Advisors (US) LLC ("ISquared"), which is headquartered in Miami, Florida. Enforcement proceedings were initiated in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida.

In efforts to resolve disagreement between the parties regarding non-party ISquared's discovery obligations in connection with the subpoena, Lone Star and ISquared entered in to an Agreement, pursuant to which the parties agreed to appoint a discovery referee "to decide any disputes between Lone Star and ISquared regarding responsiveness, privilege assertions by ISquared, disputes or objections raised by ISquared during depositions of ISquared witnesses, or any other disputes between Lone Star and ISquared arising out of this Agreement." The Agreement is attached.

Lone Star and ISquared have agreed to seek your engagement as discovery referee under their Agreement.

For the purposes of clearing conflicts:
- Lone Star is represented by Andrew Price, Rafe Schaefer, Abraham Chang, and Tim Shinn at Norton Rose Fulbright in Houston.
- ISquared is represented by Justin Elegant at Berger Singerman LLP in Miami and Thomas Dewey and Christopher DeNicola at Dewey Pegno & Kramarsky LLP in New York.
- Lone Star's party opponent in the matter proceeding before the 61st Judicial District, EagleClaw, is represented by Beck Redden in Houston. EagleClaw is not a party to the Agreement.

ISquared's counsel is copied on this correspondence. Please let us know if you are available to serve as discovery referee under this agreement. If so, please let us know if you have a standard engagement form and please provide your rate sheet.

Thank you,
Andrew Price

**Andrew Price** | Co-Head of Commercial Litigation, United States
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100, Houston, Texas 77010-3095, United States
Tel +1 713 651 5141 | Fax +1 713 651 5246
andrew.price@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT**

*Law around the world*
nortonrosefulbright.com

**NORTON ROSE FULBRIGHT**

E-filed in the Office of the Clerk
for the Business Court of Texas
10/16/2024 4:48 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

# EXHIBIT 4

| From: | Rafe A. Schaefer |
|---|---|
| **Sent:** | Wednesday, October 2, 2024 5:18 PM |
| **To:** | Christopher P. DeNicola; Daryl Moore |
| **Cc:** | Timothy Shinn; Abraham Chang; Ta'Chelle Jones; JElegant; tdewey; Valerie Koinis; Andrew Price |
| **Subject:** | RE: Lone Star - Motion to Compel Documents from ISquared Priv Log |

Judge Moore,

The dates work for Lone Star, too.  We are available for the hearing on either 10/28 or 10/29.

Thanks,
Rafe

**Rafe A. Schaefer** | Partner
Norton Rose Fulbright US LLP
1550 Lamar St., Suite 2000 Houston, Texas  77010-3095, United States
Tel +1 713 651 5255 | Fax +1 713 651 5246
rafe.schaefer@nortonrosefulbright.com

## NORTON ROSE FULBRIGHT

*Law around the world*
nortonrosefulbright.com

**From:** Christopher P. DeNicola <cdenicola@dpklaw.com>
**Sent:** Wednesday, October 2, 2024 5:12 PM
**To:** Daryl Moore <dmoore@azalaw.com>
**Cc:** Rafe A. Schaefer <rafe.schaefer@nortonrosefulbright.com>; Timothy Shinn <timothy.shinn@nortonrosefulbright.com>; Abraham Chang <abraham.chang@nortonrosefulbright.com>; Ta'Chelle Jones <tachelle.jones@nortonrosefulbright.com>; JElegant <JElegant@bergersingerman.com>; tdewey <tdewey@dpklaw.com>; Valerie Koinis <vstefka@azalaw.com>; Andrew Price <andrew.price@nortonrosefulbright.com>
**Subject:** Re: Lone Star - Motion to Compel Documents from ISquared Priv Log

Judge Moore,

Thank you, the below dates work for I Squared.

Sincerely,
Chris

Sent from my iPhone

> On 2 Oct 2024, at 5:33 PM, Daryl Moore <dmoore@azalaw.com> wrote:

> Afternoon:

Are the parties okay with:

10/21 – Response
10/25 – Reply, if any
10/28 or 10/29 – Hearing.

Thanks,

**HON. DARYL L. MOORE**
*Partner*
7136004995 | 800.856.8153
1221 McKinney, Suite 2500
Houston, Texas 77010
<image003.png>
vCard
**AZALAW.COM**

The information contained in this message is privileged, confidential and intended only for the use of the addressee. If the reader of this message is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of the message is strictly prohibited. If you have received this message in error, please immediately notify the sender by return e-mail and return the original message to the sender at the above e-mail address. Thank you.

**From:** Christopher P. DeNicola <cdenicola@dpklaw.com>
**Sent:** Wednesday, October 2, 2024 1:29 PM
**To:** Rafe A. Schaefer <rafe.schaefer@nortonrosefulbright.com>; Daryl Moore <dmoore@azalaw.com>
**Cc:** Timothy Shinn <timothy.shinn@nortonrosefulbright.com>; Abraham Chang <abraham.chang@nortonrosefulbright.com>; Ta'Chelle Jones <tachelle.jones@nortonrosefulbright.com>; JElegant <JElegant@bergersingerman.com>; Thomas E.L. Dewey <tdewey@dpklaw.com>; Valerie Koinis <vstefka@AZALAW.COM>; Andrew Price <andrew.price@nortonrosefulbright.com>
**Subject:** RE: Lone Star - Motion to Compel Documents from ISquared Priv Log

Judge Moore,

I Squared respectfully requests 20 days to respond to the below motion, so that I Squared's response will be due October 21.  Please let us know if that is acceptable.

Sincerely,
Chris

Christopher P. DeNicola
Dewey Pegno & Kramarsky LLP
777 Third Avenue
New York, New York 10017
(212) 943-9000

(212) 943-4325 (facsimile)
cdenicola@dpklaw.com

**From:** Rafe A. Schaefer <rafe.schaefer@nortonrosefulbright.com>
**Sent:** Tuesday, October 1, 2024 4:53 PM
**To:** dmoore <dmoore@azalaw.com>
**Cc:** Timothy Shinn <timothy.shinn@nortonrosefulbright.com>; Abraham Chang <abraham.chang@nortonrosefulbright.com>; Ta'Chelle Jones <tachelle.jones@nortonrosefulbright.com>; JElegant <JElegant@bergersingerman.com>; Thomas E.L. Dewey <tdewey@dpklaw.com>; Valerie Koinis <vstefka@AZALAW.COM>; Christopher P. DeNicola <cdenicola@dpklaw.com>; Andrew Price <andrew.price@nortonrosefulbright.com>
**Subject:** Lone Star - Motion to Compel Documents from ISquared Priv Log

Judge Moore,

Lone Star files the attached Motion to Compel Production of Improperly Withheld Non-Privileged Documents from ISquared.
<image004.png>
 Here is a link to access and download the referenced exhibits.

Please let us know available dates to have this motion heard.

Thank you,
Rafe Schaefer

**Rafe A. Schaefer** | Partner
Norton Rose Fulbright US LLP
1550 Lamar St., Suite 2000 Houston, Texas  77010-3095, United States
Tel +1 713 651 5255 | Fax +1 713 651 5246
rafe.schaefer@nortonrosefulbright.com

# NORTON ROSE FULBRIGHT

*Law around the world*
nortonrosefulbright.com

This email message and any attachments are for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, copying or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments.

To reply to our email administrator directly, send an email to nrfus.postmaster@nortonrosefulbright.com.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

This e-mail and any attachments thereto are intended only for use by the

addressee(s) named herein and may contain legally privileged and/or

confidential information. If you are not the intended recipient of this e-mail,

you are hereby notified that any dissemination, distribution or copying of this

email, and any attachments thereto, is strictly prohibited. If you receive this

email in error please immediately notify me at (212) 943-9000 and permanently

delete the original and any copies of the e-mail, and any printout thereof.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware by **Mimecast Ltd**.

This e-mail and any attachments thereto are intended only for use by the

addressee(s) named herein and may contain legally privileged and/or

confidential information. If you are not the intended recipient of this e-mail,

you are hereby notified that any dissemination, distribution or copying of this

email, and any attachments thereto, is strictly prohibited. If you receive this

email in error please immediately notify me at (212) 943-9000 and permanently

delete the original and any copies of the e-mail, and any printout thereof.

E-filed in the Office of the Clerk
for the Business Court of Texas
10/16/2024 4:48 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

# EXHIBIT 5

8/22/2024 9:12:44 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 91195998
By: JACKSON, MONICA J
Filed: 8/22/2024 9:12:44 AM

NO. 2021-30388

| | | |
|---|---|---|
| Lone Star NGL Product Services LLC (*in its individual capacity and as assignee*), | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| v. | § § § | |
| | § | HARRIS COUNTY, TEXAS |
| EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC, | § § § | |
| Defendants. | § § | 61ˢᵗ JUDICIAL DISTRICT |

## LETTER ROGATORY

TO:   THE ELEVENTH CIVIL CIRCUIT COURT OR AN APPROPRIATE COURT OF THE STATE OF FLORIDA HAVING JURISDICTION OVER ENTITIES HEADQUARTERED IN, AND PERSONS RESIDING IN OR ABOUT CORAL GABLES, FL:

In connection with above captioned action pending before the 61ˢᵗ Judicial District Court of Harris County, Texas, No. 2021-30388 (the "Action"), this Court requests that you cause discovery of certain documents to be taken from the following entity, which, upon information and belief, is within your jurisdiction:

Joseph Payne
3601 N Prospect Dr.
Coral Gables, FL 33133-6811

This Court has determined that there is a sufficient basis for the *subpoena duces tecum* (attached hereto as Exhibit 1) to be issued because the individual subject of the *subpoena duces tecum* possesses personal knowledge and documents concerning information that is directly relevant to issues involved in the Action.  Therefore, this Court has caused the attached *subpoena duces tecum* to Joseph Payne to be issued in connection with the Action.

This Court, therefore, respectfully requests that you, in furtherance of justice, by the proper and usual process of your Court, cause Joseph Payne to produce documents described in the *subpoena duces tecum* for inspection and copying at the offices of Rennert Vogel Mandler & Rodriguez, P.A., 100 SE 2nd Street, 29th Floor, Miami, FL 33131 or at such other location as agreed upon by the parties.

This Court, further, respectfully requests that you, in furtherance of justice, by the proper and usual process of your Court, cause Joseph Payne to appear and provide oral deposition testimony at the offices of Rennert Vogel Mandler & Rodriguez, P.A., 100 SE 2nd Street, 29th Floor, Miami, FL 33131 or at such other location as agreed upon by the parties on October 21, 2024 or at such other time as agreed upon by the parties.

Any costs incurred by you in complying with this request will be reimbursed and/or advanced by Plaintiff Lone Star NGL Product Services LLC.

Signed this _____ day of _____ 2024.

Signed:
9/3/2024    *Fredericka Phillips*
_____
HON. FREDERICKA PHILLIPS

E-filed in the Office of the Clerk
for the Business Court of Texas
10/16/2024 4:48 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

# EXHIBIT 6

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Lone Star Product Services LLC,

CASE NO. 2024-25-AF01

      Plaintiff,

vs.

Pending in the:
DISTRICT COURT OF HARRIS COUNTY TEXAS

EagleClaw Midstream Ventures, LLC and
CR Permian Processing, LLC,

61ST JUDICIAL DISTRICT

      Defendants.

No. 2021-30388

_____/

## SUBPOENA DUCES TECUM
### Subpoena To Produce Documents or Things

**THE STATE OF FLORIDA**

To: Joseph Payne, 3601 N Prospect Dr., Coral Gables, FL 33133-6811

YOU ARE COMMANDED, at the instance of Lone Star NGL Product Services LLC ("Lone Star"), in *Lone Star NGL Product Services LLC v. EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC,* No. 2021-30388, pending before the 61st Judicial District Court of Harris County to produce and permit inspection and copying of the following tangible things in your possession, custody, or control:

**See Exhibit A attached hereto and incorporated herein by reference.**

You are commanded to produce the documents as set forth in Exhibit A within twenty (20) days of service, or at some other time agreed upon by Lone Star and You, at the offices of Rennert Vogel Mandler & Rodriguez, P.A., 100 SE 2nd Street, 29th Floor, Miami, FL 33131.

Unless otherwise excused from this subpoena by this attorney or the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, you shall respond to this subpoena as directed.

**FAILURE TO OBEY THIS SUBPOENA MAY BE TREATED AS A CONTEMPT OF COURT. TEXAS RULE OF CIVIL PROCEDURE 176.S(a) PROVIDES AS FOLLOWS:**

Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

Date of issuance: September 5, 2024

SUBPOENA ISSUED BY:

RENNERT VOGEL MANDLER & RODRIGUEZ, P.A.
Miami Tower
100 S.E. Second Street, Suite 2900
Miami, Florida 33131
Telephone (305) 577-4177
Primary Service Emails:
servicedanielmaland@rvmrlaw.com
serviceshaycohen@rvmrlaw.com

By: ___/s/ *Daniel S. Maland*_____
   Daniel S. Maland
   Florida Bar No. 114932


JUAN FERNANDEZ BARQUIN
Clerk of the Court and Comptroller

309876

SEP 0 5 2024 By: _____
   Deputy Clerk

1. "You" means Joseph Payne.

2. "ISquared" means ISQ Global Infrastructure Fund II L.P. and any of its parents, affiliates (including I Squared Capital Advisors (US) LLC), representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

3. "ECMV" means EagleClaw Midstream Ventures, LLC, including all of EagleClaw Midstream Ventures, LLC's parents, affiliates, representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

4. "Caprock" means CR Permian Processing, LLC, including all of CR Permian Processing, LLC's parents, affiliates, representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

5. "EagleClaw" means ECMV and Caprock, collectively.

6. Kinetik" means "Kineitk Holdings, Inc. including all of Kinetik Holdings, Inc.'s representatives, attorneys, agents, employees, consultants, business partners, and every other person acting or authorized to act on its behalf.

7. "Lone Star" means Lone Star NGL Product Services LLC and any of its parents, affiliates, representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

8. "Fake in Kind", "Fake-in-Kind", and "FIK/TIK" are terms that EagleClaw has used in its internal communications, which EagleClaw asserts is defined as:

   > "Take in Kind" rights can occasionally be somewhat restricted for a producer if the midstream provider has a downstream commitment on Y-Grade. The colloquial phrase sometimes used for such a situation is "fake-in-kind."

9. "Like for Like Exchange" is a term that EagleClaw has used to refer to an accounting / operational practice whereby it delivers volumes of Y-Grade to a Y-Grade Purchaser at one delivery point while offsetting those volumes of Y-Grade to a separate Y-Grade Purchaser at a different delivery point. EagleClaw has further defined "Like for Like Exchange" as follows:

   > A. Well, sometimes -- if Pecos Bend -- since Pecos Bend 4 is a plant that we can utilize to send volumes to Targa, but there's not a physical connection you can send the volumes down a line, send them to Lone Star, and then use, really, kind of, just like-for-like volumes from Toyah, and those can go to Targa.

   > Q. So you're -- you're basically offsetting volumes produced at Pecos Bend 4 with the NGLs coming out of East Toyah under the ECMV agreement, and then sending the East Toyah volumes to Targa.

A. Uhm, I mean, it's really just a like-for-like volume exchange. I mean, the -- the way the system is set up and everything, that there's no outlet to Targa from the Pecos Bend site, and so any barrels are just really exchanged like-for-like.

10. "Jumper" refers to refers to that pipeline that connects the Pecos Bend Facility to the pipeline connecting the Pecos Bend Facility to a pipeline discharging Y-Grade from the East Toyah Facility to Lone Star.

11. "Pecos Bend Facility" refers to the rich gas processing facility in Reeves County, Texas known as "Pecos Bend" owned by Caprock.

12. "East Toyah Facility" refers to the rich gas processing facility in Reeves County, Texas known as the "East Toyah" owned by ECMV.

13. The "Caprock Agreement" means the Natural Gas Liquids Purchase Agreement by and between Lone Star NGL Product Services LLC and Caprock Permian Holdings LLC, effective as of May 1, 2016, including any amendments or modifications thereto.

14. The "ECMV Agreement" means the Amended and Restated Natural Gas Liquids Purchase Agreement by and between Lone Star NGL Product Services LLC and EagleClaw Midstream Ventures, LLC, effective as of October 1, 2016, including any amendments or modifications thereto.

15. The "Agreements" mean the Caprock Agreement and the ECMV Agreement.

16. "Targa" means Targa Resources Corp., Targa Resources GP, LLC, Targa Grand Prix Pipeline LLC, or any of those entities' parent entities, subsidiary entities, or affiliated entities.

17. "Pinnacle" means Pinnacle TransPecos Processing, LLC including that entity's parent entities, subsidiary entities, or affiliated entities.

18. The "Targa ECMV Agreement" means the Raw Product Purchase Agreement by and between EagleClaw Midstream Ventures, LLC and Targa Liquids Marketing and Trade LLC effective as of September 6, 2017, including any amendments or modifications thereto and including any side letters or side agreements modifying or affecting the same.

19. The "Targa Pinnacle Agreement" means the Raw Product Purchase Agreement by and between Pinnacle TransPecos Processing, LLC and Targa Liquids Marketing and Trade LLC effective as of November 1, 2017, including any amendments or modifications thereto and including any side letters or side agreements modifying or affecting the same.

20. The "Targa Agreements" mean the Targa ECMV Agreement and the Targa Pinnacle Agreement.

21. The "Lone Star Audit" refers to any attempts Lone Star undertook to exercise its audit rights under the Caprock Agreement or the ECMV Agreement, including any correspondence between the parties regarding the same and any actual auditing that occurred.

22. The "Targa Audit" refers to the attempts that Targa undertook to exercise its audit rights under the Targa Agreement and/or the Targa Pinnacle Agreement, including any correspondence between the parties regarding the same and any actual auditing that occurred.

23. The "Targa Lawsuit" means Cause No 2023-30966. Targa Liquids Marketing and Trade LLC v. Eagle Claw Midstream Ventures LLC, in the 61st Judicial District Court of Harris County, Texas.

24. "Lawsuit" means Cause No. 2021-30388, *Lone Star NGL Product Services LLC v. EagleClaw Midstream Ventures, LLC, et al.*, in the 61st Judicial District Court of Harris County, Texas.

25. "Document" means each of the following that is in the possession (actual or constructive), custody or control of a party or that can be obtained by a party through the exercise of a superior right to compel production from a third person: handwritten, typewritten, printed, recorded, transcribed, punched, taped, videotaped, photocopied, photostatic, telecopied, filmed, microfilmed or otherwise prepared matter, including without limitation, drafts (however produced or reproduced), papers, book, accounts, drawings, graphs, charts, photographs, videotapes, phono-records, plans, blueprints, computer disks, telexes, telegrams, electronic or videotaped or mechanical recordings, magnetic impulses; e-mails, text messages, instant messages, CDs, DVDs, floppy disks, X-rays and any other data compilation from which information can be obtained or translated into reasonably usable form. Such information should be produced in computer-readable form, if practicable. This definition specifically includes any information stored or existing on computer disks, computer hard drives, or computer networks, including electronic mail or e-mail, regardless of whether such information is or has been maintained in hard copy form. In all cases, where originals and/or nonidentical copies are not available, "documents" also means identical copies of original documents and copies of nonidentical copies. This definition also includes all correspondence and communications, which includes any transmission, transfer, disclosure, or exchange of information between two or more persons, whether orally or in writing, including, without limitation, any conversation or discussion face-to-face or by means of letter, note, memorandum, mail, personal delivery, telephone, telegraph, telex, electronic mail, telecopier, cable or some other medium, whether electronic or otherwise, and whether by chance or prearrangement, formal or informal.

26. "Communications" means any Document, correspondence, electronic message, or other form of recorded information that is mailed, faxed, emailed, sent via text message, sent via social media, sent via instant message, or otherwise transmitted or communicated in any way between persons or entities.

27. "Relate" or "Relating to" means regarding, relating to, referring to, pertaining to, describing, evidencing, supporting, or discussing the referenced matter.

28. "Any" and/or "all" means any and all.

29. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that otherwise might be considered outside its scope.

## INSTRUCTIONS

1. Unless otherwise specified, the Relevant Time Period for the Subpoena is from January 1, 2019 to present.

2. If You withhold any responsive materials because you claim such materials are protected by a legal privilege, please produce a privilege log describing what materials have been withheld in conjunction with Texas Rule of Civil Procedure 193.3.

3. Documents shall be produced as they are kept in the usual course of business, including producing any tabs, labels, or directories of files identifying the Documents. Documents shall be produced in the order in which they appear in Your files, and Documents shall not be shuffled or otherwise rearranged.

4. These requests for production are continuing. Responsive documents that are identified, discovered, generated, or located after the date of the requests or Raptor I's response to the requests shall be produced within a reasonable time after they have been identified, discovered, generated, or located.

5. Counsel for Plaintiff and You shall meet and confer regarding the production format and specifications that will govern Your production of documents and data.

**DOCUMENTS TO PRODUCE:**

1. Documents and Communications You reviewed or relied upon in responding to this Subpoena or preparing for the oral deposition required by this Subpoena.

2. Documents and Communications between or among You, ISquared, Kinetik, or EagleClaw relating to Your response to this Subpoena, Lawsuit, or the Targa Lawsuit.

3. Documents and Communications relating to the terms, conditions, and EagleClaw's obligations under the Caprock Agreement and the ECMV Agreement, including volume commitments, dedications, and processing capacity commitments under each agreement.

4. Documents and Communications relating to the terms, conditions, and EagleClaw's obligations under the Targa Agreement and the Targa Pinnacle Agreement, including its volume commitment(s) / minimum volume commitment(s), dedication(s), or processing capacity commitment(s).

5. Documents and Communications mentioning or relating to "Fake in Kind", "Fake-in-Kind", or "FIK/TIK" in connection with Kinetik, EagleClaw, any of EagleClaw's Producers, or any of EagleClaw's Y-Grade Purchasers.

6. Documents and Communications relating to the diversion of volumes of Y-Grade for minimum volume commitment coverage or volume dedication coverage related to the Targa Agreement, Targa Pinnacle Agreement, or the Agreements.

7. Documents and Communications mentioning or relating to any "Like for Like Exchange" authorized, approved, or otherwise utilized by EagleClaw.

8. Documents and Communications relating to approval, construction, or use of the Jumper.

9. Documents and Communications related to the Lone Star Audit or the Targa Audit.

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Lone Star Product Services LLC,

      Plaintiff,

vs.

EagleClaw Midstream Ventures, LLC and
CR Permian Processing, LLC,

      Defendants.

_____/

CASE NO. 2024-25-AF01

Pending in the:
DISTRICT COURT OF HARRIS
COUNTY TEXAS

61ST JUDICIAL DISTRICT

No. 2021-30388

## SUBPOENA DUCES TECUM
### Subpoena To Produce Documents or Things

**THE STATE OF FLORIDA**

To: Joseph Payne, 3601 N Prospect Dr., Coral Gables, FL 33133-6811

YOU ARE COMMANDED, at the instance of Lone Star NGL Product Services LLC ("Lone Star"), in *Lone Star NGL Product Services LLC v. EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC,* No. 2021-30388, pending before the 61st Judicial District Court of Harris County to produce and permit inspection and copying of the following tangible things in your possession, custody, or control:

**See Exhibit A attached hereto and incorporated herein by reference.**

You are commanded to produce the documents as set forth in Exhibit A within twenty (20) days of service, or at some other time agreed upon by Lone Star and You, at the offices of Rennert Vogel Mandler & Rodriguez, P.A., 100 SE 2nd Street, 29th Floor, Miami, FL 33131.

Unless otherwise excused from this subpoena by this attorney or the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, you shall respond to this subpoena as directed.

**FAILURE TO OBEY THIS SUBPOENA MAY BE TREATED AS A CONTEMPT OF COURT. TEXAS RULE OF CIVIL PROCEDURE 176.S(a) PROVIDES AS FOLLOWS:**

Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

Date of issuance: September 5, 2024

SUBPOENA ISSUED BY:

RENNERT VOGEL MANDLER & RODRIGUEZ, P.A.
Miami Tower
100 S.E. Second Street, Suite 2900
Miami, Florida 33131
Telephone (305) 577-4177
Primary Service Emails:
servicedanielmaland@rvmrlaw.com
serviceshaycohen@rvmrlaw.com

By: ___/s/ *Daniel S. Maland*___
          Daniel S. Maland
          Florida Bar No. 114932

JUAN FERNANDEZ BARQUIN
Clerk of the Court and Comptroller

          **Shadreka Flowers**       SEP 0 5 2024
By: _____
          Deputy Clerk

1. "You" means Joseph Payne.

2. "ISquared" means ISQ Global Infrastructure Fund II L.P. and any of its parents, affiliates (including I Squared Capital Advisors (US) LLC), representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

3. "ECMV" means EagleClaw Midstream Ventures, LLC, including all of EagleClaw Midstream Ventures, LLC's parents, affiliates, representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

4. "Caprock" means CR Permian Processing, LLC, including all of CR Permian Processing, LLC's parents, affiliates, representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

5. "EagleClaw" means ECMV and Caprock, collectively.

6. Kinetik" means "Kineitk Holdings, Inc. including all of Kinetik Holdings, Inc.'s representatives, attorneys, agents, employees, consultants, business partners, and every other person acting or authorized to act on its behalf.

7. "Lone Star" means Lone Star NGL Product Services LLC and any of its parents, affiliates, representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

8. "Fake in Kind", "Fake-in-Kind", and "FIK/TIK" are terms that EagleClaw has used in its internal communications, which EagleClaw asserts is defined as:

   > "Take in Kind" rights can occasionally be somewhat restricted for a producer if the midstream provider has a downstream commitment on Y-Grade. The colloquial phrase sometimes used for such a situation is "fake-in-kind."

9. "Like for Like Exchange" is a term that EagleClaw has used to refer to an accounting / operational practice whereby it delivers volumes of Y-Grade to a Y-Grade Purchaser at one delivery point while offsetting those volumes of Y-Grade to a separate Y-Grade Purchaser at a different delivery point. EagleClaw has further defined "Like for Like Exchange" as follows:

   > A. Well, sometimes -- if Pecos Bend -- since Pecos Bend 4 is a plant that we can utilize to send volumes to Targa, but there's not a physical connection you can send the volumes down a line, send them to Lone Star, and then use, really, kind of, just like-for-like volumes from Toyah, and those can go to Targa.

   > Q. So you're -- you're basically offsetting volumes produced at Pecos Bend 4 with the NGLs coming out of East Toyah under the ECMV agreement, and then sending the East Toyah volumes to Targa.

-- 3 --

A. Uhm, I mean, it's really just a like-for-like volume exchange. I mean, the -- the way the system is set up and everything, that there's no outlet to Targa from the Pecos Bend site, and so any barrels are just really exchanged like-for-like.

10. "Jumper" refers to refers to that pipeline that connects the Pecos Bend Facility to the pipeline connecting the Pecos Bend Facility to a pipeline discharging Y-Grade from the East Toyah Facility to Lone Star.

11. "Pecos Bend Facility" refers to the rich gas processing facility in Reeves County, Texas known as "Pecos Bend" owned by Caprock.

12. "East Toyah Facility" refers to the rich gas processing facility in Reeves County, Texas known as the "East Toyah" owned by ECMV.

13. The "Caprock Agreement" means the Natural Gas Liquids Purchase Agreement by and between Lone Star NGL Product Services LLC and Caprock Permian Holdings LLC, effective as of May 1, 2016, including any amendments or modifications thereto.

14. The "ECMV Agreement" means the Amended and Restated Natural Gas Liquids Purchase Agreement by and between Lone Star NGL Product Services LLC and EagleClaw Midstream Ventures, LLC, effective as of October 1, 2016, including any amendments or modifications thereto.

15. The "Agreements" mean the Caprock Agreement and the ECMV Agreement.

16. "Targa" means Targa Resources Corp., Targa Resources GP, LLC, Targa Grand Prix Pipeline LLC, or any of those entities' parent entities, subsidiary entities, or affiliated entities.

17. "Pinnacle" means Pinnacle TransPecos Processing, LLC including that entity's parent entities, subsidiary entities, or affiliated entities.

18. The "Targa ECMV Agreement" means the Raw Product Purchase Agreement by and between EagleClaw Midstream Ventures, LLC and Targa Liquids Marketing and Trade LLC effective as of September 6, 2017, including any amendments or modifications thereto and including any side letters or side agreements modifying or affecting the same.

19. The "Targa Pinnacle Agreement" means the Raw Product Purchase Agreement by and between Pinnacle TransPecos Processing, LLC and Targa Liquids Marketing and Trade LLC effective as of November 1, 2017, including any amendments or modifications thereto and including any side letters or side agreements modifying or affecting the same.

20. The "Targa Agreements" mean the Targa ECMV Agreement and the Targa Pinnacle Agreement.

21. The "Lone Star Audit" refers to any attempts Lone Star undertook to exercise its audit rights under the Caprock Agreement or the ECMV Agreement, including any correspondence between the parties regarding the same and any actual auditing that occurred.

– 4 –

22. The "Targa Audit" refers to the attempts that Targa undertook to exercise its audit rights under the Targa Agreement and/or the Targa Pinnacle Agreement, including any correspondence between the parties regarding the same and any actual auditing that occurred.

23. The "Targa Lawsuit" means Cause No 2023-30966. Targa Liquids Marketing and Trade LLC v. Eagle Claw Midstream Ventures LLC, in the 61st Judicial District Court of Harris County, Texas.

24. "Lawsuit" means Cause No. 2021-30388, *Lone Star NGL Product Services LLC v. EagleClaw Midstream Ventures, LLC, et al.*, in the 61st Judicial District Court of Harris County, Texas.

25. "Document" means each of the following that is in the possession (actual or constructive), custody or control of a party or that can be obtained by a party through the exercise of a superior right to compel production from a third person: handwritten, typewritten, printed, recorded, transcribed, punched, taped, videotaped, photocopied, photostatic, telecopied, filmed, microfilmed or otherwise prepared matter, including without limitation, drafts (however produced or reproduced), papers, book, accounts, drawings, graphs, charts, photographs, videotapes, phono-records, plans, blueprints, computer disks, telexes, telegrams, electronic or videotaped or mechanical recordings, magnetic impulses; e-mails, text messages, instant messages, CDs, DVDs, floppy disks, X- rays and any other data compilation from which information can be obtained or translated into reasonably usable form. Such information should be produced in computer- readable form, if practicable. This definition specifically includes any information stored or existing on computer disks, computer hard drives, or computer networks, including electronic mail or e-mail, regardless of whether such information is or has been maintained in hard copy form. In all cases, where originals and/or nonidentical copies are not available, "documents" also means identical copies of original documents and copies of nonidentical copies. This definition also includes all correspondence and communications, which includes any transmission, transfer, disclosure, or exchange of information between two or more persons, whether orally or in writing, including, without limitation, any conversation or discussion face-to-face or by means of letter, note, memorandum, mail, personal delivery, telephone, telegraph, telex, electronic mail, telecopier, cable or some other medium, whether electronic or otherwise, and whether by chance or prearrangement, formal or informal.

26. "Communications" means any Document, correspondence, electronic message, or other form of recorded information that is mailed, faxed, emailed, sent via text message, sent via social media, sent via instant message, or otherwise transmitted or communicated in any way between persons or entities.

27. "Relate" or "Relating to" means regarding, relating to, referring to, pertaining to, describing, evidencing, supporting, or discussing the referenced matter.

28. "Any" and/or "all" means any and all.

29. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that otherwise might be considered outside its scope.

## INSTRUCTIONS

1. Unless otherwise specified, the Relevant Time Period for the Subpoena is from January 1, 2019 to present.

2. If You withhold any responsive materials because you claim such materials are protected by a legal privilege, please produce a privilege log describing what materials have been withheld in conjunction with Texas Rule of Civil Procedure 193.3.

3. Documents shall be produced as they are kept in the usual course of business, including producing any tabs, labels, or directories of files identifying the Documents. Documents shall be produced in the order in which they appear in Your files, and Documents shall not be shuffled or otherwise rearranged.

4. These requests for production are continuing. Responsive documents that are identified, discovered, generated, or located after the date of the requests or Raptor I's response to the requests shall be produced within a reasonable time after they have been identified, discovered, generated, or located.

5. Counsel for Plaintiff and You shall meet and confer regarding the production format and specifications that will govern Your production of documents and data.

## DOCUMENTS TO PRODUCE:

1. Documents and Communications You reviewed or relied upon in responding to this Subpoena or preparing for the oral deposition required by this Subpoena.

2. Documents and Communications between or among You, ISquared, Kinetik, or EagleClaw relating to Your response to this Subpoena, Lawsuit, or the Targa Lawsuit.

3. Documents and Communications relating to the terms, conditions, and EagleClaw's obligations under the Caprock Agreement and the ECMV Agreement, including volume commitments, dedications, and processing capacity commitments under each agreement.

4. Documents and Communications relating to the terms, conditions, and EagleClaw's obligations under the Targa Agreement and the Targa Pinnacle Agreement, including its volume commitment(s) / minimum volume commitment(s), dedication(s), or processing capacity commitment(s).

5. Documents and Communications mentioning or relating to "Fake in Kind", "Fake-in-Kind", or "FIK/TIK" in connection with Kinetik, EagleClaw, any of EagleClaw's Producers, or any of EagleClaw's Y-Grade Purchasers.

6. Documents and Communications relating to the diversion of volumes of Y-Grade for minimum volume commitment coverage or volume dedication coverage related to the Targa Agreement, Targa Pinnacle Agreement, or the Agreements.

7. Documents and Communications mentioning or relating to any "Like for Like Exchange" authorized, approved, or otherwise utilized by EagleClaw.

8. Documents and Communications relating to approval, construction, or use of the Jumper.

9. Documents and Communications related to the Lone Star Audit or the Targa Audit.

8/22/2024 9:12:44 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 91195998
By: JACKSON, MONICA J
Filed: 8/22/2024 9:12:44 AM

NO. 2021-30388

| | | |
|---|---|---|
| Lone Star NGL Product Services LLC (*in its individual capacity and as assignee*), | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| v. | § § § | |
| EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC, | § § § | HARRIS COUNTY, TEXAS |
| Defendants. | § § | 61st JUDICIAL DISTRICT |

## LETTER ROGATORY

TO:    THE ELEVENTH CIVIL CIRCUIT COURT OR AN APPROPRIATE COURT OF THE STATE OF FLORIDA HAVING JURISDICTION OVER ENTITIES HEADQUARTERED IN, AND PERSONS RESIDING IN OR ABOUT CORAL GABLES, FL:

In connection with above captioned action pending before the 61st Judicial District Court of Harris County, Texas, No. 2021-30388 (the "Action"), this Court requests that you cause discovery of certain documents to be taken from the following entity, which, upon information and belief, is within your jurisdiction:

Joseph Payne
3601 N Prospect Dr.
Coral Gables, FL 33133-6811

This Court has determined that there is a sufficient basis for the *subpoena duces tecum* (attached hereto as Exhibit 1) to be issued because the individual subject of the *subpoena duces tecum* possesses personal knowledge and documents concerning information that is directly relevant to issues involved in the Action. Therefore, this Court has caused the attached *subpoena duces tecum* to Joseph Payne to be issued in connection with the Action.

This Court, therefore, respectfully requests that you, in furtherance of justice, by the proper and usual process of your Court, cause Joseph Payne to produce documents described in the *subpoena duces tecum* for inspection and copying at the offices of Rennert Vogel Mandler & Rodriguez, P.A., 100 SE 2nd Street, 29th Floor, Miami, FL 33131 or at such other location as agreed upon by the parties.

This Court, further, respectfully requests that you, in furtherance of justice, by the proper and usual process of your Court, cause Joseph Payne to appear and provide oral deposition testimony at the offices of Rennert Vogel Mandler & Rodriguez, P.A., 100 SE 2nd Street, 29th Floor, Miami, FL 33131 or at such other location as agreed upon by the parties on October 21, 2024 or at such other time as agreed upon by the parties.

Any costs incurred by you in complying with this request will be reimbursed and/or advanced by Plaintiff Lone Star NGL Product Services LLC.

Signed this _____ day of _____ 2024.

Signed:
9/3/2024

_____
HON. FREDERICKA PHILLIPS

# EXHIBIT 1

# THE STATE OF TEXAS
## SUBPOENA DUCES TECUM
### Subpoena To Produce Documents Or Things

TO: Joseph Payne, 3601 N Prospect Dr. Coral Gables, FL 33133-6811

YOU ARE COMMANDED, at the instance of Lone Star NGL Product Services LLC ("Lone Star"), in *Lone Star NGL Product Services LLC v. EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC*, No. 2021-30388, pending before the 61st Judicial District Court of Harris County to produce and permit inspection and copying of the following tangible things in your possession, custody, or control and to appear and provide oral deposition testimony:

**See Exhibit A attached hereto and incorporated herein by reference.**

You are commanded to attend and give oral testimony at a deposition in this case at the offices of Rennert Vogel Mandler & Rodriguez, P.A., 100 SE 2nd Street, 29th Floor, Miami, FL 33131 on October 21, 2024 or at such other time and place agreed upon by you and Lone Star.

You are commanded to produce the documents as set forth in Exhibit A within twenty (20) days of service, or at some other time agreed upon by Lone Star and You, at the offices of Rennert Vogel Mandler & Rodriguez, P.A., 100 SE 2nd Street, 29th Floor, Miami, FL 33131.

Unless otherwise excused from this subpoena by this attorney or the district court in the county in which this subpoena is served, you shall respond to this subpoena as directed.

**FAILURE TO OBEY THIS SUBPOENA MAY BE TREATED AS A CONTEMPT OF COURT. TEXAS RULE OF CIVIL PROCEDURE 176.8(a) PROVIDES AS FOLLOWS:**

**Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.**

This subpoena is issued at the request of Lone Star, whose attorney of record is Rafe Schaefer of Norton Rose Fulbright.

– 1 –

Date of Issuance: August 22, 2024

SUBPOENA ISSUED BY:
*/s/Rafe A. Schaefer*
Rafe A. Schaefer
State Bar No. 24077700
rafe.schaefer@nortonrosefulbright.com
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:     (713) 651-5255
Facsimile:     (713) 651-5246

1. "You" means Joseph Payne.

2. "ISquared" means ISQ Global Infrastructure Fund II L.P. and any of its parents, affiliates (including I Squared Capital Advisors (US) LLC), representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

3. "ECMV" means EagleClaw Midstream Ventures, LLC, including all of EagleClaw Midstream Ventures, LLC's parents, affiliates, representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

4. "Caprock" means CR Permian Processing, LLC, including all of CR Permian Processing, LLC's parents, affiliates, representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

5. "EagleClaw" means ECMV and Caprock, collectively.

6. Kinetik" means "Kineitk Holdings, Inc. including all of Kinetik Holdings, Inc.'s representatives, attorneys, agents, employees, consultants, business partners, and every other person acting or authorized to act on its behalf.

7. "Lone Star" means Lone Star NGL Product Services LLC and any of its parents, affiliates, representatives, attorneys, agents, employees, consultants, business partners, and any other person acting or authorized to act on its behalf.

8. "Fake in Kind", "Fake-in-Kind", and "FIK/TIK" are terms that EagleClaw has used in its internal communications, which EagleClaw asserts is defined as:

   > "Take in Kind" rights can occasionally be somewhat restricted for a producer if the midstream provider has a downstream commitment on Y-Grade. The colloquial phrase sometimes used for such a situation is "fake-in-kind."

9. "Like for Like Exchange" is a term that EagleClaw has used to refer to an accounting / operational practice whereby it delivers volumes of Y-Grade to a Y-Grade Purchaser at one delivery point while offsetting those volumes of Y-Grade to a separate Y-Grade Purchaser at a different delivery point. EagleClaw has further defined "Like for Like Exchange" as follows:

   > A. Well, sometimes -- if Pecos Bend -- since Pecos Bend 4 is a plant that we can utilize to send volumes to Targa, but there's not a physical connection you can send the volumes down a line, send them to Lone Star, and then use, really, kind of, just like-for-like volumes from Toyah, and those can go to Targa.

   > Q. So you're -- you're basically offsetting volumes produced at Pecos Bend 4 with the NGLs coming out of East Toyah under the ECMV agreement, and then sending the East Toyah volumes to Targa.

A. Uhm, I mean, it's really just a like-for-like volume exchange. I mean, the -- the way the system is set up and everything, that there's no outlet to Targa from the Pecos Bend site, and so any barrels are just really exchanged like-for-like.

10. "Jumper" refers to refers to that pipeline that connects the Pecos Bend Facility to the pipeline connecting the Pecos Bend Facility to a pipeline discharging Y-Grade from the East Toyah Facility to Lone Star.

11. "Pecos Bend Facility" refers to the rich gas processing facility in Reeves County, Texas known as "Pecos Bend" owned by Caprock.

12. "East Toyah Facility" refers to the rich gas processing facility in Reeves County, Texas known as the "East Toyah" owned by ECMV.

13. The "Caprock Agreement" means the Natural Gas Liquids Purchase Agreement by and between Lone Star NGL Product Services LLC and Caprock Permian Holdings LLC, effective as of May 1, 2016, including any amendments or modifications thereto.

14. The "ECMV Agreement" means the Amended and Restated Natural Gas Liquids Purchase Agreement by and between Lone Star NGL Product Services LLC and EagleClaw Midstream Ventures, LLC, effective as of October 1, 2016, including any amendments or modifications thereto.

15. The "Agreements" mean the Caprock Agreement and the ECMV Agreement.

16. "Targa" means Targa Resources Corp., Targa Resources GP, LLC, Targa Grand Prix Pipeline LLC, or any of those entities' parent entities, subsidiary entities, or affiliated entities.

17. "Pinnacle" means Pinnacle TransPecos Processing, LLC including that entity's parent entities, subsidiary entities, or affiliated entities.

18. The "Targa ECMV Agreement" means the Raw Product Purchase Agreement by and between EagleClaw Midstream Ventures, LLC and Targa Liquids Marketing and Trade LLC effective as of September 6, 2017, including any amendments or modifications thereto and including any side letters or side agreements modifying or affecting the same.

19. The "Targa Pinnacle Agreement" means the Raw Product Purchase Agreement by and between Pinnacle TransPecos Processing, LLC and Targa Liquids Marketing and Trade LLC effective as of November 1, 2017, including any amendments or modifications thereto and including any side letters or side agreements modifying or affecting the same.

20. The "Targa Agreements" mean the Targa ECMV Agreement and the Targa Pinnacle Agreement.

21. The "Lone Star Audit" refers to any attempts Lone Star undertook to exercise its audit rights under the Caprock Agreement or the ECMV Agreement, including any correspondence between the parties regarding the same and any actual auditing that occurred.

– 4 –

22. The "Targa Audit" refers to the attempts that Targa undertook to exercise its audit rights under the Targa Agreement and/or the Targa Pinnacle Agreement, including any correspondence between the parties regarding the same and any actual auditing that occurred.

23. The "Targa Lawsuit" means Cause No 2023-30966. Targa Liquids Marketing and Trade LLC v. Eagle Claw Midstream Ventures LLC, in the 61st Judicial District Court of Harris County, Texas.

24. "Lawsuit" means Cause No. 2021-30388, *Lone Star NGL Product Services LLC v. EagleClaw Midstream Ventures, LLC, et al.*, in the 61st Judicial District Court of Harris County, Texas.

25. "Document" means each of the following that is in the possession (actual or constructive), custody or control of a party or that can be obtained by a party through the exercise of a superior right to compel production from a third person: handwritten, typewritten, printed, recorded, transcribed, punched, taped, videotaped, photocopied, photostatic, telecopied, filmed, microfilmed or otherwise prepared matter, including without limitation, drafts (however produced or reproduced), papers, book, accounts, drawings, graphs, charts, photographs, videotapes, phono-records, plans, blueprints, computer disks, telexes, telegrams, electronic or videotaped or mechanical recordings, magnetic impulses; e-mails, text messages, instant messages, CDs, DVDs, floppy disks, X- rays and any other data compilation from which information can be obtained or translated into reasonably usable form. Such information should be produced in computer- readable form, if practicable. This definition specifically includes any information stored or existing on computer disks, computer hard drives, or computer networks, including electronic mail or e-mail, regardless of whether such information is or has been maintained in hard copy form. In all cases, where originals and/or nonidentical copies are not available, "documents" also means identical copies of original documents and copies of nonidentical copies. This definition also includes all correspondence and communications, which includes any transmission, transfer, disclosure, or exchange of information between two or more persons, whether orally or in writing, including, without limitation, any conversation or discussion face-to-face or by means of letter, note, memorandum, mail, personal delivery, telephone, telegraph, telex, electronic mail, telecopier, cable or some other medium, whether electronic or otherwise, and whether by chance or prearrangement, formal or informal.

26. "Communications" means any Document, correspondence, electronic message, or other form of recorded information that is mailed, faxed, emailed, sent via text message, sent via social media, sent via instant message, or otherwise transmitted or communicated in any way between persons or entities.

27. "Relate" or "Relating to" means regarding, relating to, referring to, pertaining to, describing, evidencing, supporting, or discussing the referenced matter.

28. "Any" and/or "all" means any and all.

29. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that otherwise might be considered outside its scope.

## INSTRUCTIONS

1. Unless otherwise specified, the Relevant Time Period for the Subpoena is from January 1, 2019 to present.

2. If You withhold any responsive materials because you claim such materials are protected by a legal privilege, please produce a privilege log describing what materials have been withheld in conjunction with Texas Rule of Civil Procedure 193.3.

3. Documents shall be produced as they are kept in the usual course of business, including producing any tabs, labels, or directories of files identifying the Documents. Documents shall be produced in the order in which they appear in Your files, and Documents shall not be shuffled or otherwise rearranged.

4. These requests for production are continuing. Responsive documents that are identified, discovered, generated, or located after the date of the requests or Raptor I's response to the requests shall be produced within a reasonable time after they have been identified, discovered, generated, or located.

5. Counsel for Plaintiff and You shall meet and confer regarding the production format and specifications that will govern Your production of documents and data.

## DOCUMENTS TO PRODUCE:

1. Documents and Communications You reviewed or relied upon in responding to this Subpoena or preparing for the oral deposition required by this Subpoena.

2. Documents and Communications between or among You, ISquared, Kinetik, or EagleClaw relating to Your response to this Subpoena, Lawsuit, or the Targa Lawsuit.

3. Documents and Communications relating to the terms, conditions, and EagleClaw's obligations under the Caprock Agreement and the ECMV Agreement, including volume commitments, dedications, and processing capacity commitments under each agreement.

4. Documents and Communications relating to the terms, conditions, and EagleClaw's obligations under the Targa Agreement and the Targa Pinnacle Agreement, including its volume commitment(s) / minimum volume commitment(s), dedication(s), or processing capacity commitment(s).

5. Documents and Communications mentioning or relating to "Fake in Kind", "Fake-in-Kind", or "FIK/TIK" in connection with Kinetik, EagleClaw, any of EagleClaw's Producers, or any of EagleClaw's Y-Grade Purchasers.

6. Documents and Communications relating to the diversion of volumes of Y-Grade for minimum volume commitment coverage or volume dedication coverage related to the Targa Agreement, Targa Pinnacle Agreement, or the Agreements.

7. Documents and Communications mentioning or relating to any "Like for Like Exchange" authorized, approved, or otherwise utilized by EagleClaw.

8. Documents and Communications relating to approval, construction, or use of the Jumper.

9. Documents and Communications related to the Lone Star Audit or the Targa Audit.

E-filed in the Office of the Clerk
for the Business Court of Texas
10/16/2024 4:48 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

# EXHIBIT 7



**Energy Transfer GC NGL Product Services LLC**
1300 Main St
Houston, TX 77002
United States

Original
**Commercial Invoice**

**CR Permian Processing, LLC**
2700 Post Oak Blvd Ste 300
Houston, TX 77056
United States

| | |
|---|---|
| **Invoice Number** | 175994 |
| **Invoice Date** | 11/06/2023 |
| **Due Date** | 11/15/2023 |
| **Currency** | U.S. Dollars |

Attention: Invoice Department CR Permian
Email:
dpeters@eagleclawmidstream.com,nmcinnes@eagleclawmidstream.com,gsolak@eagleclawmidstream.com,jnguyen@eagleclawmidstream.com,aanklam@eagleclawmidstream.com,gasacc

Payment is due: Due 15th of Month Following Delivery
Direct Inquiries To: Invoice Department Energy Transfer GC NGL Pipelines Email address: NGLPipeline@energytransfer.com

**Description**

2023-Oct

**CAPROCK**

| | C2-MX | C3-MX | IC4-MX | NC4-MX | C5+-MX | Totals |
|---|---|---|---|---|---|---|
| **Quantity (USG)** | | | | | | |
| Index Price | | | | | | |
| Transportation Fee | | | | | | |
| Fractionation Fee | | | | | | |
| **Price** | | | | | | |
| **Amount (USD)** | | | | | | |

Total: $ (16,097,371.84)

Due to CR Permian Processing, LLC $ (16,097,371.84)

Page 1 of 1

Confidential

EC-LST_00143441

E-filed in the Office of the Clerk
for the Business Court of Texas
10/16/2024 4:48 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

# EXHIBIT 8

**Energy Transfer GC NGL Product Services LLC**
1300 Main St
Houston, TX 77002
United States

Original
**Commercial Invoice**

| **EagleClaw Midstream Ventures, LLC** | | |
|---|---|---|
| 2700 Post Oak Blvd Ste 300 | **Invoice Number** | 175995 |
| Houston, TX 77056 | **Invoice Date** | 11/06/2023 |
| United States | **Due Date** | 11/15/2023 |
| | **Currency** | U.S. Dollars |

Attention: Invoice Department Eagleclaw
Email:
dpeters@eagleclawmidstream.com,nmcinnes@eagleclawmidstream.com,gsolak@eagleclawmidstream.com,jnguyen@eagleclawmidstream.com,gasaccounting@kinetik.com,nwatson@kineti

Payment is due: Due 15th of Month Following Delivery
Direct Inquiries To: Invoice Department Energy Transfer GC NGL Pipelines Email address: NGLPipeline@energytransfer.com

**Description**

**2023-Oct**

**PENNTEX**

| | C2-MX | C3-MX | IC4-MX | NC4-MX | C5+-MX | Totals |
|---|---|---|---|---|---|---|
| **Quantity (USG)** | | | | | | 5,669,286.00 |
| Index Price | | | | | | |
| Transportation Fee | | | | | | |
| Fractionation Fee | | | | | | |
| **Price** | | | | | | |
| **Amount (USD)** | | | | | | $ (2,976,883.92) |

Page 1 of 2

**Energy Transfer GC NGL Product Services LLC**
1300 Main St
Houston, TX 77002
United States

Original
**Commercial Invoice**

**EagleClaw Midstream Ventures, LLC**
2700 Post Oak Blvd Ste 300
Houston, TX 77056
United States

| | |
|---|---|
| **Invoice Number** | 175995 |
| **Invoice Date** | 11/06/2023 |
| **Due Date** | 11/15/2023 |
| **Currency** | U.S. Dollars |

Attention: Invoice Department Eagleclaw
Email:
dpeters@eagleclawmidstream.com,nmcinnes@eagleclawmidstream.com,gsolak@eagleclawmidstream.com,jnguyen@eagleclawmidstream.com,gasaccounting@kinetik.com,nwatson@kineti

Payment is due: Due 15th of Month Following Delivery
Direct Inquiries To: Invoice Department Energy Transfer GC NGL Pipelines Email address: NGLPipeline@energytransfer.com

**Description**

**EAGLECLAW**

| | C2-MX | C3-MX | IC4-MX | NC4-MX | C5+-MX | Totals |
|---|---|---|---|---|---|---|
| **Quantity (USG)** | | | | | | 35,532,378.00 |
| Index Price | | | | | | |
| Transportation Fee | | | | | | |
| Fractionation Fee | | | | | | |
| **Price** | | | | | | |
| **Amount (USD)** | | | | | | $ (16,037,348.65) |

Total: $ (19,014,232.57)

**Due to EagleClaw Midstream Ventures, LLC** $ (19,014,232.57)

Page 2 of 2

Confidential

EC-LST_00143443

Tab F

## Parth Gejji

**From:** Foster Baird <Foster.Baird@txcourts.gov>
**Sent:** Friday, October 18, 2024 4:28 PM
**To:** Andrew Price; Rafe A. Schaefer; Abraham Chang; Timothy Shinn; Tom Ganucheau; Fields Alexander; Mary Kate Raffetto; Garrett Brawley; Cassie Maneen; cindy.hickman@nortonrosefulbright.com; angelina.martinez@nortonrosefulbright.com; tachelle.jones@nortonrosefulbright.com
**Cc:** Kirina McNamara
**Subject:** 24-BC11A-0004, Additional Briefing/Hearing Dates

*** This message came from outside Beck Redden LLP. ***

Counsel:

The Court is in receipt of the Joint Brief in Support of Removal to Business Court filed on October 16, 2024.  The Court invites further briefing regarding what effect, if any, Section 8 of House Bill 19 has on the Court's authority to hear this case—including, but not limited to, expanding upon the Parties' current Argument Section I-C.  Should the parties opt to provide additional briefing, please submit the briefing on or before November 4, 2024.

Furthermore, the Court would like to schedule an oral hearing and provides the following options for your consideration:

 ➤ November 12, 2024: 10:00 a.m. or 1:00 p.m.
 ➤ November 13, 2024: Any time between 1:00 p.m. and 3:00 p.m.

Kindly reply to all and confirm your availability for one of the proposed time slots at your earliest convenience next week.

Thank you for your prompt attention to this matter.

Respectfully,



**Foster K. Baird**
Staff Attorney, Texas Business Court Eleventh Division
301 Fannin Street, Houston, Texas 77002
foster.baird@txcourts.gov

1

Tab G

E-filed in the Office of the Clerk
for the Business Court of Texas
11/4/2024 5:03 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0004

NO. 24-BC11A-0004

| | | |
|---|---|---|
| LONE STAR NGL PRODUCT SERVICES LLC (*in its own capacity and as assignee*), | §<br>§<br>§<br>§ | IN THE BUSINESS COURT |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | ELEVENTH BUSINESS COURT DIVISION |
| EAGLECLAW MIDSTREAM VENTURES, LLC AND CR PERMIAN PROCESSING, LLC, | §<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§<br>§ | HARRIS COUNTY, TEXAS |

**LONE STAR NGL PRODUCT SERVICES, LLC'S ADDITIONAL BRIEF
IN SUPPORT OF REMOVAL TO BUSINESS COURT**

Pursuant to the Court's October 18, 2024 invitation for additional briefing, Plaintiff Lone Star NGL Product Services, LLC ("Lone Star") files this brief in support of removal to the Texas Business Court.

**BACKGROUND**

On September 13, 2024, Lone Star and Defendants EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC (collectively, "EagleClaw") entered into an agreement to have their ongoing business dispute heard by the Texas Business Court. *See* Subsequent Agreement, Joint Brief in Support of Removal to Business Court ("Joint Brief") [Oct. 16, 2024], Exhibit 1. To effectuate the Subsequent Agreement, Lone Star and EagleClaw jointly removed this suit to the Texas Business Court on September 17.

On September 26, the Court requested the parties to brief the propriety of removal to Texas Business Court, and the parties filed a Joint Brief on October 16, 2024. On October 18, 2024, the Court invited further briefing regarding "what effect, if any, Section 8 of House Bill 19 has on the

203565968                                                    - 1 -

Court's authority to hear this case—including, but not limited to, expanding upon the Parties' current Argument Section I-C."

## ARGUMENT

Section 8 of House Bill 19 presents no bar to this Court's ability to adjudicate this dispute. This is so for several reasons.

First, the parties' post-September 1 Subsequent Agreement provides this Court authority and jurisdiction to adjudicate the dispute. Second, Section 8's effective date does not limit the existence or jurisdiction of the Texas Business Court, which is created by Section 5 of House Bill 19. Third, Section 8 of House Bill 19 does not limit the Business Court's jurisdiction to post-September 1, 2024 cases. Fourth, any pronouncement from the Office of Court Administration is irrelevant, because the Office of Court Administration lacks the ability to affect the Texas Business Court's authority or responsibility. Fifth, the parties' Subsequent Agreement invites this Court to adjudicate this dispute, and the Court will not err by enforcing the parties' contractual agreement. For each reason, the Court has jurisdiction and authority to hear the dispute.

**I. The Post-September 1, 2024 Subsequent Agreement Provides This Court Jurisdiction and Authority to Adjudicate the Dispute.**

The parties entered into the Subsequent Agreement on September 13, 2024—after the Business Court began accepting cases. *See* Act of May 25, 2023, 88th Leg., R.S., ch. 380, § 5 (H.B. No. 19) ("House Bill 19"). The date of the parties' Subsequent Agreement is important, as is the fact that House Bill 19 expressly authorized parties to confer jurisdiction on the Business Court by agreement.

House Bill 19 expressly authorizes litigants to *create* jurisdiction in the Business Court. Section 1 of House Bill 19 creates Section 25A.004(d)(2) of the Texas Government Code, which provides that the "business court has civil jurisdiction concurrent with district courts" to adjudicate

any action that "**arises out of a contract** or commercial transaction **in which the parties to the contract or transaction agreed in the contract or a subsequent agreement that the business court has jurisdiction of the action** . . . ." House Bill 19, § 1, amending TEX. GOV. CODE § 25A.004(d)(2) (emphasis added).

By expressly allowing parties to confer jurisdiction and authority on the Court by agreement, the Texas Legislature created a court that is jurisdictionally different from the limited subject matter jurisdiction scheme for the judicial branch of the federal government created by Article III of the United States Constitution. Nor does allowing the parties to confer jurisdiction and authority on this Court by agreement implicate any of the important federalism concerns implicated by Article III jurisdiction.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 435 (5th Cir. 2019) (internal quotation marks omitted). For that reason, district courts "have an independent obligation to determine whether subject-matter jurisdiction exists." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Accordingly, because a federal court's jurisdiction springs only "from the nature and limits of the judicial power of the United States," a federal court's jurisdiction is considered "inflexible and without exception." *Xitronix Corp.*, 916 F.3d at 435.

But that is not how the Texas Business Court works. House Bill 19 expressly contemplates the ability of litigants to **confer** jurisdiction on the Business Court **by agreement**. House Bill 19, § 1, amending TEX. GOV. CODE § 25A.004(d)(2).

Thus, House Bill 19 is not a limited grant of jurisdiction to a statutorily- and constitutionally-limited court like a federal Article III court. It is instead a recognition of, and expansion on, Texas' paramount public policy favoring freedom of contract:

[C]ompetent parties shall have the utmost liberty of contract, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice. This paramount public policy mandates that courts are not lightly to interfere with this freedom of contract. Absent compelling reasons, courts must respect and enforce the terms of a contract the parties have freely and voluntarily entered.

*Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017) (quotations and footnotes omitted); *see also Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007) ("[P]ublic policy requires . . . that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice."); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 767 (Tex. 2005) ("Therefore, you have this paramount public policy to consider— that you are not lightly to interfere with this freedom of contract.") (quoting *Wood Motor Co. v. Nebel*, 238 S.W.2d 181, 185 (1951)).

House Bill 19 envisions enforcement of Business Court "subsequent agreements" just as Texas public policy favors enforcing any other contractual agreements. To that end, House Bill 19 anticipates Business Court jurisdiction looks more like the enforcement of a venue-selection clause, forum-selection provision, or arbitration agreement. *See* TEX. CIV. PRAC. & REM. CODE § 15.020; *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 803 (Tex. App.—Austin 2004, pet. denied) ("Texas courts rigorously enforce valid arbitration agreements . . . ."); *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 262 (Tex. App.—Austin 2010, pet. dism'd) ("Under federal and Texas law, forum-selection clauses are prima facie valid.").

By empowering parties to confer authority and jurisdiction on the Business Court by agreement, the Texas Legislature reaffirms the ability of sophisticated parties in Qualified Transactions to contractually dictate where their disputes are heard. The Texas Legislature authorized jurisdiction via "subsequent agreement" to allow for instances where, as here, parties

203565968                                          - 4 -

to an existing contract did not have an agreement to jurisdiction in the Texas Business Court—in this instance because the contracts predated the creation of the Business Court itself. TEX. GOV. CODE § 25A.004(d)(2). Thus, by allowing for jurisdiction either in the underlying contract or through a subsequent agreement, the clear intent of the Legislature is to allow parties to agree to jurisdiction in the Business Court *at any time*. *Id.*

House Bill 19 also reflects the Legislature's intent to allow parties to agree——as Lone Star and EagleClaw did, here—to jurisdiction *during the pendency of an action*. *Id.* at § 25A.006(f) ("A party may file an agreed notice of removal *at any time during the pendency of the action*.") (emphasis added). Thus, the parties' Subsequent Agreement and agreed removal is expressly authorized as timely.

Here, the Subsequent Agreement—entered into *after* the Business Court's creation— confers authority and jurisdiction on this Court. The Subsequent Agreement is entitled to be enforced in this Court, pursuant to Texas' paramount public policy favoring freedom of contract, as envisioned by the Texas Legislature in House Bill 19.

II. **Section 8's Effective Date Does Not Limit the Existence or Jurisdiction of the Texas Business Court, Which Is Created by Section 5 of House Bill 19.**

Section 8 of House Bill 19 provides that the "changes in law made by this Act apply to civil actions commenced on or after September 1, 2024." House Bill 19, § 8. But House Bill 19 is an act made up of nine sections and not every section creates "changes in law." Accordingly, Section 8 of House Bill 19 has limited reach.

Section 1 amends "Subtitle A, Title 2, Government Code" by "adding Chapter 25A," Section 2 amends "Sections 659.012(a) and (e)" of the Government Code, and Section 3 amends "Section 837.001(a), Government Code . . . ." House Bill 19, §§ 1–3. Section 4–7 by contrast, do not change any statute or law. And, crucially, Section 5 is the provision that expressly *creates* the

203565968                                           - 5 -

Business Court. *See id.* § 5 ("Except as otherwise provided by this Act, the business court is created September 1, 2024.").

Accordingly, regardless of any changes in law made in Sections 1–3 of House Bill 19, Section 5 provides for the unfettered existence of the Texas Business Court, starting on September 1, 2024. Section 5's creation of the Texas Business Court necessarily also vests the Court with subject matter jurisdiction—especially given that the Business Court's jurisdiction can be conferred **by the parties themselves** through their contractual agreements.

Simply put, only **certain sections** of House Bill 19 are limited by Section 8. The creation of the Business Court—contained in Section 5—is in no way limited by Section 8. Therefore, Section 5 of House Bill 19 provides this Court subject matter jurisdiction to adjudicate this dispute, where the parties determined in their Subsequent Agreement to confer authority and jurisdiction on the Business Court.

**III.      Section 8 of House Bill 19 Does Not Limit the Business Court's Jurisdiction to Post-September 1, 2024 Cases.**

In addition to its limited reach within House Bill 19 itself, Section 8 also departs from clear and unambiguous language used in **other** acts to limit enforcement of a statutory change to be only **prospective** in nature.

Section 8 of House Bill 19 is short. The entirety of Section 8 is a single sentence stating, "The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024." House Bill 19, § 8. Section 8 contains no discussion of what law applies to cases already pending on September 1, 2024. Nor does Section 8 contain any limiting language that states Section 8 **only** applies to post-September 1, 2024 actions. These are crucial and intentional omissions.

Indeed, comparing Section 8 of House Bill 19 against other similar acts shows that Section 8's timing limitation is a significantly narrower proscription than that included when the Texas Legislature intends statutes to apply only ***prospectively***. For example, House Bill 19 was passed by the 88th Legislature on June 9, 2023. ***Just three days later***, the 88th Legislature passed House Bill 4381, which amended Chapter 52 of the Civil Practice & Remedies Code. *See* Act of May 17, 2023, 88th Leg., R.S., ch. 763, § 2 (H.B. 4381).

House Bill 4381 contains ***additional*** language making clear that it applies only prospectively:

| House Bill 19, Section 8 | Act of May 17, 2023, 88th Leg., R.S., ch. 763, § 2 (H.B. 4381) |
|---|---|
| The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024. | The change in law made by this Act applies ***only*** to a civil action commenced on or after the effective date of this Act. ***A civil action commenced before the effective date of this Act is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose.*** |

As another example, when Section 38.001 of the Civil Practice & Remedies Code was amended in 2021, the 87th Texas Legislature used ***additional*** language to reflect that the amendment was enforceable only on a prospective basis:

| House Bill 19, Section 8 | 2021 Tex. Sess. Law Serv. Ch. 665, (H.B. 1578, § 2)) |
|---|---|
| The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024. | The change in law made by this Act applies ***only*** to an award of attorney's fees in an action commenced on or after the effective date of this Act. ***An award of attorney's fees in an action commenced before the effective date of this Act is governed by the law applicable to the award immediately before the effective date of this Act, and that law is continued in effect for that purpose.*** |

203565968

These distinctions are important. It is long-settled Texas law that "[e]very word of a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction requires that each sentence, clause, phrase and word be give effect if reasonably possible." *Eddins-Walcher Butane Co. v. Calvert*, 298 S.W.2d 93, 96 (Tex. 1957). That means that Section 8 of House Bill 19 cannot be read to mean the same thing as the more expansive provisions in House Bills 4381 and 1578.

Texas courts must "presume the Legislature chose statutory language deliberately and purposefully . . . ." *Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021). That presumption extends to words ***deliberately omitted***, as well. *Id.* (presuming that the Legislature "likewise excluded language deliberately and purposefully"); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("[W]e believe every word ***excluded*** from a statute ***must also be presumed to have been excluded for a purpose***.") (emphasis added).

Accordingly, Section 8 of House Bill 19 cannot be interpreted synonymously with other acts that unambiguously limit their enforceability on a prospective basis. The Texas Legislature intended to exclude its commonly-used words of limitation from Section 8. That decision must be given meaning in this Court.[1]

Section 8 should be read in harmony with the remainder of House Bill 19, which expressly envisions the ability of the parties themselves to agree to the Business Court's authority and

---

[1] Lone Star is aware of an opinion of the Business Court of Texas, First Division, regarding construction of Section 8 of House Bill 19 in the context of an ***opposed*** removal to Business Court. *See* Opinion and Order, at * *Energy Transfer LP v. Culberson Midstream LLC*, No. 24-BC01B-0005 (Tex. Bus. Ct. Oct. 30, 2024). That Court's analysis of Section 8 of House Bill 19 did not analyze the effect of a ***post***-September 1, 2024 subsequent agreement to Business Court jurisdiction. Nor does that Court's analysis apply here, where that the parties have agreed to, waived, and invited the Court's jurisdiction in this dispute. And the October 30, 2024 Opinion and Order ***did not*** determine that Section 8 creates a ***subject matter jurisdiction*** limitation on the Court's authority that could not otherwise be waived. *Id.* Indeed, in the entirety of the twelve page opinion, the words "subject matter jurisdiction" were never used. *Id.*

jurisdiction. Here, the parties' Subsequent Agreement reflects their decision to commit this dispute to the Business Court's authority and jurisdiction.

**IV.     The Office of Court Administration Lacks Authority to Dictate the Texas Business Court's Authority or Responsibility.**

To the extent the Court has considered the August 13, 2024 memorandum from the Office of Court Administration to Texas District and County Clerks regarding "Creation of the Business Court of Texas, Effective September 1, 2024,"[2] Lone Star respectfully suggests that memorandum has no bearing on House Bill 19 or the jurisdiction of this Court.

In the memorandum, the Office of Court Administration wrote that removals to Business Court apply "only to actions filed after 9/1/2024." But as shown above, that limitation is not found in House Bill 19. Further, House Bill 19—and Texas Government Code Section 25A.0171(d)— provide that the "Office of Court Administration of the Texas Judicial System *does not have any authority or responsibility related to the duties of the business court under this chapter*." TEX. GOV. CODE § 25A.0171(d) (emphasis added). Accordingly, pronouncements from the Office of Court Administration are irrelevant to this Court's *authority* to hear this case.

**V.     The Parties Have Invited This Court by Subsequent Agreement to Adjudicate This Dispute, and the Court Does Not Err by Abiding the Parties' Agreement.**

In the Subsequent Agreement, the parties contractually agreed to submit this dispute to the jurisdiction and authority of the Texas Business Court. Further, in the parties' Joint Brief, the parties jointly invited this Court to exercise its authority and jurisdiction. The parties' agreement is enforceable under House Bill 19, and the parties' Subsequent Agreement and agreed removal is

---

[2] Available at https://www.txcourts.gov/media/1459014/creation-of-tx-business-court-memo-to-dist-cty-clerks.pdf.

enforceable under settled Texas law—regardless of the reach of the effective date contained in Section 8 in House Bill 19.[3]

## CONCLUSION

Pursuant to its Subsequent Agreement with EagleClaw and House Bill 19, Lone Star looks forward to adjudicating this dispute in this Court.

---

[3] The fact that a statutory "effective date" exists in a bill does not mean that that date cannot be waived. *See Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999); *see also Hirad v. State*, 14 S.W.3d 351, 352 (Tex. App. Houston [14th Dist.] 2000, pet. ref'd).  Thus, the "effective date" contained in House Bill 19 creates no subject matter jurisdiction hurdle for this Court.

Dated: November 4, 2024          Respectfully submitted,

/s/ Andrew Price
   Andrew Price
   State Bar No. 24002791
   andrew.price@nortonrosefulbright.com
   Rafe A. Schaefer
   State Bar No. 24077700
   rafe.schaefer@nortonrosefulbright.com
   Abraham Chang
   State Bar No. 24102827
   abraham.chang@nortonrosefulbright.com
   Timothy Shinn
   State Bar No. 24125409
   timothy.shinn@nortonrosefulbright.com
Fulbright Tower
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

*Attorneys for Plaintiff Lone Star NGL
Product Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing instrument to be served electronically, in accordance with the Texas Rules of Civil Procedure, on November 4, 2024, on all counsel of record.

/s/ Rafe A. Schaefer
Rafe A. Schaefer

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rafe Schaefer on behalf of Rafe Schaefer
Bar No. 24077700
rafe.schaefer@nortonrosefulbright.com
Envelope ID: 93915620
Filing Code Description: No Fee Documents
Filing Description: Lone Star NGL Product Services, LLC's Additional Brief In Support of Removal to Business Court
Status as of 11/5/2024 7:43 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Cindy Hickman | | cindy.hickman@nortonrosefulbright.com | 11/4/2024 5:03:02 PM | SENT |
| Rafe AronSchaefer | | rafe.schaefer@nortonrosefulbright.com | 11/4/2024 5:03:02 PM | SENT |
| Andrew Price | | andrew.price@nortonrosefulbright.com | 11/4/2024 5:03:02 PM | SENT |
| Thomas Ganucheau | 784104 | tganucheau@beckredden.com | 11/4/2024 5:03:02 PM | SENT |
| Fields Alexander | 783528 | falexander@beckredden.com | 11/4/2024 5:03:02 PM | SENT |
| Abraham Chang | | abraham.chang@nortonrosefulbright.com | 11/4/2024 5:03:02 PM | SENT |
| Garrett Brawley | 24095812 | gbrawley@beckredden.com | 11/4/2024 5:03:02 PM | SENT |
| Angelina Martinez | | angelina.martinez@nortonrosefulbright.com | 11/4/2024 5:03:02 PM | SENT |
| Cassie Maneen | | cmaneen@beckredden.com | 11/4/2024 5:03:02 PM | SENT |
| Timothy Shinn | | timothy.shinn@nortonrosefulbright.com | 11/4/2024 5:03:02 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 11/4/2024 5:03:02 PM | SENT |

Associated Case Party: Lone Star NGL Product Services LLC (in its own capacity and as assignee)

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ta'chelle Jones | | Tachelle.jones@nortonrosefulbright.com | 11/4/2024 5:03:02 PM | SENT |

# Tab H

OFFICIAL COURT REPORTER'S RECORD
TRIAL COURT CAUSE NO. 24-BC11A-0004

_____
LONE STAR NGL PRODUCT            IN THE STATE OF TEXAS
SERVICES, et al.,                BUSINESS COURT
          Plaintiffs,   HOUSTON DIVISION

vs.

EAGLECLAW MIDSTREAM
VENTURES, LLC., et al.,
          Defendants.
_____
**HEARING**
**OFFICIAL COURT REPORTER'S TRANSCRIPT OF PROCEEDINGS**
_____

On the 12th day of November, 2024, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Sofia Adrogué, Judge presiding, held in the State of Texas Business Court, Houston Division;

Proceedings reported by machine shorthand.

Nichole Forrest, RDR, RMR, CRR, CRC
Texas CSR #12777
Official Court Reporter
State of Texas Business Court
crnichole@gmail.com

**APPEARANCES**

_____

ON BEHALF OF PLAINTIFFS:

NORTON ROSE FULBRIGHT
Andrew Price, Esq.
Rafe Schaefer,Esq.
Abraham Chang, Esq.
1550 Lamar Street
Suite 2000
Houston, Texas 77010
713- 651-5151


_____


ON BEHALF OF DEFENDANTS:

BECK REDDEN
Fields Alexander, Esq.
Parth Gejji, Esq.
Garrett Brawley, Esq.
1221 McKinney Street
Suite 4500
Houston, Texas 77010
713-961-6240

**PROCEEDINGS**

**November 12, 2024; 1:03 p.m.**

_____

(The following proceedings held in open court.)

* * *

THE COURT: First of all, good afternoon. Very appreciative and honored to be here. This is not my first hearing for the business court. I had the luxury of conducting the first hearing of all the Texas Business Courts across Texas, but it is the first live one. So a momentous occasion. So we're honored to have you.

In a moment, I'll ensure that you-all, for appearance purposes, have the opportunity to present yourself and the firms. But first of all, wanted to just -- for the record, just give a paragraph or two about procedure of -- that we're here and then give everyone ample opportunity.

I do commend you on your expertise and your efforts. I know that I've asked a lot of you as we carefully orchestrated, in essence, a briefing record.

And given the momentous occasion and what we are potentially doing, I thought that was best.

Not really just -- not only just for this case, but for just the business courts generally. So I appreciated the gravitas of it, and I appreciate your efforts in return.

So the original petition filed in May of 2021, and you've got the accompanying 15 volumes of appendixes, more or less, has now reached a pivotal state. It's here before us.

As you know, September 13, 2024, the parties reached a Rule 11 Agreement consenting to jurisdiction of the Texas Business Court. Shortly after, on September 16th, you submitted an initial joint brief in support of removal.

In response, we issued -- the Court issued on September 26th, requesting, in essence, additional briefing, which you appropriately provided on time, actually a little early, October 16th.

Subsequently, on October 18th, I requested additional briefing on Section 8 in the propriety of jurisdiction, which, again, you timely responded on November 4th.

As a result, we're now convening on November 12th. And, again, my true gratitude to all the attorneys, the associates, and everyone else that has worked so hard to do this.

We're moving on today's hearing, which is being convened under Rule 355. The purpose is, of course, to address the actions of the business court.

The primary issue for us today is the Court's jurisdiction and the propriety of the removal from the district court to the business court. I've set this hearing sua sponte as I surmise for cognizant. Since my first request for briefing, there has now been several opinions that have been issued.

Just given the timing, I'm cognizant that you responded -- you noted at least one in one of the footnotes in your briefing. The reason I'm confident you didn't do the others was just because they came in prompt succession afterwards.

Only one other Court has had a hearing and that was held in San Antonio. I wanted the opportunity to have a hearing if counsel wanted it, and you indeed confirmed that you did want the hearing.

This is sua sponte to ensure, from my perspective, and the Court's perspective obviously, that the legal questions regarding removal and jurisdiction are addressed fully and fairly.

One point of clarification. I am going to ask questions on a litany of things, including

jurisdiction. That does not necessarily mean that the Court believes that I may have to reach that in order to get to a decision.

But for purposes of all the hard work and expense that went with this, we're going to explore all of these subjects.

My goal is as follows: I'm going to momentarily ask you to put in your appearances. Not sure how many of you are going to speak. We have time. How much time?

I have another hearing. I think it commences at 4:30. I'm not suggesting it will take that long, but I want to make sure and be comfortable that, as you need to be heard, you will be heard.

I have a series of questions that I've already prepared, with the great help of Foster, the interns, and, of course, with my efforts that I will ask. And so you're cognizant, there will be questions regarding change in law, creation of jurisdiction, contextual argument, the only argument.

I will also ask you, of course, about the permissive appeal questions. We will definitely get to that, including I will ask at the end if there's an interest in providing briefing on that subject, just to ensure that everything gets fully briefed.

I may have some questions about the *Prystash* case, the waiver of effective date and also *Jorrie,* Judge Sharp's opinion in San Antonio. That was recent. And even if you haven't read it, you don't need to have read it to be able to answer the question.

Okay. That is it from all my initial at the outset. My preference, for lack of better terms, if counsel will commence with plaintiff, if you'd like to put that in your appearance.

And, Nichole, if you can see me, you just need to stop me whenever you need a break. And I do anticipate that after all counsel has spoken, prior to me asking questions, if you haven't asked for a break, I will absolutely break a moment to allow counsel to take a moment, and of course to you as well.

THE COURT REPORTER: Thank you, Your Honor.

THE COURT: Of course. Keep me posted.

Okay. Plaintiff's counsel, would you like to make an appearance?

MR. PRICE: For the plaintiff, Your Honor, Andrew Price, Rafe Schaefer, and Abe Chang. We're from Norton Rose Fulbright.

MR. GEJJI: Good morning, Your Honor. For

the defendants, Parth Gejji from Beck Redden. I'm joined by my colleagues, Fields Alexander, Garrett Brawley and Cassie Maneen.

THE COURT: Welcome. Thank you very much.

How do you wish to proceed?

MR. PRICE: Well, Your Honor, I think we'd like to proceed however is best for you. As you know, this is an agreed situation. So we don't want to waste the Court's time.

Mr. Shaefer is happy to kind of go point by point through all the briefing. We have in fact read the *Jorrie* case, as well as all the other cases by your brethren on some of these issues, but we have not coordinated with Beck Redden. So I don't want to be duplicative and have Mr. Shaefer do a bunch of things and then Parth do a bunch of things. So however the Court would like to proceed.

THE COURT: Well, thanks. And the great news is, I'm obviously very appreciative of the time, and appreciate, as I stated previously, the gravitas of the situation.

So, yes, assume I've read, I've carefully read. However, that does not mean that all the great work in preparation that you've had needs to be wasted.

So if you each, in essence, whether you want to call it opening remarks, opening statements, I'm completely comfortable and can give you both opportunity to do so. But, yes, assume I've read, but I'm early enough in my stage as a judge that I'm definitely not going to be bored or think that there's too much dialogue.

MR. PRICE: Great. Well, then, in that case, you know, I think the Court is right that this presents a different situation than any of the other situations that have been addressed by other Courts. And Mr. Shaefer will kind of go through that, and then our colleagues will supplement, I'm sure.

THE COURT: Yeah, I completely concur.

And most reminiscent, of course, is the San Antonio one, but that in and of itself didn't entail the true Rule 11. I mean, it was -- we know. But there is a distinction with a difference.

So, please.

Thank you very much.

MR. PRICE: Thank you, Your Honor.

THE COURT: Yes.

MR. SCHAEFER: I would start by saying, as you mentioned, it is momentous to be here. This is a court that is a new court, has been created by the

Texas legislature with appointed judges; right? I mean, it is a very different court maybe than Texas has had in the past.

The analog I know that comes to a lot of people's minds is Article III Courts, with appointed judges in limited jurisdiction. And there's a lot of law on Article III subject-matter jurisdiction that we all learned in our first years at law school and that I know is filtering through a lot of questions that I presume the Court is going to ask today.

The Texas Business Court is not like an Article III court. It is a court where parties can specifically agree to jurisdiction. And parties, sophisticated parties to large disputes, can create subsequent agreements that specifically confer jurisdiction on the business court.

Section 25A.004 allows parties the ability to give the Court jurisdiction. In that way, it is a completely unique type of court. Completely separate from the Article III court that we're familiar with thinking about that's limited by the Constitution and important federal rules of concerns.

Here, this Court reflects Texas's long-standing public policy designed to encourage, promote and enforce parties' freedom of contract.

And that's exactly what happened here, Your Honor, as you've noted, is the parties entered into a September 13th agreement. It is a seven-page-long agreement choosing this Court's forum, choosing this Court as venue, waiving personal jurisdiction challenges, and giving this Court all of the jurisdictional trappings that the parties are allowed to give the Court. Exactly, it's Exhibit 1 to our removal brief. The joint removal brief.

All of the trappings that parties are allowed to give the Court for jurisdiction under the statute, that's the provision of the statute 25A.004 titled *Jurisdiction and Powers*. It is a separate, wholly separate provision from Section 8.

Section 8 is a provision about the effective date of House Bill 19. It is not a grant or limitation of subject-matter jurisdiction for the Court.

One thing that I don't think was in our briefing, Your Honor, but that we wanted to note on this effective date issue, at the same time the Texas Business Court was created, the Fifteenth Court of Appeals was also created.

Senate Bill 1045, Section 1.14, has an almost identical effective date provision that says

the changes in law made by this act, Senate Bill No. 1045, apply to appeals perfected on or after September 1st, 2024.

And as this Court knows, when that court began to exist on September 1st, 2024, all of the existing appeals that were within that court's jurisdiction, were transferred to that court. And that court had subject-matter jurisdiction to adjudicate those appeals and has been adjudicating those appeals and the constitutionality of that court has been upheld by the Texas Supreme Court.

And so Section 8 as an effective date is not a subject-matter limitation on the Court. As such, it's a limitation that the parties can agree around.

And as *Prystash* shows, Your Honor, it's a limitation that, vis-à-vis the Court, the parties can invite the Court to adjudicate the dispute, estopping them from any later arguments that the Court doesn't have jurisdiction or that it was error for the Court to decide the case.

The *Prystash* case is very clear that an effective date in a statute is not an unwaivable, you know, always appealable subject-matter issue.

And I would say -- I've mentioned Texas's

public policy favoring freedom of contract; right? I think the Texas Supreme Court every term has opinion that says freedom of contract is paramount public policy. You know, something to that effect.

*Prystash* was a capital death penalty case. That is a much, much higher, and, frankly, you know, more important jurisdictional issue than a commercial dispute.

And if in *Prystash* a party can tell a Court to apply a statute outside of its effective date, and that is enforceable in the capital murder context, it is certainly enforceable in the context where you have two publicly traded companies in a multiple-hundred-million-dollar dispute entering into a seven-page long agreement that they want this case to be adjudicated by this Court.

The only thing I would add on *Jorrie* -- and I'm sure we will talk more about *Jorrie*. *Jorrie* was not an instance where there was a subsequent agreement created after September 1st.

*Jorrie,* a party removed it -- and, frankly, removed it without consent of the other party at the time of removal. And then after the Court asked whether the parties' -- you know, the parties' position, the defendant said, we just want to go to

trial. If you look at their briefing, it says: We just want to go to trial. Are you willing to set us for trial? We want to go to trial.

What they didn't do is invite the Court to exercise jurisdiction over a case like the parties here have. They didn't exercise -- execute a subsequent agreement conferring subject-matter jurisdiction on a Court like the parties here have after September 1st.

And so you mentioned *Jorrie* is the most analogous. And it is, of the five or so remand opinions, it is, but it is not the situation that we have here today.

And so with that, obviously, the Court is going to have questions --

THE COURT: I appreciate that. Go ahead.

MR. SCHAEFER: One other thing on *Jorrie*.

THE COURT: Sure.

MR. SCHAEFER: Not all the parties even responded to the Court. You can see that on page 2 of the opinion.

The *Jorrie-Espada* parties removed -- in *Jorrie* not all parties took a position in front of the Court. The *Jorrie-Espada* parties removed and defendants filed an advisory stating they didn't

oppose to the removal, but Cobra Acquisitions -- it doesn't appear Cobra Acquisitions took any position, which is the interpleader/third-party defendant.

It's not entirely clear, but it doesn't appear that all parties consented and certainly didn't enter into a subsequent agreement giving the Court jurisdiction.

THE COURT: Thank you.

And, Nichole, for your edification, it's *Jorrie*, J-O-R-R-I-E, and it is a Business Court of Texas Fourth Division case, Cause No. 24-BC04B-0001.

THE COURT REPORTER: Thank you, Your Honor.

THE COURT: Absolutely.

Thank you very much for that. And, obviously, I know that Beck Redden will go forward and I will hold my questions until they're done as well. And I appreciate -- I do appreciate very much that there is true distinction. And as you said, the closest in analogy, albeit not exactly as that.

The one thing that you stated that you had not previously briefed, it is on Fifteenth Business Court [sic] and the Senate Bill 1045. I am aware. I've now spent tremendous time focused. I know there's a sui generis group of cases that were going

to be transferred; north of 70 that did. I do think that is a difference inherent that's present here.

That said, I've not studied it. I don't know at this juncture that I'm going to need anything about it. But after I hear the rest and ask questions and we take a break, I may decide on that. I appreciate it.

Anything else from your perspective?

MR. SCHAEFER: Not right now, Your Honor. Thank you.

THE COURT: Okay. Thanks.

MR. GEJJI: Good morning, Your Honor.

THE COURT: Good morning.

MR. GEJJI: Parth Gejji on behalf of the defendants.

Your Honor, as you rightly pointed out, the parties have a Rule 11 Agreement, and the defendants agree that this lawsuit is within the subject-matter jurisdiction of this Court.

And I want to really crystallize the issue in front of you today. Because there are a lot of questions floating around about the subject-matter jurisdiction issues and how expansive it is. But the question before this Court is actually very narrow.

And there's no reason for you to issue an

order that finds jurisdiction in this case and then conflicts with any of the other orders that have been issued, for example, by the First Division Business Court.

And that narrow question is: When there is consent between the parties -- that is between the plaintiffs and the defendants -- does jurisdiction exist for cases that were commenced before September 1st, 2024?

The answer to that question is irrefutably yes. Consent cases are fundamentally different than non-consent cases.

And, Your Honor, there are two ways to find jurisdiction in this case. There is the hard way and there is the easy way that was proposed to you in the joint brief. And we prefer the easy way.

The hard way would be to engage in an analysis of Section 8 and basically rule against, you know, the First Division and the other divisions, and find that, you know, despite the language of Section 8, the case -- you know, cases commenced before September 1st, 2024, are within the ambit of Section 8.

But the way we have proposed with the plaintiffs in the joint brief sidesteps that question

entirely, because when there is consent, you can say an effective date provision, such as the one in Section 8, is waivable or forfeitable.

And that means that you don't even need to look at Section 8. You can just go and look at Section 5, which creates the business court, and then you can look at the jurisdictional provisions that have been enacted into the government code.

And for that proposition, we have cited the *Prystash versus State* case to you. And, Your Honor, I checked this morning, it's still good law. And it still has controlling effect.

And under that case, Section 8 is not an issue when both parties agree that the statutory changes that are being made are effective as to their case. Therefore, we agree with Lone Star, the plaintiff, that Section 8 is not a subject-matter jurisdiction provision. It should be construed simply as a provision that triggers the exercise of the jurisdictional provisions. And that's a very important difference.

And so what we rely on, Your Honor -- and this is in the joint brief -- is Section 5, which creates the business court, without reference to Section 8. And then we rely on the subsequent

business agreement -- subsequent agreement provision and the other provisions that we have cited to you in our joint brief.

So, Your Honor, because the question is narrow, I believe that this Court can find jurisdiction and write the order in such a way that there is no conflict that's created by any of the other holdings that have broader questions in non-consent cases.

And with that, Your Honor, I'll stop my preprepared remarks and answer any questions that you might have.

THE COURT: I appreciate it. Please feel free to sit. I appreciate your time.

I have a number of questions. I fear that I'm going to be speaking more than you guys at your own hearing -- gender neutral as to the ladies.

But that said, and what I'm going to do is pose some questions. Again, first within the group of changes in law, creation of jurisdiction, contextual argument, the only argument. Let me just pose one question at a time, and either you can each decide to answer or if you feel whomever answers it first suffices, we can go to the next. I appreciate it very much.

First of all, although I think it was clear, I reread the briefs and the area in which -- on the change of law. And then you basically say there's some paragraphs that do have a change of law and some that don't.

In rereading -- and indulge me one second -- it appeared to be that you tried to differentiate which sections created a change of law or not.

But one question about this: Does your alleged right to create jurisdiction under Chapter 25A, does that qualify for you as a change in the law?

MR. GEJJI: Your Honor --

THE COURT: Yeah.

MR. SCHAEFER: Go ahead.

MR. GEJJI: I think I may have an answer to you. And it might be helpful, Your Honor, to look at House Bill 19. I don't know if you have a copy in front of you, but I have copies to provide the Court if you would like.

THE COURT: Please approach the bench.

MR. GEJJI: May I approach, Your Honor?

THE COURT: Yeah, of course.

And I have a number of notebooks.

Thank you. I appreciate it.

Go ahead.

MR. GEJJI: Your Honor, if you look at House Bill 19, the changes in law are pretty clear, because you can see that they're underlined.

And so Section 1 has amendments to Chapter 25A. Section 2 has other amendments to other provisions of the government and other codes.

But if you'll look at the other sections after Section 1, 2, and 3, and that starts I believe, Your Honor, on page 25 --

THE COURT: 25 or 22?

MR. GEJJI: I'm looking at the bottom of page 25. There's Section 500 --

THE COURT: Oh, yeah. I thought you were starting to discuss the areas that weren't solidly underlined and that commences on 22. But I'm at 25 with you.

Go ahead.

MR. GEJJI: Right. And so, you know, anything that's not underlined is not a quote/unquote change in law that's being referenced in Section 8. These are independent sections. And so the establishment of this Court is happening in Section 5. And necessarily you don't establish a Court without it having inherent subject-matter jurisdiction.

And so the change in law that's being referenced in Section 8 is actually the underlined parts of the bill that get inserted into the various codes; but it's not Section 5, which establishes this Court.

So the effect of that, Your Honor, is a change in law, you know, the Court gets established independently. The change in law is the various kind of jurisdictional triggering provisions. For example, the subsequent agreement provision, other provisions like that. But those changes in law, you know, the effective date can be triggered as to them under the *Prystash* case, would be our position.

THE COURT: And I'm going to go back to that case. I appreciate it.

Please feel free to sit down. I appreciate that.

What limitations are there on the parties' alleged right to create jurisdiction in the business court?

MR. SCHAEFER: I mean, I will answer that.

I think the limitations are those limitations set forth in 25.004. You have the set of lawsuits involving internal affairs. You have certain lawsuits involving publicly traded companies. And

then separately you have the ability of parties -- and this is 25.004(d): To create jurisdiction when a lawsuit arises out of a contract or commercial transaction in which the parties to the contract or transaction agreed in the contract or a subsequent agreement that the business court has jurisdiction of the action, except in insurance cases.

And then it has to also involve a qualified transaction and the amount in controversy has to exceed $10 million.

THE COURT: No, and I did not -- I'm cognizant of all that.

MR. SCHAEFER: Okay.

THE COURT: As you can surmise, the impetus for my question was more toward -- more of a policy question.

MR. SCHAEFER: Okay. I don't think there is one.

THE COURT: Okay.

MR. SCHAEFER: The policy is in a -- when you have a qualified transaction and a dispute that exceeds $10 million, the parties -- Texas law presumes that the parties are sophisticated enough to decide whether to agree to jurisdiction in this court at the time of contracting, in a contractual amendment, or in

a subsequent agreement while a case is pending, like the parties did here.

And that's why an agreed removal can be performed at any time. It's not --

THE COURT: Even if a case has been pending -- excuse me.

Even if a case has been pending since 2021 and all the tremendous amount of work that has been done by you, the parties and, of course, the judge in the other matter?

MR. SCHAEFER: Yes.

THE COURT: No limitation? Okay.

Yes.

MR. GEJJI: Yes, Your Honor.

And we agree with the plaintiff. And, Your Honor, I sense the Court's concern is, you know, parties are not allowed to create subject-matter jurisdiction on their own. The Court has its own duty and authority to think about a subject-matter jurisdiction.

But to be very precise and clear, we're not asking you to step outside the bounds of 25A, Chapter 25A, and invite a lawsuit into this court that would not meet the triggers or the jurisdictional provisions of 25A.

All we're saying is Section 8, which is the effective date provision, is an available provision. And, therefore, we do fall within the jurisdiction. And the limits that you're concerned about have been laid out by the legislature. We're not trying to violate those limits.

THE COURT: I'm going to continue. I'm going to go back to the questions within the whole policy question. A couple of other questions.

What impact would allowing cases filed before September 1st to be transferred have on the case laws and resource allocation of the business court?

Of what you just did, what if others do the same? From your perspective, they're able to do so, contractually do so, and come, even though the courts have spent years doing their work right here in this building?

MR. PRICE: Your Honor, I think the fact that we're now two months in and we're -- we're it, we're the only folks that have done it, is probably an indicator that there's not going to be some -- from a policy perspective -- some flood of cases.

I mean, the fact of the matter is, I think a lot of times when cases are existing, maybe have the

history that our case has, parties have differing views about how they are positioned in that given forum, and it makes it difficult to reach a subsequent agreement, like we were able to do.

And I think the fact that you haven't seen any more subsequent agreements, like we have done, in two months, I think ought to give the Court comfort that there's not going to be a flood of, you know, hundreds of cases into the business court if our case were allowed to stay.

THE COURT: No, and I appreciate that.

And you can imagine the impetus for me these questions are really serving as the conduit for other questions that perhaps my brethren are also asking.

So I happen to be in part the conduit, because you're fortunate enough -- we're fortunate enough to have this opportunity. And I appreciate your statement.

To that end, feel free to sit, stand, whatever is more comfortable for you.

One other in that same vein. What safeguards, if any, exist to prevent parties from, in essence, manipulating jurisdiction, if that's one approach to do it, or create a jurisdiction by

strategically agreeing to transfer cases to the business court mid-litigation?

I surmise you appreciate where I'm going.

MR. GEJJI: Your Honor, I do.

And I'd like to respond both to your efficiency question about work that's been done by prior judges and to this question.

First of all, subject-matter jurisdiction should not rise and fall on how efficient, you know, it is for the system. It really should rise and fall on whether the Court has jurisdiction under the statute or whether it does not.

And so to take into consideration, for example, you know, the three years of work that may or may not have been done in another court, would not be a proper -- would not have a proper place in a subject-matter jurisdiction inquiry. This really is about your power to hear this case.

And then, secondly, as to the safeguards. The safeguards have been denounced by the legislature. And we're not trying to violate those safeguards. For example, there's not a family law dispute where we just enter into a subsequent agreement and now they're in front of the business court. Rather, it falls into the very parameters that the legislature has set out.

THE COURT: Okay.

Yes.

MR. SCHAEFER: Your Honor, if I may just add to that as well. We are also in a unique situation where the judge in our case who oversaw our case for three years was not re-elected.

And so regardless of what happens, we are going to have a new judge overseeing our case. And so we -- I think the parties are all very appreciative of the time that Judge Phillips put into our case, and our subsequent agreement was intended in no way to diminish from that work and those efforts.

But regardless of what happens in January, she is no longer going to be the judge, and there is going to have to be a new judge overseeing the case. And the parties have contractually agreed, consistent with what the legislature authorized parties to do, that you are going to be that judge.

THE COURT: I appreciate that. I'm going to continue with my questions.

If Section 8 is not meant to limit the applicability of Chapter 25A to civil actions commenced on or after September 1st, then what meaning does it have?

MR. PRICE: I'll take a swing at that.

In the sense that I think that there's an important distinction between the extent to which it might impose some sort of limit and to the extent that it would be deemed jurisdictional. And I think that's going right to the heart of the *Prystash* case. That's P-R-Y-S-T-A-S-H.

So I think that's the answer. It does have meaning, but it doesn't have jurisdictional meaning. I mean, it's an uncodified -- you know, it is an uncodified extrinsic piece of the statute. I mean, I think, you know, with due respect to Judge Sharp in *Jorrie*, you know, Judge Jorrie [sic] concludes Section 8 is jurisdictional and we disagree with that. And she does her analysis on page 6 of her opinion by talking about the Court acknowledging the Court derives its power from Article V of the Constitution and from statute. And she says specifically from the code's new Chapter 25A.

Well, it's undisputed that Section 8 is not in 25A. She doesn't really address that, other than to just go on and say, well, I'm going to read -- I'm going to go ahead and read this uncodified extrinsic piece of the bill as a jurisdictional limitation. I think we -- and that's inconsistent with *Prystash*.

THE COURT: And I appreciate it. I'm going to get to *Prystash*. And as you can tell, I've voluminous things on my desk, trying to follow and think and then ask further questions.

One question, just query in this instance. So you provided me Section 19, I appreciate that -- excuse me -- House Bill 19. I appreciate that.

So there is an advocate piece offered by Senator Bryan Hughes, who is the author of House Bill 19. And in the short piece titled -- I'm sure you've seen it, but it is *Trailblazing for Tomorrow: The Texas Business Court's Progressive Revamp of State Judicial System.*

There's a quotation that says: Further existing matters will not suddenly be thrust in a tumultuous mass removal, as HB 19 stipulates that TBC will apply only to those civil actions commenced on or after September 1st.

So you're nodding. It sounds like you've seen this. I'm sure we all have.

So what's your response?

MR. SCHAEFER: Well, I think our case, as a juxtaposition to the five opinions, the five removal opinions that have been issued, is exactly in line with that piece and that -- and that concept.

Section 8 is a safeguard for parties who are already embroiled in litigation and don't consent to be in business court. Don't enter into a subsequent agreement to be in business court.

And there has not been a mass removal. There were several removals of cases without consent and without subsequent agreement. And those cases are largely or so far uniformly getting remanded. You then have our case and we are a separate animal. And in our case, you have an agreement of the parties conferring jurisdiction on this Court.

And as Mr. Price mentioned, we're the only case that has done that. There is no other case like our case. And you certainly can't point to our case and say our case is an example of chaos or mass removals to business court.

THE COURT: Don't disagree with that.

I'm going to go to another question. Could 25A.004(d)(2) refer -- I'll say it again -- 25A.004(d)(2) refer to form selection clauses and the right to amend form selection clauses following the creation of the business court.

MR. ALEXANDER: Your Honor, Fields Alexander.

The answer is, I think that it could. But

the clear text indicates that it's not the only thing that it's referring to, because it very clearly addresses both agreements reached in the contract or agreements reached in a subsequent agreement, which is precisely what we have here.

So the idea that it could be limited to form selection clauses in the parties' initial agreement is belied by the language of the legislature.

THE COURT: I appreciate that. Thank you.

I'm now on this limiting language, this only argument. What legislative history or other evidence -- and I read carefully and I did note, I appreciated the charts, but the point of distinction of the others that specifically had the word "only."

That said, what legislative history or other evidence exists to support the assertion that the omission of the limiting language from Section 8 was indeed intentional and not merely the result of broad legislative drafting, for instance?

MR. SCHAEFER: Your Honor, I think we would point to the Texas Supreme Court's pronouncements on how to interpret legislation, and that you can't really read into statutes the idea that they were unintentionally drafted; right?

So the fact that a statute is drafted one way in one context in the same, you know, 88th legislature, and a similar provision is drafted differently, that has to be given some meaning.

Just like if you had, you know, two contract provisions that are slightly differently worded, they can't be interpreted to mean the exact same thing.

And so here we would say the Section 8 of House Bill 19 has to be interpreted differently than House Bill 4381 on Section 7 of our supplemental brief, as an example. And what that means, in our view, Your Honor, is Section 8 is kind of a classic effective date. There's nothing more or less or greater about Section 8. It's an effective date for House Bill 19.

As an effective date, as we know from *Prystash*, the parties can invite the Court to act outside of the effective date of the statute. And so that's -- when we're referring to the only argument, that's the point, is if the legislature has intended to make clear that there were no ways for parties to agree around Section 8, they would have included language to that effect.

And by excluding the word "only" in the

first sentence, by excluding the second sentence that they include in numerous other instances, they allow parties in commenced actions to invite the Court to apply 25A in existing cases.

THE COURT: Thank you.

Yes, yes.

MR. GEJJI: If I may add and supplement?

THE COURT: Sure.

MR. GEJJI: You'll notice that the parties issued -- joined in the joint brief, and then Lone Star filed the additional brief.

And I just want to be clear, because I had referred you earlier to the hard way to get to jurisdiction in this case and the easy way. I think what we're grappling with is really kind of the hard way when you're asking questions about, well, what happens with the actions of the word "only"? You know, does that have contextual significance? What does the provision mean?

And, indeed, if you go down that path, you could find jurisdiction in this case, but you might create conflicts with some of the other business court divisions.

And at least from the defendant's perspective, I think the safer and probably the better

course is to sidestep this analysis entirely and say whatever Section 8 might mean, we know that an effective date provision can be waived if there is consent between the parties. And this is one of the very few unique cases where there is consent.

THE COURT: And I appreciate you saying that. I'm meticulously, and perhaps a little bit slowly, walking through all of my questions. We'll get there. But I appreciate that. I do. Very much.

And perhaps from your perspective, spending a little too much time on the limiting language, but I'm going to ask another question around it.

Whoever wants to speak -- and let me also say, there's other counsel. At any point, if some of the younger counsel -- always throughout the year from female colleagues, if anyone else wants to take on, I welcome anyone speaking on the subject.

How can the lack of limiting language in Section 8 be reconciled with the general legal principles that new laws are presumed to apply prospectively unless explicitly stated otherwise?

So how can the lack of limiting language in Section 8 be reconciled with the general legal principles that new laws are presumed to apply

prospectively unless explicitly stated otherwise?

MR. SCHAEFER: Your Honor, from Lone Star's perspective, I don't think our -- our position is not Section 8 doesn't mean anything. Our position is not Section 8 actually means that Chapter 25A applies to all cases, no matter what. That is not what we propose 25 -- Section 8 means.

Our emphasis on the lack of limiting language is intended to focus on the fact that if the legislature wants to make clear that even a subsequent agreement of the parties, or even a *Prystash*-styled agreement and invitation for the Court to adjudicate the dispute is not sufficient, it can write that in the statute.

And it knows how to write that in the statute because it has -- it's written similar things, including in the very same legislature like it did in House Bill 4381. It did not include that language in House Bill 19. And so House Bill 19 should not -- Section 8 of House Bill 19 should not be read to preclude what the parties have done here. It is not a broad all-encompassing effective date that precludes any application of House Bill 19 prior to September 1, 2024, over the parties' consent.

THE COURT: Okay. Momentarily, I'm going

to go to *Prystash*. Trying to -- I'm looking at this, giving it deep reflection.

One question that I had was, in your additional briefing, was there -- was there an attempt to de-emphasize your reliance on that case? Or are you -- I'm trying to appreciate -- and let me say this. I need to give credit where credit is due. I have some great interns and also Foster that were working with me on this, including over the weekend. And that was just a notation we had. And the nerd in me wants to appreciate that. And I appreciated their thoughts on that.

Go ahead.

MR. SCHAEFER: We absolutely didn't mean to de-emphasize or downplay *Prystash*.

THE COURT: Okay.

MR. SCHAEFER: We just didn't want to be repetitive.

THE COURT: No, I agree. And let me say this. No, and I appreciate that very much. Because it was -- you had a short section on Section 8, which is what we asked. It was interesting, of course, that it was just two criminal law cases, which, of course, caught our attention. But I appreciate that.

So there is, quoting from that case,

*Prystash,* at 3 S.W.3d 522 at 531, it says: The question was not whether *Powell* could waive a right, it was whether he could complain of an action he requested; this is more, and different, from waiver.

So one of the questions, as we were contemplating this was, does, from your perspective, *Prystash* overrule *Powell* based on the doctrine of invited error?

MR. SCHAEFER: Yes.

THE COURT: Okay.

MR. SCHAEFER: I think if you go to the next page, 532 -- I have a Westlaw -- I don't know if the Court -- It's on page 10 of the Westlaw copy.

It says: We should not have permitted *Powell* to raise as error an action that he procured. Insofar as we did, our decision in *Powell v. State* is overruled.

We think *Prystash* expressly overrules *Powell.*

THE COURT: Yeah. And the answer is -- I think we have LEXIS. If you have it, I'll also take it. Thank you.

May we turn to the permissive appeal questions?

I've read your briefing, the original

brief at 11/12 and then in other parts 5 and 7, et cetera.

I'm very much thinking of section -- Texas Civil Practice and Remedies Code 51.014(d).

And as you know: On a party's motion or on its own initiative, a trial Court in a civil action may, by written order, permit an appeal for an order that is not otherwise appealable if the order to be appealed involves a controlling question of law with which there is a substantial ground for difference or opinion or an immediate appeal from the order may materially advance the ultimate termination of the litigation.

So to that end, I've got three or four questions in permissive appeal. The first one is -- and feel free among you, whoever wants to speak. It can be more than one. My brethren were all quite interested in all this.

First, how would permissive appeal in this case advance the ultimate termination of this litigation? Cognizant, of course -- and I've read more than once -- your Rule 11. You're coming back here regardless and I'm looking forward to it.

The question -- but, in essence, how would a permissive appeal advance the ultimate termination

of this litigation?

MR. ALEXANDER: Your Honor, I think it might advance the ultimate termination of this litigation by giving both parties, all parties, certainty as to the jurisdictional issues before us, whether we're confronting them following a remand and a nonsuit and a refiling or following a permissive appeal.

I think not only will it give certainty to litigants around the state, but I think it will give some degree of certainty to these parties that there's not some jurisdictional trap that we might be confronted with on appeal.

I'll harken the Court to, in a somewhat analogous vein, diversity jurisdiction, which, as the Court knows, can be raised as a trap to the unwary on appeal. I know, because it's happened to me. Even though neither side briefed it and neither side believes it, it's before the Court of Appeals.

So I do think it could be of some benefit to the parties here. And I know it could be of great benefits to litigants around the state.

THE COURT: And I appreciate very much. And that is no doubt part of the consideration, just in terms of what we're creating. And I appreciate

that. And your clients being willing -- or perhaps you're doing so pro bono -- to engage in this endeavor.

Part of the criteria within Section 5104(d) is, of course, that there's substantial -- oh, please don't, you don't need to get up -- substantial ground for difference of opinion.

So I'm trying in part just the timing is such. Now no one has raised -- no one has yet, of course -- I don't believe the other parties in the other cases approached it just quite in this manner. So I commend you for being inordinately innovative, sophisticated and all other great word choices.

As you know, there's at least already two appeals, traditional appeals, for two of the opinions so far and -- yes.

MR. PRICE: Well, I was just going to follow along on my friend's comments. Look, I think -- we think we've done it right. I mean, we think that the invited error arguments, *Prystash*, the arguments made by our colleagues across here, we think we're right and we think we belong here and that the Court ought to keep us here. And let's move forward and try the case.

And that the risk that there'll be some

sua sponte determination later by an appeals court that this Court, you know, kept it incorrectly, I think we're willing to take that risk. I think we're just simply saying, if the Court were to disagree, we would like to be able to perhaps take it up and -- get it fixed and that that would be in everybody's best interest.

THE COURT: I appreciate that.

And within this vein, there's no doubt -- just for a moment -- if they're in again. I'm exploring all conversation, all different -- all different subjects. So I feel that, given the amount of time we all spent to get here, that I've tried to anticipate everything that perhaps I or other colleagues may have.

If indeed the decision is to order remand, what I'm trying to determine is, trying to be very mindful of procedural hurdles and the economics. Trying to determine whether to certify the permissive appeal, because I'm trying to determine if really we have the ability to do so.

And would the Fifteenth Court believe we fit the criteria; that's one of the things I'm grappling with.

Because just wasting additional resources

from my perspective, we get there. If the decision ends up being that I believe it would be remanded, so we go there, we go in that direction. You know, clearly the Fifteenth Circuit [sic] says it doesn't fit the criteria, as it perhaps may do so for the appeal. Unclear, obviously.

MR. PRICE: Your Honor --

THE COURT: Yes, go ahead.

MR. PRICE: -- I mean, to the extent, I think you used the phrase I think "procedural hurdles." I think -- and this is in our original brief, joint brief, if I recall correctly. There has been a substantial amount of third-party discovery that has been done and that is ongoing. We have a discovery referee.

THE COURT: Yeah. And for your edification, yes, you have, in footnote 2 on your joint brief in support, page 5, footnote 2, you go through all of the bullet points, including -- I know there's -- Daryl has been appointed the referee.

MR. PRICE: Right.

THE COURT: Yes.

MR. PRICE: And so there are -- I think a -- if the Court is considering the procedural hurdles of a remand -- well, hey, I read in the

agreement if I remand it, they're just going to nonsuit and refile in business court, then I'll just be back here.

I think there is a possibility that that would create some procedural difficulties with regard to these third parties. Because I can't anticipate what they may do that would, in fact, add costs, elongate this case, which has, frankly, been going on quite a long time already.

And so I don't think it's frictionless or costless to just think: Well, I'll remand. There'll be a nonsuit. They'll be back in front of me. And it'll all just pick right back up where it is. That's not exactly a 100 percent certainty.

THE COURT: No. And to be clear -- I was -- and I appreciate that statement, having spent 30 years doing litigation, and the cost associated, nothing is frictionless and everything comes as a serious cost, mostly to our clients. So I completely appreciate that. I appreciate it and duly noted.

And, yes, I've read and I'm very aware of the amount of discovery and pending matters.

I was also thinking about the Fifteenth, if there's a permissive to the Court of Appeals. Query: Do we really belong there? And I say "we,"

I'm putting ourselves, if we all jointly go there, because you're asking me to do so.

And as you can surmise, particularly being the first of these, my goal would be to get it right. And that is, in part, just going through the analysis and what we have. And I'm not -- what I would ask you is not to further waste the coffers of your clients, because I appreciate that as well.

Is there -- is there anything that you believe has not been stated so far on the issue of the permissive appealability of this that you think that the Court would need to consider?

MR. GEJJI: Your Honor --

THE COURT: Yes.

MR. GEJJI: -- procedurally, if the Court were inclined to disagree with the parties and find that it doesn't have jurisdiction, I think you would -- and you were inclined to certify appeal to the Fifteenth Court of Appeals, I think there would need to be some kind of stay, either of the remand order or the case, because as I understand it, you know, once you issue the remand order, it's almost instantly effective.

And so if that's the direction that the Court is going, I think within -- and, you know, if

the Court also wants to certify the appeal, there would be need to be some kind of state provision within the order the Court issues.

THE COURT: Oh, that's not -- I'm absolutely cognizant of that. That's not what I was referencing. And I understand procedurally that's what we need to do, but I appreciate that.

No. What I'm referencing is: Is there anything that you have not yet written on the subject that -- on the permissive appealability, from your perspective? Is it something -- I appreciate that you prefer not to go in that direction. Completely do.

But is there -- do you believe that the Fifteenth Circuit Court of Appeals -- it would make sense for it to take it, based on the criteria I identified at the outset of this line of questioning?

MR. ALEXANDER: We do, Your Honor. If this Court were to disagree with the arguments the parties are putting before you, we think that a combination of the questions the Court has been getting from -- apparently from the Court's brethren, the Court's request for additional briefing and oral hearing, et cetera, all signify the fact that this is an issue of significance and that it's an issue where, despite the fact that we think clearly under the

statute we're right, there is grounds for people to argue the other side.

So we do think that if the Court were not to agree with us and accept jurisdiction, that this would be a more than appropriate vehicle for permissive appeal.

THE COURT: And it's interesting the way you phrased it, because, from my perspective, obviously this is sui generis to other cases that have been ruled on. I appreciate that. But so far, of course, there's been one particular approach, which is, the cases are being removed and are being remanded.

But there's no doubt that it would allow for there to be precedent on something that I do think needs to, at some point, be determined. And to be clear, this is just -- as you can imagine, we're one court. And so the goal is we are one court and a new court. And the goal is just to ensure, as we are scrutinizing everything, as we're trying to create horizontal res judicata. I'm excited we are commencing that effort now.

Thank you.

Nichole, let me ask you, shall we take a quick break?

THE COURT REPORTER: Sure, Your Honor.

(Court in recess.)

THE COURT: I surmise I know the answer, because it's not what was provided.

But with regard to *Prystash,* are there any other cases not in the criminal law realm that address this waivability or non-waivability, depending on your perspective?

MR. SCHAEFER: Not that we have found, Your Honor. I would, frankly, say in thinking about those cases and whether those cases would exist and trying to find them, in thinking about statutes like, you know, the Civil Practice and Remedies Code 38.001, which is one of the statutes we pointed to with the different effective date language, I guess I would say in a case involving a change to Civil Practice and Remedies Code Section 38.001, could the parties to that case agree to apply the new version of the statute in the ongoing case?

Could they say: We both like the new version of the statute more than the old version and we have agreed collectively to apply the new version? Certainly they could. We are no different than that circumstance.

And when parties agree to something like

that, and agree to apply the new version of 38.001 in an ongoing case, regardless of the, you know, effective date in House Bill 1578, that's never going to be an issue that shows up in a Court of Appeals opinion, because it's an issue that the parties have agreed upon. There is no error. There is no waiver issue. There is no subject-matter jurisdiction issue. It's just a procedural waiver or invitation by the parties, which is what we have here.

And so I believe that's why the only instances where this is arising is in the criminal context, in this death penalty context, where the Court is going through, you know, 40 points of error, like in *Prystash*.

THE COURT: All right. Thank you.

One moment.

On the concept of invited error. So you've got *Prystash* decided on the doctrine of invited error. Is this a suggestion that the Court should intentionally allow the parties to invite error?

MR. SCHAEFER: I don't think the Court allows parties to invite error or not. I think the parties make that decision, and we did make that decision in the subsequent agreement and in the removal context. So I don't -- I guess I would

say it differently.

I would say *Prystash* recognizes the ability of parties to invite error and to then be estopped from arguing anything inconsistent with getting what they asked for; right?

The parties here are asking for you to adjudicate this dispute. We will be estopped from arguing that it was wrong for you to adjudicate this dispute. That's what the invited error doctrine, which is a species of estoppel, stands for.

THE COURT: I appreciate that.

Yes.

MR. GEJJI: Your Honor, I would also add that the very fact that the invited error doctrine was applied to the effective date provision should be an indication that the effective date provision is not something, you know, that is so set in stone that it cannot be, you know, either the invited error doctrine cannot be applied to it or waiver cannot be applied to it.

And so when you're thinking of this through the subject-matter jurisdiction lens, that should tell you that the effective date provision is not a jurisdictional provision.

THE COURT: Indulge me a few minutes. And

then what I'll do, I'll see if I have any other additional questions. If not, if -- for lack of better terms, if you want to make closing arguments and then a question I have -- I'm not suggesting I need it, but if -- if during the break you discussed whether you think it would be of value of giving additional briefing on the permissibility -- I'm not suggesting I need it, but if you want it, I would want to make a decision if we're going to do it and timing. Not suggesting that it's needed.

As you ponder that for a minute, let me go back to my notes.

On the permissive appeal, and I know this was addressed but I just -- so I'll ask it a different way.

I'm trying to be mindful of the Court's time, not just my time but all the others, and, of course, the Fifteenth.

If the parties will be back before the Court, whether short order or however long it takes, if the case is remanded, the question is: What would an appellate opinion on the legal issue have on the party?

What effect would it have, if any? Is that, then, just, Mr. Alexander, only just for the

good of the jurisprudence?

MR. ALEXANDER: Well, it is for the good of the jurisprudence, Your Honor.

THE COURT: Yes.

MR. ALEXANDER: And so, therefore, it's also I think for the good of the business courts.

But for the reasons Mr. Price articulated earlier, there are certain inefficiencies or friction points, et cetera, that despite these parties' best intentions, may arise nonetheless with regard to a remand and a situation in which there is no jurisdiction over this dispute, it needs to be refiled.

There are a number of ongoing ancillary discovery actions, et cetera, that, to use a colloquial phrase, a lot of sand could be thrown in our gears.

THE COURT: Thank you.

Would permitting removal via the Rule 11 Agreement conflict with a long-standing principle that jurisdiction cannot be created by agreement?

I know we're going back to rehashing. You can both speak.

MR. PRICE: Well, no. I mean, I just -- I think we're back to -- I think both sides have hit

this multiple times.

I think the only -- one has to believe that the effective date -- and I'll try to add something and say I found it interesting in the various opinions of the business court, that has been referred to, by my count, as an enabling provision --

THE COURT: Indulge me one second, because I actually have the opinions in front of me.

MR. PRICE: I'm not going to be able to -- unfortunately, I'm not going to be able to give you --

THE COURT: Oh, no problem. Okay. I was going to say, if you do, then I can truly follow along.

MR. PRICE: Unfortunately, I'm not going to be that good -- I'm not going to be able to give you pincites, Your Honor.

THE COURT: No, no. That's okay.

MR. PRICE: But by my reading of the various opinions, Section 8 has been referred to as an enabling provision, an effective date provision, an applicability clause, and an operative date provision.

Now, regardless of what you want to call it, the premise, though, of the question, which I think we've all tried to communicate and disagree with, is the notion that whatever it is, it's somehow

a limitation on this Court's jurisdiction, subject-matter jurisdiction, which would then put you into the question that you asked, which is, can the parties agree?

And so I think -- I start there and say I kind of disagree with the premise of the question because it's not really a subject-matter jurisdiction issue.

And then I would just follow along with that and say, and, furthermore, this statute, interestingly enough, expressly says that we can. And that's the subsequent agreement provision.

THE COURT: I appreciate also pointing out the various adjectives described in Section 8. We'll have to be very careful.

Yes. Go ahead.

MR. GEJJI: Your Honor, I agree with what Lone Star's counsel said. I would also add the point that if we start labeling these different sections as jurisdictional, we don't really have a clear endpoint, because nothing within Section 8 says it's a jurisdictional provision.

The only jurisdictional provisions are the ones that got inserted into Chapter 25A, and we're clearly within the bounds of those provisions.

And so to call Section 8 also jurisdictional means that multiple other kinds of sections within the statute could also be labeled jurisdictional.

And the Supreme Court has clearly told us that we should be clear about what is jurisdictional and what is just a non-jurisdictional provision that can be waived or forfeited.

THE COURT: Okay. I am going to ask a question and not use the word "jurisdiction," so I don't get in trouble.

So do the parties contend, do you contend, that a simple agreed notice of removal is required to circumvent Section 8 of HB 19?

This will be the last time I discuss it.

So do the parties contend that the simple agreed notice of removal is required; that that's all you need to do to just do away with Section 8?

MR. SCHAEFER: I don't think so. I think to Mr. Gejji's point, there is a jurisdictional provision in House Bill 19. And it is in Section 1 of House Bill 19, which adds Section 25A.004 to the Texas Government Code, which is titled Jurisdiction and Powers.

And the way that the Texas Business Court

gets jurisdiction under 25A.004, like Mr. Price just said, under subsection D, is the action -- is a qualifying transaction, which ours is. The amount in controversy exceeds $10 million, which ours does. And the parties agree in their contract or a subsequent agreement that the business court has jurisdiction over the dispute.

Those three things aren't met simply by saying: I'm filing an agreed notice of removal. You have to have those things. We have those things. And we have those things with a post-September 1, 2024, subsequent agreement. That's how you give jurisdiction to the business court under House Bill 19 and Section 25A.

THE COURT: I think -- I need a copy -- I have a copy. It's now back in the jury room.

Is that underlined in your copy?

MR. SCHAEFER: Are you talking about A.004?

THE COURT: Yes.

MR. SCHAEFER: Yes.

THE COURT: Under the whole changed section of law?

MR. SCHAEFER: Yes.

THE COURT: Thank you.

Well, I'm most appreciative. If either or all wish to make, for lack of better terms, closing thoughts or remarks on this.

MR. GEJJI: Your Honor, nothing further from the defendants if the Court doesn't have any other questions.

MR. PRICE: We don't have anything further.

THE COURT: I do have one final -- thank you. I do have one final question, which is: Is it of interest to you -- and -- to do any additional briefing on the permissibility of the appeal?

MR. PRICE: Not from Lone Star's perspective.

THE COURT: Perfect.

MR. ALEXANDER: We concur, Your Honor.

THE COURT: Perfect. Okay.

Well, I'm most appreciative of your time. I very much enjoyed reading the briefs, contemplating all this. And I thank you.

(Court adjourned.)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS )

COUNTY OF HARRIS )

I, Nichole Forrest, Official Court Reporter in and for the Texas Business Court, Houston Division, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly references the exhibits, if any, admitted by the respective parties.

WITNESS MY OFFICIAL HAND this 2nd day of December, 2024.


/s/Nichole Forrest
Nichole Forrest, RDR, RMR, CRR, CRC
Texas CSR #12777
Official Court Reporter
Texas Business Court

## #

**#12777** [2] - 1:17, 57:22

## $

**$10** [3] - 22:10, 22:22, 55:4

## /

**/s/Nichole** [1] - 57:21

## 1

**1** [6] - 10:8, 20:5, 20:9, 35:23, 54:21, 55:11
**1.14** [1] - 10:24
**10** [1] - 37:13
**100** [1] - 43:14
**1045** [3] - 10:24, 11:2, 14:23
**11** [5] - 3:10, 8:17, 15:17, 38:22, 51:19
**11/12** [1] - 38:1
**12** [1] - 2:2
**12th** [2] - 1:10, 3:23
**13** [1] - 3:9
**13th** [1] - 10:3
**15** [1] - 3:6
**1578** [1] - 48:3
**16th** [2] - 3:12, 3:17
**18th** [1] - 3:18
**19** [17] - 10:16, 19:18, 20:3, 29:6, 29:7, 29:10, 29:16, 32:10, 32:16, 35:19, 35:20, 35:23, 54:14, 54:21, 54:22, 55:13
**1:03** [1] - 2:2
**1st** [9] - 11:3, 11:5, 12:20, 13:9, 16:9, 16:22, 24:11, 27:23, 29:18

## 2

**2** [5] - 13:20, 20:6, 20:9, 42:17, 42:18
**2021** [2] - 3:6, 23:7
**2024** [10] - 1:10, 2:2, 3:9, 11:3, 11:5, 16:9, 16:22, 35:24, 55:11, 57:19
**22** [2] - 20:11, 20:16
**24-BC04B-0001** [1] - 14:11
**24-BC11A-0004** [1] - 1:1
**25** [5] - 20:10, 20:11, 20:13, 20:16, 35:7
**25.004** [1] - 21:23
**25.004(d** [1] - 22:2
**25A** [12] - 19:12, 20:6, 23:22, 23:23, 23:25, 27:22, 28:18, 28:20, 33:4, 35:5, 53:24, 55:14
**25A.004** [4] - 9:17, 10:12, 54:22, 55:1
**25A.004(d)(2** [2] - 30:19, 30:20
**26th** [1] - 3:15
**2nd** [1] - 57:18

## 3

**3** [2] - 20:9, 37:1
**30** [1] - 43:17
**355** [1] - 4:2
**38.001** [3] - 47:13, 47:17, 48:1

## 4

**40** [1] - 48:13
**4381** [2] - 32:11, 35:18
**4:30** [1] - 5:12
**4th** [1] - 3:21

## 5

**5** [6] - 17:6, 17:23, 20:23, 21:4, 38:1, 42:18
**500** [1] - 20:13
**51.014(d)** [1] - 38:4
**5104(d** [1] - 40:5
**522** [1] - 37:1
**531** [1] - 37:1
**532** [1] - 37:12

## 6

**6** [1] - 28:14

## 7

**7** [2] - 32:11, 38:1
**70** [1] - 15:1

## 8

**8** [38] - 3:19, 10:14, 10:15, 11:12, 16:18, 16:21, 16:23, 17:3, 17:5, 17:13, 17:17, 17:25, 20:21, 21:2, 24:1, 27:21, 28:13, 28:19, 30:1, 31:18, 32:9, 32:13, 32:15, 32:23, 34:2, 34:20, 34:24, 35:4, 35:5, 35:7, 35:20, 36:21, 52:19, 53:14, 53:21, 54:1, 54:14, 54:18
**88th** [1] - 32:2

## A

**a** [186] - 2:12, 2:14, 2:17, 2:21, 2:22, 3:7, 3:10, 3:17, 3:22, 4:15, 4:17, 4:25, 5:3, 5:15, 6:12, 6:14, 6:15, 6:16, 7:15, 7:16, 8:5, 8:10, 8:18, 8:24, 8:25, 9:2, 9:4, 9:6, 9:9, 9:12, 9:18, 10:3, 10:13, 10:15, 10:16, 11:13, 11:14, 11:16, 11:23, 12:5, 12:6, 12:7, 12:9, 12:10, 12:13, 12:15, 12:19, 12:21, 13:5, 13:6, 13:8, 13:23, 14:6, 14:10, 14:25, 15:2, 15:6, 15:17, 15:21, 17:17, 17:19, 17:20, 18:6, 18:15, 18:22, 19:4, 19:8, 19:12, 19:18, 19:24, 20:20, 20:24, 21:6, 22:2, 22:3, 22:5, 22:8, 22:15, 22:20, 22:21, 22:25, 23:1, 23:5, 23:7, 23:19, 23:23, 24:9, 24:22, 24:25, 25:3, 25:8, 25:25, 26:16, 26:22, 26:23, 27:4, 27:8, 27:15, 27:25, 28:23, 29:14, 29:15, 29:23, 30:1, 30:3, 30:5, 30:9, 31:4, 32:1, 32:3, 32:13, 34:7, 34:11, 35:10, 35:11, 35:21, 36:10, 36:21, 37:2, 37:12, 38:5, 38:6, 38:9, 38:10, 38:25, 39:6, 39:7, 39:14, 39:16, 41:10, 42:13, 42:14, 42:24, 42:25, 43:4, 43:9, 43:12, 43:14, 43:18, 43:24, 45:19, 46:5, 46:18, 46:24, 47:16, 48:4, 48:8, 48:19, 49:10, 49:24, 49:25, 50:4, 50:9, 50:11, 50:14, 51:10, 51:11, 51:14, 51:15, 51:16, 51:20, 53:1, 53:7, 53:20, 53:21, 54:7, 54:9, 54:13, 54:20, 55:2, 55:5, 55:11, 55:15, 55:16, 57:7
**A** [1] - 28:6
**A.004** [1] - 55:19
**Abe** [1] - 6:23
**ability** [4] - 9:17, 22:1, 41:21, 49:3
**able** [7] - 6:5, 24:15, 25:4, 41:5, 52:9, 52:10, 52:15
**about** [22] - 2:18, 5:21, 6:1, 9:21, 10:15, 12:18, 15:5, 15:22, 19:10, 23:19, 24:5, 25:2, 26:6, 26:18, 28:15, 32:15, 33:16, 43:23, 47:10, 47:12, 54:6, 55:18
**above** [3] - 1:12, 57:7, 57:11
**above-entitled** [1] - 1:12
**above-styled** [1] - 57:11
**absolutely** [4] - 6:15, 14:14, 36:14, 45:5
**accept** [1] - 46:4

**accompanying** [1] - 3:6
**acknowledging** [1] - 28:15
**Acquisitions** [2] - 14:1, 14:2
**across** [2] - 2:11, 40:21
**act** [2] - 11:1, 32:18
**action** [5] - 22:7, 37:3, 37:15, 38:6, 55:2
**actions** [6] - 4:3, 27:22, 29:17, 33:3, 33:17, 51:15
**actually** [5] - 3:17, 15:24, 21:2, 35:5, 52:8
**add** [7] - 12:17, 27:4, 33:7, 43:7, 49:13, 52:3, 53:18
**additional** [9] - 3:15, 3:19, 33:11, 36:4, 41:25, 45:22, 50:2, 50:7, 56:11
**address** [3] - 4:3, 28:20, 47:6
**addressed** [3] - 4:23, 8:11, 50:14
**addresses** [1] - 31:3
**adds** [1] - 54:22
**adjectives** [1] - 53:14
**adjourned** [1] - 56:22
**adjudicate** [5] - 11:9, 11:18, 35:12, 49:7, 49:8
**adjudicated** [1] - 12:16
**adjudicating** [1] - 11:9
**admitted** [1] - 57:16
**Adrogué** [1] - 1:13
**advance** [4] - 38:12, 38:20, 38:25, 39:3
**advisory** [1] - 13:25
**advocate** [1] - 29:8
**affairs** [1] - 21:24
**after** [10] - 3:12, 6:13, 11:2, 12:20, 12:23, 13:9, 15:5, 20:9, 27:23, 29:18
**afternoon** [1] - 2:7
**afterwards** [1] - 4:14
**again** [5] - 3:20, 3:23, 18:19, 30:19, 41:10
**against** [1] - 16:18
**agree** [16] - 9:13, 11:14, 15:18, 17:14, 17:16, 22:24, 23:15, 32:23, 36:19, 46:4, 47:18, 47:25, 48:1, 53:4, 53:17, 55:5
**agreed** [9] - 7:8, 22:5, 23:3, 27:16, 47:22, 48:6, 54:13, 54:17, 55:9
**agreeing** [1] - 26:1
**Agreement** [3] - 3:10, 15:17, 51:20
**agreement** [27] - 10:3, 10:4, 12:15, 12:20, 13:7, 14:6, 18:1, 21:10, 22:6, 23:1, 25:4, 26:23, 27:11, 30:4, 30:7, 30:10, 31:4, 31:8, 35:11, 35:12, 43:1, 48:24, 51:21, 53:12, 55:6, 55:12
**agreements** [4] - 9:15, 25:6, 31:3, 31:4

**ahead** [8] - 13:16, 19:15, 20:1, 20:18, 28:22, 36:13, 42:8, 53:16
**al** [1] - 1:3
**albeit** [1] - 14:20
**Alexander** [3] - 7:2, 30:24, 50:25
**ALEXANDER** [6] - 30:23, 39:2, 45:17, 51:2, 51:5, 56:16
**all** [49] - 2:7, 2:10, 2:14, 2:16, 3:23, 5:4, 5:6, 6:7, 6:13, 7:11, 7:12, 7:23, 9:8, 10:6, 10:10, 11:5, 13:19, 13:23, 14:5, 19:1, 22:12, 23:8, 24:1, 26:8, 27:9, 29:20, 34:8, 35:6, 35:22, 38:17, 38:18, 39:4, 40:13, 41:11, 41:13, 42:19, 43:13, 44:1, 45:23, 48:15, 50:17, 52:24, 54:17, 56:2, 56:20, 57:8, 57:12
**all-encompassing** [1] - 35:22
**alleged** [2] - 19:11, 21:19
**allocation** [1] - 24:12
**allow** [4] - 6:15, 33:2, 46:14, 48:20
**allowed** [4] - 10:8, 10:11, 23:17, 25:10
**allowing** [1] - 24:10
**allows** [2] - 9:17, 48:22
**almost** [2] - 10:25, 44:22
**along** [3] - 40:18, 52:13, 53:9
**already** [4] - 5:16, 30:2, 40:14, 43:9
**also** [17] - 5:21, 6:2, 10:23, 22:8, 25:14, 27:4, 34:14, 36:8, 37:21, 43:23, 45:1, 49:13, 51:6, 53:13, 53:18, 54:1, 54:3
**although** [1] - 19:1
**always** [2] - 11:24, 34:16
**am** [3] - 4:24, 14:23, 54:9
**ambit** [1] - 16:22
**amend** [1] - 30:21
**amendment** [1] - 22:25
**amendments** [2] - 20:5, 20:6
**among** [1] - 38:16
**amount** [6] - 22:9, 23:8, 41:12, 42:13, 43:22, 55:3
**ample** [1] - 2:19
**an** [49] - 3:12, 5:23, 6:21, 7:8, 9:11, 10:24, 11:12, 11:22, 11:23, 12:19, 13:25, 15:25, 16:17, 17:2, 17:13, 19:16, 23:3, 24:2, 24:21, 28:1, 28:9, 28:10, 29:8, 30:10, 30:15, 32:12, 32:15, 32:17, 34:2, 36:4, 37:3, 37:15, 38:7, 38:11, 41:1, 45:24, 48:2, 48:4, 48:5, 49:15, 50:22, 52:6, 52:19, 52:20, 52:21, 55:9
**analog** [1] - 9:4
**analogous** [2] - 13:11, 39:15
**analogy** [1] - 14:20

**analysis** [4] - 16:18, 28:14, 34:1, 44:5
**ancillary** [1] - 51:14
**and** [326] - 1:12, 2:8, 2:16, 2:18, 2:20, 2:24, 3:3, 3:6, 3:23, 3:24, 4:5, 4:15, 4:18, 4:21, 4:22, 4:23, 5:4, 5:13, 5:17, 5:18, 6:2, 6:4, 6:11, 6:12, 6:16, 6:23, 7:3, 7:15, 7:16, 7:18, 7:20, 8:3, 8:12, 8:15, 8:16, 9:6, 9:8, 9:13, 9:21, 9:25, 10:1, 10:6, 10:13, 11:4, 11:7, 11:9, 11:10, 11:12, 11:16, 11:25, 12:6, 12:9, 12:11, 12:18, 12:21, 12:23, 13:10, 13:11, 13:14, 13:24, 14:5, 14:9, 14:10, 14:15, 14:16, 14:18, 14:19, 14:23, 15:5, 15:6, 15:17, 15:20, 15:23, 15:25, 16:1, 16:5, 16:7, 16:13, 16:15, 16:16, 16:18, 16:19, 17:4, 17:5, 17:6, 17:9, 17:10, 17:12, 17:13, 17:20, 17:22, 17:25, 18:2, 18:6, 18:10, 18:11, 18:18, 18:22, 19:2, 19:3, 19:4, 19:6, 19:17, 19:24, 20:5, 20:7, 20:9, 20:16, 20:19, 20:22, 20:24, 21:1, 21:14, 21:25, 22:1, 22:8, 22:9, 22:11, 22:21, 23:3, 23:8, 23:9, 23:15, 23:19, 23:21, 23:23, 24:3, 24:4, 24:12, 24:16, 24:20, 25:3, 25:5, 25:11, 25:12, 25:18, 26:5, 26:7, 26:9, 26:10, 26:13, 26:19, 26:21, 26:23, 27:7, 27:8, 27:10, 27:12, 27:14, 27:16, 28:3, 28:4, 28:13, 28:14, 28:17, 28:21, 28:22, 28:24, 29:1, 29:2, 29:3, 29:4, 29:10, 29:25, 30:2, 30:5, 30:7, 30:9, 30:12, 30:14, 30:15, 30:20, 31:13, 31:19, 31:23, 32:3, 32:9, 32:12, 32:19, 32:25, 33:7, 33:10, 33:12, 33:14, 33:20, 33:24, 33:25, 34:1, 34:4, 34:6, 34:7, 34:10, 34:14, 35:12, 35:15, 35:19, 36:6, 36:8, 36:10, 36:11, 36:19, 36:20, 37:4, 37:20, 38:1, 38:4, 38:5, 38:16, 38:21, 38:23, 39:6, 39:7, 39:18, 39:21, 39:23, 39:24, 39:25, 40:1, 40:13, 40:16, 40:22, 40:23, 40:24, 40:25, 41:5, 41:6, 41:9, 41:18, 41:22, 42:11, 42:14, 42:16, 42:23, 43:2, 43:10, 43:12, 43:15, 43:16, 43:17, 43:18, 43:20, 43:21, 43:22, 43:25, 44:3, 44:5, 44:6, 44:16, 44:18, 44:24, 44:25, 45:6, 45:22, 45:24, 46:4, 46:7, 46:12, 46:16, 46:18, 46:19, 47:11, 47:13, 47:16, 47:21, 47:25, 48:1, 48:10, 48:23, 48:24, 49:3,

49:21, 49:25, 50:4, 50:9, 50:13, 50:17, 51:5, 51:11, 52:3, 52:4, 52:21, 52:24, 53:5, 53:9, 53:10, 53:11, 53:24, 54:1, 54:5, 54:7, 54:10, 54:21, 54:23, 54:25, 55:4, 55:10, 55:14, 56:11, 56:20, 57:5, 57:7, 57:8, 57:11, 57:13, 57:15

**Andrew** [1] - 6:23
**animal** [1] - 30:9
**another** [4] - 5:11, 26:15, 30:18, 34:12
**answer** [10] - 6:5, 16:10, 18:11, 18:23, 19:16, 21:21, 28:7, 30:25, 37:20, 47:3
**answers** [1] - 18:23
**anticipate** [3] - 6:13, 41:14, 43:6
**Antonio** [3] - 4:16, 6:3, 8:16
**any** [17] - 8:10, 11:19, 14:2, 16:2, 18:7, 18:11, 23:4, 25:6, 25:23, 34:15, 35:23, 47:5, 50:1, 50:24, 56:5, 56:11, 57:16
**anyone** [2] - 34:17, 34:18
**anything** [8] - 15:4, 15:8, 20:20, 35:4, 44:9, 45:9, 49:4, 56:7
**apparently** [1] - 45:21
**appeal** [17] - 5:22, 37:23, 38:7, 38:11, 38:15, 38:19, 38:25, 39:8, 39:13, 39:17, 41:20, 42:6, 44:18, 45:1, 46:6, 50:13, 56:12
**appealability** [2] - 44:11, 45:10
**appealable** [2] - 11:24, 38:8
**appealed** [1] - 38:9
**Appeals** [6] - 10:23, 39:19, 43:24, 44:19, 45:14, 48:4
**appeals** [7] - 11:2, 11:6, 11:9, 11:10, 40:15, 41:1
**appear** [2] - 14:2, 14:5
**appearance** [3] - 2:15, 6:10, 6:21
**appearances** [1] - 5:8
**appeared** [1] - 19:7
**appellate** [1] - 50:22
**appendixes** [1] - 3:7
**applicability** [2] - 27:22, 52:21
**application** [1] - 35:23
**applied** [3] - 49:15, 49:19
**applies** [1] - 35:6
**apply** [9] - 11:2, 12:10, 29:17, 33:4, 34:21, 34:25, 47:18, 47:22, 48:1
**appointed** [3] - 9:1, 9:5, 42:20
**appreciate** [38] - 3:3, 7:20, 13:16, 14:18, 15:7, 18:13, 18:14, 18:24, 19:25, 21:15, 21:17, 25:11, 25:18, 26:3, 27:19, 29:1, 29:6, 29:7, 31:10, 34:6, 34:9, 36:6, 36:11, 36:20, 36:24, 39:23, 39:25, 41:8,

43:16, 43:20, 44:8, 45:7, 45:11, 46:10, 49:11, 53:13
**appreciated** [3] - 3:3, 31:14, 36:11
**appreciative** [5] - 2:8, 7:19, 27:9, 56:1, 56:18
**approach** [4] - 19:21, 19:22, 25:25, 46:11
**approached** [1] - 40:11
**appropriate** [1] - 46:5
**appropriately** [1] - 3:16
**are** [47] - 2:25, 4:23, 5:9, 10:7, 10:10, 13:2, 15:21, 16:11, 16:13, 16:22, 17:15, 20:3, 20:22, 21:18, 21:22, 22:23, 23:17, 24:25, 25:2, 25:13, 25:14, 27:4, 27:7, 27:9, 27:18, 30:2, 30:7, 30:9, 32:6, 34:21, 34:25, 36:5, 42:23, 45:19, 46:12, 46:18, 46:19, 46:21, 47:5, 47:23, 49:6, 51:8, 51:14, 53:23, 55:18
**area** [1] - 19:2
**areas** [1] - 20:15
**aren't** [1] - 55:8
**argue** [1] - 46:2
**arguing** [2] - 49:4, 49:8
**argument** [6] - 5:20, 18:21, 31:12, 32:20
**arguments** [5] - 11:19, 40:20, 40:21, 45:18, 50:3
**arise** [1] - 51:10
**arises** [1] - 22:3
**arising** [1] - 48:11
**around** [6] - 11:15, 15:22, 32:23, 34:12, 39:10, 39:22
**Article** [5] - 9:5, 9:7, 9:12, 9:20, 28:16
**articulated** [1] - 51:7
**as** [61] - 2:21, 3:9, 3:22, 4:7, 5:7, 5:14, 6:16, 7:7, 7:12, 7:20, 8:5, 8:23, 10:2, 10:5, 11:4, 11:12, 11:13, 11:16, 14:17, 14:19, 14:20, 15:16, 17:2, 17:15, 17:19, 18:17, 19:12, 21:12, 22:14, 25:13, 26:19, 27:4, 28:23, 29:2, 29:16, 29:22, 30:12, 32:12, 32:17, 37:5, 37:15, 37:16, 38:5, 39:5, 39:15, 39:16, 40:14, 42:5, 43:18, 44:3, 44:8, 44:21, 46:17, 46:19, 46:20, 50:11, 52:6, 52:19, 53:19
**ask** [13] - 4:25, 5:8, 5:18, 5:21, 5:23, 9:10, 15:5, 29:4, 34:12, 44:6, 46:24, 50:14, 54:9
**asked** [6] - 2:21, 6:14, 12:24, 36:22, 49:5, 53:3
**asking** [6] - 6:14, 23:22, 25:15, 33:16, 44:2, 49:6

**assertion** [1] - 31:17
**associated** [1] - 43:17
**associates** [1] - 3:24
**assume** [2] - 7:22, 8:4
**at** [31] - 4:11, 5:12, 5:23, 6:7, 9:8, 10:21, 12:23, 13:1, 15:4, 17:5, 17:7, 18:16, 18:22, 19:18, 20:2, 20:8, 20:12, 20:16, 22:24, 23:4, 27:25, 33:24, 34:15, 36:1, 37:1, 38:1, 40:14, 45:16, 46:16
**attempt** [1] - 36:4
**attention** [1] - 36:24
**attorneys** [1] - 3:24
**author** [1] - 29:9
**authority** [1] - 23:19
**authorized** [1] - 27:17
**available** [1] - 24:2
**aware** [2] - 14:23, 43:21
**away** [1] - 54:18

## B

**back** [11] - 21:14, 24:8, 38:22, 43:3, 43:12, 43:13, 50:12, 50:19, 51:22, 51:25, 55:16
**based** [2] - 37:7, 45:15
**basically** [2] - 16:18, 19:3
**be** [90] - 1:11, 2:8, 5:13, 5:14, 5:18, 6:5, 7:15, 7:24, 8:6, 8:24, 12:16, 15:1, 16:17, 17:18, 18:16, 19:7, 19:17, 21:12, 21:13, 23:3, 23:21, 24:11, 24:22, 25:8, 25:16, 26:15, 27:14, 27:15, 27:18, 28:4, 29:15, 30:3, 30:4, 31:6, 32:4, 32:7, 32:10, 33:12, 34:3, 34:20, 34:24, 35:20, 36:17, 38:8, 38:17, 39:12, 39:16, 39:20, 39:21, 40:25, 41:5, 41:6, 41:17, 42:2, 43:3, 43:12, 43:15, 44:4, 44:20, 45:2, 46:5, 46:15, 46:16, 48:4, 49:3, 49:7, 49:15, 49:18, 49:19, 50:6, 50:16, 50:19, 51:12, 51:16, 51:21, 52:9, 52:10, 52:15, 53:15, 54:3, 54:6, 54:8, 54:15, 57:10
**because** [23] - 4:13, 15:21, 17:1, 18:4, 20:4, 25:17, 31:2, 33:12, 35:16, 36:20, 39:17, 41:20, 41:25, 43:6, 44:2, 44:8, 44:21, 46:8, 47:4, 48:5, 52:7, 53:7, 53:21
**Beck** [3] - 7:1, 7:14, 14:16
**been** [27] - 4:9, 8:11, 8:25, 11:9, 11:11, 16:2, 17:8, 23:5, 23:7, 23:8, 24:5, 26:6, 26:15, 26:20, 29:24, 30:5, 42:13, 42:14, 42:20, 43:8, 44:10, 45:20, 46:10, 46:11, 52:5, 52:19

**before** [10] - 1:12, 3:8, 15:24, 16:8, 16:21, 24:11, 39:5, 39:19, 45:19, 50:19
**began** [1] - 11:5
**behalf** [1] - 15:14
**being** [10] - 4:2, 17:15, 20:21, 21:1, 40:1, 40:12, 42:2, 44:3, 46:12
**belied** [1] - 31:8
**believe** [9] - 18:5, 20:9, 40:10, 41:22, 42:2, 44:10, 45:13, 48:10, 52:2
**believes** [2] - 5:2, 39:19
**belong** [2] - 40:22, 43:25
**bench** [1] - 19:21
**benefit** [1] - 39:20
**benefits** [1] - 39:22
**best** [4] - 2:25, 7:7, 41:6, 51:9
**better** [4] - 6:8, 33:25, 50:3, 56:2
**between** [4] - 16:6, 28:2, 34:4
**Bill** [20] - 10:16, 10:24, 11:1, 14:23, 19:18, 20:3, 29:7, 29:9, 32:10, 32:11, 32:16, 35:18, 35:19, 35:20, 35:23, 48:3, 54:21, 54:22, 55:13
**bill** [2] - 21:3, 28:23
**bit** [1] - 34:7
**bono** [1] - 40:2
**bored** [1] - 8:6
**both** [8] - 8:3, 17:14, 26:5, 31:3, 39:4, 47:20, 51:23, 51:25
**bottom** [1] - 20:12
**bounds** [2] - 23:22, 53:25
**Brawley** [1] - 7:3
**break** [6] - 6:12, 6:14, 6:15, 15:6, 46:25, 50:5
**brethren** [4] - 7:13, 25:14, 38:17, 45:21
**brief** [14] - 3:13, 10:9, 16:16, 16:25, 17:23, 18:3, 32:12, 33:10, 33:11, 38:1, 42:12, 42:18
**briefed** [3] - 5:25, 14:22, 39:18
**briefing** [14] - 2:22, 3:16, 3:19, 4:8, 4:12, 5:24, 7:11, 10:20, 13:1, 36:4, 37:25, 45:22, 50:7, 56:12
**briefs** [2] - 19:2, 56:19
**broad** [2] - 31:20, 35:22
**broader** [1] - 18:8
**Bryan** [1] - 29:9
**building** [1] - 24:18
**bullet** [1] - 42:19
**bunch** [2] - 7:15, 7:16
**BUSINESS** [1] - 1:3
**business** [24] - 2:9, 3:2, 4:3, 4:6, 9:16, 17:6, 17:24, 18:1, 21:19, 22:6, 24:12, 25:9, 26:2, 26:24, 30:3, 30:4, 30:16, 30:22,

33:22, 43:2, 51:6, 52:5, 55:6, 55:13
**Business** [13] - 1:14, 1:18, 2:11, 3:11, 9:11, 10:22, 14:10, 14:22, 16:3, 29:12, 54:25, 57:5, 57:23
**but** [47] - 2:11, 2:16, 3:1, 5:4, 5:13, 7:13, 8:4, 8:16, 8:18, 10:20, 13:12, 14:1, 14:4, 15:5, 15:23, 16:24, 18:18, 19:10, 19:19, 20:8, 20:16, 21:4, 21:11, 23:21, 27:13, 28:8, 29:11, 30:25, 31:14, 33:21, 34:9, 34:12, 36:24, 38:24, 39:10, 45:7, 45:13, 46:10, 46:14, 47:5, 50:5, 50:8, 50:14, 50:17, 51:7, 52:18
**by** [35] - 1:15, 7:2, 7:11, 7:13, 8:11, 8:23, 8:25, 9:21, 11:1, 11:11, 12:16, 16:3, 18:7, 23:9, 24:5, 25:25, 26:6, 26:20, 28:15, 29:8, 31:8, 32:25, 33:1, 38:7, 39:4, 40:21, 41:1, 48:8, 51:21, 52:6, 52:18, 55:8, 57:9, 57:13, 57:16

## C

**call** [3] - 8:2, 52:22, 54:1
**came** [2] - 1:11, 4:13
**can** [34] - 6:11, 8:3, 9:12, 9:14, 11:14, 11:17, 12:9, 13:20, 17:1, 17:5, 17:7, 18:5, 18:22, 18:24, 20:4, 21:12, 22:14, 23:3, 25:12, 29:2, 32:18, 34:3, 34:19, 34:23, 35:13, 38:17, 39:16, 44:3, 46:17, 51:23, 52:12, 53:3, 53:11, 54:8
**can't** [4] - 30:14, 31:24, 32:7, 43:6
**cannot** [4] - 49:18, 49:19, 51:21
**capital** [2] - 12:5, 12:11
**careful** [1] - 53:15
**carefully** [3] - 2:22, 7:22, 31:13
**case** [52] - 3:1, 6:2, 7:12, 8:9, 11:21, 11:22, 12:5, 12:15, 13:5, 14:11, 16:1, 16:14, 16:21, 17:10, 17:13, 17:16, 21:13, 21:15, 23:1, 23:5, 23:7, 24:12, 25:1, 25:9, 26:18, 27:5, 27:6, 27:8, 27:10, 27:15, 28:5, 29:22, 30:9, 30:10, 30:13, 30:14, 30:15, 33:14, 33:21, 36:5, 36:25, 38:20, 40:24, 43:8, 44:21, 47:16, 47:18, 47:19, 48:2, 50:21
**cases** [25] - 7:12, 14:25, 16:8, 16:11, 16:12, 16:21, 18:9, 22:7, 24:10, 24:23, 24:25, 25:9, 26:1, 30:6, 30:7, 33:4, 34:5, 35:6, 36:23, 40:11, 46:9, 46:12, 47:6,

47:11
**Cassie** [1] - 7:3
**caught** [1] - 36:24
**Cause** [1] - 14:11
**CAUSE** [1] - 1:1
**cause** [2] - 1:12, 57:12
**certain** [2] - 21:24, 51:8
**certainly** [4] - 12:12, 14:5, 30:14, 47:23
**certainty** [4] - 39:5, 39:9, 39:11, 43:14
**CERTIFICATE** [1] - 57:1
**certify** [5] - 41:19, 44:18, 45:1, 57:6, 57:14
**cetera** [4] - 38:2, 45:23, 51:9, 51:15
**challenges** [1] - 10:6
**chambers** [1] - 57:13
**Chang** [1] - 6:23
**change** [10] - 5:19, 19:3, 19:4, 19:8, 19:12, 20:21, 21:1, 21:7, 21:8, 47:16
**changed** [1] - 55:22
**changes** [5] - 11:1, 17:15, 18:20, 20:3, 21:11
**chaos** [1] - 30:15
**Chapter** [7] - 19:11, 20:5, 23:23, 27:22, 28:18, 35:5, 53:24
**charts** [1] - 31:14
**checked** [1] - 17:11
**choices** [1] - 40:13
**choosing** [2] - 10:4, 10:5
**Circuit** [2] - 42:4, 45:14
**circumstance** [1] - 47:24
**circumvent** [1] - 54:14
**cited** [2] - 17:9, 18:2
**civil** [3] - 27:22, 29:17, 38:6
**Civil** [3] - 38:4, 47:13, 47:16
**clarification** [1] - 4:24
**classic** [1] - 32:13
**clause** [1] - 52:21
**clauses** [3] - 30:20, 30:21, 31:7
**clear** [13] - 11:22, 14:4, 19:2, 20:3, 23:21, 31:1, 32:22, 33:12, 35:10, 43:15, 46:17, 53:20, 54:6
**clearly** [5] - 31:2, 42:4, 45:25, 53:25, 54:5
**clients** [3] - 40:1, 43:19, 44:7
**closest** [1] - 14:20
**closing** [2] - 50:3, 56:2
**Cobra** [2] - 14:1, 14:2
**code** [1] - 17:8
**Code** [4] - 38:4, 47:13, 47:17, 54:23
**code's** [1] - 28:18
**codes** [2] - 20:7, 21:4
**coffers** [1] - 44:7
**cognizant** [6] - 4:8, 4:10, 5:18,

22:12, 38:21, 45:5
**colleagues** [5] - 7:2, 8:13, 34:17, 40:21, 41:15
**collectively** [1] - 47:22
**colloquial** [1] - 51:16
**combination** [1] - 45:20
**come** [1] - 24:16
**comes** [2] - 9:4, 43:18
**comfort** [1] - 25:7
**comfortable** [3] - 5:13, 8:3, 25:21
**coming** [1] - 38:22
**commence** [1] - 6:9
**commenced** [5] - 16:8, 16:21, 27:23, 29:17, 33:3
**commences** [2] - 5:12, 20:16
**commencing** [1] - 46:22
**commend** [2] - 2:20, 40:12
**comments** [1] - 40:18
**commercial** [2] - 12:7, 22:3
**communicate** [1] - 52:24
**companies** [2] - 12:13, 21:25
**complain** [1] - 37:3
**completely** [6] - 8:3, 8:14, 9:19, 43:19, 45:12
**concept** [2] - 29:25, 48:17
**concern** [1] - 23:16
**concerned** [1] - 24:4
**concerns** [1] - 9:22
**concludes** [1] - 28:13
**concur** [2] - 8:14, 56:16
**conducting** [1] - 2:10
**conduit** [2] - 25:13, 25:16
**confer** [1] - 9:15
**conferring** [2] - 13:7, 30:11
**confident** [1] - 4:12
**confirmed** [1] - 4:18
**conflict** [2] - 18:7, 51:20
**conflicts** [2] - 16:2, 33:22
**confronted** [1] - 39:13
**confronting** [1] - 39:6
**consent** [11] - 12:22, 16:6, 16:11, 16:12, 17:1, 18:9, 30:2, 30:6, 34:4, 34:5, 35:24
**consented** [1] - 14:5
**consenting** [1] - 3:10
**consider** [1] - 44:12
**consideration** [2] - 26:13, 39:24
**considering** [1] - 42:24
**consistent** [1] - 27:16
**Constitution** [2] - 9:21, 28:17
**constitutionality** [1] - 11:10
**construed** [1] - 17:18
**contains** [1] - 57:7
**contemplating** [2] - 37:6, 56:19
**contend** [3] - 54:12, 54:16
**context** [6] - 12:12, 32:2, 48:12, 48:25
**contextual** [3] - 5:20, 18:20,

33:18
**continue** [2] - 24:7, 27:20
**contract** [9] - 9:25, 12:1, 12:3, 22:3, 22:4, 22:5, 31:3, 32:6, 55:5
**contracting** [1] - 22:25
**contractual** [1] - 22:25
**contractually** [2] - 24:16, 27:16
**controlling** [2] - 17:12, 38:9
**controversy** [2] - 22:9, 55:4
**convened** [1] - 4:2
**convening** [1] - 3:22
**conversation** [1] - 41:11
**coordinated** [1] - 7:14
**copies** [1] - 19:19
**copy** [5] - 19:18, 37:13, 55:15, 55:16, 55:17
**correct** [1] - 57:7
**correctly** [2] - 42:12, 57:15
**cost** [2] - 43:17, 43:19
**costless** [1] - 43:11
**costs** [1] - 43:7
**could** [13] - 30:19, 30:25, 31:6, 33:21, 37:2, 37:3, 39:20, 39:21, 47:17, 47:20, 47:23, 51:16, 54:3
**counsel** [9] - 4:17, 6:9, 6:13, 6:15, 6:20, 34:15, 34:16, 53:18, 57:9
**count** [1] - 52:6
**COUNTY** [1] - 57:3
**couple** [1] - 24:9
**course** [16] - 4:3, 5:17, 5:21, 6:16, 6:19, 8:15, 19:23, 23:9, 34:1, 36:22, 36:23, 38:21, 40:5, 40:10, 46:11, 50:18
**Court** [92] - 1:14, 1:17, 1:18, 3:11, 3:14, 4:15, 5:2, 7:17, 8:9, 9:10, 9:11, 9:18, 9:23, 10:5, 10:6, 10:8, 10:11, 10:18, 10:22, 11:4, 11:11, 11:13, 11:17, 11:18, 11:19, 11:20, 12:2, 12:10, 12:16, 12:23, 13:4, 13:8, 13:14, 13:20, 13:24, 14:6, 14:10, 14:23, 15:19, 15:24, 16:4, 18:5, 19:19, 20:23, 20:24, 21:5, 21:7, 23:18, 25:7, 26:11, 28:15, 28:16, 30:11, 32:18, 33:3, 35:12, 37:13, 38:6, 39:14, 39:16, 39:19, 40:23, 41:2, 41:4, 41:22, 42:24, 43:24, 44:12, 44:15, 44:19, 44:25, 45:1, 45:3, 45:14, 45:18, 45:20, 46:3, 47:2, 48:4, 48:13, 48:19, 48:21, 50:20, 54:5, 54:25, 56:5, 56:22, 57:4, 57:5, 57:22, 57:23
**COURT** [73] - 1:1, 1:1, 1:3, 1:8, 2:7, 6:17, 6:19, 7:4, 7:18, 8:14, 8:22, 13:16, 13:18, 14:8, 14:12, 14:14, 15:11, 15:13, 18:13,

19:14, 19:21, 19:23, 20:11, 20:14, 21:14, 22:11, 22:14, 22:19, 23:5, 23:12, 24:7, 25:11, 27:1, 27:19, 29:1, 30:17, 31:10, 33:5, 33:8, 34:6, 35:25, 36:16, 36:19, 37:10, 37:20, 39:23, 41:8, 42:8, 42:16, 42:22, 43:15, 44:14, 45:4, 46:7, 47:1, 47:3, 48:15, 49:11, 49:25, 51:4, 51:18, 52:7, 52:11, 52:17, 53:13, 54:9, 55:15, 55:20, 55:22, 55:25, 56:9, 56:15, 56:17
**court** [42] - 2:4, 2:9, 4:3, 4:6, 8:25, 9:2, 9:12, 9:16, 9:19, 9:20, 11:4, 11:7, 11:8, 11:10, 17:6, 17:24, 21:20, 22:6, 22:24, 23:23, 24:13, 25:9, 26:2, 26:15, 26:24, 30:3, 30:4, 30:16, 30:22, 33:22, 41:1, 43:2, 46:18, 46:19, 52:5, 55:6, 55:13, 57:12
**court's** [1] - 11:6
**Court's** [11] - 4:5, 4:21, 7:9, 10:4, 23:16, 29:12, 31:22, 45:21, 45:22, 50:16, 53:1
**Courts** [3] - 2:11, 8:11, 9:5
**courts** [3] - 3:2, 24:17, 51:6
**CRC** [2] - 1:16, 57:21
**create** [9] - 9:14, 19:11, 21:19, 22:2, 23:17, 25:25, 33:22, 43:5, 46:20
**created** [7] - 8:25, 10:22, 10:23, 12:20, 18:7, 19:8, 51:21
**creates** [2] - 17:6, 17:24
**creating** [1] - 39:25
**creation** [3] - 5:19, 18:20, 30:22
**credit** [2] - 36:7
**criminal** [3] - 36:23, 47:6, 48:11
**criteria** [4] - 40:4, 41:23, 42:5, 45:15
**crnichole@gmail.com** [1] - 1:18
**CRR** [2] - 1:16, 57:21
**crystallize** [1] - 15:20
**CSR** [2] - 1:17, 57:22

**D**

**D** [1] - 55:2
**Daryl** [1] - 42:20
**date** [24] - 6:2, 10:16, 10:21, 10:25, 11:12, 11:23, 12:11, 17:2, 21:12, 24:2, 32:14, 32:15, 32:17, 32:19, 34:3, 35:22, 47:15, 48:3, 49:15, 49:16, 49:23, 52:3, 52:20, 52:21
**day** [2] - 1:10, 57:18
**de** [2] - 36:5, 36:15
**de-emphasize** [2] - 36:5, 36:15

**death** [2] - 12:5, 48:12
**December** [1] - 57:19
**decide** [4] - 11:21, 15:6, 18:22, 22:23
**decided** [1] - 48:18
**decision** [7] - 5:3, 37:16, 41:16, 42:1, 48:23, 48:24, 50:9
**deemed** [1] - 28:4
**deep** [1] - 36:2
**defendant** [2] - 12:25, 14:3
**Defendant** [1] - 1:6
**defendant's** [1] - 33:24
**defendants** [6] - 7:1, 13:25, 15:15, 15:18, 16:7, 56:5
**definitely** [2] - 5:22, 8:6
**degree** [1] - 39:11
**denounced** [1] - 26:20
**depending** [1] - 47:7
**derives** [1] - 28:16
**described** [1] - 53:14
**designed** [1] - 9:24
**desk** [1] - 29:3
**despite** [3] - 16:20, 45:25, 51:9
**determination** [1] - 41:1
**determine** [3] - 41:17, 41:19, 41:20
**determined** [1] - 46:16
**dialogue** [1] - 8:7
**did** [10] - 4:18, 15:1, 22:11, 23:2, 24:14, 31:13, 35:17, 35:18, 37:16, 48:23
**didn't** [8] - 4:13, 8:16, 13:4, 13:6, 13:25, 14:5, 36:14, 36:17
**difference** [5] - 8:18, 15:2, 17:21, 38:10, 40:7
**different** [10] - 8:10, 9:2, 16:11, 37:4, 41:11, 41:12, 47:15, 47:23, 50:14, 53:19
**differentiate** [1] - 19:8
**differently** [4] - 32:4, 32:6, 32:10, 49:1
**differing** [1] - 25:1
**difficult** [1] - 25:3
**difficulties** [1] - 43:5
**diminish** [1] - 27:12
**direction** [3] - 42:3, 44:24, 45:12
**disagree** [7] - 28:13, 30:17, 41:4, 44:16, 45:18, 52:24, 53:6
**discovery** [4] - 42:13, 42:15, 43:22, 51:15
**discuss** [2] - 20:15, 54:15
**discussed** [1] - 50:5
**dispute** [10] - 11:18, 12:8, 12:14, 22:21, 26:22, 35:13, 49:7, 49:9, 51:12, 55:7
**disputes** [1] - 9:14
**distinction** [4] - 8:18, 14:19, 28:2, 31:14

**district** [1] - 4:6
**diversity** [1] - 39:15
**DIVISION** [1] - 1:3
**Division** [5] - 1:14, 14:11, 16:3, 16:19, 57:6
**divisions** [2] - 16:19, 33:23
**do** [46] - 2:20, 3:25, 4:13, 6:12, 7:5, 7:15, 7:16, 8:4, 13:4, 14:18, 15:1, 18:18, 19:4, 24:3, 24:14, 24:15, 24:16, 25:4, 25:25, 26:4, 27:17, 34:9, 39:20, 41:21, 42:5, 43:7, 43:25, 44:2, 45:7, 45:12, 45:13, 45:17, 46:3, 46:15, 50:1, 50:9, 52:12, 54:12, 54:16, 54:18, 56:9, 56:10, 56:11, 57:6
**doctrine** [5] - 37:7, 48:18, 49:9, 49:14, 49:18
**does** [13] - 5:1, 7:23, 16:7, 19:10, 19:12, 26:12, 27:24, 28:7, 28:14, 33:18, 33:19, 37:6, 55:4
**doesn't** [9] - 11:19, 14:2, 14:4, 28:8, 28:20, 35:4, 42:4, 44:17, 56:5
**doing** [4] - 2:25, 24:17, 40:2, 43:17
**dollar** [1] - 12:14
**don't** [25] - 6:5, 7:8, 7:14, 10:19, 15:3, 17:4, 19:5, 19:18, 20:24, 22:17, 30:2, 30:3, 30:17, 35:3, 37:12, 40:6, 40:10, 43:10, 48:21, 48:25, 53:20, 54:11, 54:19, 56:7
**done** [10] - 14:17, 23:9, 24:21, 25:6, 26:6, 26:15, 30:13, 35:21, 40:19, 42:14
**doubt** [3] - 39:24, 41:9, 46:14
**down** [2] - 21:16, 33:20
**downplay** [1] - 36:15
**drafted** [3] - 31:25, 32:1, 32:3
**drafting** [1] - 31:20
**due** [2] - 28:11, 36:7
**duly** [1] - 43:20
**duplicative** [1] - 7:15
**during** [1] - 50:5
**duty** [1] - 23:18

### E

**each** [2] - 8:1, 18:22
**EAGLECLAW** [1] - 1:5
**earlier** [2] - 33:13, 51:8
**early** [2] - 3:17, 8:5
**easy** [3] - 16:15, 16:16, 33:14
**economics** [1] - 41:18
**edification** [2] - 14:9, 42:17
**effect** [5] - 12:4, 17:12, 21:6, 32:24, 50:24

**effective** [25] - 6:2, 10:16, 10:21, 10:25, 11:12, 11:23, 12:10, 17:2, 17:15, 21:12, 24:2, 32:14, 32:15, 32:17, 32:19, 34:3, 35:22, 44:23, 47:15, 48:3, 49:15, 49:16, 49:23, 52:3, 52:20
**efficiency** [1] - 26:6
**efficient** [1] - 26:9
**effort** [1] - 46:22
**efforts** [4] - 2:21, 3:4, 5:17, 27:12
**either** [4] - 18:22, 44:20, 49:18, 56:1
**elected** [1] - 27:6
**elongate** [1] - 43:8
**else** [3] - 3:24, 15:8, 34:17
**embroiled** [1] - 30:2
**emphasis** [1] - 35:8
**emphasize** [2] - 36:5, 36:15
**enabling** [2] - 52:6, 52:20
**enacted** [1] - 17:8
**encompassing** [1] - 35:22
**encourage** [1] - 9:24
**end** [3] - 5:23, 25:20, 38:14
**endeavor** [1] - 40:3
**endpoint** [1] - 53:20
**ends** [1] - 42:2
**enforce** [1] - 9:25
**enforceable** [2] - 12:11, 12:12
**engage** [2] - 16:17, 40:2
**enjoyed** [1] - 56:19
**enough** [5] - 8:5, 22:23, 25:17, 25:18, 53:11
**ensure** [4] - 2:14, 4:20, 5:25, 46:19
**entail** [1] - 8:17
**enter** [3] - 14:6, 26:23, 30:3
**entered** [1] - 10:2
**entering** [1] - 12:14
**entirely** [3] - 14:4, 17:1, 34:1
**entitled** [1] - 1:12
**error** [14] - 11:20, 37:8, 37:15, 40:20, 48:6, 48:13, 48:17, 48:19, 48:20, 48:22, 49:3, 49:9, 49:14, 49:18
**Espada** [2] - 13:22, 13:24
**essence** [5] - 2:22, 3:15, 8:1, 25:24, 38:24
**establish** [1] - 20:24
**established** [1] - 21:7
**establishes** [1] - 21:4
**establishment** [1] - 20:23
**estopped** [2] - 49:4, 49:7
**estoppel** [1] - 49:10
**estopping** [1] - 11:18
**et** [5] - 1:3, 38:1, 45:23, 51:9, 51:15
**even** [9] - 6:4, 13:19, 17:4, 23:5,

23:7, 24:16, 35:10, 35:11, 39:17
**every** [1] - 12:2
**everybody's** [1] - 41:6
**everyone** [2] - 2:19, 3:24
**everything** [4] - 5:25, 41:14, 43:18, 46:20
**evidence** [3] - 31:13, 31:17, 57:8
**exact** [1] - 32:7
**exactly** [5] - 10:1, 10:8, 14:20, 29:24, 43:14
**example** [6] - 16:3, 21:9, 26:14, 26:22, 30:15, 32:12
**exceed** [1] - 22:10
**exceeds** [2] - 22:22, 55:4
**except** [1] - 22:7
**excited** [1] - 46:21
**excluding** [2] - 32:25, 33:1
**excuse** [2] - 23:6, 29:7
**execute** [1] - 13:6
**exercise** [3] - 13:5, 13:6, 17:19
**Exhibit** [1] - 10:8
**exhibits** [1] - 57:16
**exist** [4] - 11:5, 16:8, 25:23, 47:11
**existing** [4] - 11:6, 24:25, 29:15, 33:4
**exists** [1] - 31:17
**expansive** [1] - 15:23
**expense** [1] - 5:5
**expertise** [1] - 2:20
**explicitly** [2] - 34:22, 35:1
**explore** [1] - 5:5
**exploring** [1] - 41:11
**expressly** [2] - 37:18, 53:11
**extent** [3] - 28:2, 28:3, 42:9
**extrinsic** [2] - 28:10, 28:23

**F**

**fact** [10] - 7:11, 24:19, 24:24, 25:5, 32:1, 35:9, 43:7, 45:23, 45:25, 49:14
**fairly** [1] - 4:23
**fall** [3] - 24:3, 26:9, 26:10
**falls** [1] - 26:24
**familiar** [1] - 9:20
**family** [1] - 26:22
**far** [4] - 30:8, 40:16, 44:10, 46:10
**favoring** [1] - 12:1
**fear** [1] - 18:15
**federal** [1] - 9:22
**feel** [6] - 18:13, 18:23, 21:16, 25:20, 38:16, 41:12
**female** [1] - 34:17
**few** [2] - 34:5, 49:25
**Fields** [2] - 7:2, 30:23

**Fifteenth** [8] - 10:22, 14:22, 41:22, 42:4, 43:23, 44:19, 45:14, 50:18
**filed** [4] - 3:5, 13:25, 24:10, 33:11
**filing** [1] - 55:9
**filtering** [1] - 9:9
**final** [2] - 56:9, 56:10
**find** [6] - 16:14, 16:20, 18:5, 33:21, 44:16, 47:12
**finds** [1] - 16:1
**firms** [1] - 2:16
**first** [15] - 2:7, 2:9, 2:10, 2:12, 2:16, 4:8, 9:8, 18:19, 18:23, 19:1, 26:8, 33:1, 38:15, 38:19, 44:4
**First** [2] - 16:3, 16:19
**fit** [2] - 41:23, 42:5
**five** [3] - 13:11, 29:23
**fixed** [1] - 41:6
**floating** [1] - 15:22
**flood** [2] - 24:23, 25:8
**focus** [1] - 35:9
**focused** [1] - 14:24
**folks** [1] - 24:21
**follow** [4] - 29:3, 40:18, 52:12, 53:9
**following** [5] - 1:11, 2:4, 30:21, 39:6, 39:7
**follows** [1] - 5:7
**footnote** [2] - 42:17, 42:18
**footnotes** [1] - 4:12
**for** [66] - 2:9, 2:14, 2:17, 3:1, 3:2, 4:4, 4:7, 4:8, 5:4, 6:8, 6:14, 6:22, 6:25, 7:7, 10:11, 10:17, 11:20, 13:3, 14:9, 14:15, 15:25, 16:3, 16:8, 17:9, 19:12, 21:9, 22:15, 25:12, 25:13, 25:21, 26:10, 26:13, 26:21, 27:6, 29:11, 30:1, 31:20, 32:15, 32:22, 35:12, 38:7, 38:10, 40:7, 40:12, 40:15, 41:10, 42:5, 42:16, 45:15, 45:22, 46:1, 46:5, 46:15, 49:5, 49:6, 49:8, 49:10, 50:2, 50:11, 50:25, 51:2, 51:6, 51:7, 56:2, 57:5, 57:9
**foregoing** [1] - 57:7
**forfeitable** [1] - 17:3
**forfeited** [1] - 54:8
**form** [3] - 30:20, 30:21, 31:7
**Forrest** [4] - 1:16, 57:4, 57:21, 57:21
**forth** [1] - 21:23
**fortunate** [2] - 25:17
**forum** [2] - 10:4, 25:3
**forward** [3] - 14:16, 38:23, 40:23
**Foster** [2] - 5:16, 36:8
**found** [2] - 47:9, 52:4
**four** [1] - 38:14

**Fourth** [1] - 14:11
**frankly** [4] - 12:6, 12:22, 43:8, 47:10
**free** [4] - 18:14, 21:16, 25:20, 38:16
**freedom** [3] - 9:25, 12:1, 12:3
**friction** [1] - 51:8
**frictionless** [2] - 43:10, 43:18
**friend's** [1] - 40:18
**from** [35] - 4:6, 4:20, 6:7, 6:24, 7:1, 9:20, 10:14, 11:19, 15:8, 24:15, 24:22, 25:23, 27:12, 28:16, 28:17, 28:18, 31:18, 32:17, 33:24, 34:10, 34:16, 35:2, 36:25, 37:4, 37:6, 38:11, 42:1, 45:10, 45:21, 46:8, 49:4, 49:7, 56:5, 56:13
**front** [6] - 13:23, 15:21, 19:19, 26:24, 43:12, 52:8
**Fulbright** [1] - 6:24
**fully** [2] - 4:23, 5:25
**fundamentally** [1] - 16:11
**further** [6] - 29:4, 29:14, 44:7, 56:4, 56:8, 57:14
**furthermore** [1] - 53:10

**G**

**Garrett** [1] - 7:2
**gears** [1] - 51:17
**GEJJI** [18] - 6:25, 15:12, 15:14, 19:13, 19:16, 19:22, 20:2, 20:12, 20:19, 23:14, 26:4, 33:7, 33:9, 44:13, 44:15, 49:13, 53:17, 56:4
**Gejji** [2] - 7:1, 15:14
**Gejji's** [1] - 54:20
**gender** [1] - 18:17
**general** [2] - 34:20, 34:24
**generally** [1] - 3:2
**generis** [2] - 14:25, 46:9
**get** [12] - 5:3, 5:22, 21:3, 29:2, 33:13, 34:9, 40:6, 41:5, 41:13, 42:1, 44:4, 54:11
**gets** [3] - 5:25, 21:7, 55:1
**getting** [3] - 30:8, 45:21, 49:5
**give** [13] - 2:17, 2:18, 8:3, 9:18, 10:8, 10:11, 25:7, 36:7, 39:9, 39:10, 52:10, 52:15, 55:12
**given** [5] - 2:24, 4:10, 25:2, 32:4, 41:12
**giving** [5] - 10:6, 14:6, 36:2, 39:4, 50:6
**go** [29] - 7:10, 8:12, 12:25, 13:2, 13:3, 13:16, 14:16, 17:5, 18:24, 19:15, 20:1, 20:18, 21:14, 24:8, 28:21, 28:22, 30:18, 33:20, 36:1, 36:13, 37:11, 42:3, 42:8, 42:18, 44:1, 45:12, 50:11,

53:16

**goal** [4] - 5:7, 44:4, 46:18, 46:19
**going** [44] - 4:24, 5:5, 5:7, 5:9, 8:6, 9:10, 13:15, 14:25, 15:4, 18:16, 18:18, 21:14, 24:7, 24:8, 24:22, 25:8, 26:3, 27:8, 27:14, 27:15, 27:18, 27:19, 28:5, 28:21, 28:22, 29:2, 30:18, 34:12, 35:25, 40:17, 43:1, 43:8, 44:5, 44:25, 48:3, 48:13, 50:9, 51:22, 52:9, 52:10, 52:12, 52:14, 52:15, 54:9
**good** [9] - 2:7, 6:25, 15:12, 15:13, 17:11, 51:1, 51:2, 51:6, 52:15
**got** [4] - 3:6, 38:14, 48:18, 53:24
**Government** [1] - 54:23
**government** [2] - 17:8, 20:7
**grant** [1] - 10:16
**grappling** [2] - 33:15, 41:24
**gratitude** [1] - 3:23
**gravitas** [2] - 3:3, 7:20
**great** [7] - 5:16, 7:18, 7:23, 8:8, 36:8, 39:21, 40:13
**greater** [1] - 32:15
**ground** [2] - 38:10, 40:7
**grounds** [1] - 46:1
**group** [2] - 14:25, 18:19
**guess** [2] - 47:15, 48:25
**guys** [1] - 18:16

### H

**H** [1] - 28:6
**had** [12] - 2:9, 4:15, 7:24, 9:3, 11:8, 14:21, 31:15, 32:5, 33:12, 36:3, 36:10, 36:21
**HAND** [1] - 57:18
**happen** [1] - 25:16
**happened** [2] - 10:1, 39:17
**happening** [1] - 20:23
**happens** [3] - 27:7, 27:13, 33:17
**happy** [1] - 7:10
**hard** [6] - 3:25, 5:4, 16:14, 16:17, 33:13, 33:15
**harken** [1] - 39:14
**HARRIS** [1] - 57:3
**has** [43] - 3:7, 3:25, 4:9, 4:15, 6:13, 8:25, 9:3, 10:24, 11:9, 11:11, 12:2, 17:12, 20:5, 20:6, 22:6, 22:8, 22:10, 23:5, 23:7, 23:8, 23:18, 25:1, 26:11, 26:25, 30:5, 30:13, 32:4, 32:10, 32:21, 35:16, 40:9, 42:12, 42:14, 42:20, 43:8, 44:10, 45:20, 52:2, 52:5, 52:19, 54:5, 55:6
**have** [97] - 2:13, 2:15, 4:9, 4:17,

5:2, 5:9, 5:11, 5:15, 6:1, 6:5, 7:11, 7:13, 7:15, 8:11, 11:20, 12:13, 13:6, 13:8, 13:13, 13:15, 15:17, 16:2, 16:24, 17:8, 17:9, 18:2, 18:8, 18:12, 18:15, 19:4, 19:16, 19:18, 19:19, 19:24, 21:23, 21:24, 22:1, 22:21, 24:5, 24:11, 24:17, 24:21, 24:25, 25:1, 25:6, 25:18, 26:15, 26:16, 26:20, 27:8, 27:15, 27:16, 27:24, 28:8, 29:20, 29:24, 30:9, 30:10, 31:5, 32:23, 33:18, 35:21, 36:8, 37:12, 37:14, 37:21, 41:15, 41:21, 42:14, 42:17, 44:6, 44:17, 45:9, 46:9, 47:9, 47:22, 48:5, 48:9, 50:1, 50:4, 50:22, 50:24, 51:25, 52:8, 53:15, 53:20, 55:10, 55:11, 55:16, 56:5, 56:7, 56:9, 56:10
**haven't** [3] - 6:4, 6:14, 25:5
**having** [2] - 20:25, 43:16
**HB** [2] - 29:16, 54:14
**he** [3] - 37:3, 37:15
**hear** [2] - 15:5, 26:18
**heard** [3] - 1:11, 5:14
**hearing** [10] - 2:9, 2:10, 4:1, 4:7, 4:15, 4:17, 4:19, 5:11, 18:17, 45:23
**HEARING** [1] - 1:7
**heart** [1] - 28:5
**held** [3] - 1:13, 2:4, 4:16
**help** [1] - 5:16
**helpful** [1] - 19:17
**her** [2] - 28:14
**here** [24] - 2:8, 2:18, 3:8, 8:24, 9:23, 10:1, 13:6, 13:8, 13:13, 15:2, 23:2, 24:17, 31:5, 32:9, 35:21, 38:23, 39:21, 40:21, 40:22, 40:23, 41:13, 43:3, 48:9, 49:6
**hereby** [1] - 57:6
**hey** [1] - 42:25
**higher** [1] - 12:6
**history** [3] - 25:1, 31:12, 31:16
**hit** [1] - 51:25
**hold** [1] - 14:17
**holdings** [1] - 18:8
**Honor** [44] - 6:18, 6:22, 6:25, 7:6, 8:21, 10:2, 10:20, 11:16, 14:13, 15:9, 15:12, 15:16, 16:13, 17:11, 17:22, 18:4, 18:10, 19:13, 19:17, 19:22, 20:2, 20:10, 21:6, 23:14, 23:16, 24:19, 26:4, 27:3, 30:23, 31:21, 32:13, 35:2, 39:2, 42:7, 44:13, 45:17, 47:1, 47:10, 49:13, 51:3, 52:16, 53:17, 56:4, 56:16
**Honorable** [1] - 1:12
**honored** [2] - 2:8, 2:13
**horizontal** [1] - 46:21

**House** [17] - 10:16, 19:18, 20:3, 29:7, 29:9, 32:10, 32:11, 32:16, 35:18, 35:19, 35:20, 35:23, 48:3, 54:21, 54:22, 55:13
**HOUSTON** [1] - 1:3
**Houston** [2] - 1:14, 57:5
**how** [13] - 5:9, 5:10, 7:5, 15:23, 25:2, 26:9, 31:23, 34:19, 34:23, 35:15, 38:19, 38:24, 55:12
**however** [4] - 7:7, 7:17, 7:23, 50:20
**Hughes** [1] - 29:9
**hundred** [1] - 12:14
**hundreds** [1] - 25:9
**hurdles** [3] - 41:18, 42:11, 42:25

### I

**I** [224] - 2:9, 2:20, 2:21, 2:25, 3:2, 3:3, 3:18, 4:7, 4:16, 4:24, 5:2, 5:11, 5:13, 5:15, 5:17, 5:21, 5:23, 6:1, 6:12, 6:15, 7:6, 7:14, 7:20, 8:9, 8:14, 8:17, 8:23, 9:1, 9:4, 9:9, 10:19, 11:25, 12:1, 12:17, 13:16, 14:16, 14:17, 14:18, 14:23, 14:24, 15:1, 15:3, 15:5, 15:6, 15:20, 17:11, 18:5, 18:13, 18:14, 18:15, 18:24, 19:1, 19:2, 19:16, 19:18, 19:19, 19:22, 19:24, 20:9, 20:14, 21:16, 21:21, 21:22, 22:11, 22:17, 23:16, 24:19, 24:24, 25:5, 25:7, 25:11, 25:16, 25:18, 26:3, 26:4, 27:3, 27:9, 27:19, 28:1, 28:4, 28:7, 28:9, 28:10, 28:11, 28:24, 29:1, 29:6, 29:7, 29:22, 30:25, 31:10, 31:13, 31:21, 33:7, 33:12, 33:14, 33:25, 34:6, 34:9, 34:17, 35:3, 36:3, 36:7, 36:11, 36:19, 36:20, 36:24, 37:11, 37:12, 37:20, 39:2, 39:9, 39:10, 39:17, 39:20, 39:21, 39:23, 39:25, 40:10, 40:12, 40:17, 40:18, 40:19, 41:2, 41:3, 41:8, 41:12, 41:14, 42:2, 42:9, 42:10, 42:11, 42:12, 42:19, 42:23, 42:25, 43:1, 43:4, 43:6, 43:10, 43:15, 43:16, 43:19, 43:20, 43:23, 43:25, 44:6, 44:8, 44:17, 44:19, 44:21, 44:25, 45:5, 45:6, 45:7, 45:11, 45:15, 46:10, 46:15, 47:3, 47:10, 47:15, 48:10, 48:21, 48:22, 48:25, 49:2, 49:11, 49:13, 50:1, 50:4, 50:8, 50:13, 50:14, 51:6, 51:22, 51:24, 51:25, 52:2, 52:4, 52:8, 52:12, 52:23, 53:5, 53:9, 53:13, 53:17, 53:18, 54:10, 54:15,

54:19, 55:15, 56:9, 56:10, 56:19, 56:20, 57:4, 57:14

**i** [6] - 15:6, 19:25, 21:15, 34:9, 52:11, 54:9

**I'd** [1] - 26:5

**I'll** [12] - 2:14, 18:10, 27:25, 30:19, 37:21, 39:14, 43:2, 43:11, 50:1, 50:14, 52:3

**I'm** [56] - 4:10, 4:12, 5:7, 5:12, 7:1, 7:19, 8:3, 8:5, 8:13, 12:18, 15:4, 18:16, 18:18, 20:16, 21:14, 22:11, 24:7, 26:3, 27:19, 28:21, 28:22, 29:1, 29:10, 29:20, 30:18, 31:11, 34:7, 34:12, 35:25, 36:1, 36:6, 38:3, 38:23, 40:8, 41:10, 41:17, 41:20, 41:23, 43:21, 44:1, 44:6, 45:4, 45:8, 46:21, 50:4, 50:7, 50:16, 52:9, 52:10, 52:14, 52:15, 55:9, 56:1, 56:18

**i'm** [1] - 20:12

**I've** [15] - 2:21, 4:6, 5:15, 7:22, 8:4, 11:25, 14:24, 15:3, 29:2, 37:25, 38:14, 38:21, 41:13, 43:21

**idea** [2] - 31:6, 31:24

**identical** [1] - 10:25

**identified** [1] - 45:16

**if** [66] - 4:17, 5:23, 6:4, 6:9, 6:11, 6:14, 8:1, 12:9, 13:1, 18:23, 19:18, 19:20, 20:2, 20:8, 23:5, 23:7, 24:14, 25:9, 25:23, 25:24, 27:3, 27:21, 32:5, 32:21, 33:7, 33:20, 34:3, 34:15, 34:17, 35:9, 37:11, 37:12, 37:21, 38:8, 41:4, 41:10, 41:16, 41:20, 42:1, 42:12, 42:24, 43:1, 43:24, 44:1, 44:15, 44:24, 44:25, 45:17, 46:3, 50:1, 50:2, 50:3, 50:5, 50:8, 50:9, 50:19, 50:21, 50:24, 52:12, 53:19, 56:1, 56:5, 57:16

**III** [4] - 9:5, 9:7, 9:12, 9:20

**imagine** [2] - 25:12, 46:17

**immediate** [1] - 38:11

**impact** [1] - 24:10

**impetus** [2] - 22:15, 25:12

**important** [4] - 9:22, 12:7, 17:21, 28:2

**impose** [1] - 28:3

**IN** [1] - 1:2

**in** [182] - 1:11, 1:13, 2:4, 2:14, 2:22, 3:4, 3:5, 3:13, 3:14, 3:15, 3:19, 4:11, 4:12, 4:13, 4:16, 5:2, 5:8, 5:19, 5:24, 6:3, 6:10, 7:11, 7:24, 8:1, 8:5, 8:8, 8:16, 9:3, 9:6, 9:8, 9:18, 10:19, 11:1, 11:23, 12:9, 12:11, 12:12, 12:13, 13:22, 13:23, 14:20, 15:21, 16:1, 16:14, 16:15, 16:17, 16:25, 17:2, 17:23, 18:2,

18:6, 18:8, 18:20, 19:2, 19:6, 19:12, 19:18, 20:3, 20:21, 20:23, 21:1, 21:2, 21:7, 21:8, 21:11, 21:19, 21:23, 22:4, 22:5, 22:7, 22:9, 22:20, 22:24, 22:25, 23:9, 24:17, 24:20, 25:2, 25:6, 25:16, 25:22, 25:23, 26:15, 26:16, 26:24, 27:4, 27:5, 27:11, 27:13, 28:1, 28:12, 28:20, 29:5, 29:10, 29:15, 29:24, 30:2, 30:3, 30:4, 30:10, 31:3, 31:4, 31:7, 32:2, 32:12, 32:25, 33:2, 33:3, 33:4, 33:10, 33:14, 33:21, 34:19, 34:24, 35:13, 35:15, 35:17, 35:18, 36:3, 36:10, 37:16, 38:1, 38:6, 38:15, 38:18, 38:19, 38:24, 39:14, 39:25, 40:2, 40:8, 40:10, 40:11, 41:6, 41:10, 42:3, 42:11, 42:17, 42:18, 42:25, 43:2, 43:7, 43:12, 44:5, 45:12, 47:2, 47:6, 47:10, 47:12, 47:16, 47:19, 48:1, 48:3, 48:4, 48:11, 48:12, 48:14, 48:24, 49:17, 51:11, 51:16, 52:4, 52:8, 53:14, 54:11, 54:21, 55:3, 55:5, 55:16, 55:17, 57:5, 57:9, 57:10, 57:11, 57:12

**inclined** [2] - 44:16, 44:18

**include** [2] - 33:2, 35:18

**included** [2] - 32:23, 57:10

**including** [5] - 4:25, 5:23, 35:17, 36:9, 42:19

**inconsistent** [2] - 28:24, 49:4

**incorrectly** [1] - 41:2

**indeed** [4] - 4:18, 31:19, 33:20, 41:16

**independent** [1] - 20:22

**independently** [1] - 21:8

**indicates** [1] - 31:1

**indication** [1] - 49:16

**indicator** [1] - 24:22

**indulge** [3] - 19:6, 49:25, 52:7

**inefficiencies** [1] - 51:8

**inherent** [2] - 15:2, 20:25

**initial** [3] - 3:12, 6:7, 31:7

**initiative** [1] - 38:6

**innovative** [1] - 40:12

**inordinately** [1] - 40:12

**inquiry** [1] - 26:17

**inserted** [2] - 21:3, 53:24

**insofar** [1] - 37:16

**instance** [3] - 12:19, 29:5, 31:20

**instances** [2] - 33:2, 48:11

**instantly** [1] - 44:23

**insurance** [1] - 22:7

**intended** [3] - 27:11, 32:21, 35:9

**intentional** [1] - 31:19

**intentionally** [1] - 48:20

**intentions** [1] - 51:10

**interest** [3] - 5:24, 41:7, 56:11

**interested** [1] - 38:18

**interesting** [3] - 36:22, 46:7, 52:4

**interestingly** [1] - 53:11

**internal** [1] - 21:24

**interns** [2] - 5:17, 36:8

**interpleader/third** [1] - 14:3

**interpleader/third-party** [1] - 14:3

**interpret** [1] - 31:23

**interpreted** [2] - 32:7, 32:10

**into** [15] - 10:3, 12:14, 14:6, 17:8, 21:3, 23:23, 25:9, 26:13, 26:23, 26:24, 27:10, 30:3, 31:24, 53:3, 53:24

**invitation** [2] - 35:12, 48:8

**invite** [8] - 11:18, 13:4, 23:23, 32:18, 33:3, 48:20, 48:22, 49:3

**invited** [7] - 37:8, 40:20, 48:17, 48:18, 49:9, 49:14, 49:18

**involve** [1] - 22:8

**involves** [1] - 38:9

**involving** [3] - 21:24, 21:25, 47:16

**irrefutably** [1] - 16:10

**is** [186] - 2:8, 2:11, 4:1, 4:2, 4:4, 4:20, 5:7, 6:7, 7:7, 7:8, 7:10, 7:19, 8:9, 8:15, 8:18, 8:24, 8:25, 9:2, 9:5, 9:9, 9:10, 9:11, 9:12, 9:18, 10:2, 10:3, 10:13, 10:15, 10:16, 11:12, 11:22, 11:23, 12:3, 12:6, 12:11, 12:12, 13:4, 13:10, 13:11, 13:12, 13:14, 14:3, 14:10, 14:19, 14:22, 15:2, 15:18, 15:23, 15:24, 16:5, 16:6, 16:10, 16:14, 16:15, 17:1, 17:3, 17:13, 17:17, 17:23, 18:4, 18:7, 18:18, 20:20, 20:23, 21:2, 21:6, 21:8, 22:2, 22:18, 22:20, 23:1, 23:16, 24:1, 24:2, 24:21, 24:24, 25:21, 26:10, 26:17, 27:14, 27:21, 28:10, 28:13, 28:19, 29:8, 29:9, 29:11, 29:24, 30:1, 30:13, 30:15, 30:25, 31:4, 31:8, 32:1, 32:3, 32:13, 32:21, 33:15, 34:1, 34:3, 34:4, 34:5, 35:4, 35:5, 35:6, 35:9, 35:13, 35:21, 36:7, 36:22, 36:25, 37:4, 37:16, 37:20, 38:8, 38:10, 38:15, 39:24, 40:5, 40:8, 41:16, 41:17, 42:11, 42:14, 42:24, 43:4, 43:13, 43:18, 44:5, 44:7, 44:9, 44:25, 45:8, 45:11, 45:13, 45:23, 46:1, 46:9, 46:12, 46:17, 46:18, 46:19, 47:14, 48:6, 48:7, 48:9, 48:11, 48:13, 48:19, 49:10, 49:16, 49:17, 49:23, 50:21, 50:24, 51:2, 51:11,

52:25, 53:3, 54:6, 54:7, 54:13, 54:17, 54:20, 54:21, 54:23, 55:2, 55:3, 55:17, 56:10
**issue** [17] - 4:4, 10:21, 11:24, 12:7, 15:20, 15:25, 17:14, 44:10, 44:22, 45:24, 48:4, 48:5, 48:7, 50:22, 53:8
**issued** [6] - 3:14, 4:9, 16:3, 29:24, 33:10
**issues** [4] - 7:13, 15:23, 39:5, 45:3
**it** [134] - 2:11, 3:3, 4:17, 5:11, 5:12, 6:4, 6:5, 6:7, 8:2, 8:17, 8:24, 9:2, 9:12, 9:18, 10:3, 10:13, 10:16, 11:20, 12:12, 12:21, 12:22, 13:1, 13:11, 13:12, 14:1, 14:4, 14:10, 14:22, 15:3, 15:5, 15:7, 15:23, 17:12, 17:18, 18:13, 18:23, 18:24, 19:1, 19:7, 19:17, 19:25, 20:24, 21:15, 22:8, 24:20, 24:21, 25:3, 25:25, 26:10, 26:12, 26:24, 27:24, 28:2, 28:4, 28:7, 28:8, 28:9, 29:1, 29:11, 29:19, 30:19, 30:25, 31:2, 31:6, 34:13, 35:13, 35:15, 35:16, 35:17, 35:18, 35:21, 36:2, 36:21, 36:22, 36:23, 37:1, 37:3, 37:14, 37:21, 37:22, 38:16, 38:23, 39:2, 39:9, 39:10, 39:18, 39:19, 39:20, 39:21, 40:11, 40:19, 41:2, 41:5, 41:6, 42:2, 42:4, 42:5, 43:1, 43:13, 43:20, 44:4, 44:17, 44:21, 45:11, 45:14, 45:15, 46:8, 46:14, 49:1, 49:8, 49:17, 49:19, 49:20, 50:5, 50:6, 50:8, 50:9, 50:14, 50:20, 50:24, 51:2, 51:12, 52:4, 52:23, 52:25, 54:15, 54:21, 56:10
**it'll** [1] - 43:13
**It's** [1] - 37:13
**it's** [30] - 3:8, 10:8, 11:14, 11:16, 14:4, 14:9, 17:11, 21:4, 23:4, 28:9, 28:19, 31:1, 31:2, 32:15, 35:16, 39:17, 39:19, 43:10, 44:22, 45:24, 46:7, 47:4, 48:5, 48:8, 50:10, 51:5, 52:25, 53:7, 53:21, 55:16
**its** [4] - 12:10, 23:18, 28:16, 38:6
**itself** [1] - 8:16

### J

**January** [1] - 27:13
**joined** [2] - 7:2, 33:10
**joint** [9] - 3:13, 10:9, 16:16, 16:25, 17:23, 18:3, 33:10, 42:12, 42:18
**jointly** [1] - 44:1

**Jorrie** [14] - 6:3, 7:12, 12:17, 12:18, 12:21, 13:10, 13:17, 13:22, 13:23, 13:24, 14:10, 28:12
**JORRIE** [1] - 14:10
**Jorrie-Espada** [2] - 13:22, 13:24
**judge** [7] - 8:5, 23:9, 27:5, 27:8, 27:14, 27:15, 27:18
**Judge** [5] - 1:13, 6:3, 27:10, 28:11, 28:12
**judges** [3] - 9:1, 9:6, 26:7
**judicata** [1] - 46:21
**Judicial** [1] - 29:13
**juncture** [1] - 15:4
**Jurisdiction** [2] - 10:13, 54:23
**jurisdiction** [59] - 3:11, 3:20, 4:5, 4:23, 5:1, 5:19, 9:6, 9:7, 9:13, 9:16, 9:18, 10:6, 10:11, 10:17, 11:7, 11:8, 11:20, 13:5, 13:8, 14:7, 15:19, 15:23, 16:1, 16:7, 16:14, 17:18, 18:6, 18:20, 19:11, 20:25, 21:19, 22:2, 22:6, 22:24, 23:18, 23:20, 24:4, 25:24, 25:25, 26:8, 26:11, 26:17, 30:11, 33:14, 33:21, 39:15, 44:17, 46:4, 48:7, 49:22, 51:12, 51:21, 53:1, 53:2, 53:7, 54:10, 55:1, 55:6, 55:13
**jurisdictional** [21] - 10:7, 12:7, 17:7, 17:20, 21:9, 23:24, 28:4, 28:8, 28:13, 28:23, 39:5, 39:12, 49:24, 53:20, 53:22, 53:23, 54:2, 54:4, 54:6, 54:7, 54:20
**jurisprudence** [2] - 51:1, 51:3
**jury** [1] - 55:16
**just** [47] - 2:17, 3:1, 3:2, 4:10, 4:13, 5:24, 6:11, 12:25, 13:2, 17:5, 18:21, 24:14, 26:23, 27:3, 28:21, 29:5, 32:5, 33:12, 36:10, 36:17, 36:23, 39:24, 40:8, 40:11, 40:17, 41:4, 41:10, 41:25, 43:1, 43:2, 43:11, 43:13, 44:5, 46:17, 46:19, 48:8, 50:14, 50:17, 50:25, 51:24, 53:9, 54:7, 54:18, 55:1
**juxtaposition** [1] - 29:23

### K

**keep** [2] - 6:19, 40:23
**kept** [1] - 41:2
**kind** [8] - 7:10, 8:12, 21:8, 32:13, 33:15, 44:20, 45:2, 53:6
**kinds** [1] - 54:2
**know** [51] - 2:21, 3:9, 7:7, 8:9, 8:17, 9:4, 9:9, 11:24, 12:4, 12:6, 12:24, 14:16, 14:24, 15:4, 16:19, 16:20, 16:21, 19:18,

20:19, 21:7, 21:11, 23:16, 25:8, 26:9, 26:14, 28:9, 28:11, 28:12, 32:2, 32:5, 32:17, 33:18, 34:2, 37:12, 38:5, 39:17, 39:21, 40:14, 41:2, 42:3, 42:19, 44:22, 44:25, 47:3, 47:13, 48:2, 48:13, 49:17, 49:18, 50:13, 51:22
**knows** [3] - 11:4, 35:15, 39:16

### L

**labeled** [1] - 54:3
**labeling** [1] - 53:19
**lack** [6] - 6:8, 34:19, 34:23, 35:8, 50:2, 56:2
**ladies** [1] - 18:17
**laid** [1] - 24:5
**language** [11] - 16:20, 31:8, 31:11, 31:18, 32:24, 34:12, 34:19, 34:23, 35:9, 35:18, 47:15
**large** [1] - 9:14
**largely** [1] - 30:8
**last** [1] - 54:15
**later** [2] - 11:19, 41:1
**law** [22] - 5:19, 9:7, 9:8, 11:1, 17:11, 18:20, 19:3, 19:4, 19:8, 19:12, 20:3, 20:21, 21:1, 21:7, 21:8, 21:11, 22:22, 26:22, 36:23, 38:9, 47:6, 55:23
**laws** [3] - 24:12, 34:21, 34:25
**lawsuit** [3] - 15:18, 22:3, 23:23
**lawsuits** [2] - 21:24, 21:25
**learned** [1] - 9:8
**least** [3] - 4:11, 33:24, 40:14
**legal** [4] - 4:22, 34:20, 34:24, 50:22
**legislation** [1] - 31:23
**legislative** [3] - 31:12, 31:16, 31:20
**legislature** [10] - 9:1, 24:5, 26:20, 26:25, 27:17, 31:9, 32:3, 32:21, 35:10, 35:17
**lens** [1] - 49:22
**less** [2] - 3:7, 32:14
**let** [6] - 18:21, 34:14, 36:6, 36:19, 46:24, 50:11
**let's** [1] - 40:23
**LEXIS** [1] - 37:21
**like** [23] - 6:9, 6:20, 7:7, 7:17, 9:11, 13:5, 13:8, 19:20, 21:11, 23:1, 25:4, 25:6, 26:5, 29:19, 30:13, 32:5, 35:17, 41:5, 47:12, 47:20, 47:25, 48:14, 55:1
**limit** [2] - 27:21, 28:3
**limitation** [7] - 10:17, 11:13, 11:14, 11:17, 23:12, 28:24, 53:1
**limitations** [3] - 21:18, 21:22,

21:23

**limited** [3] - 9:6, 9:21, 31:6
**limiting** [6] - 31:11, 31:18, 34:11, 34:19, 34:23, 35:8
**limits** [2] - 24:4, 24:6
**line** [2] - 29:24, 45:16
**litany** [1] - 4:25
**litigants** [2] - 39:10, 39:22
**litigation** [7] - 26:2, 30:2, 38:13, 38:21, 39:1, 39:4, 43:17
**little** [3] - 3:17, 34:7, 34:11
**live** [1] - 2:12
**LLC** [1] - 1:6
**Lone** [5] - 17:16, 33:10, 35:2, 53:18, 56:13
**LONE** [1] - 1:2
**long** [7] - 5:13, 9:24, 10:4, 12:15, 43:9, 50:20, 51:20
**long-standing** [2] - 9:24, 51:20
**longer** [1] - 27:14
**look** [8] - 13:1, 17:5, 17:7, 19:17, 20:2, 20:8, 40:18
**looking** [3] - 20:12, 36:1, 38:23
**lot** [7] - 2:21, 9:4, 9:6, 9:9, 15:21, 24:25, 51:16
**luxury** [1] - 2:10

## M

**machine** [1] - 1:15
**made** [3] - 11:1, 17:15, 40:21
**make** [10] - 5:13, 6:21, 32:22, 35:10, 45:14, 48:23, 50:3, 50:9, 56:2
**makes** [1] - 25:3
**Maneen** [1] - 7:3
**manipulating** [1] - 25:24
**manner** [1] - 40:11
**many** [1] - 5:9
**mass** [3] - 29:16, 30:5, 30:15
**materially** [1] - 38:12
**matter** [21] - 9:7, 10:17, 11:8, 11:13, 11:24, 13:7, 15:19, 15:22, 17:17, 20:25, 23:10, 23:17, 23:19, 24:24, 26:8, 26:17, 35:6, 48:7, 49:22, 53:2, 53:7
**matters** [2] - 29:15, 43:22
**May** [1] - 3:5
**may** [16] - 5:2, 6:1, 15:6, 19:16, 19:22, 26:14, 26:15, 27:3, 33:7, 37:23, 38:7, 38:11, 41:15, 42:5, 43:7, 51:10
**maybe** [2] - 9:2, 24:25
**me** [24] - 6:11, 6:12, 6:14, 6:19, 18:21, 19:6, 23:6, 25:12, 29:6, 29:7, 34:14, 36:6, 36:9, 36:11, 36:19, 39:17, 43:12, 44:2, 46:24, 49:25, 50:11, 52:7, 52:8,

57:13

**mean** [16] - 5:1, 7:23, 8:17, 9:2, 21:21, 24:24, 28:9, 28:11, 32:7, 33:19, 34:2, 35:4, 36:14, 40:19, 42:9, 51:24
**meaning** [4] - 27:23, 28:8, 28:9, 32:4
**means** [5] - 17:4, 32:12, 35:5, 35:7, 54:2
**meant** [1] - 27:21
**meet** [1] - 23:24
**mentioned** [4] - 8:24, 11:25, 13:10, 30:12
**merely** [1] - 31:19
**met** [1] - 55:8
**meticulously** [1] - 34:7
**mid** [1] - 26:2
**mid-litigation** [1] - 26:2
**MIDSTREAM** [1] - 1:5
**might** [7] - 18:12, 19:17, 28:3, 33:21, 34:2, 39:3, 39:12
**million** [4] - 12:14, 22:10, 22:22, 55:4
**mindful** [2] - 41:18, 50:16
**minds** [1] - 9:5
**minute** [1] - 50:11
**minutes** [1] - 49:25
**moment** [5] - 2:14, 6:15, 6:16, 41:10, 48:16
**momentarily** [2] - 5:8, 35:25
**momentous** [3] - 2:12, 2:24, 8:24
**months** [2] - 24:20, 25:7
**more** [14] - 3:7, 12:7, 12:18, 18:16, 22:15, 25:6, 25:21, 32:14, 37:4, 38:17, 38:22, 46:5, 47:21
**morning** [4] - 6:25, 15:12, 15:13, 17:11
**most** [4] - 8:15, 13:10, 56:1, 56:18
**mostly** [1] - 43:19
**motion** [1] - 38:5
**move** [1] - 40:23
**moving** [1] - 4:1
**MR** [65] - 6:22, 6:25, 7:6, 8:8, 8:21, 8:23, 13:17, 13:19, 15:9, 15:12, 15:14, 19:13, 19:15, 19:16, 19:22, 20:2, 20:12, 20:19, 21:21, 22:13, 22:17, 22:20, 23:11, 23:14, 24:19, 26:4, 27:3, 27:25, 29:22, 30:23, 31:21, 33:7, 33:9, 35:2, 36:14, 36:17, 37:9, 37:11, 39:2, 40:17, 42:7, 42:9, 42:21, 42:23, 44:13, 44:15, 45:17, 47:9, 48:21, 49:13, 51:2, 51:5, 51:24, 52:9, 52:14, 52:18, 53:17, 54:19, 55:18, 55:21, 55:24, 56:4, 56:7, 56:13, 56:16

**Mr** [8] - 7:10, 7:15, 8:12, 30:12, 50:25, 51:7, 54:20, 55:1
**much** [15] - 5:10, 7:4, 8:7, 8:20, 12:6, 14:15, 14:18, 18:25, 34:9, 34:11, 36:20, 38:3, 39:23, 56:19
**multiple** [3] - 12:14, 52:1, 54:2
**multiple-hundred-million-dollar** [1] - 12:14
**murder** [1] - 12:11
**my** [26] - 2:9, 3:23, 4:8, 4:20, 5:7, 5:17, 6:7, 6:8, 7:2, 8:5, 14:17, 18:10, 22:15, 25:14, 27:20, 29:3, 34:8, 38:17, 40:18, 42:1, 44:4, 46:8, 50:12, 50:17, 52:6, 52:18
**MY** [1] - 57:18

## N

**narrow** [3] - 15:24, 16:5, 18:5
**necessarily** [2] - 5:1, 20:24
**need** [16] - 5:14, 6:5, 6:12, 15:4, 17:4, 36:7, 40:6, 44:12, 44:20, 45:2, 45:7, 50:5, 50:8, 54:18, 55:15
**needed** [1] - 50:10
**needs** [3] - 7:24, 46:16, 51:12
**neither** [2] - 39:18
**nerd** [1] - 36:10
**neutral** [1] - 18:17
**never** [1] - 48:3
**new** [11] - 8:25, 27:8, 27:15, 28:18, 34:21, 34:25, 46:18, 47:18, 47:20, 47:22, 48:1
**news** [1] - 7:19
**next** [2] - 18:24, 37:12
**NGL** [1] - 1:2
**Nichole** [6] - 1:16, 6:11, 14:9, 46:24, 57:4, 57:21
**No** [2] - 11:1, 14:11
**no** [28] - 15:25, 18:7, 22:11, 23:12, 25:11, 27:11, 27:14, 30:13, 32:22, 35:6, 36:19, 36:20, 39:24, 40:9, 41:9, 43:15, 45:8, 46:14, 47:23, 48:6, 48:7, 51:11, 51:24, 52:11, 52:17
**NO** [1] - 1:1
**nodding** [1] - 29:19
**non** [4] - 16:12, 18:9, 47:7, 54:7
**non-consent** [2] - 16:12, 18:9
**non-jurisdictional** [1] - 54:7
**non-waivability** [1] - 47:7
**nonetheless** [1] - 51:10
**nonsuit** [3] - 39:7, 43:2, 43:12
**north** [1] - 15:1
**Norton** [1] - 6:24
**not** [90] - 2:8, 3:1, 5:1, 5:8, 5:12, 7:14, 7:23, 8:6, 9:11, 10:16,

11:13, 11:23, 12:19, 13:12, 13:19, 13:23, 14:4, 14:20, 14:22, 15:3, 15:9, 17:13, 17:17, 19:9, 20:20, 21:4, 22:11, 23:4, 23:17, 23:22, 23:24, 24:6, 24:22, 25:8, 26:9, 26:12, 26:15, 26:16, 26:21, 26:22, 27:6, 27:21, 28:20, 29:15, 30:5, 31:1, 31:19, 35:4, 35:5, 35:6, 35:13, 35:18, 35:19, 35:20, 35:21, 37:2, 37:14, 38:8, 39:9, 39:12, 43:14, 44:6, 44:7, 44:10, 45:4, 45:5, 45:9, 45:12, 46:3, 47:4, 47:6, 47:9, 48:22, 49:16, 49:24, 50:2, 50:4, 50:7, 50:10, 50:17, 52:9, 52:10, 52:14, 52:15, 53:7, 54:10, 56:13

**notation** [1] - 36:10
**note** [2] - 10:20, 31:13
**notebooks** [1] - 19:24
**noted** [3] - 4:11, 10:2, 43:20
**notes** [1] - 50:12
**nothing** [4] - 32:14, 43:18, 53:21, 56:4
**notice** [4] - 33:9, 54:13, 54:17, 55:9
**notion** [1] - 52:25
**November** [4] - 1:10, 2:2, 3:21, 3:23
**now** [12] - 3:7, 3:22, 4:9, 14:24, 15:9, 24:20, 26:23, 31:11, 40:9, 46:22, 52:22, 55:16
**number** [3] - 18:15, 19:24, 51:14
**numbered** [2] - 1:12, 57:11
**numerous** [1] - 33:2

## O

**obviously** [6] - 4:21, 7:19, 13:14, 14:16, 42:6, 46:9
**occasion** [2] - 2:12, 2:24
**occurred** [1] - 57:12
**October** [2] - 3:17, 3:18
**OF** [4] - 1:2, 1:8, 57:2, 57:3
**of** [251] - 1:10, 1:13, 1:18, 2:7, 2:10, 2:16, 2:18, 2:21, 3:3, 3:5, 3:6, 3:11, 3:13, 3:19, 4:2, 4:3, 4:5, 4:11, 4:24, 4:25, 5:4, 5:6, 5:9, 5:15, 5:16, 5:17, 5:19, 5:21, 6:2, 6:8, 6:16, 6:19, 7:10, 7:13, 7:15, 7:16, 7:19, 7:21, 8:10, 8:12, 8:15, 8:16, 9:4, 9:6, 9:9, 9:19, 9:22, 9:25, 10:6, 10:10, 10:12, 10:16, 10:17, 10:22, 11:5, 11:10, 12:1, 12:3, 12:10, 12:22, 12:23, 13:11, 13:20, 13:23, 14:10, 14:25, 15:1, 15:14, 15:19, 15:21, 16:2,

16:18, 16:20, 16:22, 17:19, 18:7, 18:15, 18:19, 18:20, 19:1, 19:3, 19:4, 19:8, 19:19, 19:23, 19:24, 20:7, 20:12, 20:23, 21:3, 21:6, 21:9, 21:23, 22:1, 22:3, 22:6, 22:12, 22:15, 22:25, 23:8, 23:9, 23:22, 23:25, 24:9, 24:12, 24:14, 24:23, 24:24, 24:25, 25:8, 25:9, 26:8, 26:14, 26:24, 27:7, 27:9, 27:13, 27:22, 28:3, 28:5, 28:10, 28:14, 28:16, 28:23, 29:9, 29:12, 30:6, 30:10, 30:15, 30:22, 31:8, 31:14, 31:15, 31:18, 31:19, 32:9, 32:11, 32:13, 32:19, 33:15, 33:17, 33:22, 34:4, 34:8, 34:15, 34:19, 34:23, 35:8, 35:11, 35:20, 35:23, 36:22, 36:23, 37:3, 37:5, 37:7, 37:13, 38:3, 38:9, 38:12, 38:20, 38:21, 39:1, 39:3, 39:11, 39:19, 39:20, 39:21, 39:24, 39:25, 40:4, 40:5, 40:7, 40:9, 40:15, 41:13, 41:18, 41:23, 42:13, 42:19, 42:25, 43:12, 43:21, 43:22, 43:24, 44:4, 44:7, 44:10, 44:11, 44:19, 44:20, 45:2, 45:5, 45:14, 45:16, 45:20, 45:24, 46:10, 47:14, 47:18, 47:21, 48:1, 48:2, 48:4, 48:13, 48:17, 48:18, 49:3, 49:10, 49:21, 50:2, 50:6, 50:16, 50:17, 51:1, 51:3, 51:6, 51:14, 51:16, 52:5, 52:8, 52:18, 52:22, 52:23, 53:6, 53:25, 54:2, 54:13, 54:14, 54:17, 54:21, 55:9, 55:23, 56:2, 56:11, 56:12, 56:18, 57:6, 57:8, 57:10, 57:12, 57:15, 57:18

**offered** [1] - 29:8
**Official** [3] - 1:17, 57:4, 57:22
**OFFICIAL** [3] - 1:1, 1:8, 57:18
**oh** [4] - 20:14, 40:6, 45:4, 52:11
**okay** [15] - 6:7, 6:20, 15:11, 22:13, 22:17, 22:19, 23:12, 27:1, 35:25, 36:16, 37:10, 52:11, 52:17, 54:9, 56:17
**old** [1] - 47:21
**omission** [1] - 31:18
**On** [1] - 1:10
**on** [79] - 1:11, 2:20, 3:12, 3:15, 3:16, 3:18, 3:19, 3:20, 3:22, 4:1, 4:25, 5:24, 7:13, 9:7, 9:16, 10:20, 11:2, 11:5, 11:13, 12:17, 13:8, 13:17, 13:20, 14:22, 15:6, 15:14, 17:22, 17:25, 19:2, 20:10, 20:16, 21:18, 23:18, 24:11, 26:9, 26:11, 27:23, 28:14, 28:21, 29:3, 29:17, 30:11, 31:11, 31:23, 32:11, 34:11, 34:17, 34:18, 35:8, 35:9,

36:5, 36:9, 36:12, 36:21, 37:7, 37:13, 38:5, 38:6, 39:13, 39:16, 40:18, 42:17, 43:8, 44:10, 45:9, 45:10, 45:15, 46:10, 46:15, 47:7, 48:17, 48:18, 50:7, 50:13, 50:22, 53:1, 56:3, 56:12
**once** [2] - 38:22, 44:22
**one** [36] - 2:12, 4:11, 4:15, 4:24, 8:16, 10:19, 13:17, 14:21, 17:2, 18:21, 19:6, 19:10, 22:18, 25:22, 25:24, 29:5, 32:1, 32:2, 34:4, 36:3, 37:5, 38:15, 38:17, 40:9, 41:23, 46:11, 46:17, 46:18, 47:14, 48:16, 52:2, 52:7, 56:9, 56:10
**ones** [1] - 53:24
**ongoing** [4] - 42:14, 47:19, 48:2, 51:14
**only** [19] - 3:1, 4:15, 5:20, 12:17, 18:21, 24:21, 29:17, 30:12, 31:1, 31:12, 31:15, 32:20, 32:25, 33:17, 39:9, 48:10, 50:25, 52:2, 53:23
**open** [2] - 2:4, 57:12
**opening** [2] - 8:2
**operative** [1] - 52:21
**opinion** [8] - 6:3, 12:2, 13:21, 28:15, 38:11, 40:7, 48:5, 50:22
**opinions** [8] - 4:9, 13:12, 29:23, 29:24, 40:15, 52:5, 52:8, 52:19
**opportunity** [5] - 2:15, 2:19, 4:17, 8:4, 25:18
**oppose** [1] - 14:1
**or** [51] - 2:17, 3:7, 8:6, 10:16, 11:2, 11:20, 13:11, 17:3, 18:23, 19:9, 20:11, 22:3, 22:4, 22:5, 22:25, 23:24, 25:25, 26:12, 26:14, 27:23, 29:17, 30:8, 30:15, 31:3, 31:12, 31:16, 32:14, 35:11, 36:5, 36:15, 38:5, 38:10, 38:11, 38:14, 39:7, 40:1, 41:14, 43:10, 44:21, 47:7, 48:8, 48:22, 49:19, 50:20, 51:8, 54:8, 55:5, 56:1, 56:3, 57:12
**oral** [1] - 45:22
**orchestrated** [1] - 2:22
**order** [12] - 5:2, 16:1, 18:6, 38:7, 38:8, 38:11, 41:16, 44:21, 44:22, 45:3, 50:20
**orders** [1] - 16:2
**original** [3] - 3:5, 37:25, 42:11
**other** [38] - 4:15, 7:12, 8:10, 8:11, 12:22, 13:17, 16:2, 16:19, 18:2, 18:8, 20:6, 20:7, 20:8, 21:10, 23:10, 24:9, 25:14, 25:22, 28:20, 30:13, 31:12, 31:17, 33:2, 33:22, 34:15, 38:1, 40:10, 40:11, 40:13, 41:14, 46:2, 46:9, 47:6, 50:1, 54:2, 56:6, 57:8

others [4] - 4:13, 24:14, 31:15, 50:17
otherwise [3] - 34:22, 35:1, 38:8
ought [2] - 25:7, 40:23
our [31] - 8:13, 9:8, 10:9, 10:19, 18:3, 21:13, 25:1, 25:9, 27:5, 27:8, 27:10, 27:11, 29:22, 30:9, 30:10, 30:14, 30:15, 32:11, 32:12, 35:3, 35:4, 35:8, 36:24, 37:16, 40:21, 42:11, 43:19, 51:17
ours [2] - 55:3, 55:4
ourselves [1] - 44:1
out [5] - 15:16, 22:3, 24:5, 26:25, 53:13
outset [2] - 6:8, 45:16
outside [3] - 12:10, 23:22, 32:19
over [5] - 13:5, 35:24, 36:9, 51:12, 55:7
overrule [1] - 37:7
overruled [1] - 37:17
overrules [1] - 37:18
oversaw [1] - 27:5
overseeing [2] - 27:8, 27:15
own [4] - 18:17, 23:18, 38:6

## P

P [1] - 28:6
P-R-Y-S-T-A-S-H [1] - 28:6
p.m [1] - 2:2
page [9] - 10:4, 12:15, 13:20, 20:10, 20:13, 28:14, 37:12, 37:13, 42:18
paragraph [1] - 2:17
paragraphs [1] - 19:4
parameters [1] - 26:25
paramount [1] - 12:3
part [5] - 25:16, 39:24, 40:4, 40:8, 44:5
Parth [3] - 7:1, 7:16, 15:14
particular [1] - 46:11
particularly [1] - 44:3
parties [65] - 3:10, 9:12, 9:13, 9:14, 9:17, 10:2, 10:7, 10:10, 11:14, 11:17, 13:5, 13:8, 13:19, 13:22, 13:23, 13:24, 14:5, 15:17, 16:6, 17:14, 22:1, 22:4, 22:22, 22:23, 23:2, 23:9, 23:17, 25:1, 25:23, 27:9, 27:16, 27:17, 30:1, 30:10, 32:18, 32:22, 33:3, 33:9, 34:4, 35:11, 35:21, 39:4, 39:11, 39:21, 40:10, 43:6, 44:16, 45:19, 47:17, 47:25, 48:5, 48:9, 48:20, 48:22, 48:23, 49:3, 49:6, 50:19, 53:4, 54:12, 54:16, 55:5, 57:10, 57:17

parties' [7] - 9:25, 12:24, 21:18, 31:7, 35:24, 51:9
parts [2] - 21:3, 38:1
party [6] - 12:9, 12:21, 12:22, 14:3, 42:13, 50:23
party's [1] - 38:5
past [1] - 9:3
path [1] - 33:20
penalty [2] - 12:5, 48:12
pending [4] - 23:1, 23:6, 23:7, 43:22
people [1] - 46:1
people's [1] - 9:5
percent [1] - 43:14
perfect [2] - 56:15, 56:17
perfected [1] - 11:2
performed [1] - 23:4
perhaps [7] - 25:14, 34:7, 34:10, 40:1, 41:5, 41:14, 42:5
permissibility [2] - 50:7, 56:12
permissive [12] - 5:22, 37:23, 38:15, 38:19, 38:25, 39:7, 41:19, 43:24, 44:11, 45:10, 46:6, 50:13
permit [1] - 38:7
permitted [1] - 37:14
permitting [1] - 51:19
personal [1] - 10:5
perspective [14] - 4:21, 15:8, 24:15, 24:23, 33:25, 34:10, 35:3, 37:6, 42:1, 45:11, 46:8, 47:8, 56:14
petition [1] - 3:5
Phillips [1] - 27:10
phrase [2] - 42:10, 51:16
phrased [1] - 46:8
pick [1] - 43:13
piece [5] - 28:10, 28:23, 29:8, 29:10, 29:25
pincites [1] - 52:16
pivotal [1] - 3:7
place [1] - 26:16
plaintiff [4] - 6:9, 6:22, 17:17, 23:15
Plaintiff [1] - 1:3
plaintiff's [1] - 6:20
plaintiffs [2] - 16:7, 16:25
please [5] - 8:19, 18:13, 19:21, 21:16, 40:6
point [11] - 4:24, 7:10, 7:11, 30:14, 31:14, 31:22, 32:21, 34:15, 46:16, 53:18, 54:20
pointed [2] - 15:16, 47:14
pointing [1] - 53:13
points [3] - 42:19, 48:13, 51:9
policy [7] - 9:24, 12:1, 12:4, 22:16, 22:20, 24:9, 24:23
ponder [1] - 50:11
portions [1] - 57:8

pose [2] - 18:19, 18:21
position [6] - 12:25, 13:23, 14:2, 21:13, 35:3, 35:4
positioned [1] - 25:2
possibility [1] - 43:4
post [1] - 55:11
post-September [1] - 55:11
posted [1] - 6:19
potentially [1] - 2:25
Powell [5] - 37:2, 37:7, 37:15, 37:16, 37:19
power [2] - 26:18, 28:16
Powers [2] - 10:13, 54:24
Practice [3] - 38:4, 47:13, 47:16
precedent [1] - 46:15
precise [1] - 23:21
precisely [1] - 31:5
preclude [1] - 35:21
precludes [1] - 35:22
prefer [2] - 16:16, 45:12
preference [1] - 6:8
premise [2] - 52:23, 53:6
preparation [1] - 7:24
prepared [1] - 5:16
preprepared [1] - 18:11
present [2] - 2:15, 15:2
presents [1] - 8:10
presiding [1] - 1:13
presume [1] - 9:10
presumed [2] - 34:21, 34:25
presumes [1] - 22:22
pretty [1] - 20:3
prevent [1] - 25:23
previously [2] - 7:20, 14:22
price [3] - 30:12, 51:7, 55:1
PRICE [17] - 6:22, 7:6, 8:8, 8:21, 24:19, 27:25, 40:17, 42:7, 42:9, 42:21, 42:23, 51:24, 52:9, 52:14, 52:18, 56:7, 56:13
Price [1] - 6:23
primary [1] - 4:4
principle [1] - 51:20
principles [2] - 34:21, 34:25
prior [3] - 6:13, 26:7, 35:23
pro [1] - 40:2
probably [2] - 24:21, 33:25
problem [1] - 52:11
procedural [5] - 41:18, 42:10, 42:24, 43:5, 48:8
procedurally [2] - 44:15, 45:6
procedure [1] - 2:18
proceed [3] - 7:5, 7:7, 7:17
PROCEEDINGS [2] - 1:8, 2:1
Proceedings [1] - 1:15
proceedings [4] - 1:11, 2:4, 57:9, 57:15
procured [1] - 37:15
PRODUCT [1] - 1:2
Progressive [1] - 29:12

**promote** [1] - 9:25
**prompt** [1] - 4:14
**pronouncements** [1] - 31:23
**proper** [2] - 26:16
**propose** [1] - 35:7
**proposed** [2] - 16:15, 16:24
**proposition** [1] - 17:9
**propriety** [2] - 3:19, 4:5
**prospectively** [2] - 34:22, 35:1
**provide** [1] - 19:19
**provided** [3] - 3:16, 29:6, 47:4
**providing** [1] - 5:24
**provision** [27] - 10:12, 10:14, 10:15, 10:25, 17:2, 17:18, 17:19, 18:1, 21:10, 24:2, 24:3, 32:3, 33:19, 34:3, 45:2, 49:15, 49:16, 49:23, 49:24, 52:6, 52:20, 52:21, 53:12, 53:22, 54:7, 54:21
**provisions** [10] - 17:7, 17:20, 18:2, 20:7, 21:9, 21:10, 23:25, 32:6, 53:23, 53:25
**Prystash** [22] - 6:2, 11:16, 11:22, 12:5, 12:9, 17:10, 21:13, 28:5, 28:25, 29:2, 32:18, 35:11, 36:1, 36:15, 37:1, 37:7, 37:18, 40:20, 47:5, 48:14, 48:18, 49:2
**Prystash-styled** [1] - 35:11
**public** [3] - 9:24, 12:1, 12:3
**publicly** [2] - 12:13, 21:25
**purpose** [1] - 4:2
**purposes** [2] - 2:15, 5:4
**put** [4] - 5:8, 6:10, 27:10, 53:2
**putting** [2] - 44:1, 45:19

## Q

**qualified** [2] - 22:9, 22:21
**qualify** [1] - 19:12
**qualifying** [1] - 55:3
**query** [2] - 29:5, 43:25
**question** [27] - 6:6, 15:24, 16:5, 16:10, 16:25, 18:4, 18:22, 19:10, 22:15, 22:16, 24:9, 26:6, 26:7, 29:5, 30:18, 34:12, 36:3, 37:2, 38:9, 38:24, 50:4, 50:21, 52:23, 53:3, 53:6, 54:10, 56:10
**questioning** [1] - 45:16
**questions** [30] - 4:22, 4:25, 5:15, 5:18, 5:22, 6:1, 6:14, 9:9, 13:15, 14:17, 15:5, 15:22, 18:8, 18:11, 18:15, 18:19, 24:8, 24:9, 25:13, 25:14, 27:20, 29:4, 33:16, 34:8, 37:5, 37:24, 38:15, 45:20, 50:2, 56:6
**quick** [1] - 46:25
**quite** [3] - 38:17, 40:11, 43:9
**quotation** [1] - 29:14
**quote/unquote** [1] - 20:20

**quoting** [1] - 36:25

## R

**R** [1] - 28:6
**Rafe** [1] - 6:23
**raise** [1] - 37:15
**raised** [2] - 39:16, 40:9
**rather** [1] - 26:24
**RDR** [2] - 1:16, 57:21
**re** [1] - 27:6
**re-elected** [1] - 27:6
**reach** [2] - 5:2, 25:3
**reached** [4] - 3:7, 3:10, 31:3, 31:4
**read** [15] - 6:4, 6:5, 7:12, 7:22, 7:23, 8:4, 28:21, 28:22, 31:13, 31:24, 35:20, 37:25, 38:21, 42:25, 43:21
**reading** [2] - 52:18, 56:19
**really** [12] - 3:1, 15:20, 25:13, 26:10, 26:17, 28:20, 31:24, 33:15, 41:20, 43:25, 53:7, 53:20
**realm** [1] - 47:6
**reason** [2] - 4:12, 15:25
**reasons** [1] - 51:7
**recall** [1] - 42:12
**recent** [1] - 6:4
**recess** [1] - 47:2
**recognizes** [1] - 49:2
**reconciled** [2] - 34:20, 34:24
**RECORD** [1] - 1:1
**record** [2] - 2:17, 2:23
**Record** [2] - 57:11, 57:15
**Redden** [3] - 7:1, 7:14, 14:16
**refer** [2] - 30:19, 30:20
**referee** [2] - 42:15, 42:20
**reference** [1] - 17:24
**referenced** [2] - 20:21, 21:2
**references** [1] - 57:16
**referencing** [2] - 45:6, 45:8
**referred** [3] - 33:13, 52:6, 52:19
**referring** [2] - 31:2, 32:20
**refile** [1] - 43:2
**refiled** [1] - 51:13
**refiling** [1] - 39:7
**reflection** [1] - 36:2
**reflects** [1] - 9:23
**regard** [3] - 43:5, 47:5, 51:10
**regarding** [2] - 4:22, 5:19
**regardless** [5] - 27:7, 27:13, 38:23, 48:2, 52:22
**rehashing** [1] - 51:22
**reliance** [1] - 36:5
**rely** [2] - 17:22, 17:25
**remand** [9] - 13:11, 39:6, 41:16, 42:25, 43:1, 43:11, 44:20, 44:22, 51:11

**remanded** [4] - 30:8, 42:2, 46:13, 50:21
**remarks** [3] - 8:2, 18:11, 56:3
**Remedies** [3] - 38:4, 47:13, 47:17
**reminiscent** [1] - 8:15
**removal** [16] - 3:13, 4:5, 4:22, 10:9, 12:23, 14:1, 23:3, 29:16, 29:23, 30:5, 48:25, 51:19, 54:13, 54:17, 55:9
**removals** [2] - 30:6, 30:16
**removed** [5] - 12:21, 12:22, 13:22, 13:24, 46:12
**repetitive** [1] - 36:18
**reported** [2] - 1:15, 57:13
**REPORTER** [3] - 6:17, 14:12, 47:1
**Reporter** [3] - 1:17, 57:5, 57:22
**REPORTER'S** [3] - 1:1, 1:8, 57:1
**Reporter's** [2] - 57:11, 57:14
**request** [2] - 4:8, 45:22
**requested** [3] - 3:18, 37:4, 57:9
**requesting** [1] - 3:15
**required** [2] - 54:13, 54:17
**reread** [1] - 19:2
**rereading** [1] - 19:6
**res** [1] - 46:21
**resource** [1] - 24:12
**resources** [1] - 41:25
**respect** [1] - 28:11
**respective** [1] - 57:17
**respond** [1] - 26:5
**responded** [3] - 3:20, 4:11, 13:20
**response** [2] - 3:14, 29:21
**rest** [1] - 15:5
**result** [2] - 3:22, 31:19
**return** [1] - 3:4
**Revamp** [1] - 29:12
**right** [20] - 8:9, 9:1, 12:1, 15:9, 19:11, 20:19, 21:19, 24:17, 28:5, 30:21, 31:25, 37:2, 40:19, 40:22, 42:21, 43:13, 44:4, 46:1, 48:15, 49:5
**rightly** [1] - 15:16
**rise** [2] - 26:9, 26:10
**risk** [2] - 40:25, 41:3
**RMR** [2] - 1:16, 57:21
**room** [1] - 55:16
**Rose** [1] - 6:24
**rule** [1] - 16:18
**Rule** [6] - 3:10, 4:2, 8:17, 15:17, 38:22, 51:19
**ruled** [1] - 46:10
**rules** [1] - 9:22

# S

**S** [2] - 28:6
**S.W.3d** [1] - 37:1
**safeguard** [1] - 30:1
**safeguards** [4] - 25:23, 26:19, 26:20, 26:21
**safer** [1] - 33:25
**said** [7] - 12:25, 14:19, 15:3, 18:18, 31:16, 53:18, 55:2
**same** [6] - 10:21, 24:15, 25:22, 32:2, 32:8, 35:17
**San** [3] - 4:16, 6:3, 8:16
**sand** [1] - 51:16
**say** [21] - 11:25, 17:1, 19:3, 28:21, 30:15, 30:19, 32:9, 34:1, 34:15, 36:6, 36:19, 43:25, 47:10, 47:15, 47:20, 49:1, 49:2, 52:4, 52:12, 53:5, 53:10
**saying** [5] - 8:23, 24:1, 34:6, 41:4, 55:9
**says** [10] - 10:25, 12:3, 13:1, 28:17, 29:14, 37:1, 37:14, 42:4, 53:11, 53:21
**Schaefer** [1] - 6:23
**SCHAEFER** [24] - 8:23, 13:17, 13:19, 15:9, 19:15, 21:21, 22:13, 22:17, 22:20, 23:11, 27:3, 29:22, 31:21, 35:2, 36:14, 36:17, 37:9, 37:11, 47:9, 48:21, 54:19, 55:18, 55:21, 55:24
**school** [1] - 9:8
**scrutinizing** [1] - 46:20
**second** [3] - 19:7, 33:1, 52:7
**secondly** [1] - 26:19
**Section** [54] - 3:19, 10:14, 10:15, 10:24, 11:12, 16:18, 16:20, 16:22, 17:3, 17:5, 17:6, 17:13, 17:17, 17:23, 17:25, 20:5, 20:6, 20:9, 20:13, 20:21, 20:23, 21:2, 21:4, 24:1, 27:21, 28:13, 28:19, 29:6, 30:1, 31:18, 32:9, 32:11, 32:13, 32:15, 32:23, 34:2, 34:20, 34:24, 35:4, 35:5, 35:7, 35:20, 36:21, 40:5, 47:17, 52:19, 53:14, 53:21, 54:1, 54:14, 54:18, 54:21, 54:22, 55:14
**section** [4] - 9:17, 36:21, 38:3, 55:23
**sections** [5] - 19:8, 20:8, 20:22, 53:19, 54:3
**see** [4] - 6:11, 13:20, 20:4, 50:1
**seen** [3] - 25:5, 29:11, 29:20
**selection** [3] - 30:20, 30:21, 31:7
**Senate** [3] - 10:24, 11:1, 14:23
**Senator** [1] - 29:9
**sense** [3] - 23:16, 28:1, 45:15

**sentence** [2] - 33:1
**separate** [4] - 9:19, 10:13, 10:14, 30:9
**separately** [1] - 22:1
**September** [15] - 3:9, 3:12, 3:15, 10:3, 11:2, 11:5, 12:20, 13:9, 16:8, 16:22, 24:11, 27:23, 29:18, 35:23, 55:11
**series** [1] - 5:15
**serious** [1] - 43:19
**SERVICES** [1] - 1:3
**serving** [1] - 25:13
**set** [6] - 4:7, 13:2, 21:23, 26:25, 49:17
**seven** [2] - 10:4, 12:15
**seven-page** [1] - 12:15
**seven-page-long** [1] - 10:4
**several** [2] - 4:9, 30:6
**Shaefer** [3] - 7:10, 7:15, 8:12
**shall** [1] - 46:24
**Sharp** [1] - 28:12
**Sharp's** [1] - 6:3
**she** [4] - 27:14, 28:14, 28:17, 28:20
**short** [3] - 29:10, 36:21, 50:20
**shorthand** [1] - 1:15
**shortly** [1] - 3:11
**should** [10] - 17:18, 26:9, 26:10, 35:19, 35:20, 37:14, 48:19, 49:15, 49:23, 54:6
**shows** [2] - 11:16, 48:4
**sic** [3] - 14:23, 28:12, 42:4
**side** [3] - 39:18, 46:2
**sides** [1] - 51:25
**sidestep** [1] - 34:1
**sidesteps** [1] - 16:25
**significance** [2] - 33:18, 45:24
**signify** [1] - 45:23
**similar** [2] - 32:3, 35:16
**simple** [2] - 54:13, 54:16
**simply** [3] - 17:18, 41:4, 55:8
**since** [2] - 4:8, 23:7
**sit** [3] - 18:14, 21:16, 25:20
**situation** [6] - 7:8, 7:21, 8:10, 13:12, 27:5, 51:11
**situations** [1] - 8:11
**slightly** [1] - 32:6
**slowly** [1] - 34:8
**so** [76] - 2:12, 3:2, 3:5, 3:25, 5:18, 7:8, 7:14, 7:16, 7:22, 8:1, 8:4, 8:19, 11:12, 13:10, 13:11, 13:14, 17:22, 18:4, 20:5, 20:19, 20:22, 21:1, 21:6, 24:16, 25:16, 26:13, 27:7, 27:8, 28:7, 29:6, 29:8, 29:19, 29:21, 30:8, 31:6, 32:1, 32:9, 32:19, 34:23, 35:19, 36:25, 37:5, 38:14, 39:20, 40:2, 40:8, 40:12, 40:16, 41:12, 41:21, 42:2, 42:5, 42:23, 43:10, 43:19, 44:2, 44:10, 44:24, 46:3,

46:10, 46:18, 48:10, 48:17, 48:25, 49:17, 49:21, 50:14, 51:5, 53:5, 54:1, 54:10, 54:12, 54:16, 54:19
**Sofia** [1] - 1:13
**solidly** [1] - 20:15
**some** [20] - 6:1, 7:13, 18:19, 19:4, 24:22, 24:23, 28:3, 32:4, 33:22, 34:15, 36:8, 39:11, 39:12, 39:20, 40:25, 43:5, 44:20, 45:2, 46:16
**somehow** [1] - 52:25
**something** [6] - 12:4, 45:11, 46:15, 47:25, 49:17, 52:4
**somewhat** [1] - 39:14
**sophisticated** [3] - 9:14, 22:23, 40:13
**sort** [1] - 28:3
**sounds** [1] - 29:19
**speak** [4] - 5:9, 34:14, 38:16, 51:23
**speaking** [2] - 18:16, 34:18
**species** [1] - 49:10
**specifically** [4] - 9:13, 9:15, 28:18, 31:15
**spending** [1] - 34:11
**spent** [4] - 14:24, 24:17, 41:13, 43:16
**spoken** [1] - 6:13
**sponte** [3] - 4:7, 4:20, 41:1
**stage** [1] - 8:5
**stand** [1] - 25:20
**standing** [2] - 9:24, 51:20
**stands** [1] - 49:10
**Star** [2] - 17:16, 33:11
**STAR** [1] - 1:2
**Star's** [3] - 35:3, 53:18, 56:13
**start** [3] - 8:23, 53:5, 53:19
**starting** [1] - 20:15
**starts** [1] - 20:9
**STATE** [2] - 1:2, 57:2
**state** [5] - 3:8, 37:16, 39:10, 39:22, 45:2
**State** [5] - 1:13, 1:18, 17:10, 29:12, 57:6
**stated** [5] - 7:20, 14:21, 34:22, 35:1, 44:10
**statement** [2] - 25:19, 43:16
**statements** [1] - 8:2
**stating** [1] - 13:25
**statute** [16] - 10:12, 11:23, 12:10, 26:12, 28:10, 28:17, 32:1, 32:19, 35:14, 35:16, 46:1, 47:19, 47:21, 53:10, 54:3
**statutes** [3] - 31:24, 47:12, 47:14
**statutory** [1] - 17:14
**stay** [2] - 25:10, 44:20
**step** [1] - 23:22
**still** [2] - 17:11, 17:12

**stipulates** [1] - 29:16
**stone** [1] - 49:17
**stop** [2] - 6:12, 18:10
**strategically** [1] - 26:1
**studied** [1] - 15:3
**styled** [2] - 35:11, 57:11
**sua** [3] - 4:7, 4:20, 41:1
**subject** [21] - 5:24, 9:7, 10:17, 11:8, 11:13, 11:24, 13:7, 15:19, 15:22, 17:17, 20:25, 23:17, 23:19, 26:8, 26:17, 34:18, 45:9, 48:7, 49:22, 53:2, 53:7
**subject-matter** [18] - 9:7, 10:17, 11:8, 11:13, 11:24, 13:7, 15:19, 15:22, 17:17, 20:25, 23:17, 23:19, 26:8, 26:17, 48:7, 49:22, 53:2, 53:7
**subjects** [2] - 5:6, 41:12
**submitted** [1] - 3:12
**subsection** [1] - 55:2
**subsequent** [21] - 9:15, 12:19, 13:7, 14:6, 17:25, 18:1, 21:10, 22:5, 23:1, 25:3, 25:6, 26:23, 27:11, 30:4, 30:7, 31:4, 35:10, 48:24, 53:12, 55:5, 55:12
**subsequently** [1] - 3:18
**substantial** [4] - 38:10, 40:6, 40:7, 42:13
**succession** [1] - 4:14
**such** [4] - 11:14, 17:2, 18:6, 40:9
**suddenly** [1] - 29:15
**suffices** [1] - 18:24
**sufficient** [1] - 35:13
**suggesting** [4] - 5:12, 50:4, 50:8, 50:10
**suggestion** [1] - 48:19
**sui** [2] - 14:25, 46:9
**supplement** [2] - 8:13, 33:7
**supplemental** [1] - 32:11
**support** [3] - 3:13, 31:17, 42:18
**Supreme** [4] - 11:11, 12:2, 31:22, 54:5
**sure** [8] - 5:9, 5:13, 8:13, 12:18, 13:18, 29:10, 29:20, 33:8
**Sure** [1] - 47:1
**surmise** [5] - 4:7, 22:14, 26:3, 44:3, 47:3
**swing** [1] - 27:25
**system** [1] - 26:10
**System** [1] - 29:13

**T**

**T** [1] - 28:6
**take** [11] - 5:12, 6:16, 15:6, 26:13, 27:25, 34:17, 37:21, 41:3, 41:5, 45:15, 46:24
**takes** [1] - 50:20

**talk** [1] - 12:18
**talking** [2] - 28:15, 55:18
**TBC** [1] - 29:16
**tell** [3] - 12:9, 29:2, 49:23
**term** [1] - 12:2
**termination** [4] - 38:12, 38:20, 38:25, 39:3
**terms** [4] - 6:8, 39:25, 50:3, 56:2
**TEXAS** [2] - 1:2, 57:2
**Texas** [23] - 1:14, 1:17, 1:18, 2:11, 3:11, 9:1, 9:2, 9:11, 10:21, 11:11, 12:2, 14:11, 22:22, 29:12, 31:22, 38:3, 54:22, 54:25, 57:5, 57:6, 57:22, 57:23
**Texas's** [2] - 9:23, 11:25
**text** [1] - 31:1
**than** [12] - 8:10, 9:2, 12:7, 16:11, 18:16, 28:21, 32:10, 38:17, 38:22, 46:5, 47:21, 47:23
**Thank** [1] - 6:17
**thank** [17] - 7:4, 8:20, 8:21, 14:8, 14:12, 14:15, 15:10, 19:25, 31:10, 33:5, 37:22, 46:23, 48:15, 51:18, 55:25, 56:9, 56:20
**thanks** [2] - 7:18, 15:11
**that** [309] - 2:14, 2:18, 2:21, 2:25, 3:24, 4:9, 4:10, 4:16, 4:18, 4:22, 5:1, 5:2, 5:5, 5:13, 5:14, 5:15, 5:17, 5:23, 5:24, 5:25, 6:3, 6:7, 6:10, 6:13, 7:23, 7:24, 8:5, 8:6, 8:8, 8:9, 8:11, 8:12, 8:16, 8:25, 9:4, 9:7, 9:8, 9:9, 9:15, 9:18, 9:20, 10:7, 10:10, 10:19, 10:20, 10:25, 11:4, 11:6, 11:7, 11:8, 11:10, 11:14, 11:17, 11:19, 11:20, 11:22, 12:3, 12:4, 12:6, 12:11, 12:15, 13:12, 13:14, 13:16, 13:20, 14:5, 14:15, 14:16, 14:18, 14:20, 14:21, 14:25, 15:1, 15:2, 15:3, 15:4, 15:6, 15:18, 16:1, 16:2, 16:5, 16:6, 16:8, 16:10, 16:15, 16:20, 16:25, 17:4, 17:7, 17:9, 17:13, 17:14, 17:15, 17:17, 17:19, 18:2, 18:5, 18:6, 18:8, 18:10, 18:11, 18:15, 18:18, 19:4, 19:5, 19:7, 19:12, 20:4, 20:9, 20:15, 20:16, 21:3, 21:6, 21:11, 21:15, 21:17, 21:21, 22:6, 22:12, 22:21, 22:23, 23:8, 23:23, 24:4, 24:20, 24:21, 24:22, 25:1, 25:2, 25:5, 25:8, 25:11, 25:14, 25:20, 25:22, 26:14, 26:25, 27:4, 27:10, 27:12, 27:18, 27:19, 27:25, 28:1, 28:3, 28:14, 28:19, 28:20, 29:6, 29:7, 29:14, 29:16, 29:24, 29:25, 30:13, 30:17, 30:25, 31:1, 31:2, 31:6, 31:10, 31:15, 31:16, 31:17, 31:24, 32:1, 32:4, 32:6, 32:12, 32:22, 32:24, 33:1, 33:9, 33:18, 33:20, 34:2, 34:7, 34:9, 34:21, 34:25, 35:5, 35:6, 35:9, 35:10, 35:13, 35:15, 35:18, 35:22, 36:3, 36:5, 36:8, 36:10, 36:11, 36:12, 36:20, 36:22, 36:24, 36:25, 37:15, 38:8, 38:14, 39:11, 39:12, 39:24, 40:1, 40:5, 40:20, 40:22, 40:25, 41:2, 41:3, 41:6, 41:8, 41:12, 41:13, 41:14, 42:2, 42:3, 42:14, 43:4, 43:7, 43:16, 43:20, 44:5, 44:8, 44:9, 44:11, 44:17, 44:24, 45:5, 45:7, 45:9, 45:10, 45:11, 45:12, 45:13, 45:19, 45:23, 45:24, 45:25, 46:3, 46:4, 46:9, 46:10, 46:14, 46:15, 46:22, 47:6, 47:9, 47:18, 47:23, 48:1, 48:4, 48:5, 48:19, 48:23, 49:8, 49:11, 49:14, 49:16, 49:17, 49:22, 49:23, 50:10, 50:11, 50:25, 51:9, 51:15, 51:20, 52:3, 52:5, 52:15, 52:25, 53:3, 53:10, 53:11, 53:19, 53:24, 54:2, 54:6, 54:7, 54:13, 54:16, 54:17, 54:25, 55:6, 55:17, 57:6, 57:14
**that's** [31] - 9:21, 10:1, 10:12, 15:2, 17:20, 18:7, 20:20, 20:21, 21:1, 23:3, 25:24, 26:6, 28:4, 28:5, 28:7, 28:24, 32:20, 32:21, 41:23, 43:13, 44:24, 45:4, 45:5, 45:6, 48:3, 48:10, 49:9, 52:17, 53:12, 54:17, 55:12
**THE** [71] - 1:2, 2:7, 6:17, 6:19, 7:4, 7:18, 8:14, 8:22, 13:16, 13:18, 14:8, 14:12, 14:14, 15:11, 15:13, 18:13, 19:14, 19:21, 19:23, 20:11, 20:14, 21:14, 22:11, 22:14, 22:19, 23:5, 23:12, 24:7, 25:11, 27:1, 27:19, 29:1, 30:17, 31:10, 33:5, 33:8, 34:6, 35:25, 36:16, 36:19, 37:10, 37:20, 39:23, 41:8, 42:8, 42:16, 42:22, 43:15, 44:14, 45:4, 46:7, 47:1, 47:3, 48:15, 49:11, 49:25, 51:4, 51:18, 52:7, 52:11, 52:17, 53:13, 54:9, 55:15, 55:20, 55:22, 55:25, 56:9, 56:15, 56:17, 57:2
**The** [3] - 2:4, 23:18, 29:11
**the** [569] - 1:10, 1:11, 1:12, 1:13, 2:9, 2:10, 2:11, 2:15, 2:16, 2:17, 2:24, 3:2, 3:3, 3:5, 3:6, 3:9, 3:11, 3:14, 3:19, 3:24, 4:2, 4:3, 4:4, 4:5, 4:6, 4:10, 4:11, 4:12, 4:13, 4:16, 4:18, 4:21,

4:22, 5:1, 5:4, 5:16, 5:20, 5:21, 5:23, 6:1, 6:2, 6:5, 6:8, 6:22, 7:1, 7:9, 7:11, 7:12, 7:17, 7:18, 7:19, 7:20, 7:21, 7:23, 8:9, 8:10, 8:15, 8:17, 8:25, 9:3, 9:4, 9:10, 9:11, 9:16, 9:17, 9:18, 9:20, 9:21, 10:2, 10:7, 10:8, 10:9, 10:10, 10:11, 10:12, 10:15, 10:17, 10:21, 10:22, 11:1, 11:5, 11:10, 11:11, 11:13, 11:14, 11:17, 11:18, 11:19, 11:20, 11:21, 11:22, 12:2, 12:11, 12:12, 12:17, 12:22, 12:23, 12:24, 12:25, 13:4, 13:5, 13:8, 13:10, 13:11, 13:12, 13:14, 13:19, 13:20, 13:21, 13:22, 13:23, 13:24, 14:1, 14:3, 14:6, 14:19, 14:21, 14:23, 15:5, 15:14, 15:17, 15:18, 15:20, 15:22, 15:23, 16:2, 16:3, 16:6, 16:7, 16:10, 16:14, 16:15, 16:16, 16:17, 16:19, 16:20, 16:21, 16:22, 16:24, 16:25, 17:2, 17:6, 17:7, 17:8, 17:10, 17:14, 17:16, 17:19, 17:23, 17:24, 17:25, 18:2, 18:4, 18:6, 18:7, 18:17, 18:19, 18:21, 18:24, 19:2, 19:3, 19:12, 19:19, 19:21, 20:3, 20:7, 20:8, 20:12, 20:15, 20:22, 21:1, 21:2, 21:3, 21:6, 21:7, 21:8, 21:10, 21:11, 21:12, 21:18, 21:19, 21:22, 21:23, 22:1, 22:4, 22:5, 22:6, 22:7, 22:9, 22:14, 22:20, 22:22, 22:23, 22:24, 23:2, 23:8, 23:9, 23:10, 23:15, 23:16, 23:22, 23:24, 24:2, 24:3, 24:4, 24:5, 24:8, 24:11, 24:12, 24:15, 24:16, 24:19, 24:21, 24:24, 24:25, 25:5, 25:7, 25:9, 25:12, 25:13, 25:16, 26:1, 26:10, 26:11, 26:14, 26:19, 26:20, 26:24, 26:25, 27:5, 27:9, 27:10, 27:14, 27:15, 27:16, 27:17, 27:21, 28:1, 28:2, 28:3, 28:5, 28:7, 28:10, 28:15, 28:16, 28:18, 28:23, 29:9, 29:10, 29:23, 30:10, 30:12, 30:20, 30:21, 30:22, 30:25, 31:1, 31:3, 31:6, 31:7, 31:8, 31:14, 31:15, 31:17, 31:18, 31:19, 31:22, 31:24, 32:1, 32:2, 32:7, 32:9, 32:18, 32:19, 32:20, 32:21, 32:25, 33:1, 33:3, 33:9, 33:10, 33:11, 33:13, 33:14, 33:15, 33:17, 33:19, 33:22, 33:24, 33:25, 34:4, 34:11, 34:16, 34:18, 34:19, 34:20, 34:23, 34:24, 35:8, 35:9, 35:11, 35:12, 35:13, 35:14, 35:15, 35:17, 35:21, 35:24, 36:9, 36:10, 37:1,

37:5, 37:7, 37:11, 37:13, 37:20, 37:23, 37:25, 38:8, 38:11, 38:12, 38:15, 38:20, 38:24, 38:25, 39:3, 39:5, 39:10, 39:14, 39:15, 39:16, 39:19, 39:21, 39:22, 39:24, 40:4, 40:8, 40:10, 40:15, 40:20, 40:22, 40:24, 40:25, 41:4, 41:12, 41:16, 41:18, 41:19, 41:21, 41:22, 41:23, 42:1, 42:4, 42:5, 42:9, 42:10, 42:19, 42:20, 42:24, 42:25, 43:17, 43:22, 43:23, 43:24, 44:4, 44:5, 44:7, 44:10, 44:12, 44:15, 44:16, 44:19, 44:20, 44:21, 44:22, 44:24, 45:1, 45:3, 45:9, 45:10, 45:13, 45:15, 45:16, 45:18, 45:20, 45:21, 45:22, 45:23, 45:25, 46:2, 46:3, 46:7, 46:12, 46:18, 46:19, 47:3, 47:6, 47:13, 47:14, 47:17, 47:18, 47:19, 47:20, 47:21, 47:22, 48:1, 48:2, 48:5, 48:8, 48:10, 48:11, 48:12, 48:17, 48:18, 48:19, 48:20, 48:21, 48:22, 48:24, 48:25, 49:2, 49:6, 49:9, 49:14, 49:15, 49:16, 49:18, 49:22, 49:23, 50:5, 50:7, 50:13, 50:16, 50:17, 50:18, 50:19, 50:21, 50:22, 50:25, 51:1, 51:2, 51:3, 51:6, 51:7, 51:19, 52:2, 52:3, 52:4, 52:5, 52:8, 52:18, 52:23, 52:25, 53:3, 53:6, 53:12, 53:14, 53:18, 53:23, 53:25, 54:3, 54:5, 54:10, 54:12, 54:15, 54:16, 54:22, 54:25, 55:2, 55:3, 55:5, 55:6, 55:7, 55:13, 55:16, 55:22, 56:5, 56:12, 56:19, 57:5, 57:6, 57:9, 57:10, 57:11, 57:15, 57:16

**their** [6] - 13:1, 17:15, 23:18, 24:17, 36:11, 55:5

**them** [4] - 11:19, 21:12, 39:6, 47:12

**then** [25] - 2:18, 7:16, 8:8, 8:12, 12:23, 16:1, 17:6, 17:25, 19:3, 22:1, 22:8, 26:19, 27:23, 29:4, 30:9, 33:10, 38:1, 43:2, 49:3, 50:1, 50:4, 50:25, 52:12, 53:2, 53:9

**there** [51] - 4:8, 5:18, 8:18, 12:19, 14:19, 15:21, 16:5, 16:13, 16:14, 16:15, 17:1, 18:7, 21:18, 22:17, 27:14, 29:8, 30:5, 30:6, 30:13, 32:22, 34:3, 34:5, 34:9, 36:4, 36:25, 38:10, 42:1, 42:3, 42:12, 42:23, 43:4, 43:25, 44:1, 44:9, 44:19, 45:1, 45:8, 45:13, 46:1, 46:15, 47:5, 48:6, 48:7, 51:8, 51:11, 51:14, 53:5, 54:20

**there'll** [2] - 40:25, 43:11

**there's** [22] - 5:23, 8:6, 9:6, 14:25, 15:25, 19:3, 20:13, 24:22, 25:8, 26:22, 28:1, 29:14, 32:14, 34:15, 39:11, 40:5, 40:14, 41:9, 42:20, 43:24, 46:11, 46:14

**therefore** [3] - 17:16, 24:3, 51:5

**these** [9] - 5:6, 7:13, 20:22, 25:13, 39:11, 43:6, 44:4, 51:9, 53:19

**they** [15] - 4:13, 12:15, 13:4, 13:6, 13:25, 25:2, 31:25, 32:7, 32:23, 33:2, 43:7, 47:20, 47:23, 49:5

**they'll** [1] - 43:12

**they're** [6] - 14:17, 20:4, 24:15, 26:23, 41:10, 43:1

**thing** [6] - 10:19, 12:17, 13:17, 14:21, 31:1, 32:8

**things** [10] - 4:25, 7:16, 29:3, 35:16, 41:23, 55:8, 55:10, 55:11

**think** [70] - 5:11, 7:6, 8:6, 8:9, 10:19, 12:2, 15:1, 19:1, 19:16, 21:22, 22:17, 23:19, 24:19, 24:24, 25:5, 25:7, 27:9, 28:1, 28:4, 28:7, 28:11, 28:24, 29:4, 29:22, 30:25, 31:21, 33:14, 33:25, 35:3, 37:11, 37:18, 37:21, 39:2, 39:9, 39:10, 39:20, 40:19, 40:20, 40:21, 40:22, 41:3, 42:10, 42:11, 42:23, 43:4, 43:10, 43:11, 44:11, 44:17, 44:19, 44:25, 45:19, 45:25, 46:3, 46:15, 48:21, 48:22, 50:6, 51:6, 51:25, 52:2, 52:24, 53:5, 54:19, 55:15

**thinking** [6] - 9:21, 38:3, 43:23, 47:10, 47:12, 49:21

**third** [2] - 42:13, 43:6

**third-party** [1] - 42:13

**this** [90] - 2:8, 3:1, 3:25, 4:7, 4:20, 5:5, 7:8, 8:9, 8:24, 9:23, 10:4, 10:5, 10:6, 10:21, 11:1, 11:4, 12:15, 12:16, 15:4, 15:18, 15:19, 15:24, 16:1, 16:14, 17:11, 17:23, 18:5, 19:10, 20:23, 21:4, 22:2, 22:24, 23:23, 24:18, 25:18, 26:7, 26:17, 26:18, 28:22, 29:5, 29:20, 30:11, 31:11, 33:14, 33:21, 34:1, 34:4, 36:1, 36:7, 36:9, 36:20, 37:4, 37:6, 38:18, 38:19, 38:20, 39:1, 39:3, 40:2, 40:11, 41:2, 41:9, 42:11, 43:8, 44:11, 45:16, 45:18, 45:23, 46:4, 46:9, 46:17, 47:7, 48:11, 48:12, 48:19, 49:7, 49:8, 49:21, 50:13, 51:12, 52:1, 53:1, 53:10, 54:15,

56:3, 56:20, 57:10, 57:14, 57:18

**those** [16] - 11:9, 11:10, 21:11, 21:22, 24:6, 26:21, 27:12, 29:17, 30:7, 47:11, 53:25, 55:8, 55:10, 55:11

**though** [3] - 24:16, 39:18, 52:23

**thought** [2] - 2:25, 20:14

**thoughts** [2] - 36:12, 56:3

**three** [4] - 26:14, 27:6, 38:14, 55:8

**through** [8] - 7:11, 8:12, 9:9, 34:8, 42:19, 44:5, 48:13, 49:22

**throughout** [1] - 34:16

**thrown** [1] - 51:16

**thrust** [1] - 29:15

**time** [20] - 3:16, 5:10, 7:9, 7:19, 10:21, 12:23, 14:24, 18:14, 18:22, 22:25, 23:4, 27:10, 34:11, 41:13, 43:9, 50:17, 54:15, 56:18

**timely** [1] - 3:20

**times** [2] - 24:25, 52:1

**timing** [3] - 4:10, 40:8, 50:9

**titled** [3] - 10:13, 29:10, 54:23

**to** [336] - 1:11, 2:8, 2:13, 2:15, 2:16, 3:10, 3:23, 3:25, 4:3, 4:6, 4:17, 4:20, 4:24, 5:2, 5:3, 5:5, 5:7, 5:8, 5:9, 5:13, 5:14, 5:23, 5:25, 6:5, 6:10, 6:12, 6:13, 6:15, 6:16, 6:21, 7:5, 7:7, 7:8, 7:10, 7:14, 7:17, 7:24, 8:2, 8:4, 8:6, 8:24, 9:4, 9:10, 9:13, 9:14, 9:18, 9:24, 10:8, 10:11, 10:20, 11:2, 11:5, 11:7, 11:8, 11:18, 11:21, 12:4, 12:10, 12:16, 12:25, 13:2, 13:3, 13:4, 13:15, 13:20, 14:1, 15:1, 15:4, 15:20, 15:25, 16:10, 16:13, 16:15, 16:17, 17:4, 17:10, 17:15, 17:24, 18:2, 18:14, 18:16, 18:17, 18:18, 18:22, 18:24, 19:7, 19:11, 19:17, 19:19, 20:5, 20:6, 20:15, 21:12, 21:14, 21:16, 21:19, 22:2, 22:4, 22:8, 22:10, 22:23, 22:24, 23:17, 23:19, 23:21, 23:22, 24:6, 24:7, 24:8, 24:11, 24:15, 24:22, 25:3, 25:4, 25:7, 25:8, 25:10, 25:16, 25:18, 25:20, 25:23, 25:25, 26:1, 26:5, 26:7, 26:13, 26:18, 26:19, 26:21, 27:4, 27:8, 27:11, 27:14, 27:15, 27:17, 27:18, 27:20, 27:21, 27:22, 28:2, 28:3, 28:5, 28:11, 28:21, 28:22, 29:2, 29:3, 29:17, 29:23, 30:3, 30:4, 30:14, 30:16, 30:18, 30:20, 30:21, 31:2, 31:6, 31:17, 31:22, 31:23, 32:4, 32:7, 32:10, 32:18, 32:20, 32:22, 32:24, 33:3,

33:12, 33:13, 34:1, 34:12, 34:14, 34:17, 34:21, 34:25, 35:6, 35:9, 35:10, 35:12, 35:15, 35:20, 35:23, 36:1, 36:5, 36:6, 36:7, 36:11, 36:15, 36:17, 37:11, 37:15, 37:23, 38:8, 38:14, 38:16, 38:23, 39:5, 39:9, 39:11, 39:14, 39:16, 39:17, 39:21, 39:22, 40:2, 40:6, 40:17, 40:23, 41:3, 41:4, 41:5, 41:13, 41:16, 41:17, 41:19, 41:20, 41:21, 42:9, 43:1, 43:6, 43:11, 43:15, 43:19, 43:24, 44:2, 44:4, 44:7, 44:12, 44:16, 44:18, 44:20, 45:1, 45:2, 45:7, 45:12, 45:15, 45:18, 46:1, 46:4, 46:9, 46:15, 46:16, 46:19, 46:20, 47:5, 47:12, 47:14, 47:16, 47:17, 47:18, 47:22, 47:25, 48:1, 48:4, 48:20, 48:22, 49:3, 49:6, 49:8, 49:15, 49:19, 50:3, 50:9, 50:12, 50:16, 51:10, 51:12, 51:15, 51:22, 51:25, 52:2, 52:3, 52:6, 52:9, 52:10, 52:12, 52:15, 52:19, 52:22, 52:24, 53:15, 54:1, 54:9, 54:13, 54:18, 54:20, 54:22, 55:10, 55:13, 56:2, 56:11, 57:10

**today** [4] - 4:4, 9:10, 13:13, 15:21

**today's** [1] - 4:1

**told** [1] - 54:5

**Tomorrow** [1] - 29:11

**too** [2] - 8:7, 34:11

**took** [2] - 13:23, 14:2

**toward** [1] - 22:15

**traded** [2] - 12:13, 21:25

**traditional** [1] - 40:15

**Trailblazing** [1] - 29:11

**transaction** [5] - 22:4, 22:5, 22:9, 22:21, 55:3

**TRANSCRIPT** [1] - 1:8

**transcription** [1] - 57:8

**transfer** [1] - 26:1

**transferred** [3] - 11:7, 15:1, 24:11

**trap** [2] - 39:12, 39:16

**trappings** [2] - 10:7, 10:10

**tremendous** [2] - 14:24, 23:8

**trial** [5] - 13:1, 13:2, 13:3, 38:6

**TRIAL** [1] - 1:1

**tried** [3] - 19:7, 41:13, 52:24

**triggered** [1] - 21:12

**triggering** [1] - 21:9

**triggers** [2] - 17:19, 23:24

**trouble** [1] - 54:11

**true** [4] - 3:23, 8:17, 14:19, 57:7

**truly** [2] - 52:12, 57:15

**try** [2] - 40:24, 52:3

**trying** [13] - 24:6, 26:21, 29:3,

36:1, 36:6, 40:8, 41:17, 41:19, 41:20, 46:20, 47:12, 50:16

**tumultuous** [1] - 29:16

**turn** [1] - 37:23

**two** [9] - 2:17, 12:13, 16:13, 24:20, 25:7, 32:5, 36:23, 40:14, 40:15

**type** [1] - 9:19

## U

**ultimate** [4] - 38:12, 38:20, 38:25, 39:3

**unclear** [1] - 42:6

**uncodified** [3] - 28:9, 28:10, 28:22

**under** [11] - 4:2, 10:11, 17:13, 19:11, 21:12, 26:11, 45:25, 55:1, 55:2, 55:13, 55:22

**underlined** [5] - 20:4, 20:16, 20:20, 21:2, 55:17

**understand** [2] - 44:21, 45:6

**undisputed** [1] - 28:19

**unfortunately** [2] - 52:10, 52:14

**uniformly** [1] - 30:8

**unintentionally** [1] - 31:25

**unique** [3] - 9:19, 27:4, 34:5

**unless** [2] - 34:22, 35:1

**until** [1] - 14:17

**unwaivable** [1] - 11:23

**unwary** [1] - 39:16

**up** [5] - 40:7, 41:5, 42:2, 43:13, 48:4

**upheld** [1] - 11:11

**upon** [1] - 48:6

**us** [7] - 3:8, 4:4, 13:2, 39:5, 40:23, 46:4, 54:5

**use** [2] - 51:15, 54:10

**used** [1] - 42:10

## V

**v** [1] - 37:16

**V** [1] - 28:16

**value** [1] - 50:6

**various** [5] - 21:3, 21:8, 52:5, 52:19, 53:14

**vehicle** [1] - 46:5

**vein** [3] - 25:22, 39:15, 41:9

**VENTURES** [1] - 1:6

**venue** [1] - 10:5

**version** [5] - 47:18, 47:21, 47:22, 48:1

**versus** [1] - 17:10

**very** [26] - 2:8, 7:4, 7:19, 8:20, 9:2, 11:22, 14:15, 14:18, 15:24, 17:20, 18:24, 23:21, 26:25, 27:9, 31:2, 34:5, 34:9, 35:17,

36:20, 38:3, 39:23, 41:17, 43:21, 49:14, 53:15, 56:19
**via** [1] - 51:19
**view** [1] - 32:13
**views** [1] - 25:2
**violate** [2] - 24:6, 26:21
**vis-à-vis** [1] - 11:17
**volume** [1] - 57:10
**volumes** [1] - 3:6
**voluminous** [1] - 29:3
**vs** [1] - 1:4

# W

**waivability** [2] - 47:7
**waivable** [1] - 17:3
**waive** [1] - 37:2
**waived** [2] - 34:3, 54:8
**waiver** [5] - 6:2, 37:4, 48:6, 48:8, 49:19
**waiving** [1] - 10:5
**walking** [1] - 34:8
**want** [16] - 4:18, 5:13, 7:8, 7:14, 8:2, 12:15, 12:25, 13:2, 13:3, 15:20, 33:12, 36:17, 50:3, 50:8, 52:22
**wanted** [4] - 2:16, 4:16, 4:17, 10:20
**wants** [6] - 34:14, 34:17, 35:10, 36:11, 38:16, 45:1
**was** [37] - 2:25, 4:13, 4:16, 6:4, 8:17, 10:19, 10:22, 10:23, 11:20, 12:5, 12:19, 16:15, 19:1, 22:15, 27:6, 27:11, 31:19, 36:3, 36:4, 36:10, 36:21, 36:22, 36:23, 37:2, 37:3, 37:6, 40:17, 43:16, 43:23, 45:5, 47:4, 49:8, 49:14, 50:14, 52:11
**waste** [2] - 7:9, 44:7
**wasted** [1] - 7:25
**wasting** [1] - 41:25
**way** [15] - 9:18, 16:14, 16:15, 16:16, 16:17, 16:24, 18:6, 27:11, 32:2, 33:13, 33:14, 33:16, 46:7, 50:15, 54:25
**ways** [2] - 16:13, 32:22
**we** [96] - 2:22, 2:25, 3:14, 5:9, 5:22, 7:8, 7:11, 7:13, 8:17, 9:7, 10:20, 12:18, 12:25, 13:1, 13:3, 13:12, 15:6, 16:16, 16:24, 17:9, 17:16, 17:22, 17:25, 18:2, 18:24, 23:15, 24:3, 25:4, 25:6, 26:22, 27:4, 27:7, 27:9, 28:13, 28:24, 29:20, 30:9, 31:5, 31:21, 32:9, 32:17, 34:2, 35:7, 36:10, 36:14, 36:17, 36:22, 37:5, 37:14, 37:16, 37:18, 37:21, 37:23, 39:12, 40:19, 40:21, 40:22, 41:4, 41:13, 41:20,

41:22, 42:1, 42:3, 42:14, 43:25, 44:1, 44:6, 45:7, 45:17, 45:19, 45:25, 46:3, 46:18, 46:19, 46:21, 46:24, 47:9, 47:14, 47:20, 47:22, 47:23, 48:9, 48:23, 49:7, 53:11, 53:19, 53:20, 54:6, 55:10, 55:11, 56:7, 56:16
**we'd** [1] - 7:6
**we'll** [2] - 34:8, 53:14
**we're** [31] - 2:12, 2:18, 3:22, 4:1, 5:5, 6:23, 9:20, 23:21, 24:1, 24:5, 24:20, 24:21, 25:17, 26:21, 30:12, 32:20, 33:15, 39:6, 39:25, 40:22, 41:3, 46:1, 46:17, 46:20, 50:9, 51:22, 51:25, 53:24
**we've** [2] - 40:19, 52:24
**weekend** [1] - 36:9
**welcome** [2] - 7:4, 34:18
**well** [19] - 6:16, 7:6, 7:12, 7:18, 8:8, 14:17, 27:4, 28:19, 28:21, 29:22, 33:16, 40:17, 42:25, 43:11, 44:8, 51:2, 51:24, 56:1, 56:18
**went** [1] - 5:5
**were** [19] - 11:6, 11:7, 14:25, 16:8, 20:14, 25:4, 25:10, 30:6, 31:25, 32:22, 36:8, 37:5, 38:17, 41:4, 44:16, 44:18, 45:18, 46:3, 57:13
**weren't** [1] - 20:15
**Westlaw** [2] - 37:12, 37:13
**what** [44] - 2:24, 10:1, 13:4, 17:22, 18:18, 21:18, 24:10, 24:14, 25:22, 27:7, 27:13, 27:17, 27:23, 31:5, 31:12, 31:16, 32:12, 33:15, 33:16, 33:18, 35:6, 35:7, 35:21, 36:22, 39:25, 41:17, 43:7, 44:6, 45:5, 45:7, 45:8, 47:4, 48:9, 49:5, 49:9, 50:1, 50:21, 50:24, 52:22, 53:17, 54:6, 54:7
**what's** [1] - 29:21
**whatever** [3] - 25:21, 34:2, 52:25
**when** [11] - 11:4, 16:5, 17:1, 17:14, 22:2, 22:20, 24:25, 32:20, 33:16, 47:25, 49:21
**whenever** [1] - 6:12
**where** [12] - 9:12, 12:13, 12:19, 26:3, 26:22, 27:5, 34:5, 36:7, 43:13, 45:24, 48:11, 48:12
**whether** [12] - 8:1, 12:24, 22:24, 26:11, 26:12, 37:2, 37:3, 39:6, 41:19, 47:11, 50:6, 50:20
**which** [32] - 3:16, 3:20, 4:1, 14:3, 17:6, 17:23, 19:2, 19:8, 21:4, 22:4, 24:1, 28:2, 31:4, 36:21, 36:23, 38:10, 39:15,

43:8, 46:11, 47:14, 48:9, 49:10, 51:11, 52:23, 53:2, 53:3, 54:22, 54:23, 55:3, 55:4, 56:10, 57:12
**while** [1] - 23:1
**who** [3] - 27:5, 29:9, 30:1
**whoever** [2] - 34:14, 38:16
**whole** [2] - 24:8, 55:22
**wholly** [1] - 10:14
**whomever** [1] - 18:23
**why** [2] - 23:3, 48:10
**will** [22] - 5:12, 5:14, 5:17, 5:18, 5:21, 5:22, 5:23, 6:9, 6:15, 8:12, 8:13, 12:18, 14:16, 14:17, 21:21, 29:15, 29:17, 39:9, 39:10, 49:7, 50:19, 54:15
**willing** [3] - 13:2, 40:1, 41:3
**wish** [2] - 7:5, 56:2
**with** [47] - 5:5, 5:16, 5:17, 6:9, 7:14, 8:18, 9:1, 9:5, 9:20, 13:14, 16:2, 16:24, 17:16, 18:10, 20:17, 23:15, 27:17, 27:20, 28:11, 28:14, 28:25, 29:25, 30:17, 33:15, 33:17, 33:22, 34:20, 34:24, 36:9, 38:9, 39:13, 41:24, 43:5, 44:16, 45:18, 46:4, 47:5, 47:14, 49:4, 51:10, 51:20, 52:25, 53:6, 53:9, 53:17, 54:18, 55:11
**within** [13] - 11:6, 15:18, 16:22, 18:19, 24:3, 24:8, 40:4, 41:9, 44:25, 45:3, 53:21, 53:25, 54:3
**without** [5] - 12:22, 17:24, 20:24, 30:6, 30:7
**WITNESS** [1] - 57:18
**word** [5] - 31:15, 32:25, 33:17, 40:13, 54:10
**worded** [1] - 32:7
**work** [7] - 5:4, 7:24, 23:8, 24:17, 26:6, 26:14, 27:12
**worked** [1] - 3:25
**working** [1] - 36:9
**would** [47] - 6:20, 7:17, 8:23, 11:25, 12:17, 16:17, 19:20, 21:13, 23:24, 24:10, 26:15, 26:16, 28:4, 31:22, 32:9, 32:23, 38:19, 38:24, 41:5, 41:6, 41:22, 42:2, 43:5, 43:7, 44:4, 44:6, 44:12, 44:18, 44:19, 45:2, 45:14, 46:5, 46:14, 47:10, 47:11, 47:15, 48:25, 49:2, 49:13, 50:6, 50:8, 50:21, 50:24, 51:19, 53:2, 53:9, 53:18
**write** [3] - 18:6, 35:13, 35:15
**writing** [1] - 57:9
**written** [3] - 35:16, 38:7, 45:9
**wrong** [1] - 49:8

# Y

**Y** [1] - 28:6
**yeah** [6] - 8:14, 19:14, 19:23, 20:14, 37:20, 42:16
**year** [1] - 34:16
**years** [5] - 9:8, 24:17, 26:14, 27:6, 43:17
**Yes** [1] - 53:16
**yes** [22] - 7:22, 8:4, 8:22, 16:11, 23:11, 23:13, 23:14, 27:2, 33:6, 37:9, 40:16, 42:8, 42:17, 42:22, 43:21, 44:14, 49:12, 51:4, 55:20, 55:21, 55:24
**yet** [2] - 40:9, 45:9
**you** [187] - 2:13, 2:14, 2:20, 2:21, 3:9, 3:12, 3:16, 3:20, 4:11, 4:13, 4:18, 5:8, 5:9, 5:14, 5:21, 6:4, 6:11, 6:12, 6:14, 6:16, 6:17, 6:20, 7:4, 7:5, 7:7, 8:1, 8:3, 8:9, 8:20, 8:21, 8:24, 11:23, 12:4, 12:6, 12:13, 12:24, 13:1, 13:2, 13:10, 13:20, 14:8, 14:12, 14:15, 14:19, 14:21, 15:10, 15:16, 15:21, 15:25, 16:15, 16:18, 16:20, 16:21, 17:1, 17:4, 17:5, 17:7, 17:10, 18:2, 18:11, 18:16, 18:22, 18:23, 19:3, 19:7, 19:12, 19:17, 19:18, 19:19, 19:20, 19:25, 20:2, 20:4, 20:14, 20:17, 20:19, 20:24, 21:7, 21:11, 21:23, 21:24, 22:1, 22:14, 22:21, 23:9, 23:16, 23:22, 24:14, 25:5, 25:8, 25:12, 25:21, 26:3, 26:9, 26:14, 27:18, 28:9, 28:11, 28:12, 29:2, 29:6, 30:8, 30:10, 30:14, 31:10, 31:24, 32:2, 32:5, 33:5, 33:13, 33:17, 33:20, 33:21, 34:6, 36:6, 36:21, 37:11, 37:21, 37:22, 38:5, 38:16, 40:6, 40:12, 40:14, 41:2, 42:3, 42:10, 42:17, 42:18, 44:3, 44:6, 44:9, 44:11, 44:17, 44:18, 44:21, 44:22, 44:25, 45:9, 45:11, 45:13, 45:19, 46:8, 46:17, 46:23, 46:24, 47:13, 48:2, 48:13, 48:15, 49:6, 49:8, 49:17, 49:18, 49:23, 50:3, 50:5, 50:6, 50:8, 50:11, 51:18, 51:22, 52:10, 52:12, 52:16, 52:22, 53:2, 53:3, 54:12, 54:18, 55:9, 55:12, 55:18, 55:25, 56:10, 56:11, 56:20
**you'd** [1] - 6:9
**you'll** [2] - 20:8, 33:9
**you're** [9] - 5:18, 24:4, 25:17, 29:19, 33:16, 38:22, 40:2, 44:2, 49:21
**you've** [6] - 3:6, 7:24, 10:2, 29:10, 29:19, 48:18
**you-all** [1] - 2:14
**younger** [1] - 34:16
**your** [31] - 2:20, 2:21, 3:3, 4:12, 5:8, 6:10, 7:13, 14:9, 15:8, 18:14, 18:16, 19:10, 24:15, 25:19, 26:5, 26:18, 29:21, 34:10, 36:3, 36:5, 37:6, 37:25, 38:22, 40:1, 42:16, 42:17, 44:7, 45:10, 47:7, 55:17, 56:18
**Your** [44] - 6:17, 6:22, 6:25, 7:6, 8:21, 10:2, 10:20, 11:16, 14:12, 15:9, 15:12, 15:16, 16:13, 17:10, 17:22, 18:4, 18:10, 19:13, 19:17, 19:22, 20:2, 20:10, 21:6, 23:14, 23:16, 24:19, 26:4, 27:3, 30:23, 31:21, 32:13, 35:2, 39:2, 42:7, 44:13, 45:17, 47:1, 47:10, 49:13, 51:3, 52:16, 53:17, 56:4, 56:16
**yourself** [1] - 2:16

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Laura Crain on behalf of Parth Gejji
Bar No. 24087575
lcrain@beckredden.com
Envelope ID: 95904637
Filing Code Description: Petition for Permissive Appeal
Filing Description: Joint Petition for Permissive Interlocutory Appeal
Status as of 1/7/2025 6:37 AM CST

Associated Case Party: Lone Star NGL Product Services, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Andrew Price | | andrew.price@nortonrosefulbright.com | 1/6/2025 4:50:17 PM | SENT |
| Rafe Schaefer | 24077700 | rafe.schaefer@nortonrosefulbright.com | 1/6/2025 4:50:17 PM | SENT |
| Abraham Chang | 24102827 | abraham.chang@nortonrosefulbright.com | 1/6/2025 4:50:17 PM | SENT |
| Timothy Shinn | 24125409 | Timothy.shinn@nortonrosefulbright.com | 1/6/2025 4:50:17 PM | SENT |
| William Boyce | 2760100 | bboyce@adjtlaw.com | 1/6/2025 4:50:17 PM | SENT |

Associated Case Party: EagleClaw Midstream Ventures LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Fields Alexander | | falexander@beckredden.com | 1/6/2025 4:50:17 PM | SENT |
| Thomas Ganucheau | | tganucheau@beckredden.com | 1/6/2025 4:50:17 PM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 1/6/2025 4:50:17 PM | SENT |
| Parth S.Gejji | | pgejji@beckredden.com | 1/6/2025 4:50:17 PM | SENT |
| Garrett S.Brawley | | gbrawley@beckredden.com | 1/6/2025 4:50:17 PM | SENT |
| Cassie Maneen | | cmaneen@beckredden.com | 1/6/2025 4:50:17 PM | SENT |